UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION CASE NO.  1:19-cv-20896-Scola

KEITH STANSELL, and others,

      Plaintiffs,

vs.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC); et al.,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR ENTRY OF TRIA TURNOVER JUDGMENT ON
GARNISHEE UBS FINANCIAL SERVICES, INC. ANSWER [DE 58]
<u>& MEMORANDUM OF LAW</u>**

Today Plaintiffs make three filings, all related to our pending Writ of Garnishment issued

to UBS Financial Services, Inc. ("UBS").  DE 114, 115 & 116.  For the sake of clarity and this

Court's convenience, we would encourage the Court to read this filing *last*.

Plaintiffs move for entry of a TRIA Turnover Judgment on the Garnishee Answer [DE

58] directing Garnishee UBS FINANCIAL SERVICES, INC. ("UBS") to turn over the blocked

assets of Specially Designated Narcotics Trafficker-Kingpin and FARC agency or

instrumentality "EL AISSAMI & LOPEZ BELLO NETWORK" member SAMARK JOSE

LOPEZ BELLO to partially satisfy their Final Judgment as U.S. national terrorism victims

against Defendants pursuant to: (i) the Anti-Terrorism Act ("ATA"), 18 U.S.C. §2333(e);  (ii)

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified at 28 U.S.C.

§1610 note;  (iii) Fed. R. Civ. P. 4.1 and 69(a) and 18 U.S.C. §2334 nationwide service of

process; (iv) Chapter 77 of the Florida Statutes; and (v) *Stansell v. FARC*, 771 F.3d 713 (11th

Cir. 2014).  The ATA Judgment was rendered June 15, 2010 by the U.S. District Court for the

Middle District of Florida, and was duly registered in this district on July 28, 2010 pursuant to 28 U.S.C. § 1963, and may now be enforced like a judgment from this district. *See* Dkt. Entry 1. There still remains due and owing $301,276,178.28 on the ATA Judgment awarded.

## I. BACKGROUND

Plaintiffs are U.S. national victims of acts of international terrorism by the Revolutionary Armed Forces of Colombia ("FARC"). On February 13, 2003 Tom Janis, Tom Howes, Keith Stansell and Marc Gonsalves were conducting a counter narcotics surveillance mission for the U.S. Embassy in the Republic of Colombia when the FARC opened fire on the aircraft causing a crash landing. The FARC captured the crew shortly after the landing. The FARC separated the Retired Army Delta Force Officer, Tom Janis from the other crewmembers Stansell, Howes and Gonsalves, marched him into the jungle, and shot him in the head. The FARC held Keith Stansell, Thomas Howes and Marc Gonsalves hostage and tortured them from February 13, 2003 until July 2, 2008 – a total of 1,976 days of captivity. Tom Janis' was survived by his wife of 33 years Judith, and four children, Christopher, Greer, Michael and Jonathan.

Since 1997 through the present, Defendant FARC has been a U.S. Dep't of State designated Foreign Terrorist Organization ("FTO"), pursuant to the Antiterrorism and Effective Death Penalty Act, 8 U.S.C. § 1189. The FARC is the world's largest supplier of cocaine.

Under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified at 28 U.S.C. § 1610 note, Plaintiffs are entitled to satisfy their ATA judgment from the OFAC-blocked assets of not only the FARC, but also any "agency or instrumentality" of the FARC even if the "agency or instrumentality" itself is not named in the judgment. On February 13, 2017, U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") designated Samark

Lopez Bello ("Lopez Bello") and the "EL AISSAMI & LOPEZ BELLO NETWORK"[1] under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act") (21 U.S.C. §1901 et seq.) and OFAC Kingpin Act Sanctions Regulations (31 CFR Part 598). **Exs. 1, 2** [DE 18-1; 18-2]. Lopez Bello and the members of his Network have not been de-listed or exonerated after two years and remain on the OFAC Kingpin list.[2]

The TRIA's steps for post-judgment execution, as endorsed by the Eleventh Circuit in *Stansell*, were followed here. Plaintiffs filed a motion with substantial evidence setting forth that the assets were OFAC blocked and that the owners of the assets were agencies or instrumentalities of the terrorist party FARC. *Stansell v. FARC*, 771 F.3d 713, 729 (11th Cir. 2014). *See* DE 16 (Appendix), DE 17 (expert affidavits), DE 18 (motion & exhibits). This Court engaged in the two-step TRIA analysis as required under *Stansell* before it entered Order DE 22 to issue the writs: (i) that the asset is blocked, and (ii) that the owner of the asset is an agency or instrumentality of the judgment debtor. TRIA § 201(a). *Stansell*, 771 F.3d at 726 (emphasis added). Specifically, Judge Scola found:

> Based upon the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") factual findings and the Plaintiffs' supporting expert witness testimony and appendix, the Court finds that the OFAC Kingpin Act designated members of the "EL AISSAMI & LOPEZ BELLO NETWORK" (identified on OFAC Chart, ECF No. 18-1) are each an agency or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA and 18 U.S.C. 2333(e). The Court concludes that the Plaintiffs, through their extensive submissions, have adequately established that . . . the Kingpin Act blocked parties and owners of the subject blocked assets identified in OFAC Chart (ECF No. 18-1) are each an agency or instrumentality of the FARC.

---

[1] For ease of reference, we refer to them collectively as "Lopez Bello" or "Claimants."

[2] And now more than two years later, Lopez Bello remains designated and his U.S. property remains blocked by OFAC. Moreover, despite his U.S.-assets being blocked, just last month, Lopez Bello was criminally indicted in the Southern District of New York for violating the OFAC sanctions by using "bulk cash" to pay for charter flights between Moscow and Venezuela, among other spots. *See* https://www.justice.gov/usao-sdny/pr/venezuelan-minister-and-former-vice-president-tareckzaidan-el-aissami-maddah-charged (with criminal Indictment attached thereto).

DE 22 at 1-2 (Court's February 15, 2019 Order) (paragraph numbering omitted).[3]  The writ of garnishment was served on UBS on February 21, 2019 by a U.S. Marshal effecting *attachment* of the blocked assets.  DE 39.  Garnishee UBS appeared without objection and answered the writ (DE 58), admitting that UBS is holding blocked account, and that the owner of the account is Samark Lopez Bello.  It is undisputed that Samark Lopez Bello is the owner of the blocked assets held by UBS.  Plaintiffs provided notice under the Florida garnishment statute's notice requirements.  *See* DE 47 Fla. Stat. §77.041, Notice of Compliance (mailing of writ, notice to debtor, & motion w/exhibits); DE 60 Fla. Stat. §77.055 Notice of Compliance (mailing garnishee's answer and notice of 20 days to file motion to dissolve).  Claimants received notice of the service of the writ to UBS and Garnishee's Answer, appeared and moved to intervene. The Court granted Claimants' motion to intervene.

Under *Stansell* and the Florida garnishment statutes, Claimants filed a motion to dissolve the writ of garnishment to UBS seeking to rebut Judge Scola's established agency or instrumentality determination in the February 15th Order  (DE 97), with untimely conclusory and irrelevant affidavits filed 17 days after the strict 20 day deadline imposed by Fla. Stat. §77.07(2). *See* DE 113.   Lopez Bello's motion and evidence to dissolve is woefully inadequate to satisfy his burden of rebutting Judge Scola's finding that Lopez Bello is indeed an "agency or instrumentality" of the FARC.  Indeed, Lopez Bello's motion and supposedly "supporting" evidence fails even to raise any triable issue.  Similarly, the Claimants' attack on jurisdiction fails – OFAC's blocking of the assets provides the court with subject matter jurisdiction, the garnishee has appeared and its Answer raises no objections and  Lopez Bello and the Claimants have voluntarily consented to the jurisdiction the Court.

_____
[3] Claimants are not entitled to a pre-writ hearing.  *Stansell v. FARC,* 771 F.3d 713, 729 (11th Cir. 2014).

4

The Court has subject matter jurisdiction, personal jurisdiction over the garnishee and Claimants and venue is proper.  All jurisdictional prerequisites are satisfied, TRIA's elements are met, and Claimants received notice and appeared.  Because Claimants have wholly failed to rebut the OFAC's factual findings, Plaintiffs' evidence and Judge Scola's agency or instrumentality determination, summary turnover is appropriate here.  Claimants had the "opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets" *See Stansell* 771 F.3d at 726.  They failed.  Plaintiffs may now execute on the blocked assets of Samark Lopez Bello as an agency or instrumentality of the FARC held by UBS under TRIA.  Today's situation is a carbon-copy of what the Eleventh Circuit held 5 years ago in successful previous collection efforts by these same Plaintiffs, where summary turnover judgment in Plaintiffs' favor was justified and affirmed.  *Stansell v. FARC*, 771 F.3d 713 (11th Cir. Cir. 2014).  *Stansell* explicitly rejected the same "due process" challenge to Florida's garnishment process that Lopez Bello asserts today.  *Id.* at 728, 741, 748.

## II.   ALL JURISDICTIONAL PREREQUISITES – SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, AND <u>VENUE -- ARE MET HERE</u>

Claimants' challenge to this Court's jurisdiction is without merit.  Plaintiffs incorporate their detailed factual and legal arguments set forth in their Response in Opposition [DE 115] to Lopez Bello's supplemental brief in support of the motion to dissolve the UBS writ.

### A.   <u>This Court has Subject Matter Jurisdiction</u>

This Court has previously determined that it has "has subject matter jurisdiction to conduct post-judgment execution proceedings of a plaintiff's final judgment under a federal statute (ATA), rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. §1963, with post-judgment execution under the ATA and TRIA §201.  *See* Order DE

22, p. 1.  These post-judgment proceedings are in furtherance of satisfaction of federal Anti-Terrorism Act Judgments. 18 U.S.C. § 2333.  DE 1; *Stansell* (10-mc-22724 DE1).  The ATA provides the Court with exclusive subject matter jurisdiction over this action.  18 U.S.C. § 2338 ("The district courts of the United States shall have exclusive jurisdiction over an action brought under this chapter.").

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides this Court with <u>subject matter jurisdiction over post-judgment execution and attachment proceedings</u> against ***blocked assets*** of an agency or instrumentality of the judgment-debtor, even if the agency or instrumentality itself is not named in the judgment.  *Stansell v. FARC*, 771 F.3d 713, 737 (11th Cir. 2014) ("The district court had subject matter jurisdiction.").  *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010)("Accordingly, we find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.").  Blocked Kingpin Act assets of an agency or instrumentality of the judgment-debtor are subject to execution by ATA Judgment holders like these Plaintiffs.  18 U.S.C. § 2333(e).  The OFAC blocking of the Lopez Bello's account at UBS in and of itself provides the court with subject matter jurisdiction.  *See Stansell*, 771 F.3d at 730 (blocking makes assets "fall within the ambit of TRIA § 201" and "subject to execution").

It is not disputed that the assets at UBS are blocked under the Kingpin Act.  DE 58.  It is also not disputed that Samark Lopez Bello is the owner of the blocked assets. DE 58.  Garnishee UBS' Answer identified no other persons or entities indebted to Lopez Bello or who had an ownership interest in the blocked account.

B.     **All Parties are Subject to Personal Jurisdiction**

No party has asserted a personal jurisdiction challenge.  Plaintiffs are all U.S. nationals who have registered their judgment and appeared in this district.  While OFAC's blocking brings the assets "within the ambit of TRIA," the blocked parties have *actually* appeared before the Court and intervened without reservation and subjected themselves to jurisdiction.  *See In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233 (11th Cir.2006)(party who intervenes, consents, as a matter of law, to the jurisdiction of the court).

In addition to the subject blocked account held at UBS, Garnishee UBS Financial Services, Inc. is a U.S. financial institution with branch offices located here in this district.  UBS is registered to do business in this state, and maintains a registered agent in Florida.  Fla. Div. Corp. Doc. 823791.  Garnishee UBS has filed an Answer to the writ and not contested jurisdiction.[4]  This Court has jurisdiction over UBS, the Garnishee holding Lopez Bello's blocked account.  *See also* Fla. Stat. §§ 48.081; 48.091; *Bank of Wessington v. Winters Gov't Sec. Corp.*, 361 So. 2d 757 (Fla. Dist. Ct. App. 1978).

The Court also has jurisdiction over UBS' blocked account, wherever in the U.S. those accounts may be "located."  *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 439-40 (1951)("The location of an intangible asset is fictional but control over parties whose judicially coerced action can make effective rights created by the chose in action enables the court with such control to dispose of the rights of the parties to the intangible.").  *See General Electric Capital Corp. v. Advance Petroleum, Inc.*, 660 So.2d 1139, 1142-43 (Fla. Dist. Ct. App. 1995)( court "may indirectly act on such property by its assertion of in personam jurisdiction over the defendant").

---

[4] The FARC Defendants were determined to be subject to nationwide jurisdiction under the federal long arm statute, Fed. R. Civ. P. 4(k)(2), and also the ATA, because of their contacts with the United States as a whole.  *See* DE 1 [MDFL Order DE 232, pp. 4-5 (*citing* Plaintiffs' Motion for Entry of Default Judgment, DE 228, Sec. II, Personal Jurisdiction Comports With Due Process, pp. 17-29)].

*See also Watson v. Stewart Tilghman Fox & Bianchi*, 2014 WL 5149106, *2-3 (Fla. Dist. Ct. App., Oct. 15, 2014); *Schanck v. Gayhart*, 245 So. 3d 970 (Fla. Dist. Ct. App. 2018) (court had jurisdiction to order the defendant debtor to either return LLC member certificates located in Canada, or to have his LLC reissue them); *Southern Acct. Svcs. Inc. v. Rodriguez/BP America of Delaware, Inc. (Garnishee)*, 2010 WL 2832869, *33 (Fla. Co. Ct. July 16, 2010) (Court with personal jurisdiction may turnover extraterritorial property).

Florida rejects the antiquated "Separate Entity Rule" whereby "each branch of a bank is a separate legal entity in the context of a garnishment action, and is in no way connected with accounts maintained by depositors at other branches, or at the home office." *Tribie v. United Dev. Group*, 2008 WL 5120769, *2-3 (S.D. Fla. Dec. 2, 2008)(J. Moreno).

A writ of garnishment is a form of process.[5]   To the extent it applies, the ATA itself provides for nationwide service of process once its venue clause is satisfied and provides the court with an alternative and independent basis for jurisdiction. *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 25-26 (D.D.C. 2011) ("ATA's provision of nationwide service of process rests on the satisfaction of its venue clause."). The ATA's venue clause is satisfied by these Plaintiffs' ATA suit, which was filed in the Middle District of Florida, where several of the Plaintiffs resided—specifically, Keith Stansell, Thomas Howes, and Jonathan Janis.[6]  When a federal statute authorizes nationwide service of process—as the ATA does—"the relevant minimum contacts in these instances simply lie with the United States as a whole and not just the forum state" and "the scope of the minimum contacts test exceeds the forum state's long-arm statute". *Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1028 (N.D. Ill. 2015) (citations omitted). Under the ATA, Federal Rule of Civil Procedure 4.1(a) authorizes process to be served beyond

---

[5] *United States ex rel. Bunk v. Gosselin Worldwide Moving, N.V.*, 2017 WL 4476846, *7 (E.D. Va. Aug. 22, 2017).
[6] *See* MDFL Case No.: 8:09-cv-2308 Complaint DE 1, ¶¶ 7, 9 and 14; MDFL DE 229-1; 229-3.

the state's territorial limits.  18 U.S.C. § 2334(a).   *See In re Premier Sports Tours v. Five Star Tickets, Inc.*, 283 B.R. 601 (Bankr. M.D. Fla. 2002)(trustee properly served a Florida writ of garnishment on the debtor's out of state bank in Illinois because the bankruptcy rule – like the ATA here - authorized nationwide service of process).

The Eleventh Circuit affirmed the summary turnover of multiple accounts without expressing a concern about its jurisdiction over "out-of-State" (i.e., non-Florida) funds.  The Eleventh Circuit's opinion in *Stansell* explicitly stated that the court did have jurisdiction to affirm the district court's turnover of the assets to us.  *Stansell*, 771 F.3d at 737.

### C.     Venue is Proper in this District

Plaintiffs properly instituted their ATA action in the Middle District of Florida where three of the plaintiffs then resided. *See* 18 USC §2334(a)(authorizing venue where "any plaintiff resides"). Lopez Bello and the Claimants have intervened and consented to the court's personal jurisdiction.  Venue is proper in this district.  28 U.S.C. § 1391(b)(2) and (3).  Lopez Bello owns many other blocked assets in Florida, including bank and brokerage accounts, and multiple Florida LLC interests holding three luxury condominiums, two mansions, three superyachts and other tangible assets within this district.

## III.     THIS COURT PROPERLY PERMITTED ATTACHMENT, BASED UPON EVIDENCE ESTABLISHING THE TRIA TURNOVER ELEMENTS AND COMPLIANCE WITH FLORIDA STATUTES

### A.     TRIA Allows Enforcement against these Blocked Kingpin Act Assets

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides the federal statutory procedure for the enforcement of judgments by victims of terrorism and for executing on any blocked assets of the FARC, *or any agency or instrumentality of the FARC*. Terrorism Risk Insurance Act of 2002, codified at 28 U.S.C. §1610 note.

Plaintiffs have satisfied the requirements of TRIA, they obtained an ATA judgment against the FARC,  a "terrorist party" as defined by the TRIA Section 201(d)(4), on a claim based on an "act of terrorism" as defined by TRIA Section 201(d)(1)(B), and now seek to enforce that ATA  judgment against blocked assets of "any agency or instrumentality of that terrorist party" which includes blocked assets of individuals and entities that have been designated by OFAC as Specially Designated Narcotics Traffickers under the Kingpin Act – SDNTKs -  as members of cartels, organizations and networks that have a nexus with the FARC. 18 U.S. C § 2333(e).

The blocked assets held at UBS are not immune from attachment under the TRIA as sovereign, diplomatic or consular property.  These blocked assets are not and never were "property subject to the Vienna Convention on Diplomatic Relations" that "is being used exclusively for diplomatic or consular purposes" and are therefore not excluded from the definition of blocked assets under the TRIA.

The OFAC does not require a license for plaintiffs to execute on blocked assets under the TRIA. *Weininger v. Castro*, 462 F. Supp. 2d. 457, 499 (S.D.N.Y. 2006);  *Harrison v. Republic of Sudan*, 802 F.3d 399, 406-07 (2d Cir. 2015)(TRIA judgment holders "are exempt from the normal OFAC licensure requirement").  Plaintiffs have complied with all litigation reporting requirements to OFAC under 31 C.F.R. 501.605.

**B.**      **The Plaintiffs and Court followed the 11th Circuit's Steps**

Plaintiffs followed the 11th Circuit's TRIA execution steps here.  Plaintiffs filed a motion with substantial evidence setting forth that the assets were OFAC blocked and that the owners of the assets were agencies or instrumentalities of the terrorist party FARC:

> Before a writ of garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the property owner is a SDNT designated under

> TWEA or the IEEPA and is an agency or instrumentality of the judgment debtor terrorist party. The district court did that here, after Plaintiffs made factual proffers on those issues.

*Stansell*, 771 F.3d at 729.  *See* DE 16 (Appendix), DE 17 (expert affidavits), DE 18 (motion & exhibits).  The Court engaged in the two-step TRIA analysis as required under Stansell:

> TRIA execution requires two separate determinations regarding the property being executed: (i) that the asset is blocked, and (ii) that the owner of the asset is an agency or instrumentality of the judgment debtor. TRIA § 201(a).

*Stansell,* 771 F.3d at 726.  Judge Scola made the following determinations based on "extensive submissions:"

> (3) Based upon the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") factual findings and the Plaintiffs' supporting expert witness testimony and appendix, the Court finds that the OFAC Kingpin Act designated members of the "EL AISSAMI & LOPEZ BELLO NETWORK" (identified on OFAC Chart, ECF No. 18-1) are each an agency or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA and 18 U.S.C. 2333(e).
>
> (4) The Court concludes that the Plaintiffs, through their extensive submissions, have adequately established that (1) they have obtained an Anti-Terrorism Act judgment against a terrorist party (the FARC) that is based on an act of international terrorism, (2) the assets which the Plaintiffs seek to execute on are "blocked assets" as that term is defined under the TRIA and the ATA, 18 U.S.C. §2333(e), (3) the total amount of the executions does not exceed the amount outstanding of the Plaintiffs' ATA Judgment, and (4) the Kingpin Act blocked parties and owners of the subject blocked assets identified in OFAC Chart (ECF No. 18-1) are each an agency or instrumentality of the FARC.

Order DE 22.

The Clerk issued a writ of execution directed to Garnishee UBS in this district which was levied by the U.S. Marshal on February 21, 2019. DE 39.  A judgment lien was created at the moment the writ was served (the "attachment") on the Garnishee, before any service on the debtor, claimant or property owner is required.  *See* § 77.06(1), Fla. Stat.; § 77.041(2).

The Eleventh Circuit squarely rejected the constitutional attack on the Florida statutory garnishment process made by Claimants here, holding that, within the specific context of TRIA, a third-party claimants' due process right to notice-and-to-be-heard comes into effect *after the initial attachment of the assets, but before final execution upon those assets*:

> Here, Claimants argue that they were denied due process because they were not granted pre-deprivation hearings — that is, prior to attachment under TRIA. On this point, we disagree. . . . Because the factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing *before the writ issued*. In sum, Claimants were entitled to notice and to be heard *before execution, though not necessarily before attachment.*

*Id.* at 728-29 (emphases added).

## C.   Plaintiffs' Complied with All Florida Garnishment Statutes

Plaintiffs have complied with all Florida garnishment statutes governing post-judgment requirements for issuance, attachment, garnishee obligations, notice and claimants/property owners' exemptions, and rights to seek dissolution of the writ.  Fla. Stat. §§ 77.01; 77.03; 77.04; 77.041; 77.55; 77.06 and 77.07.  Plaintiffs have complied with all requirements of the Florida garnishment statutes for notice to persons/entities with an ownership interest and for blocked parties to have an "opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets."  *See Stansell* 771 F.3d at 726.

Pursuant to Fla. Stat. § 77.041, on February 25, 2019, Plaintiffs timely and properly sent by first class domestic and international mail copies of the Motion DE 18 with exhibits, and the writ of garnishment (with notice to debtor attached) to UBS, to two (2) addresses for LOPEZ BELLO, with separate email notice to his three U.S. law firms.  DE 47.

On March 1, 2019, Garnishee UBS timely filed its answer to the writ identifying the Kingpin Act blocked assets of LOPEZ BELLO that it is holding.  DE 58.  Pursuant to Fla. Stat. § 77.055, on March 1, 2019, Plaintiffs timely and properly served by first class domestic and

international mail to LOPEZ BELLO, the Garnishee UBS Answer DE 58, and a notice of his

right to file a motion to dissolve the writ within 20 days of certificate of service date to two (2)

addresses for LOPEZ BELLO, with separate email notice to his three U.S. law firms.  DE 60.

Claimants have appeared and have been afforded timely and adequate due process and an

opportunity to be heard.  *Id*. at 728.

No other person or entity appeared pursuant to the Fla. Stat. §§ 77.041; 77.055 notice.

No other person or entity appeared to challenge or rebut the Court's agency or instrumentality

determination.  No other person or entity appeared to assert any ownership interest in the blocked

account or otherwise challenge the Motion DE 18 as untrue, or Garnishee's Answer DE 58.

**IV.    FINAL EXECUTION IS NOW APPROPRIATE BECAUSE CLAIMANTS HAVE
FAILED TO REBUT THIS COURT'S ESTABLISHED FINDING THAT HE AND
THE "EL AISSAMI & LOPEZ BELLO NETWORK" ARE
"AGENCIES OR INSTRUMENTALITIES" OF THE FARC**

**A.    The Agency or Instrumentality Standard Governs Here**

In reaching his findings, Judge Scola applied the "real world" standard for agency or

instrumentality adopted and affirmed by the Eleventh Circuit.  The appellate court recognized

that terrorist and money laundering operations are "clandestine" and that a real-world standard

must apply to reach non-state actors like those here.  *Id*.  The standard ensures "TRIA's

effectiveness vis-à-vis non-state terrorist organizations" like the blocked Kingpin persons and

entities here. *Id*. at 731.  Drug traffickers and money launderers "operate through layers of

affiliated individuals and front companies."  *Id.* at 732.  Importantly, this non-state actor agency

or instrumentality standard reaches blocked parties <u>even if never previously linked to the terrorist

party</u>.  *Stansell* 771 F.3d at 739 ("The Partnerships had not previously been directly linked to

FARC by OFAC or any other executive or judicial authority.").

The Court can also support its agency or instrumentality finding through "indirect" connections that pierce layers of companies and affiliated individuals to get at the silent powerful facilitators for drug trafficking and money laundering. *Stansell* 771 F.3d at 742 ("evidence Plaintiffs presented to the district court was sufficient to establish the required relationship between FARC and the Partnerships, <u>even if that relationship was indirect</u>")(emphasis added).

> *Stansell* held that even *past* connections qualify:
>
> 4. … any Specially Designated Narcotics Trafficker ("SDNT") with a nexus to **or past dealings with** the FARC qualifies as an agency or instrumentality of the FARC.
>
> 5. Any SDNT person, entity, drug cartel or organization, including all of its individual members, divisions and networks, **that is or was ever** involved in … or that assist**ed** the FARC's financial or money laundering network, is an agency or instrumentality of the FARC under the TRIA because it **was** either:
> *     *     *
> This includes SDNT cartels, organizations, persons or entities **which have ever** supplied currency, weapons, ammunition, logistics, transportation, or supplies and/or financial or money laundering services to the FARC or its trafficking partners, directly or indirectly, as consideration for FARC coca paste or cocaine.

*Stansell v. FARC,* 8:09-CV-2308-T-26MAP, 2013 WL 12133661, *2 (M.D. Fla. May 2, 2013), *definition adopted in Stansell*, 771 F.3d at 732 (emphases ours).

This standard *mandates* that any individual members, divisions and networks of any blocked person, entity, organization or group that has "*ever*" been involved in the cultivation, manufacture, trafficking or distribution of FARC cocaine, or that has "*ever*" supplied financial or money laundering services to the FARC, or its trafficking partners, "*directly or indirectly*" . . . "is an agency or instrumentality of the FARC under the TRIA." *Id.*

Contrary to Claimants' arguments, the Eleventh Circuit expressly rejected the FSIA's "state actor" standard when *non-state actors* (such as Lopez Bello) are at issue. *Stansell*, 771 F.3d at 731 ("[A]pplying the FSIA's definition of agencies or instrumentalities to TRIA would

leave only terrorist states as potential sponsors of agencies or instrumentalities under TRIA §
201, eviscerating TRIA's effectiveness vis-à-vis non-state terrorist organizations. This cannot
stand[.]").  The Eleventh Circuit emphasized that this standard was the proper one. *Id.* at 732.

**B.    The Legal Arguments and "Supporting" Evidence in the Motion To Dissolve
Fail to Rebut Judge Scola's "Agency or Instrumentality" Determination**

Plaintiffs have established through *unrebutted* OFAC factual findings and *unrebutted*
expert witness testimony that Lopez Bello is an "agency or instrumentality of the FARC" under
the controlling standard affirmed in *Stansell*.  Plaintiffs incorporate their detailed factual and
legal arguments set forth in their Response in Opposition [DE 114] to Lopez Bello's motion to
dissolve the UBS writ.  For example, none of Claimants' evidentiary submissions rebut that: (i)
Lopez Bello is a front man for El Aissami or that his companies are front companies for El
Aissami; (ii) that Lopez Bello "was also designated for providing material assistance, financial
support, or goods or services in support of the international narcotics trafficking activities" of El
Aissami; or (iii) that El Aissami, a member of the El Aissami & Lopez Bello Network, provided
protection to an OFAC designated FARC drug trafficking partner; or (iv) that The Cartel of the
Suns *is involved in drug trafficking with* the FARC; or (v) that El Aissami and Lopez Bello are
members of The Cartel of the Suns.

The *unrebutted* OFAC Factual Findings include:

- "OFAC designated Venezuelan national Tareck Zaidan El Aissami Maddah (El Aissami) as a
Specially Designated Narcotics Trafficker . . . for playing a significant role in international
narcotics trafficking."
- "El Aissami's primary frontman, Venezuelan national Samark Jose Lopez Bello (Lopez
Bello), was also designated for providing material assistance, financial support, or goods or
services in support of the international narcotics trafficking activities of, and acting for or on
behalf of, El Aissami."
-  "OFAC further designated or identified as blocked property 13 companies owned or
controlled by Lopez Bello or other designated parties that comprise an international network
spanning the British Virgin Islands, Panama, the United Kingdom, the United States, and
Venezuela."

- "El Aissami … facilitated shipments of narcotics from Venezuela, to include control over planes that leave from a Venezuelan air base, as well as control of drug routes through the ports in Venezuela. In his previous positions, he oversaw or partially owned narcotics shipments of over 1,000 kilograms from Venezuela on multiple occasions, including those with the final destinations of Mexico and the United States."
- "[El Aissami] also facilitated, coordinated, and protected other narcotics traffickers operating in Venezuela. . . . El Aissami also is linked to coordinating drug shipments to Los Zetas . . . as well as providing protection to Colombian drug lord Daniel Barrera Barrera . . . ."
- "Lopez Bello is a key frontman for El Aissami and in that capacity launders drug proceeds."
- "Lopez Bello is used by El Aissami to purchase certain assets. He also handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami."
- "Lopez Bello oversees an international network of petroleum, distribution, engineering, telecommunications, and asset holding companies . . . ."
- "As a result of today's action, significant real property and other assets in the Miami, Florida area tied to Lopez Bello have been blocked."

DE 18-2.  Lopez Bello was afforded a statutory opportunity to dispute these OFAC fact findings in his motion to dissolve the writ, and even after his untimely April 3, 2019  affidavit, he has failed to do so, therefore all of the OFAC factual findings relied upon by this Court are now deemed admitted as a matter of law.  *See* DE 18-1, 18-2.  OFAC factual findings are afforded extreme deference under federal law because OFAC operates "in an area at the intersection of national security, foreign policy, and administrative law." *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007);  *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010)(OFAC designation is "factual finding"); *De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989)(OFAC decision entitled to great deference, and should be reversed only if arbitrary or capricious); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999)(OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation.").

Lopez Bello's "evidence" essentially consists of the following:  (i) OFAC has not *directly* linked Lopez Bello to the FARC; (ii) El Aissami is not a shareholder or officer in any of the

Network entities; (iii) the FARC entered a "peace" agreement with the Colombian government in 2016 and in 2017 they ceased all criminal activity; and (iv)  an untimely bald assertion that he and his entities have never, directly or indirectly, been associated with; provided material assistance to; engaged in financial transactions with; or supported in any way, financially, logistically, or otherwise, the FARC.  These facts are simply irrelevant and raise no issue of material or triable fact.  It doesn't matter whether or not OFAC had already labeled Lopez Bello (or his corporations) as an "agency or instrumentality" of the FARC.  That doesn't do anything towards rebutting the TRIA "agency or instrumentality" determination *that Judge Scola made*. *Stansell*, 771 F.3d at 739 ("The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority.").  The whole purpose of having a "frontman" or "testaferro" is to avoid the formal, traceable evidence of shareholders, corporate officers, and the like.  The Eleventh Circuit has held that the lack of a "corporate" relationship will not disturb an "agency or instrumentality" finding, because such a formality is immaterial. *Stansell* 771 F.3d at 732.  Finally, even if it were true that the FARC ceased criminal activity in 2017, they remain a designated FTO – and therefore a "terrorist party" as defined by TRIA §201(d) – to this date.  Even if the FARC is someday removed from the U.S. list of designated FTOs, such a revocation "shall not affect any action or proceeding based on conduct committed prior to the effective date of such revocation."  8 U.S.C. §1189(7).

In addition to wholly failing to rebut any OFAC factual findings, Lopez Bello's "evidence" does not even attempt to rebut the extensive submissions we submitted to Judge Scola, specifically establishing that:

- The Cartel of the Suns is the principal agent for the Venezuelan government;
- The Cartel of the Suns is involved in drug trafficking with the FARC;

- The Cartel of the Suns provides direct protection of and transportation for FARC cocaine shipments from Colombia through Venezuela to state-controlled airports and shipping ports to the United States, Europe and elsewhere
- The Cartel of the Suns provides the facility and military protection to FARC cocaine laboratories in Venezuelan territory to process cocaine HCL;
- a significant part of the FARC's global cocaine shipments is facilitated by The Cartel of the Suns;
- El Aissami is a member of The Cartel of the Suns;
- Lopez Bello is a member of The Cartel of the Suns;
- the "El Aissami & Lopez Bello Network" are members of The Cartel of the Suns;
- Lopez Bello is a front man for El Aissami;
- that The Cartel of the Suns facilitated – *with respect to these terrorism victims*:
  - ➢ Sophisticated communications between FARC Fronts tracking the aircraft and seeking permission to shoot it down;
  - ➢ Shooting at a descending aircraft in mountainous terrain;
  - ➢ Separation of the U.S. citizens, executing one and forcing the three others into the jungle for a multi-day marches and exchanges between multiple FARC units to avoid detection;
  - ➢ Financial support to move the U.S. hostages repeatedly over 5 years and to maintain structures in the jungle for their imprisonment and torture;
  - ➢ Obtaining false and fraudulent international documents for the FARC's chosen negotiator, a.k.a., Simon Trinidad;
  - ➢ Strategy in how to negotiate with the Colombian Government for the release of the U.S. citizens and to convey the FARC's demands;
  - ➢ Organizing evidence to demonstrate that the U.S. hostages were still alive that was then delivered to the U.S. media.
- El Aissami, through The Cartel of the Suns, provided protection for FARC drug trafficker Daniel Barrera Barrera;
- The Cartel of the Suns is an agency or instrumentality of the FARC;
- El Aissami is an agency or instrumentality of the FARC;
- Lopez Bello and his front companies -- Yakima Trading Corporation,  Alfa One, C.A., Grupo Sahect, C.A., MFAA Holdings Limited, Profit Corporation, C.A., Servicios Tecnologicios Industriales, C.A., SMT Tecnologia, C.A., 1425 Brickell Ave 63-F LLC; 1425 Brickell Avenue Unit 46B, LLC; 1425 Brickell Avenue 64E, LLC; Agusta Grand I LLC; and 200G PSA Holdings LLC -- are each an agency or instrumentality of the FARC.

DE 17-1 (Affid. Cote).  *See also* DE 17-2 (Affid. Farah); DE 16 (Appendix).

Nor does Lopez Bello's evidence directly rebut Colonel Cote's testimony (DE17-1) that:

- FARC Fronts along the Venezuelan border region have opted out of the Peace Process to continue the FARC's lucrative cocaine distribution trade.
- FARC remains to the present date a designated FTO, and also a designated Tier I Specially Designated Narcotics Trafficker.
- FARC still controls more than 80-90% of the cocaine produced in Colombia.
- FARC operates into, within and out of Venezuela with the complete cooperation of and protection by the Venezuelan government through its principal agent—the Cartel of the

Suns. The Cartel provides direct protection of and transportation for FARC cocaine shipments from Colombia through Venezuela to state-controlled airports and shipping ports to the United States, Europe and elsewhere. The Cartel of the Suns also provides the facility and military protection to FARC cocaine laboratories in Venezuelan territory to process cocaine HCL.

- Because of the massive corruption in Venezuela, Venezuela is a failed state where organizations such as the Cartel of the Suns flourish.  The Cartel of the Suns came to exist during the tenure of Chavez and continues under Maduro.  The Cartel of the Suns continues to thrive today under the leadership of the Venezuela's Vice-President Tareck El Aissami and his front man - Samark Lopez Bello and the former head of the Venezuelan National Assembly (Congress), a three star general Diosdado Cabello and his front man - Rafael Sarria Diaz.  The Cartel of the Suns permeates all levels of the Venezuelan military, National Guard, public works and public transportation sectors.  Elected officials like El Aissami and Cabello are members of the Cartel of the Suns.  The Cartel of the Suns and its members is the major facilitator and transporter of FARC cocaine through and from Venezuela.  A significant part of the FARC's global cocaine shipments is facilitated by the Cartel of the Suns.

### C.      Summary Judgment is Appropriate Here

None of Claimant's "evidentiary" submissions in support of his motion to dissolve a writ of garnishment raise a genuine triable issue.

"Summary judgment in a garnishment proceeding is appropriate when there are no issues of material fact[.]"  *Zelaya/Capital Int'l Judgment v. Zelaya*, 769 F.3d 1296, 1304 (11th Cir. 2014).  Indeed, in *SEC v. Mut. Benefits Corp.,* 2010 WL 5148461 at *2  (Torres, J.).  The Eleventh Circuit in *Stansell* affirmed a district court's summary rejection (on the papers) of various claimants' attempt to dissolve TRIA writs of garnishment, where the evidence presented failed to "refut[e] the agency or instrumentality designation."  *Stansell*, 771 F.3d at 740.

The Eleventh Circuit upheld the summary disposition of TRIA executions just like these:

The Partnerships were also afforded an opportunity to be heard. As discussed *supra,* the Partnerships were not entitled to a pre-writ hearing. Nevertheless, they had the opportunity to present evidence refuting the agency or instrumentality designation. They simply did not present any evidence that changed the district court's position on the agency or instrumentality determination.

*Id*. at 740 (emphasis in original).  Because of the fleeting nature of blocked assets, Plaintiffs seek

to execute on these Kingpin Act blocked assets without delay.  *See Stansell v. FARC et al.*, 771

F.3d 713, 726 (11th Cir 2014).

### **SDFL Local Rule 7.1(a)(3) Certification**

Not applicable to motions for judgment on the pleadings or garnishment.

WHEREFORE Plaintiffs request entry of a TRIA turnover Order and judgment in the

proposed form attached hereto as Exhibit 3.


Respectfully submitted April 3, 2019

Newton P. Porter (FL Bar: 833738)     Richard B. Rosenthal (FL Bar: 0184853)
Tony Korvick (FL Bar: 0768405)     THE LAW OFFICES
PORTER & KORVICK, P.A.     OF RICHARD B. ROSENTHAL, P.A.
Attorneys for Plaintiffs     Co-counsel for Plaintiffs
9655 South Dixie Highway Suite 208     1581 Brickell Avenue
Miami, Florida 33156     Suite 1408
Telephone:     (305) 373-5040     Miami, Florida 33129
nporter@porterandkorvick.com     Telephone: (305) 992-6089
tkorvick@porterandkorvick.com     rbr@rosenthalappeals.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I served the foregoing document and the notice of electronic filing by electronic mail to the following persons:

India Ingram, Esq.
Counsel for Garnishee
Raymond James & Associates, Inc.
880 Carillon Parkway
St. Petersburg, FL 33716
(727) 567-4258
india.ingram@raymondjames.com

OFFICE OF FOREIGN ASSETS CONTROL
U.S. Department of the Treasury
1500 Pennsylavnia Ave. NW
Washington DC
[by email service directly to OFAC counsel in compliance with 31 CFR 501.605]

None of the FARC defendants have appeared and defaults were properly entered against them all prior to entry of the Default Judgment in MDFL Case 8:09-cv-2308. Accordingly, no further notice, service of pleadings, motions or writs is required to be served on the FARC or the individual FARC members identified in the ATA Judgment. Fed. R. Civ. P. 5(a)(2).

      s/Tony Korvick
      TONY KORVICK (FL Bar 0768405)
      PORTER & KORVICK, P.A.
      Attorneys for Plaintiffs
      9655 South Dixie Highway Suite 208
      Miami, Florida 33156
      Telephone:    (305) 373-5040
      tkorvick@porterandkorvick.com