UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION CASE NO.  1:19-cv-20896-Scola

KEITH STANSELL, and others,

      Plaintiffs,

vs.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC); et al.,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR ENTRY OF TRIA TURNOVER JUDGMENT ON
GARNISHEE CITIBANK, N.A. ANSWER [DE 87]
& MEMORANDUM OF LAW**

      Plaintiffs move for entry of a TRIA Turnover Judgment on Garnishee's Answer [DE 87] directing Citibank, N.A. ("Citibank") to liquidate and turn over the blocked security assets it is holding in the United States, including the accruing cash dividends and interest, of "EL AISSAMI & LOPEZ BELLO NETWORK" members SAMARK JOSE LOPEZ BELLO and YAKIMA TRADING CORP. to partially satisfy their Final Judgment against Defendants pursuant to: (i) the Anti-Terrorism Act ("ATA"), 18 U.S.C. §2333(e);  (ii) Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified at 28 U.S.C. §1610 note;  (iii) Fed. R. Civ. P. 4.1 and 69(a) and 18 U.S.C. §2334 nationwide service of process; (iv) Chapter 77 of the Florida Statutes; and (v) *Stansell v. FARC*, 771 F.3d 713 (11th Cir. 2014).  The ATA Judgment was rendered June 15, 2010 by the U.S. District Court for the Middle District of Florida, and was registered in this district on July 28, 2010 pursuant to 28 U.S.C. § 1963, and may now be enforced like a judgment from this district.  *See* Dkt. Entry 1.  There still remains due and owing $301,276,178.28 on the ATA Judgment.

## I.      BACKGROUND

      This motion involves the 6th and final pending writ of garnishment at issue in these TRIA post-judgment execution proceedings.  By now this court is fully aware of the governing "agency or instrumentality" standard and procedures, as well as the procedural posture of this case where the blocked Kingpin account owners – *none of whom have rebutted Judge Scola's agency or*

1

*instrumentality findings in Order DE 22* – have pending motions to dissolve all 6 of the subject writs of garnishment.[1]  Also, Plaintiffs' first two Motions for TRIA Turnover Judgment on Answers of garnishees UBS [DE 116] and Raymond James [DE 120] are now fully briefed, with responses and replies filed.   The facts and law relating to the agency or instrumentality determination, and the procedures and requisite due process are all identical here.

Unlike Citibank, none of the five prior garnishees have asserted a single affirmative defense in their Answers, nor have they sought to file a counterclaim or crossclaim of interpleader.  The Claimants' motions to dissolve have already made the same arguments contained in the affirmative defenses raised in Citibank's Answer, *with the sole exception* of Citibank's affirmative defenses that: (i) interpleader is required to join one or more of Lopez Bello's Swiss securities intermediaries Six Sis Ltd. ("SIX") and Bank J. Safra Sarasin ("BJSS"); and (ii) that UCC Article 8-112 requires that Plaintiffs garnish the securities intermediary where Lopez Bello opened his account.[2]  Plaintiffs filed a Reply to Citibank's Answer [DE 99] rebutting each and every Affirmative Defense raised by Citibank, including the interpleader and UCC 8-112 defenses.  Thereafter, Citibank filed an Amended Answer—without leave of court— seeking to add a counterclaim and crossclaim of interpleader.  DE 126.  Plaintiffs have a pending Motion to Dismiss the Amended Answer and interpleader counterclaim, because interpleader is both unnecessary and not permitted under Chapter 77 of the Florida Statutes.  DE 152.[3]  SIX and BJSS have been given the requisite notice under Fla. Stat. §77.055 and they have failed to appear or file any claim or motion to dissolve; thus, the garnishment is now in a default posture as to them.  Claimants and Citibank have appeared and are subject to jurisdiction of this Court.  As will explain below, it is undisputed that the subject security assets are *here in the United States* under a custodial agreement with Citibank, and have been reported to OFAC as being located

---

[1] Plaintiffs have responded to all 6 motions to dissolve, Claimants have filed a Reply on the first 3, and their final 3 Replies are due on April 29, 2019, at which time these motions will be fully briefed.

[2] Conveniently, neither Citibank, Lopez Bello or Yakima Trading have identified who this mystery foreign entity is – clearly Lopez Bello and Yakima Trading know where they opened their accounts that are now blocked by Citibank in New York.  And Citibank after first identifying SIX and BJSS as intermediaries, now only seeks to interplead SIX.

[3] Claimants filed their motion to dissolve the Citibank writ of garnishment on April 11, 2019 arguing, *inter alia*, that this court lacks jurisdiction over the Citibank account because it is "located" in New York, and that venue is not proper here because Plaintiffs have perfected their judgment lien in New York.  DE 134.  Claimanats have now repeated these same arguments in a motion to dismiss the Citibank crossclaim of interpleader filed April 22, 2019.  DE 174.  If the court grants Plaintiffs' motion to dismiss the requested interpleader (DE 152), then Claimants' motion to dismiss same will become moot.

*here in the United States* and owned by Lopez Bello and Yakima Trading Corp. Therefore, the assets are subject to post-judgment execution under TRIA.

## I.     ALL JURISDICTIONAL PREREQUISITES – SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, AND VENUE -- ARE MET HERE

Claimants' and Citibank's challenges to this Court's jurisdiction are without merit. Plaintiffs incorporate their detailed factual and legal arguments set forth in their Response in Opposition [DE 115] to Lopez Bello's supplemental brief, and also in Plaintiffs' Response in Opposition to Motion to Dissolve the CITIBANK writ [DE 171, pp. 16-20], and Plaintiffs' Reply to Garnishee Citibank's Answer [DE 99].

### A.     This Court has Subject Matter Jurisdiction

This Court has previously determined that it has "has subject matter jurisdiction to conduct post-judgment execution proceedings of a plaintiff's final judgment under a federal statute (ATA), rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. §1963, with post-judgment execution under the ATA and TRIA §201. *See* Order DE 22, p. 1. These post-judgment proceedings are in furtherance of satisfaction of federal Anti-Terrorism Act Judgments. 18 U.S.C. § 2333. DE 1; *Stansell* (10-mc-22724 DE1). The ATA provides the Court with exclusive subject matter jurisdiction over this action. 18 U.S.C. § 2338.

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides this Court with subject matter jurisdiction over post-judgment execution and attachment proceedings against blocked assets of an agency or instrumentality of the judgment-debtor, even if the agency or instrumentality itself is not named in the judgment. *Stansell v. FARC*, 771 F.3d 713, 737 (11th Cir. 2014). *See* also *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) ("Accordingly, we find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment."). Blocked Kingpin Act assets of an agency or instrumentality of the judgment-debtor are subject to execution by ATA Judgment holders like these Plaintiffs. 18 U.S.C. § 2333(e). The OFAC blocking of the account at CITIBANK in and of itself provides the court with subject matter jurisdiction. *See Stansell*, 771 F.3d at 730 (blocking makes assets "fall within the ambit of TRIA § 201" and "subject to execution").

It is not disputed that the assets at Citibank are blocked under the Kingpin Act. DE 87, ¶6; DE 171-1. TRIA requires that one or more of the blocked entities (Lopez Bello or Yakima Trading Corp.) have an ownership interest in the subject blocked accounts. *See Levin v. JPMorgan Chase Bank, N.A.*, 17-3854-CV, 2018 WL 4901585, at *2 (2d Cir. Oct. 9, 2018). Here, it is undisputed that the subject blocked assets, **now in a separate interest bearing blocked account**, are owned by Lopez Bello or Yakima Trading Corp.

Citibank, N.A. has sole custody and control of the following specifically identified "security assets" that are "owned by" Lopez Bello and Yakima, and which remain blocked under the Kingpin Act and which Citibank, N.A. has moved to a separate United States blocked account in accordance with OFAC regulations:

Account # **1743, ID#****6680_OFAC, SDNTK Account Samark Jose Lopez Bello 81 security assets with various ISINs, 167,988,430 shares with value **$111,955,811.51**

Account # **1743, ID#****6681_OFAC, SDNTK Account Samark Jose Lopez Bello 36 security assets with various ISINs, 57,300,526 shares with value **$39,121,660.25**

Account # **1743, ID#****6682_OFAC, SDNTK Account Yakima Trading Corp. 15 security assets with various ISINs, 345,106,000 shares with value **$191,779,151.00**

Account # **1743, ID#****8772_OFAC, SDNTK Account Samark Jose Lopez Bello 299,997 security assets of ISINUS******AU54 – value **$281,997.18** (these are bonds issued by the Royal Bank of Scotland paying interest in perpetuity)

Citibank's November 30, 2018 responses to Plaintiffs' subpoena included their Initial Blocking Reports to OFAC which identify "**Security assets owned by SDN, Samark Jose Lopez Bello**", with additional references to Six Sis holding an interest only "**on behalf of" Lopez Bello or Yakima**. *See* **Ex. 1**.[4] Citibank's Answer now states that "according to SIX, Lopez Bello and

---

[4] Upon the February 13, 2017 OFAC Kingpin Act designations of Lopez Bello and Yakima, any assets owned by them in the United States were blocked and were therefore "seized or frozen" under the Kingpin Act. 31 CFR §598.202. Upon this blocking action, any "transaction or dealing" in these blocked assets was prohibited, including any transfer, disposition, transportation, importation, exportation, or withdrawal of any financial security, ***including the transfer on the books of any issuer or agent thereof***. 31 C.F.R. §598.203 (emphasis added). Any transaction or dealing by any United States person, or within the United States, that evades or avoids, or has the effect of evading or avoiding, and any endeavor, attempt, or conspiracy to violate any of the prohibitions set forth in this part is prohibited. 31 C.F.R. §598.204. Citibank, as the "holder of blocked property," complied with its reporting obligations by submitting an Initial Report of Blocked Property to OFAC reporting that it was holding "Security assets owned by SDN, Samark Jose Lopez Bello", and owned by Yakima Trading Corp. *See* 31 CFR §501.603.

Yakima may have been the ultimate beneficiaries of the underlying securities". DE 87, p. 2.[5] But that contradicts what they initially reported to OFAC. Citibank's Initial Blocking Reports to OFAC did not identify any owners *other than* Lopez Bello and Yakima. *Citibank's Answer, and its Amended Answer[6], do not identify any other person or entity with an ownership interest in these blocked assets*. Lopez Bello and Yakima do not deny their ownership interest in their motion to dissolve the Citibank writ, and they are the sole parties to have filed a motion to dissolve the subject writ. DE 134.[7] Lopez Bello's lawyers have also admitted that "my clients are the owners of the subject blocked accounts". *See* DE 122, 176-1, ¶¶ 2-3. It is thus beyond dispute that Lopez Bello and Yakima are the owners of the blocked security entitlements—and the blocked cash and accrued interest and dividends—being held in the U.S. by Citibank.[8]

### B.     All Parties are Subject to Personal Jurisdiction

No party has asserted a personal jurisdiction challenge. Plaintiffs are all U.S. nationals who have registered their judgment and appeared in this district. While OFAC's blocking brings the assets "within the ambit of TRIA," the blocked parties have *actually* appeared before the Court and intervened without reservation and subjected themselves to jurisdiction. *See In re*

---

[5] The aggregate total value of the subject blocked assets at the time Citibank reported them to OFAC in March 2017 was over $341 million. Citibank's March 18, 2019 Answer now states this balance has declined over $70 million to $269,386,498. DE 87, p. 3.

[6] Citibank filed its Amended Answer without leave of court *after* Plaintiffs filed their responsive pleading. *See* Reply DE 99. Plaintiffs have a motion to dismiss the amended answer as a nullity. DE 152. Nevertheless, the Amended Answer also does not identify any ownership interest other than those reported to OFAC and identified in its original Answer, and is virtually identical to its original Answer except for the added Interpleader counterclaim and crossclaim.

[7] The fact that Lopez Bello and Yakima are moving to dissolve the writ, and are the only claimants who have appeared, underscores the reality that they are the owners of these security entitlements.

[8] Any U.S. person holding funds, such as currency, bank deposits, or liquidated financial obligations, subject to §598.202 shall hold or place such funds in a blocked interest-bearing account **located in the United States**. *See* 31 CFR §598.206, *Holding of funds in interest-bearing accounts; investment and reinvestment* (emphasis added). The term blocked interest-bearing account means a blocked account:

      (i) In a federally-insured U.S. bank, thrift institution, or credit union,…; or

      (ii) With a broker or dealer registered with the Securities and Exchange Commission ….

§598.206 (b)(1). As a matter of law, the subject blocked interest bearing account owned by Lopez Bello or Yakima Trading are located in the United States, and are being held by Citibank, N.A. in New York, and until this Court enters a TRIA turnover order, they must remain blocked in the Citibank, N.A. account. *See* §598.504, *Payments and transfers to blocked accounts in U.S. financial institutions*; 31 CFR §598.505, *Investment and reinvestment of certain funds*. Accordingly, the downstream account intermediaries identified in Garnishee's Answer DE 87 (Six Sis and Bank J. Safra Sarasin) have no ownership interest in the subject security assets, and any potential intermediary custodial [non-ownership] interest they may have is blocked and null and void as a matter of federal law, and was in fact terminated when Citibank, N.A. transferred these "security assets" into the new separate OFAC blocked account.

*Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233 (11th Cir.2006)(party who intervenes, consents, as a matter of law, to the jurisdiction of the court).

In addition to the subject blocked account held at Citibank, Garnishee Citibank is a U.S. financial institution with branch offices located here in Florida and in this District.  Garnishee Citibank has filed an Answer to the writ and has not contested personal jurisdiction.[9]  This Court thus unquestionably has jurisdiction over Citibank, the Garnishee holding the subject blocked account.  *See also* Fla. Stat. §§ 48.081; 48.091; *Bank of Wessington v. Winters Gov't Sec. Corp.*, 371 So. 2d 757 (Fla. Dist. Ct. App. 1978).

Citibank's Second Affirmative Defense must be denied because this Court also has jurisdiction over Citibank's blocked account, wherever in the U.S. those accounts may be "located."  *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 439-40 (1951)("The location of an intangible asset is fictional but control over parties whose judicially coerced action can make effective rights created by the chose in action enables the court with such control to dispose of the rights of the parties to the intangible.").  *See General Electric Capital Corp. v. Advance Petroleum, Inc.*, 660 So.2d 1139, 1142-43 (Fla. Dist. Ct. App. 1995)( court "may indirectly act on such property by its assertion of in personam jurisdiction over the defendant").  *See also Watson v. Stewart Tilghman Fox & Bianchi*, 2014 WL 5149106, *2-3 (Fla. Dist. Ct. App., Oct. 15, 2014); *Schanck v. Gayhart*, 245 So. 3d 970 (Fla. Dist. Ct. App. 2018) (court had jurisdiction to order the defendant debtor to either return LLC member certificates located in Canada, or to have his LLC reissue them); *Southern Acct. Svcs. Inc. v. Rodriguez/BP America of Delaware, Inc. (Garnishee)*, 2010 WL 2832869, *33 (Fla. Co. Ct. July 16, 2010) (Court with personal jurisdiction may turnover extraterritorial property).

Citibank's Sixth Affirmative Defense must be denied because Florida rejects the antiquated "Separate Entity Rule" whereby "each branch of a bank is a separate legal entity in the context of a garnishment action, and is in no way connected with accounts maintained by depositors at other branches, or at the home office." *Tribie v. United Dev. Group*, 2008 WL 5120769, *2-3 (S.D. Fla. Dec. 2, 2008)(J. Moreno).

---

[9] The FARC Defendants were determined to be subject to nationwide jurisdiction under the federal long arm statute, Fed. R. Civ. P. 4(k)(2), and also the ATA, because of their contacts with the United States as a whole.  *See* DE 1 [MDFL Order DE 232, pp. 4-5 (*citing* Plaintiffs' Motion for Entry of Default Judgment, DE 228, Sec. II, Personal Jurisdiction Comports With Due Process, pp. 17-29)].

A writ of garnishment is a form of process.[10]   To the extent it applies, the ATA itself provides for nationwide service of process once its venue clause is satisfied and provides the court with an alternative and independent basis for jurisdiction.  *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 25-26 (D.D.C. 2011) ("ATA's provision of nationwide service of process rests on the satisfaction of its venue clause.").  The ATA's venue clause is satisfied by these Plaintiffs' ATA suit, which was filed in the Middle District of Florida, where several of the Plaintiffs resided—specifically, Keith Stansell, Thomas Howes, and Jonathan Janis.[11]  When a federal statute authorizes nationwide service of process—as the ATA does—"the relevant minimum contacts in these instances simply lie with the United States as a whole and not just the forum state" and "the scope of the minimum contacts test exceeds the forum state's long-arm statute".  *Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1028 (N.D. Ill. 2015) (citations omitted).  Under the ATA, Federal Rule of Civil Procedure 4.1(a) authorizes process to be served beyond the state's territorial limits.  18 U.S.C. § 2334(a).   *See In re Premier Sports Tours v. Five Star Tickets, Inc*., 283 B.R. 601 (Bankr. M.D. Fla. 2002)(trustee properly served a Florida writ of garnishment on the debtor's out of state bank in Illinois because the bankruptcy rule – like the ATA here - authorized nationwide service of process).

The Eleventh Circuit affirmed the summary turnover of multiple accounts without expressing a concern about its jurisdiction over "out-of-State" (i.e., non-Florida) funds.  The Eleventh Circuit's opinion in *Stansell* explicitly stated that the court did have jurisdiction to affirm the district court's turnover of the assets to us.  *Stansell*, 771 F.3d at 737.

### C.   Venue is Proper in this District

Plaintiffs properly instituted their ATA action in the Middle District of Florida where three of the plaintiffs then resided. *See* 18 USC §2334(a)(authorizing venue where "any plaintiff resides"). Lopez Bello and the Claimants have intervened and consented to the court's personal jurisdiction.  Venue is proper in this district.  28 U.S.C. § 1391(b)(2) and (3).  Lopez Bello owns many other blocked assets in Florida, including bank and brokerage accounts, and multiple Florida LLC interests holding three luxury condominiums, two mansions, three superyachts and other tangible assets within this district.

---

[10] *United States ex rel. Bunk v. Gosselin Worldwide Moving, N.V.*, 2017 WL 4476846, *7 (E.D. Va. Aug. 22, 2017).
[11] *See* MDFL Case No.: 8:09-cv-2308 Complaint DE 1, ¶¶ 7, 9 and 14; MDFL DE 229-1; 229-3.

Accordingly, Citibank's Third Affirmative Defense must be denied. Citibank alleges that venue is improper under 28 U.S.C. § 1391(b), because the property is not located in this District, and because plaintiffs have perfected their judgment lien priority in the SDNY. Citibank ignores the fact that § 1391(b)(2) expressly provides for venue in this district where a substantial part of Lopez Bello's blocked assets are located, indeed where *all* of his blocked tangible assets are located (condominiums, houses, superyachts), as well as multiple intangible assets such as bank accounts and Florida LLC interests. DE 18-2 ("significant real property and other assets in the Miami, Florida area tied to Lopez Bello"). Further, venue is proper under § 1391(b)(1) and (3) as to Lopez Bello and Yakima as residents of this district under § 1391(c)(2) and (3) because they have submitted to jurisdiction here.

With respect to the proceedings in the SDNY, there is not a single motion for turnover pending in that district as to any tangible or intangible assets of Claimants. Citibank has not appeared in the SDNY, it has not filed an interpleader action in New York, and there is nothing pending in the SDNY requiring any response from Citibank.[12] Service of a New York writ of execution on Citibank under NY CPLR 5232 merely perfects Plaintiffs' judgment lien priority vis-a-vis other competing creditors. The writ itself does not require any action whatsoever by Citibank, and does not initiate any form of turnover proceeding or action under New York law.

In New York, C.P.L.R. article 52 governs the enforcement and collection of money judgments. *See* N.Y. C.P.L.R. §§ 5201–5252. Section 5225(b) enables a judgment creditor to commence a proceeding against a third party who "is in possession or custody of money or other personal property" in which the judgment debtor has an interest. *Id*. § 5225(b). Section 5227 allows a judgment creditor to commence a proceeding against a third party "who it is shown is or will become indebted to the judgment debtor." *Id*. § 5227. **No such turnover motion has been filed in the SDNY**, therefore the six motions for turnover already filed here are the "first-filed" motions-indeed, they are the "only-filed" motions- for purposes of the "first-filed" rule.

---

[12] Claimants' argument that the writ served in the SDNY "calls into question" this court's jurisdiction is incorrect. Of course, both this Court and the SDNY can *simultaneously* have jurisdiction. It is not an either/or proposition. "When similar suits are pending in two independent jurisdictions, it is expected that one will proceed to judgment before the other." *Refior v. Lansing Drop Forge Co.*, 134 F.2d 894, 897–98 (6th Cir. 1943). *See id*. "Although a judgment may be rendered in the second suit before the first suit is tried, and may be pleaded in bar in the latter suit because the issue and the parties to the two suits are the same, yet *it has never been supposed* that the fact that a judgment of another court is offered in evidence to conclude the parties on a given issue or issues either *defeats or impairs its jurisdiction*, or has any necessary tendency to occasion a conflict of authority." (emphasis added).

Moreover, the ATA judgment was registered in this district in 2010, over 6 years prior to it being registered in the SDNY.  Claimants are merely trying to reverse forum shop, and they want this Court to simply ignore that all of their U.S. blocked entities are located in Florida, and all their U.S. real property and tangible assets are here in Florida, with multiple Chapter 56 executions already being litigated here.  Moreover, Citibank has now sought interpleader in this District.[13]

## II.    THIS COURT PROPERLY PERMITTED ATTACHMENT, BASED UPON EVIDENCE ESTABLISHING THE TRIA TURNOVER ELEMENTS AND COMPLIANCE WITH FLORIDA STATUTES

---

[13] Claimants also argue (DE 134-8, p. 3) that this action should be litigated in New York because Plaintiffs served a writ of execution there solely to perfect their lien priority.  Of course Claimants would want that—because the clock would, by necessity, have to start all over again.  A transfer is not warranted.  Plaintiffs' judgment was registered here 9 years ago—in July 2010 (DE 1).  This Court's TRIA execution phases are much, much farther ahead of the SDNY.  Here, there has already been a *completed TRIA execution* on the three blocked condominium units pursuant to the Court's Feb.15, 2019 Order.  *See* DE 151, 166.  Writs of execution have also been levied on three yachts in this District.  UBS, Raymond James, BB&T, Morgan Stanley, and Safra National Bank of New York have appeared and answered the writs of garnishment *without any objection to jurisdiction*.  Only Citibank, N.A., who appeared without reservation, objected to jurisdiction over the account—but, interestingly, is seeking interpleader *here in this District*.  All of the motions to dissolve the writs of garnishment are filed and they will be fully briefed on April 29.  There are already motions for TRIA turnover judgment pending here in the SDFL.  *See* DE 162, April 19, 2019 Order ("motions for judgment like the ones already pending here").  Claimants cannot and did not rebut the OFAC factual finding that their *center of gravity* for the El Aissami & Lopez Bello Network's front companies is Miami:  "As a result of today's action, significant real property and other assets in the Miami, Florida area tied to Lopez Bello have been blocked."  DE 18-2.  Claimants also cannot dispute that *they affirmatively decided to intervene here in the SDFL*, and this Court has personal jurisdiction to order turnover of their blocked accounts.  *In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233 (11th Cir.2006).  This Court obtained jurisdiction over the blocked parties on February 28, 2019—*before* the SDNY granted intervention on March 20, 2019.

Compare all of this to what little has occurred in the SDNY.  There, the judgment was not registered until 2016 (six years after it was registered here in SDFL).  The writs were served to only protect lien priority, no garnishee has appeared in the SDNY, **and there are no motions for turnover filed**.  Under NY CPLR 5232, garnishees need take no action and no response is due to the placeholder NY writs.   It is no wonder that Claimants want to "boot" this case to another district.  What they want is: *just more delay*.  A transfer is inappropriate here and this Court should proceed to judgment forthwith.  *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996).  "'[T]he courts of the United States . . . cannot abdicate their authority or duty in any case in favor of another jurisdiction.'")(citations omitted).  Claimants cite *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982), for the proposition that the SDNY is the "first filed" court and therefore must have jurisdiction.  Claimants are incorrect.  The SDFL is the "first filed" court with the judgment registered and motions for turnover filed *before* any such filings in SDNY (indeed there are no turnover motions filed in the SDNY).  But even if it the SDFL were somehow not deemed the "first filed" court, all the circumstances we just enumerated dictate that this Court should proceed to judgment first.

A.      **TRIA Allows Enforcement against these Blocked Kingpin Act Assets**

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides the federal statutory procedure for the enforcement of judgments by victims of terrorism and for executing on any blocked assets of the FARC, ***or any agency or instrumentality of the FARC***. Terrorism Risk Insurance Act of 2002, codified at 28 U.S.C. §1610 note.

Plaintiffs have satisfied the requirements of TRIA, they obtained an ATA judgment against the FARC,  a "terrorist party" as defined by the TRIA §201(d)(4), on a claim based on an "act of terrorism" as defined by TRIA §201(d)(1)(B), and now seek to enforce that ATA judgment against blocked assets of "any agency or instrumentality of that terrorist party" which includes blocked assets of individuals and entities that have been designated by OFAC as Specially Designated Narcotics Traffickers under the Kingpin Act – SDNTKs -  as members of cartels, organizations and networks that have a nexus with the FARC.  18 U.S. C § 2333(e).

The blocked assets held at Citibank are not immune from attachment under the TRIA as sovereign, diplomatic or consular property.  These blocked assets are not and never were "property subject to the Vienna Convention on Diplomatic Relations" that "is being used exclusively for diplomatic or consular purposes" and are therefore not excluded from the definition of blocked assets under the TRIA.

The OFAC does not require a license for plaintiffs to execute on blocked assets under the TRIA.  *Weininger v. Castro*, 462 F. Supp. 2d. 457, 499 (S.D.N.Y. 2006);  *Harrison v. Republic of Sudan*, 802 F.3d 399, 406-07 (2d Cir. 2015)(TRIA judgment holders "are exempt from the normal OFAC licensure requirement").  Plaintiffs have complied with all litigation reporting requirements to OFAC under 31 C.F.R. 501.605.

B.      **Plaintiffs Have Followed the Execution Steps Endorsed by the 11th Circuit**

Plaintiffs followed the 11th Circuit's TRIA execution steps here.  Plaintiffs filed a motion with substantial evidence setting forth that the assets were OFAC blocked and that the owners of the assets were agencies or instrumentalities of the terrorist party FARC:

> Before a writ of garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the property owner is a SDNT designated under TWEA or the IEEPA and is an agency or instrumentality of the judgment debtor terrorist party. The district court did that here, after Plaintiffs made factual proffers on those issues.

*Stansell*, 771 F.3d at 729.  *See* DE 16 (Appendix), DE 17 (expert affidavits), DE 18 (motion &

exhibits).  The Court engaged in the two-step TRIA analysis as required under Stansell:

> TRIA execution requires two separate determinations regarding the property being executed: (i) that the asset is blocked, and (ii) that the owner of the asset is an agency or instrumentality of the judgment debtor. TRIA § 201(a).

Stansell, 771 F.3d at 726.  Judge Scola made the following determinations based on "extensive submissions:"

> (3) Based upon the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") factual findings and the Plaintiffs' supporting expert witness testimony and appendix, the Court finds that the OFAC Kingpin Act designated members of the "EL AISSAMI & LOPEZ BELLO NETWORK" (identified on OFAC Chart, ECF No. 18-1) are each an agency or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA and 18 U.S.C. 2333(e).

> (4) The Court concludes that the Plaintiffs, through their extensive submissions, have adequately established that (1) they have obtained an Anti-Terrorism Act judgment against a terrorist party (the FARC) that is based on an act of international terrorism, (2) the assets which the Plaintiffs seek to execute on are "blocked assets" as that term is defined under the TRIA and the ATA, 18 U.S.C. §2333(e), (3) the total amount of the executions does not exceed the amount outstanding of the Plaintiffs' ATA Judgment, and (4) the Kingpin Act blocked parties and owners of the subject blocked assets identified in OFAC Chart (ECF No. 18-1) are each an agency or instrumentality of the FARC.

Order DE 22.  *See* **Exs. 2 and 3** [DE 18-1 and 18-2].

The Clerk issued a writ of execution directed to Garnishee CITIBANK in this district which was levied by the Marshal in this district on February 26, 2019. DE 49.  A judgment lien was created at the moment the writ was served (the "attachment"), before any service on the debtor, claimant or property owner is required.  *See* § 77.06(1), Fla. Stat.; § 77.041(2).

The Eleventh Circuit squarely rejected the constitutional attack on the Florida statutory garnishment process made by Claimants here, holding that, within the specific context of TRIA, a third-party claimants' due process right to notice-and-to-be-heard comes into effect *after the initial attachment of the assets, but before final execution upon those assets*:

> Here, Claimants argue that they were denied due process because they were not granted pre-deprivation hearings — that is, prior to attachment under TRIA. On this point, we disagree. . . . Because the factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing *before the writ issued*. In sum, Claimants were entitled to notice and to be heard *before execution, though not necessarily before attachment*.

*Id.* at 728-29 (emphases added).

### C.  **Plaintiffs' Complied with Florida's Statutory Garnishment Provisions**

Plaintiffs have complied with all Florida garnishment statutes governing post-judgment requirements for issuance, attachment, garnishee obligations, notice and claimants/property owners' exemptions, and rights to seek dissolution of the writ.  Fla. Stat. §§ 77.01; 77.03; 77.04; 77.041; 77.55; 77.06 and 77.07.  Plaintiffs have complied with all requirements of the Florida garnishment statutes for notice to persons/entities with an ownership interest and for blocked parties to have an "opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets."  *See Stansell* 771 F.3d at 726.

Pursuant to Fla. Stat. § 77.041, on February 26, 2019, Plaintiffs timely and properly sent by first class domestic and international mail copies of the Motion DE 18 with exhibits, and the writ of garnishment (with notice to debtor attached) to CITIBANK, to two (2) addresses for LOPEZ BELLO, and to YAKIMA TRADING CORP., with separate email notice to his three U.S. law firms.  DE 53.

On March 18, 2019, Garnishee CITIBANK timely filed its answer to the writ identifying the Kingpin Act blocked security assets of LOPEZ BELLO and YAKIMA TRADING CORP. that it is holding.  DE 87.[14]  Pursuant to Fla. Stat. § 77.055, on March 22, 2019, Plaintiffs timely and properly served by first class domestic and international mail to LOPEZ BELLO and YAKIMA TRADING, the Garnishee CITIBANK Answer DE 87, and a notice of their right to file a motion to dissolve the writ within 20 days of certificate of service date, with separate email notice to their three U.S. law firms.  DE 100.  Claimants have appeared and have been afforded timely and adequate due process and an opportunity to be heard.  *Id*. at 728.

No other person or entity appeared pursuant to the Fla. Stat. §§ 77.041; 77.055 notice.  No other person or entity appeared to challenge or rebut the Court's agency or instrumentality determination.  No other person or entity appeared to assert any ownership interest in the blocked account or otherwise challenge the Motion DE 18 as untrue, or Garnishee's Answer DE 87.

---

[14] Citibank's Initial Blocking Reports to OFAC, and Plaintiff's writ of garnishment to Citibank, identify the specific number of different security assets and the total number of shares in each of the four blocked transactions, but the specific stock symbol or bond CUSIP or ISIN numbers are only identified for one of the four blocked transactions in the subject account.

III. **FINAL EXECUTION IS NOW APPROPRIATE BECAUSE CLAIMANTS HAVE FAILED TO REBUT THIS COURT'S ESTABLISHED FINDING THAT HE AND THE "EL AISSAMI & LOPEZ BELLO NETWORK" ARE "AGENCIES OR INSTRUMENTALITIES" OF THE FARC**

A. <u>**The Eleventh Circuit Agency or Instrumentality Standard Governs Here**</u>

In reaching his findings, Judge Scola applied the "real world" standard for agency or instrumentality adopted and affirmed by the Eleventh Circuit. The appellate court recognized that terrorist and money laundering operations are "clandestine" and that a real-world standard must apply to reach non-state actors like those here. *Id*. The standard ensures "TRIA's effectiveness vis-à-vis non-state terrorist organizations" like the blocked Kingpin persons and entities here. *Id.* at 731. Drug traffickers and money launderers "operate through layers of affiliated individuals and front companies." *Id.* at 732. Importantly, this standard reaches blocked parties <u>even if never previously linked to the terrorist party</u>:

> Based on the fact that OFAC had designated the Partnerships as SDNTs because of alleged ties to the NVC, the district court found that they were agencies or instrumentalities of the NVC. Because of the testimony that the NVC, including its members, divisions, and networks, was an agency or instrumentality of FARC, the district court determined that the Partnerships were in turn agencies or instrumentalities of FARC, opening their blocked assets to execution by Plaintiffs under TRIA § 201. **<u>The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority</u>**.

*Stansell*, 771 F.3d at 739 (emphasis added)(footnote omitted).

The Court can also support its agency or instrumentality finding through "indirect" connections that pierce layers of companies and affiliated individuals to get at the silent powerful facilitators for drug trafficking and money laundering. *Stansell* 771 F.3d at 742 ("evidence Plaintiffs presented to the district court was sufficient to establish the required relationship between FARC and the Partnerships, <u>even if that relationship was indirect</u>")(emphasis added).

*Stansell* held that even *past* connections qualify:

> 4. … any Specially Designated Narcotics Trafficker ("SDNT") with a nexus to **<u>or past dealings with</u>** the FARC qualifies as an agency or instrumentality of the FARC.

> 5. Any SDNT person, entity, drug cartel or organization, including all of its individual members, divisions and networks, **<u>that is or was ever</u>** involved in … or that assist**<u>ed</u>** the FARC's financial or money laundering network, is an agency or instrumentality of the FARC under the TRIA because it **<u>was</u>** either:

> \*　　\*　　\*
>
> This includes SDNT cartels, organizations, persons or entities **which have ever** supplied currency, weapons, ammunition, logistics, transportation, or supplies and/or financial or money laundering services to the FARC or its trafficking partners, directly or indirectly, as consideration for FARC coca paste or cocaine.

*Stansell v. FARC,* 8:09-CV-2308-T-26MAP, 2013 WL 12133671, *2 (M.D. Fla. May 2, 2013), *definition adopted in Stansell*, 771 F.3d at 732 (emphases ours).

This standard *mandates* that any individual members, divisions and networks of any blocked person, entity, organization or group that has "*ever*" been involved in the cultivation, manufacture, trafficking or distribution of FARC cocaine, or that has "*ever*" supplied financial or money laundering services to the FARC, or its trafficking partners, "*directly or indirectly*" . . . "is an agency or instrumentality of the FARC under the TRIA." *Id.*

Contrary to Claimants' arguments, the Eleventh Circuit expressly rejected the FSIA's "state actor" standard when *non-state actors* (such as Lopez Bello) are at issue. *Stansell*, 771 F.3d at 731 ("[A]pplying the FSIA's definition of agencies or instrumentalities to TRIA would leave only terrorist states as potential sponsors of agencies or instrumentalities under TRIA § 201, eviscerating TRIA's effectiveness vis-à-vis non-state terrorist organizations. This cannot stand[.]"). The Eleventh Circuit emphasized that this standard was the proper one. *Id.* at 732.

### B.  The Legal Arguments and "Supporting" Evidence in the Motion To Dissolve Fail to Rebut Judge Scola's "Agency or Instrumentality" Determination

Plaintiffs have established through *unrebutted* OFAC factual findings and *unrebutted* expert witness testimony that Lopez Bello is an "agency or instrumentality of the FARC" under the controlling standard affirmed in *Stansell*.  Plaintiffs incorporate their detailed factual and legal arguments set forth in their Response in Opposition [DE 171, pp. 2-15] to Lopez Bello's motion to dissolve the Citibank writ.  For example, none of Claimants' evidentiary submissions rebut that: (i) Lopez Bello is a front man for El Aissami or that his companies are front companies for El Aissami; (ii) that Lopez Bello "was also designated for providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities" of El Aissami; or (iii) that El Aissami, a member of the El Aissami & Lopez Bello Network, provided protection to an OFAC designated FARC drug trafficking partner; or (iv) that The Cartel of the Suns *is involved in drug trafficking with* the FARC; or (v) that El Aissami and Lopez Bello are  members of The Cartel of the Suns.

The *unrebutted* OFAC Factual Findings include:

- "OFAC designated Venezuelan national Tareck Zaidan El Aissami Maddah (El Aissami) as a Specially Designated Narcotics Trafficker . . . for playing a significant role in international narcotics trafficking."
- "El Aissami's primary frontman, Venezuelan national Samark Jose Lopez Bello (Lopez Bello), was also designated for providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities of, and acting for or on behalf of, El Aissami."
- "OFAC further designated or identified as blocked property 13 companies owned or controlled by Lopez Bello or other designated parties that comprise an international network spanning the British Virgin Islands, Panama, the United Kingdom, the United States, and Venezuela."
- "El Aissami … facilitated shipments of narcotics from Venezuela, to include control over planes that leave from a Venezuelan air base, as well as control of drug routes through the ports in Venezuela. In his previous positions, he oversaw or partially owned narcotics shipments of over 1,000 kilograms from Venezuela on multiple occasions, including those with the final destinations of Mexico and the United States."
- "[El Aissami] also facilitated, coordinated, and protected other narcotics traffickers operating in Venezuela. . . . El Aissami also is linked to coordinating drug shipments to Los Zetas . . . as well as providing protection to Colombian drug lord Daniel Barrera Barrera . . . ."
- "Lopez Bello is a key frontman for El Aissami and in that capacity launders drug proceeds."
- "Lopez Bello is used by El Aissami to purchase certain assets. He also handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami."
- "Lopez Bello oversees an international network of petroleum, distribution, engineering, telecommunications, and asset holding companies . . . . Profit Corporation, C.A. (Venezuela), … (Venezuela), SMT Tecnologia, C.A. (Venezuela) …"
- "As a result of today's action, significant real property and other assets in the Miami, Florida area tied to Lopez Bello have been blocked."

DE 18-2.  Lopez Bello was afforded a statutory opportunity to dispute these OFAC fact findings in his motion to dissolve the writ, and even after his April 3, 2019  affidavit, and his untimely April 16, 2019 second affidavit (DE 157-2), he has failed to do so, therefore all of the OFAC factual findings relied upon by this Court are now deemed admitted as a matter of law.  *See* DE 18-1, 18-2.[15]

---

[15] OFAC factual findings are afforded extreme deference under federal law because OFAC operates "in an area at the intersection of national security, foreign policy, and administrative law." *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007);  *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010)(OFAC designation is "factual finding"); *De Cuelar v. Brady*, 881 F.2d 1571, 1565 (11th Cir. 1989)(OFAC decision entitled to great deference, and should be reversed only if arbitrary or capricious); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999)(OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation.").

Lopez Bello's "evidence" essentially consists of the following:  (i) OFAC has not *directly* linked Lopez Bello to the FARC; (ii) El Aissami is not a shareholder or officer in any of the Network entities; (iii) the FARC entered a "peace" agreement with the Colombian government in 2016 and in 2017 they ceased all criminal activity; and (iv)  a bald assertion that he and his entities have never, directly or indirectly, been associated with; provided material assistance to; engaged in financial transactions with; or supported in any way, financially, logistically, or otherwise, the FARC.  These facts are simply irrelevant and raise no issue of material or triable fact.  It doesn't matter whether or not OFAC had already labeled Lopez Bello (or his corporations) as an "agency or instrumentality" of the FARC.  That doesn't do anything towards rebutting the TRIA "agency or instrumentality" determination *that Judge Scola made*.  The Eleventh Circuit affirmed this exact "indirect connection" as a basis for the agency or instrumentality of the FARC determination when it affirmed turnover of blocked SDNT bank accounts in 2014:

> Based on the fact that OFAC had designated the Partnerships as SDNTs because of alleged ties to the NVC, the district court found that they were agencies or instrumentalities of the NVC. Because of the testimony that the NVC, including its members, divisions, and networks, was an agency or instrumentality of FARC, the district court determined that the Partnerships were in turn agencies or instrumentalities of FARC, opening their blocked assets to execution by Plaintiffs under TRIA § 201. **The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority**.

*Stansell* 771 F.3d at 739 (emphasis added)(footnote omitted).   The whole purpose of having a "frontman" or "testaferro" is to avoid the formal, traceable evidence of shareholders, corporate officers, and the like.  The Eleventh Circuit has held that the lack of a "corporate" relationship will not disturb an "agency or instrumentality" finding, because such a formality is immaterial. *Stansell* 771 F.3d at 732.  Finally, even if it were true that the FARC ceased criminal activity in 2017, they remain a designated FTO – and therefore a "terrorist party" as defined by TRIA §201(d) – to this date.  Even if the FARC is someday removed from the U.S. list of designated FTOs, such a revocation "shall not affect any action or proceeding based on conduct committed prior to the effective date of such revocation."  8 U.S.C. §1189(7).

In addition to wholly failing to rebut any OFAC factual findings, Lopez Bello's "evidence" does not even attempt to rebut the extensive submissions we submitted to Judge Scola, specifically establishing that:

- The Cartel of the Suns is the principal agent for the Venezuelan government;
- The Cartel of the Suns is involved in drug trafficking with the FARC;
- The Cartel of the Suns provides direct protection of and transportation for FARC cocaine shipments from Colombia through Venezuela to state-controlled airports and shipping ports to the United States, Europe and elsewhere
- The Cartel of the Suns provides the facility and military protection to FARC cocaine laboratories in Venezuelan territory to process cocaine HCL;
- a significant part of the FARC's global cocaine shipments is facilitated by The Cartel of the Suns;
- El Aissami is a member of The Cartel of the Suns;
- Lopez Bello is a member of The Cartel of the Suns;
- the "El Aissami & Lopez Bello Network" are members of The Cartel of the Suns;
- Lopez Bello is a front man for El Aissami;
- that The Cartel of the Suns facilitated – *with respect to these terrorism victims*:
  - ➢ Sophisticated communications between FARC Fronts tracking the aircraft and seeking permission to shoot it down;
  - ➢ Shooting at a descending aircraft in mountainous terrain;
  - ➢ Separation of the U.S. citizens, executing one and forcing the three others into the jungle for a multi-day marches and exchanges between multiple FARC units to avoid detection;
  - ➢ Financial support to move the U.S. hostages repeatedly over 5 years and to maintain structures in the jungle for their imprisonment and torture;
  - ➢ Obtaining false and fraudulent international documents for the FARC's chosen negotiator, a.k.a., Simon Trinidad;
  - ➢ Strategy in how to negotiate with the Colombian Government for the release of the U.S. citizens and to convey the FARC's demands;
  - ➢ Organizing evidence to demonstrate that the U.S. hostages were still alive that was then delivered to the U.S. media.
- El Aissami, through The Cartel of the Suns, provided protection for FARC drug trafficker Daniel Barrera Barrera;
- The Cartel of the Suns is an agency or instrumentality of the FARC;
- El Aissami is an agency or instrumentality of the FARC;
- Lopez Bello and his front companies -- Yakima Trading Corporation,  Alfa One, C.A., Grupo Sahect, C.A., MFAA Holdings Limited, Profit Corporation, C.A., Servicios Tecnologicios Industriales, C.A., SMT Tecnologia, C.A., 1425 Brickell Ave 63-F LLC; 1425 Brickell Avenue Unit 46B, LLC; 1425 Brickell Avenue 64E, LLC; Agusta Grand I LLC; and 200G PSA Holdings LLC -- are each an agency or instrumentality of the FARC.

DE 17-1 (Affid. Cote).  *See also* DE 17-2 (Affid. Farah); DE 16 (Appendix).

Nor does Lopez Bello's evidence directly rebut Colonel Cote's testimony (DE17-1) that:

- FARC Fronts along the Venezuelan border region have opted out of the Peace Process to continue the FARC's lucrative cocaine distribution trade.
- FARC remains to the present date a designated FTO, and also a designated Tier I Specially Designated Narcotics Trafficker.
- FARC still controls more than 80-90% of the cocaine produced in Colombia.

- FARC operates into, within and out of Venezuela with the complete cooperation of and protection by the Venezuelan government through its principal agent—the Cartel of the Suns. The Cartel provides direct protection of and transportation for FARC cocaine shipments from Colombia through Venezuela to state-controlled airports and shipping ports to the United States, Europe and elsewhere. The Cartel of the Suns also provides the facility and military protection to FARC cocaine laboratories in Venezuelan territory to process cocaine HCL.

- Because of the massive corruption in Venezuela, Venezuela is a failed state where organizations such as the Cartel of the Suns flourish.  The Cartel of the Suns came to exist during the tenure of Chavez and continues under Maduro.  The Cartel of the Suns continues to thrive today under the leadership of the Venezuela's Vice-President Tareck El Aissami and his front man - Samark Lopez Bello and the former head of the Venezuelan National Assembly (Congress), a three star general Diosdado Cabello and his front man - Rafael Sarria Diaz.  The Cartel of the Suns permeates all levels of the Venezuelan military, National Guard, public works and public transportation sectors. Elected officials like El Aissami and Cabello are members of the Cartel of the Suns.  The Cartel of the Suns and its members is the major facilitator and transporter of FARC cocaine through and from Venezuela.  A significant part of the FARC's global cocaine shipments is facilitated by the Cartel of the Suns.

## C. <u>Summary Disposition is Appropriate Here</u>

None of Claimant's "evidentiary" submissions in support of his motion to dissolve a writ of garnishment raise a genuine triable issue.  As the Eleventh Circuit has held, a trial is only warranted <u>when the party moving to dissolve the writ of garnishment has presented evidence creating a genuine, triable issue necessitating a trial</u>.  *Zelaya/Capital Int'l Judgment v. Zelaya*, 769 F.3d 1296, 1304 (11th Cir. 2014)(jury trial not required "if it would serve no purpose"). The Eleventh Circuit in *Zelaya* cited to *SEC v. Mut. Benefits Corp.,* 2010 WL 5148461 at *2 (Torres, J.), where Your Honor specifically acknowledged and applied this principle, stating: "under Florida law, summary judgment in a garnishment proceeding is appropriate when there are no issues of material fact[.]"  *Id*. *See* Order DE 162.

The Eleventh Circuit in *Stansell* affirmed a district court's summary rejection (on the papers) of various claimants' attempt to dissolve TRIA writs of garnishment, where the evidence presented failed to "refut[e] the agency or instrumentality designation."  *Stansell*, 771 F.3d at 740.  The Eleventh Circuit upheld the summary disposition of TRIA executions just like these:

> The Partnerships were also afforded an opportunity to be heard. As discussed *supra,* the Partnerships were not entitled to a pre-writ hearing. <u>Nevertheless, they had the opportunity to present evidence refuting the agency or instrumentality designation.</u> They simply did not present any evidence that changed the district court's position on the agency or instrumentality determination.

*Id.* at 740 (emphasis in original).  Because of the fleeting nature of blocked assets, Plaintiffs seek
to execute on these Kingpin Act blocked assets without delay.  *See Stansell v. FARC et al.*, 771
F.3d 713, 726 (11th Cir 2014).

> **D.**      **Each of Citibank's Six Affirmative Defenses is Baseless**

Citibank's First Affirmative Defense fails as a matter of law because this Court has
properly applied the controlling "agency or instrumentality" standard, and all due process
protections afforded by Chapter 77 of the Florida Statutes and *Stansell* have been met, including
additional email service to SIX and BJSS counsel or compliance officer.[16]  *See* DE 152-1.
Citibank's Second and Third Affirmative Defenses fail for the reasons set forth at pp. 7-10,
*supra*. With respect to Citibank's First and Fifth Affirmative Defenses—which assert the need
for notice to and interpleader of third parties—those "defenses" fail because the Florida
garnishment statutes provide the controlling procedure to deal with potential third-party claims,
and these statutes do not provide for interpleader.  All relevant parties were afforded notice and
have either been defaulted (SIX and BJSS) or are already before the Court.  Plaintiffs incorporate
their detailed arguments and authorities in their Motion to Dismiss the Amended Answer and
interpleader counterclaim DE 152.  Citibank's Sixth Affirmative Defense fails because Florida
law rejects the "Separate Entity Rule."[17]

---

[16]  First class mail service was specifically authorized by the controlling Florida statute, §77.055, and also
by Fed. Rule Civ. P. 5(b)(2)(C).  This was not a Summons and Complaint seeking to initiate a lawsuit
against these securities intermediaries, therefore the expense and delay of formal service under the Hague
Convention is not required.  In *SEC v. Credit Bancorp, Ltd.*, 2011 WL 666158 (S.D.N.Y. Feb. 14, 2011),
the court explained that the Hague Convention applies only to the initial service of process—i.e., the
summons and complaint—not subsequent judicial documents. *Id.* at *4 (citing *Volkswagenwerk
Akiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988) (finding that the history of the Hague Convention
"supports our view that Article I [of the Convention] refers to service of process in the technical sense").
"Plaintiff need only serve [other] judicial documents ... on Defendant pursuant to Rule 5 despite
Defendant's foreign residence." *Credit Bancorp*, 2011 WL 666158, at *5.  *See also DLJ Mortgage
Capital, Inc. v. Roland*, CV 2013-0010, 2015 WL 4036201, at *1 (D.V.I. July 1, 2015); *In re Advance
Watch Co., Ltd.*, 587 B.R. 598, 605 (Bankr. S.D.N.Y. 2018)(" the Hague Convention only applies to
service of process on foreign defendants, and thus excludes service of judicial documents other than the
summons and complaint.").

[17] With respect to the "separate entity doctrine", Judge Moreno has held that the antiquated "Separate
Entity Rule is *not* the law in Florida." *Tribie v. United Dev. Group*, 2008 WL 5120769 *2-3 (S.D. Fla.
2008)(J. Moreno).  The doctrine is limited in New York and only applies with respect to assets held in
foreign branches of a U.S. bank served with creditor process in New York.  *See Motorola Credit Corp. v.
Standard Chartered Bank*, 24 N.Y.3d 149, 163, 21 N.E.3d 223, 230 (2014)(judgment creditor's service of
a restraining notice on a garnishee bank's New York branch is ineffective under the separate entity rule to

Finally, as to Citibank's Fourth Affirmative Defense, Citibank is the proper garnishee because it is no longer holding security entitlements governed by UCC Article §8-112. Furthermore, to the extent any state or foreign law, including UCC §8-112 purport to require TRIA terrorism victims to garnish unidentified foreign financial institutions with no branches in the United States in order to reach blocked security assets in the United States that are definitively owned by the terrorist party or its agency or instrumentality, then such a law is expressly preempted by TRIA's "notwithstanding any other provision of law" clause.[18]  Through TRIA, Congress sought to provide victims with a comprehensive remedy.  We are not required to garnish some *unidentified* foreign entity that likely has no presence in the U.S. (beyond multiple intermediary layers of offshore entities used by the El Aissami & Lopez Bello Network in attempt to conceal their assets). Such a requirement would make a mockery of TRIA.

As a matter of federal law, the international securities accounts ceased to exist when the account owners were blocked by OFAC and Citibank created a new separate blocked account. The Garnishee and the blocked asset owners are both before the Court, and under Florida law this Court also has authority to enter such orders as are necessary to direct the parties before it to bring the subject property before the court, by any means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.  *See* Fla. Stat. §678.1121(5); *General Electric Capital Corp. v. Advance Petroleum, Inc.*, 660 So.2d 1139, 1142-43 (3rd DCA 1995)(trial court has the power to require debtor to locate and return aircraft to Dade County, so as to proceed with the court's order of foreclosure);  *Schanck v. Gayhart*, 245 So.3d 970 (1st DCA 2018)(court had jurisdiction to order the defendant debtor to either return LLC member certificates located in Canada, or to have his LLC reissue them).

### SDFL Local Rule 7.1(a)(3) Certification

Not applicable to motions for judgment on the pleadings or garnishment.

WHEREFORE Plaintiffs request entry of a TRIA turnover Order and judgment in the proposed form attached hereto as Exhibit 4.

---

freeze assets held in the bank's *foreign branches*).  **Plaintiffs do not seek turnover judgment on the $338 Citibank alleges it is holding in a foreign branch**.  *See* Answer DE 87, p. 3.

[18] Section 201(a) of the TRIA states that "[n]otwithstanding any other provision of law," the blocked assets of a terrorist party "shall be subject to execution or attachment in aid of execution.  As the Supreme Court has observed, "[a] clearer statement is difficult to imagine." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 953 (1993).  *See also Conyers v. Rossides*, 558 F.3d 137, 145 (2d Cir. 2009); *Crowley Caribbean Transp., Inc. v. United States*, 865 F.2d 1281, 1283 (D.C.Cir.1989).

Respectfully submitted April 24, 2019

Newton P. Porter (FL Bar: 833738)           Richard B. Rosenthal (FL Bar: 0184853)
Tony Korvick (FL Bar: 0768405)              THE LAW OFFICES
PORTER & KORVICK, P.A.                       OF RICHARD B. ROSENTHAL, P.A.
Attorneys for Plaintiffs                     Co-counsel for Plaintiffs
9655 South Dixie Highway Suite 208           1711 Brickell Avenue
Miami, Florida 33156                         Suite 1408
Telephone:     (305) 373-5040                Miami, Florida 33129
nporter@porterandkorvick.com                 Telephone: (305) 992-6089
tkorvick@porterandkorvick.com                rbr@rosenthalappeals.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 24, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing document and the notice of electronic filing by electronic mail to the following persons:

India Ingram, Esq.
Counsel for Garnishee
Branch Banking and Trust Company
880 Carillon Parkway
St. Petersburg, FL 33716
(727) 567-4214
india.ingram@raymondjames.com

OFFICE OF FOREIGN ASSETS CONTROL
U.S. Department of the Treasury
1500 Pennsylavnia Ave. NW
Washington DC
[by email service directly to OFAC counsel in compliance with 31 CFR 501.605]

None of the FARC defendants have appeared and defaults were properly entered against them all prior to entry of the Default Judgment in MDFL Case 8:09-cv-2308. Accordingly, no further notice, service of pleadings, motions or writs is required to be served on the FARC or the individual FARC members identified in the ATA Judgment. Fed. R. Civ. P. 5(a)(2).

_s/Tony Korvick_____
TONY KORVICK (FL Bar 0768405)
PORTER & KORVICK, P.A.
Attorneys for Plaintiffs
9655 South Dixie Highway Suite 208
Miami, Florida 33156
Telephone:     (305) 373-5040
tkorvick@porterandkorvick.com