UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION CASE NO.: 1:19-cv-20896

KEITH STANSELL, et al.,

    Plaintiffs,
vs.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC); et al.,

    Defendants.
_____/

# ORDER

**UPON DUE AND CAREFUL CONSIDERATION** of Plaintiffs' Motion for TRIA Turnover Judgment (Dkt. Entry 177) on Garnishee CITIBANK, N.A.'s Answer (Dkt. Entry 87), and all legal authorities cited therein, including the Terrorism Risk Insurance Act of 2002 ("TRIA"), §201(a), 28 U.S.C. §1610 note; the Anti-Terrorism Act ("ATA"), 18 U.S.C. §2333(a) and (e); *Stansell v. FARC*, 771 F.3d 713 (11th Cir. 2014); Plaintiffs' supporting expert witness affidavits (Dkt. Entry 17) and appendix (Dkt. Entry 16); Fed. R. Civ. P. 4.1(a) and 69(a), ATA §2334(a) and the applicable Florida statutes governing procedures on post-judgment garnishment; Lopez Bello's Motion to Dissolve Writ (Dkt. Entry 134) and supporting expert witness affidavits and exhibits attached thereto, and Lopez Bello's untimely April 16, 2019 affidavit (DE 149); Lopez Bello's Supplemental Brief on Jurisdiction (Dkt. Entry 105); Plaintiffs' Response to the Motion to Dissolve (Dkt. Entry 171) and Plaintiffs' Response to Supplemental Brief (Dkt. Entry 115); and Lopez Bello's Reply (Dkt. Entry __); and Lopez Bello's Response in Opposition to the Motion for TRIA Turnover Judgment (Dkt. Entry ___) and Plaintiffs' Reply (Dkt. Entry ___), it is hereby

**ORDERED AND ADJUDGED** as follows:

(1) Plaintiffs' Motion (Dkt. Entry 177) is hereby granted, and Citibank's six Affirmative Defenses are all denied.

(2) This court has subject matter jurisdiction to conduct post-judgment execution proceedings of plaintiffs' final judgment under a federal statute (ATA), rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. §1963, with post-judgment execution under the ATA, TRIA §201, and Fed. Rules of Civ. Pro. 4.1(a) and 69(a). This court has held all requisite and appropriate hearings, claimants have all been afforded due process, notice and a meaningful opportunity to be heard under the controlling procedures in *Stansell*, and Florida garnishment statutes do not allow for interpleader, nor is interpleader necessary under the facts of this case. Accordingly Citibank's First Affirmative Defense is denied.

(3) Citibank's Second Affirmative Defense is denied. Florida law rejects the "separate entity doctrine," meaning that even if Lopez Bello's funds are currently held outside Florida, they can still be garnished here in Florida by this Court. Because this Court unquestionably has jurisdiction over the Garnishee (CITIBANK, N.A.), by definition, the Court also has jurisdiction over CITIBANK, N.A.'s accounts, wherever "located" in the U.S. Lopez Bello has appeared and is also subject to this court's jurisdiction, and the OFAC blocking notices only mention Florida. The opinion in *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1342 (M.D. Fla. 2015) does not govern here, it is factually distinguishable, and this Court declines to follow the authorities relied upon in that opinion, including, but not limited to, the holding in *APR Energy, LLC v. Pakistan Power Resources, LLC*, 2009 WL 425975 *2 (M.D. Fla. 2009) that bank accounts are "tangible assets". Further, to

the extent that federal law controls, Fed. R. Civ. P. 4.1(a) and the Anti-Terrorism Act provide for nationwide service of process, and thus nationwide jurisdiction.

(4)     Citibank's Third Affirmative Defense of improper venue is also denied.  Plaintiffs properly instituted their ATA action in the Middle District of Florida where three of the plaintiffs then resided. *See* 18 USC §2334(a)(authorizing venue where "any plaintiff resides"). Lopez Bello and the Claimants have intervened and consented to the court's personal jurisdiction. Venue is proper in this district.  28 U.S.C. § 1391(b)(2) and (3).  Lopez Bello owns many other blocked assets in Florida, including bank and brokerage accounts, and multiple Florida LLC interests holding three luxury condominiums, two mansions, three superyachts and other tangible assets within this district.

Citibank alleges that venue is improper under 28 U.S.C. § 1391(b), because the property is not located in this District, and because plaintiffs have perfected their judgment lien priority in the SDNY.  Citibank ignores the fact that § 1391(b)(2) expressly provides for venue in this district where a substantial part of Lopez Bello's blocked assets at issue in this action are located, indeed where *all* of his blocked tangible assets are located (condominiums, houses, superyachts), as well as multiple intangible assets such as bank accounts and Florida LLC interests.  Further, venue is proper under § 1391(b)(1) and (3) as to Lopez Bello and Yakima as residents of this district under § 1391(c)(2) and (3) because they have submitted to jurisdiction here.

With respect to the proceedings in the SDNY, there is not a single motion for turnover pending in that district as to any tangible or intangible assets of Claimants.  Citibank has not appeared in the SDNY, it has not filed an interpleader action in New York, and there is nothing pending in the SDNY requiring any response from Citibank.  In contrast, Citibank has appeared and answered in this district, and has sought interpleader in this district.  No such turnover

motion has been filed in the SDNY, therefore the motion for turnover filed here is the "first-filed" motion-indeed, the "only-filed" motion as to Citibank- for purposes of the "first-filed" rule.  Moreover, Plaintiffs ATA judgment was registered in this district in 2010, over 6 years prior to it being registered in the SDNY.

(5) Lopez Bello and Yakima Trading Corp. (including all movants on Dkt. Entry 134) have been afforded ample notice and opportunity to be heard after intervening and submitting to the jurisdiction of this Court without reservation.  Lopez Bello has had timely and adequate due process and a full opportunity to be heard.  Their counsel appeared and confirmed receiving notice of these proceedings on February 25, 2019 (Movants' Mot. to Amend ¶ 11, ECF No. 80, 4) and thereafter Lopez Bello has received multiple forms of statutory mail notices, additional email notices to counsel, and notices of electronic filing for all record activity in this action to date.  Among many motions he has filed, Lopez Bello timely filed his motion to dissolve the CITIBANK, N.A. writ, with supporting evidence, then 5 days after the statutory and Local Rule deadlines filed his additional affidavit (Dkt. Entry 149), but the Court concludes that the Claimants' evidence:

a. fails to rebut any of the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") factual findings underlying his designation, or his connection to Tareck El Aissami or El Aissami's connections with narcotics trafficking activities, including the OFAC designated "FARC Drug Trafficking Partner Barrera Barrera" (Dkt. Entry 18-2).

b. fails to rebut any of the dispositive facts set forth in Plaintiffs' extensive submissions, including an appendix, and expert witness testimony, nor does his evidence rebut his indirect linking to the FARC satisfying the agency or instrumentality standard established in *Stansell v. FARC,* 8:09-CV-2308-T-26MAP, 2013 WL 12133661, *2 (M.D. Fla. May 2, 2013),

adopted and affirmed in *Stansell v. FARC*, 771 F.3d 713, 732 (11th Cir. 2014), which standard is controlling in this action.

   c. for example, does not rebut that: (i) Lopez Bello is a front man for El Aissami or that his companies are front companies for El Aissami; (ii) that Lopez Bello "was also designated for providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities" of El Aissami; or (iii) that El Aissami, a member of the El Aissami & Lopez Bello Network, provided protection to an OFAC designated FARC drug trafficking partner; or (iv) that The Cartel of the Suns *is involved in drug trafficking with* the FARC; or (v) that El Aissami and Lopez Bello are members of The Cartel of the Suns.

   d. Lopez Bello's "evidence" essentially consists of the following: (i) OFAC has not *directly* linked Lopez Bello to the FARC; (ii) El Aissami is not a shareholder or officer in any of the Network entities; (iii) the FARC entered a "peace" agreement with the Colombian government in 2016 and in 2017 they ceased all criminal activity; and (iv) an untimely and bald assertion that he and his entities have never, directly or indirectly, been associated with; provided material assistance to; engaged in financial transactions with; or supported in any way, financially, logistically, or otherwise, the FARC. These facts are simply irrelevant and raise no issue of material or triable fact. It doesn't matter whether or not OFAC had already labeled Lopez Bello (or his corporations) as an "agency or instrumentality" of the FARC. That doesn't do anything towards rebutting the TRIA "agency or instrumentality" determination *that Judge Scola made*. *Stansell*, 771 F.3d at 739 ("The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority."). The whole purpose of having a "frontman" or "testaferro" is to avoid the formal, traceable evidence of shareholders, corporate

officers, and the like.  The Eleventh Circuit has held that the lack of a "corporate" relationship will not disturb an "agency or instrumentality" finding, because such a formality is immaterial. *Stansell* 771 F.3d at 732.  Finally, even if it were true that the FARC ceased criminal activity in 2017, they remain a designated FTO – and therefore a "terrorist party" as defined by TRIA §201(d) – to this date.  Even if the FARC is someday removed from the U.S. list of designated FTOs, such a revocation "shall not affect any action or proceeding based on conduct committed prior to the effective date of such revocation."  8 U.S.C. §1189(7).

   e. *even if accepted as true*, fails to rebut the Court's determinations of agency or instrumentality in it February 15, 2019 Order, and therefore the allegations in plaintiffs' motion DE 18 are now proved to be true. *Stansell*, 771 F.3d. at 741 ("The Partnerships followed this procedure, and the district court, after due consideration of their argument, concluded that the agency or instrumentality allegation was "proved to be true.").

   f. assert only conclusory statements and irrelevant facts, and fails to create a genuine, triable issue, and therefore, the Court finds that there is no need for any further hearing or trial. *See Tortuga Marine Salvage Co. v. Hartford Acc. & Indem. Co.*, 171 So.2d 54, 55 (Fla. Dist. Ct. App.1965); *SEC v. Mut. Benefits Corp.*, No. 04–60573–CIV, 2010 WL 5148461, at *2 (S.D. Fla. Nov. 30, 2010).

  (6) Based upon the unrebutted OFAC factual findings, and Plaintiffs' supporting and unrebutted expert witness testimony and appendix, the court again finds that the OFAC Kingpin Act designated members of the "EL AISSAMI & LOPEZ BELLO NETWORK" (identified on OFAC Chart Dkt. Entry 18-1) are each an agency or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA and 18 U.S.C. 2333(e), and their blocked assets are therefore subject to attachment and execution pursuant to

TRIA and 18 U.S.C. 2333(e) and further the Court determines that the allegations in Plaintiffs' motion DE 18 for issuance of the TRIA writs are "proved to be true".

(7) The Court concludes that Plaintiffs, through their extensive submissions, have adequately established that 1) they have obtained an Anti-Terrorism Act judgment against a terrorist party (the FARC) that is based on an act of international terrorism, (2) the assets which Plaintiffs seek to execute on are "blocked assets" as that term is defined under the TRIA and the ATA, 18 U.S.C. §2333(e), (3) the total amount of the executions does not exceed the amount outstanding of the Plaintiffs' ATA Judgment, and (4) the Kingpin Act blocked parties and owners of the subject blocked assets identified in OFAC Chart (Dkt. Entry 18-1) are each an agency or instrumentality of the FARC.

(8). LOPEZ BELLO and YAKIMA TRADING received the requisite notice under Florida garnishment statutes and in accordance with *Stansell v. FARC et al.*, 713 F.3d 714 (11th Cir. 2014). Plaintiffs have complied with Florida's garnishment statutes for notice in this TRIA execution by:

- filing a motion for issuance of a writ of garnishment [DE 18];
- the Court granting the motion [Order DE 22] on February 15, 2019 and the Clerk issuing a writ of garnishment to CITIBANK, N.A. on February 20, 2019 [DE 33];
- the U.S Marshal properly serving the writ of garnishment on Garnishee on February 26, 2019 [DE 49];
- Plaintiffs provided proper and timely notice under Fla. Stat. § 77.041 on February 25, 2019 to LOPEZ BELLO and Yakima Trading of the motion with exhibits and writ and to their three U.S. law firms [DE 47];
- Garnishee timely filed its Answer under seal to the writ of garnishment on March 18, 2019 identifying the blocked SDNTK funds of LOPEZ BELLO and Yakima [DE 87].
- Plaintiffs provided proper timely notice and service under Fla. Stat. § 77.055 on March 22, 2019 to LOPEZ BELLO, Yakima Trading and their U.S. counsel of the Answer, Notice of right to dissolve the writ and certificate of service [DE 100].

(9).    Lopez Bello's attorney admits they are the owners of the subject blocked assets held by Citibank.  DE 122 and DE 176-1, ¶¶ 2-3.  Citibank reported to OFAC that the subject blocked assets are located in the United States and are owned by Lopez Bello and Yakima.  DE 177-1.  Only Lopez Bello and his blocked entities in including Yakima have moved to dissolve the subject writ to Citibank.  Neither Swiss downstream intermediary identified by Citibank (Sis Sis Ltd. or Bank J Safra Sarasin) has appeared to asset any claim and the garnishment is now in a default posture as to them.  The governing OFAC Kingpin Act regulations mandate that the subject blocked assets be held in a separate interest bearing account to be held in the United States.  *See* 31 C.F.R. §598.202, .203, .206.   Accordingly, the court finds that SAMARK JOSE LOPEZ BELLLO and YAKIMA TRADING CORP. are each the owner of the blocked assets held by CITIBANK, N.A. in the United States and the SDNTK blocked assets are subject to execution under TRIA and the assets remain blocked by the OFAC.

(10).   No other person or entity has ever appeared in this action to assert any claim of ownership in these blocked assets, or to otherwise challenge the Order DE 22, allegations in Motion DE 18 as untrue, and that no other person or entity has rights in the blocked proceeds that are superior to the perfected lien and rights of plaintiffs.

(11)    Citibank's First Affirmative Defense also fails as a matter of law because this Court has properly applied the controlling "agency or instrumentality" standard, and all due process protections afforded by Chapter 77 of the Florida Statutes and *Stansell* have been met, including additional email service to SIX and BJSS counsel or compliance officer.  *See* DE 152-1.  First class mail service was specifically authorized by the controlling Florida statute, §77.055, and also by Fed. Rule Civ. P. 5(b)(2)(C).  This was not a Summons and Complaint seeking to initiate a lawsuit against these securities intermediaries, therefore the expense and delay of formal service under the Hague Convention is not required. See *SEC v. Credit Bancorp, Ltd.*, 2011 WL 666158 *4-5 (S.D.N.Y.

Feb. 14, 2011), *citing Volkswagenwerk Akiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988); *DLJ Mortgage Capital, Inc. v. Roland*, CV 2013-0010, 2015 WL 4036201, at *1 (D.V.I. July 1, 2015); *In re Advance Watch Co., Ltd.*, 587 B.R. 598, 605 (Bankr. S.D.N.Y. 2018).

(12)     Citibank's First and Fifth Affirmative Defenses—which assert the need for notice to and interpleader of third parties— are denied because the Florida garnishment statutes provide the controlling procedure to deal with potential third-party claims, and these statutes do not provide for interpleader, crossclaims, or counterclaims.  All relevant parties were afforded notice and have either been defaulted (SIX and BJSS) or are already before the Court.

(13)     Citibank's Fourth Affirmative Defense is denied.    Courts have noted that Congress's purpose in adopting the TRIA was to provide a comprehensive way for victims of terrorism to enforce their judgments and eliminate efforts by the executive branch to hinder execution by judgment holders. *See Smith v. Fed. Reserve Bank of New York*, 346 F.3d 264, 271–72 & n. 7 (2d Cir.2003) (quoting a senator's statement that the TRIA "establishes once and for all, that such judgments are to be enforced against any assets available in the U.S."); *Levin v. Bank of New York*, No. 09 CV 5900 RPP, 2011 WL 812032, at *16–17 (S.D.N.Y. Mar. 4, 2011); *Weininger v. Castro*, 462 F.Supp.2d 457, 483 (S.D.N.Y.2006).

Citibank is the proper garnishee because it is no longer holding "security entitlements" governed by UCC Article §8-112.  As a matter of federal law, the international securities accounts or "security entitlements" ceased to exist when the account owners were blocked by OFAC and Citibank transferred the blocked assets into a new separate blocked account in the U.S.  Also, any potential intermediary interest Six Sis Ltd. or Bank J Safra Sarasin may have had in the security assets owned by Lopez Bello and Yakima Trading are now extinguished as a matter of law.

Furthermore, to the extent that Citibank contends that UCC §8-112 [Fla. Stat. §678.1121] defeat the TRIA right to execute on blocked assets held in the U.S. – by requiring TRIA terrorism victims to "serve legal process upon the securities intermediary with whom the debtor's securities account is maintained" - then such a law is expressly preempted by TRIA's "notwithstanding any other provision of law" clause.  Neither Citibank or Lopez Bello have specifically identified the entity or country where the accounts were originally opened, and clearly Lopez Bello knows where he and his Yakima entity opened their accounts.  Citibank's Answer identifies two Swiss financial institutions which appear to have no U.S. office, branch, employee or presence.  Requiring TRIA victims to execute on some foreign entity that may not be subject to jurisdiction in the United States, in order to reach blocked security assets in the United States that are definitively owned by the terrorist party or its agency or instrumentality, would make a mockery of TRIA's comprehensive remedy.  No person or entity other than the OFAC Kingpins Samark Lopez Bello and Yakima Trading Corp. have claimed ownership in the blocked accounts held by Citibank.

Section 201(a) of the TRIA states that "[n]otwithstanding any other provision of law," the blocked assets of a terrorist party "shall be subject to execution or attachment in aid of execution.  As the Supreme Court has observed, "[a] clearer statement is difficult to imagine." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993).  *See also Conyers v. Rossides*, 558 F.3d 137, 145 (2d Cir. 2009); *Crowley Caribbean Transp., Inc. v. United States*, 865 F.2d 1281, 1283 (D.C.Cir.1989).

The Garnishee and the blocked asset owners are both before the Court, and under Florida law – **including UCC Article 8-112(5)** - this Court also has authority to enter such orders as are necessary to direct the parties before it to bring the subject property before the court, by any means allowed at law or in equity in regard to property that cannot readily be reached by other

legal process. *See* Fla. Stat. §678.1121(5); *General Electric Capital Corp. v. Advance Petroleum, Inc.*, 660 So.2d 1139, 1142-43 (3rd DCA 1995)(trial court has the power to require debtor to locate and return aircraft to Dade County, so as to proceed with the court's order of foreclosure); *Schanck v. Gayhart*, 245 So.3d 970 (1st DCA 2018)(court had jurisdiction to order the defendant debtor to either return LLC member certificates located in Canada, or to have his LLC reissue them). Accordingly, this court has the authority to order Lopez Bello and Yakima to effectuate any technical instructions that would normally be required for them to pay a judgment creditor from their security assets held by Citibank, N.A. Both Lopez Bello and Yakima Trading Corp. have intervened and are subject to the jurisdiction of the court. *See In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233 (11th Cir.2006)(party who intervenes, consents, as a matter of law, to the jurisdiction of the court).

(14) Citibank's Sixth Affirmative Defense is denied because Florida law rejects the "Separate Entity Rule." With respect to the "separate entity doctrine", Judge Moreno has held that the antiquated "Separate Entity Rule is *not* the law in Florida." *Tribie v. United Dev. Group*, 2008 WL 5120769 *2-3 (S.D. Fla. 2008)(J. Moreno). The doctrine is limited in New York and only applies with respect to assets held in foreign branches of a U.S. bank served with creditor process in New York. *See Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149, 163, 21 N.E.3d 223, 230 (2014)(judgment creditor's service of a restraining notice on a garnishee bank's New York branch is ineffective under the separate entity rule to freeze assets held in the bank's *foreign branches*). **Plaintiffs do not seek turnover judgment on the $338.00 Citibank alleges it is holding in a foreign branch**. *See* Answer DE 87, p. 3.

(15). The blocked proceeds held by Garnishee are not immune from attachment under the TRIA as sovereign, diplomatic or consular property.

(16). The TRIA allows execution on the blocked assets held by Garnishee without delay, and the Court now orders that these SDNTK blocked assets are to be turned over to Plaintiffs by Garnishee pursuant to TRIA. No OFAC license is required for Garnishee to turn over the blocked SDNTK funds to Plaintiffs. *Harrison v. Republic of Sudan*, 802 F.3d 399, 406-07 (2d Cir. 2015); *Stansell v. FARC/Mercurio*, 11th Cir. Case Nos: 11-11125 & 11-11690, United States Amicus Brief p. 10

(17). Garnishee is ordered to sell, liquidate and turn over the blocked cash, bonds, stocks, funds, and other security assets in the subject blocked account identified in Paragraphs 2 and 6 in Sealed Answer DE 87 pursuant to TRIA within 20 days of the date of entry of this Order, with the final turnover amount determined by the market prices in effect at the date and time when the security assets are liquidated by Garnishee following entry of this Order. Any subsequent interest or dividend payments received on any securities liquidated from this account after the initial turnover shall be paid to Plaintiffs within __ days of receipt by Garnishee.

(18). Garnishee shall provide Plaintiffs with an itemized statement within 10 days of entry of this Order. This statement shall identify each and every stock, bond, or other security asset held in the U.S. blocked account at the time of blocking by stock symbol, CUSIP or ISIN number, and identifying the specific quantities of each security under each of the 4 'transaction numbers" corresponding to either Lopez Bello or Yakima Trading. The statement shall also identify the cash or cash equivalents that were held in the blocked account at the time of blocking, with an itemized listing of all subsequent monthly or quarterly dividend, interest or stock split transactions to date.

(19). Any bonds or securities that cannot reasonably be liquidated within 20 days due to other U.S. sanctions shall be transferred to Plaintiffs in a separate account to be opened with Citibank, N.A. in the name of "Porter & Korvick, P.A. Trust Account."

(20). Such turnover payments are to be by electronic funds transfer payable to "Porter & Korvick, P.A. Trust Account", within ten (10) days of receipt from Plaintiffs' counsel of a W-9 form with a tax identification number and bank transfer instructions, but such electronic funds transfer must not make any reference whatsoever to any blocked party name.

(21). Garnishee to apply for attorney fees seven (7) days after the funds at issue are remitted to plaintiffs' counsel. Plaintiffs' counsel shall have seven (7) days to respond to the application for fees. Counsel for the Plaintiffs and Garnishee are directed to confer in a good faith effort to resolve the issue of attorney fees without the need for this Court's intervention. Plaintiffs' counsel is directed to hold in trust the amount of Garnishee's claimed attorneys fees and expenses pending either a stipulation by Plaintiffs and Garnishee to a reasonable Garnishee fee, or a ruling of this court on same, and authorizing Plaintiffs' counsel to pay same from the trust proceeds upon either a stipulation with Garnishee or entry of a Court Order awarding such fees and expenses.

(22). Plaintiffs' counsel shall immediately disburse the remaining proceeds over and above the total amount claimed by Garnishee for fees and expenses, less the $100 statutory garnishment fee deposit previously paid to Garnishee.

(23). Upon turning over all of the blocked assets above to Porter & Korvick, P.A. Trust Account, in satisfaction of this Court's Orders, Writ, and Turnover Judgment under TRIA, plaintiffs, plaintiffs' counsel, Garnishee CITIBANK, N.A. and its counsel, are all hereby fully and finally released, discharged and absolved from any and all liability under the Writ, including

to plaintiffs, defendants, or to SAMARK JOSE LOPEZ BELLO, YAKIMA TRADING CORP. and any other member of the "EL AISSAMI & LOPEZ BELLO NETWORK", and to any other third parties, including Six Sis Ltd., Bank J. Safra Sarasin, or any other security issuer, intermediary, custodian, sub-custodian, or judgment creditor, and they are fully released and discharged from this Writ of Garnishment for full compliance with the Writs, Orders and Judgments of this Court.

**DONE AND ORDERED** in chambers, at Miami, Florida, on _____, 2019.

_____
Robert N. Scola, Jr.
United States District Judge