UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-20896-SCOLA

KEITH STANSELL,  et al.

      Plaintiffs,

vs.

REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC); et al.,

      Defendants.

_____/

### PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT ON ALL OUTSTANDING WRITS BASED ON THE FUGITIVE DISENTITLEMENT DOCTRINE

Last week, on September 20, 2022, the appellate mandate issued from the Eleventh Circuit, re-vesting jurisdiction in this Court.  *See* DE 511.  The appellate mandate followed the Eleventh Circuit's August 23, 2002 panel opinion, *Stansell et al. v Revolutionary Armed Forces of Colombia (FARC) et al.*, 45 F.4th 1340 (11th Cir. 2022) (*see* **Ex. 1**) ("*Stansell 2022*"), as well as the Eleventh Circuit's September 7, 2022 ruling that the Plaintiffs should not be required to deposit any turned-over funds into the court registry.  *See* **Ex. 2**.

The Eleventh Circuit's opinion is attached hereto, and all of it of course warrants close attention, but for present purposes here is a thumbnail summary of what the Eleventh Circuit ruled:

1. The Eleventh Circuit confirmed that the final turnover order Your Honor entered regarding certain assets of Samark Jose Lopez Bello (whether held in his own name or that of the companies he owns or controls)—specifically, Lopez Bello's 3 yachts and the waterfront mansion located at 325 Leucadendra Drive in Coral Gables—should not be disturbed, and the appeals thereof were dismissed (*see* Ex. 1 at 19) (*Stansell 2022*, 14 F.4th at 1363);

2. The Eleventh Circuit confirmed that the standard Your Honor applied in determining that Lopez Bello and his companies were each "agencies or instrumentalities" of a terrorist party (the FARC)—i.e., the standard the Eleventh Circuit previously set forth in its 2014 opinion, *Stansell v. Revolutionary Armed Forced of Colombia*, 771 F.3d 713 (11th Cir. 2014 ) ("*Stansell II*" or "*Stansell 2014*")—is indeed the correct standard (*see* Ex 1. at 10-

11) (*Stansell 2022*, 14 F.4th at 1350-51);

3.    The Eleventh Circuit held that the full-day evidentiary hearing that Magistrate Judge Torres conducted on the "agency or instrumentality" question was insufficient because Florida Statutes § 77.08 mandates a jury trial when there is a material fact in dispute, and such a dispute still remains, thus requiring a remand (*see* Ex. 1 at 17) (*Stansell 2022*, 14 F.4th at 1359-60);

4.    The Eleventh Circuit ruled that, upon remand, Your Honor should decide in the first instance whether or not to apply the Fugitive Disentitlement Doctrine, and that such decision by Your Honor would then be subject to "abuse-of-discretion" appellate review by the Eleventh Circuit (*see* Ex. 1 at 8-9) (*Stansell 2022*, 14 F.4th at 1348): and

5.    The Eleventh Circuit ruled, in denying Lopez Bello's post-decisional motion, that the Plaintiffs should not be required to deposit any turned over  funds into the registry of the court.   (*See* Ex. 2) (Order Denying Appellants' "Time-Sensitive Motion to Reform or Amend Judgment and Mandate to Require District Court to Order Plaintiffs to Deposit the Sum of $53,208,315 into a Court Supervised Account").

Consistent with the Eleventh Circuit's mandate, Plaintiffs now respectfully file this Motion, seeking entry of Final Turnover Judgments against Lopez Bello and his companies, based upon the Fugitive Disentitlement Doctrine ("FDD" or "the Doctrine").  As the Eleventh Circuit noted in its opinion: "The fugitive disentitlement doctrine, which is equitable in nature, empowers courts to dismiss the lawsuits or appeals of fugitives from the law."  Ex. 1 at 9 (*Stansell 2022*, 14 F.4th at 1348) (quotation marks and citation omitted).  As this Motion will detail, all elements of the FDD are met here, and equity favors its application in the circumstances presented here.  Lopez Bello has conceded in open court that he is a fugitive as defined by the FDD—and correctly so, as he remains under criminal Indictment in the Southern District of New York and remains on ICE's Top 10 "Most Wanted" List, with a $5 million bounty upon him.  The Eleventh Circuit specifically held in its opinion that Lopez Bello "has not turned himself in or been arrested, and remains a fugitive." Ex. 1 at 8 (45 F.4th at 1348).  And as we will explain, the other elements of the Doctrine are also satisfied here.  Accordingly, final judgment for Plaintiffs should be entered on all writs.

In short, because the FDD applies, this Court need not actually conduct the scheduled jury

trial, but rather can—and should—enter final judgment now for Plaintiffs based solely on the FDD doctrine. While Your Honor certainly is empowered to enter final judgments immediately, another possible approach would be for the Court to issue written turnover judgments, but also stay the effect of the turnover judgments for a specified period of time (e.g., 30 days), and explicitly alert Lopez Bello that unless he physically submits himself to the jurisdiction of the United States within those 30 days—physically appearing to answer the pending Indictment against him in the Southern District of New York—this Court's final turnover judgments will immediately spring into effect on the 31st day.[1]  In that way, it will be unmistakably clear to Lopez Bello and his companies the option they face: namely, if they wish to utilize the judicial time and resources of the U.S. courts, so as to try to defend whatever property interest they assert in the OFAC-blocked property, Lopez Bello must not flout the American legal system by remaining fugitive from it.[2]

## I.      FACTUAL BACKGROUND

This Court having presided over the *Stansell* case for many years now, we will not tarry by restating the basic facts about the FARC's shootdown of Plaintiffs' counter-narcotics surveillance plane in Colombia, Plaintiffs' hostage-taking, murder and torture by the FARC, and all the events leading up to Plaintiffs' $318 million judgment under the Anti-Terrorism Act.  Your Honor undoubtedly recalls all those background facts.

---

[1] *Cf. United States v. Freelove*, 816 F.2d 479, 480 (9th Cir. 1987) (court ordered that the pending appeal of a fugitive be dismissed unless he surrendered to authorities within 42 days of date of the order).

[2] Ruling on the FDD issue right now would not only comport with the thrust of the Eleventh Circuit's directive, it also would make good practical sense in terms of efficiency and sensible use of judicial and party resources.  That is because the FDD issue is a clean, dispositive issue, subject to immediate appellate review by one side or the other.  If Your Honor agrees with us that the FDD applies here, then the Court would enter final judgment for Plaintiffs and (presumably) Lopez Bello would then take an appeal from that final order.  On the other hand, if for whatever reason Your Honor decides not to apply the FDD, then Plaintiffs could take an immediate appeal of that clean issue, either by way of 28 U.S.C. § 1291, 28 U.S.C. § 1292, the collateral order doctrine, and/or this Court certification of the dispositive legal question pursuant to Fed, R. Civ P. 54(b).  *See generally Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1986).

But a quick reminder about Lopez Bello's 2017 Kingpin designation, his 2019 criminal indictment, and ongoing fugitive status bears mention. As the Eleventh Circuit summarized in *Stansell 2022*:

> In February of 2017, the Office of Foreign Assets Control—acting pursuant to the Foreign Narcotics Drug Kingpin Act, 21 U.S.C. §§ 1901–08—determined that Mr. López was a "specially designated narcotics trafficker" (SDNT) based upon his provision of material assistance, financial support, or goods and services in support of the drug-trafficking activities of Tareck Zaidan El Aissami Maddah (who served as the former Executive Vice-President of Venezuela and is now the current Minister of Oil & Industry and National Production of Venezuela). The OFAC determined that Mr. López acted as a "key frontman" for Mr. El Aissami and his narcotics activities, identified a number of companies owned or controlled by Mr. López, and blocked the assets of Mr. López and those companies. See Press Release, U.S. Dep't of the Treasury, *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark López Bello*, 2017 WL 563391 (Feb. 13, 2017); Bruce Zagaris, *U.S. Treasury Designates Venezuela's Vice President under Narco Kingpin Act*, 33 Int'l Enforcement L. Rep. 48 (Feb. 24, 2017).
>
>           *       *       *
>
> In March of 2019, just after the plaintiffs filed their ex parte motions for writs of garnishment, a federal grand jury in New York returned an indictment against Mr. López charging him with violating OFAC sanctions by using bulk cash to pay for charter flights between Venezuela and Moscow. See United States v. López Bello, Case No. 19-Cr-144 (S.D.N.Y). Mr. López has not turned himself in or been arrested, and remains a fugitive.

Ex. 1 at 8 (*Stansell 2022*, 14 F.4th at 1347-48).

More than three years ago, on July 31, 2019, Lopez Bello was placed on ICE's list of 10 Most Wanted Fugitives for his participation in "international narcotics trafficking[.]" https://www.ice.gov/most-wanted.  *See* DE 505 Exs. 4, 7, 8; DE 241 Exs. 1-2.  This came on the heels of a May 2019 incident in which Lopez Bello narrowly escaped arrest when U.S. agents and Dominican authorities raided his villa in Punta Cana, Dominican Republic.  *See* "Venezuelan Billionaire's Home Raided In Dominican Republic", May 13, 2019, WLRN 91.3 FM, reported in Associated Press, https://www.wlrn.org/news/2019-05-13/venezuelan-billionaires-home-raided-in-dominican-republic. Nearly two years ago, on October 8, 2020, the U.S. Secretary of State

personally announced "a reward of up to $5 million for information leading to the arrest and/or conviction of Venezuelan national Samark Jose Lopez Bello for participating in transnational organized crime." *Formal Press Statement of U.S Secretary of State* (Oct. 8, 2020). (available online at https://www.state.gov/samark-jose-lopez-bello/ *[)*).  Despite the $5 million bounty upon him, at present—more than 3.5 years after his indictment—Lopez Bello still remains a fugitive of American justice.  .

On February 1, 2022—only 8 days prior to the appellate oral argument—the Eleventh Circuit directed the parties to be prepared to address at oral argument the question of application of the Fugitive Disentitlement Doctrine.  *See* **Ex. 3**.  The Eleventh Circuit's letter to the parties stated:

> Samark Jose López Bello was indicted in the Southern District of New York for conspiracy to defraud the United States, conspiracy to violate and evade the Foreign Narcotics Kingpin Designation Act and the Kingpin Act regulations, prohibited transactions in violation of the Kingpin Act and the Kingpin Act regulations, and evasion of the Kingpin Act and the Kingpin Act regulations. S.D.N.Y. No. 19-cr-144. Both the criminal indictment and this appeal are tied to López Bello's designation by the Office of Foreign Assets Control as a Specially Designated Narcotics Trafficker pursuant to the Kingpin Act in 2017.

*Id.*[3]

At oral argument the next week, Lopez Bello's counsel conceded that Lopez Bello is, indeed, a fugitive under the FDD.  *See* **Ex. 4** (Tr. of 11th Cir. Oral Arg. of Feb. 9, 2022) at 7:

CHIEF JUDGE PRYOR:  He is a fugitive, right?

MR. FELS:  Your Honor, we understand the Court's rulings on inferring fugitivity for failure to return, but we think it's especially unjust here where the evidence is that Lopez Bello left prior to the imposition of the OFAC sanctions in 2017, and couldn't return because the

---

[3] The FDD issue may be raised by a party's motion or by the court *sua sponte*.  *FDIC v. Pharaon*, 178 F.3d 1159, 1163 n.6 (11th Cir. 1997).  *See also Williamson v. Recovery Ltd.*, 731 F.3d 608, 628 n.6 (6th Cir. 2013); *Motorolla Credit Corp. v. Uzan*, 561 F.3d 123, 130 n.7 (2d Cir. 2009); *Parretti v. United States*, 143 F.3d 508 (9th Cir. 1998).

|  | United States stripped his visa. But we understand the Court's ruling on fugitivity.  But I think the larger point is in Degen – |
|---|---|
| CHIEF JUDGE PRYOR: | <u>And under those rulings, he is a fugitive</u>? |
| MR. FELS: | We would say, again, we think it would be an improper application but <u>yes. We don't think there's any real argument there</u>. |

(emphasis added).

Approximately six months later, when the Eleventh Circuit issued its ruling in *Stansell 2022*, the opinion confirmed that Lopez Bello is indeed a fugitive, but as to whether the FDD should apply in this case, the opinion stated "we think it best for the district court to consider the matter on remand," noting that the district court ruling on the FDD issue would then be reviewed under an abuse of discretion standard:

> In March of 2019, just after the plaintiffs filed their *ex parte* motions for writs of garnishment, a federal grand jury in New York returned an indictment against Mr. López charging him with violating OFAC sanctions by using bulk cash to pay for charter flights between Venezuela and Moscow. *See United States v. López Bello*, Case No. 19-Cr-144 (S.D.N.Y). Mr. López has not turned himself in or been arrested, and remains a fugitive.

> The fugitive disentitlement doctrine, which is equitable in nature, "empowers courts to dismiss the" lawsuits or appeals of fugitives from the law." *Ener v. Martin*, 987 F.3d 1328, 1331 (11th Cir. 2021) (citation omitted). We asked the parties to discuss the doctrine at oral argument, and they did so.

> Having considered the matter, we choose not to address whether the doctrine should apply. The plaintiffs never asked the district court to invoke the doctrine, and that court therefore did not pass on it. Our review on the application of the doctrine is for abuse of discretion, *see id.*, and under the circumstances we think it best for the district court to consider the matter on remand. First, "[w]e are . . . a court of review, not a court of first view." *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019) (citation omitted). Second, one of the relevant factors is whether the litigant's fugitive status has a "sufficient connection" to the present action, *see Ener*, 987 F.3d at 1332, and reasonable arguments can be made on both sides of that issue here. Third, it is not clear whether the doctrine—even if applicable to Mr. López—would apply to his companies. Fourth, we have cases going both ways as to whether the doctrine can and should apply to litigants who are defending civil lawsuits. *Compare Pesin v. Rodriguez*, 244 F.3d 1250, 1252–53 (11th Cir. 2001) (applying the doctrine to a defendant in an action for return of a child under a statute implementing

the Hague Convention), with *FDIC v. Pharaon*, 178 F.3d 1159, 1162 (11th Cir. 1999) ("We conclude that application of the fugitive disentitlement doctrine in this case to bar Appellant, a fugitive in a criminal case, from defending himself in a civil case, albeit a related one, would not be a 'reasonable response to the problem and needs that provoke[d]' the doctrine.") (citation omitted)."

Ex. 1 at 8-9 (*Stansell 2022*, 14 F.4th at 1348).

## II.    LEGAL STANDARD

The Fugitive Disentitlement Doctrine is an equitable doctrine, it reflects the principle that a fugitive "demonstrate[s] such disrespect for the legal process[ ] that he has no right to call upon the court to adjudicate his claim." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993) (internal quotation marks omitted).  The doctrine "permits a district court to 'sanction or enter judgment against parties on the basis of their fugitive status.'"  *United States v. Shalhoub*, 855 F.3d 1255, 1259 (11th Cir. 2017) (citation omitted).  "This doctrine accounts for the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing [a] fugitive to use the resources of the courts only if the outcome is an aid to him, and the need to avoid prejudice to the nonfugitive party [and] also discourage[s]…flights from justice, and protects the dignity of the courts." *Id.* (quoting *Ortega–Rodriguez*, 507 U.S. at 241–42).

As the Eleventh Circuit has explained, a court may apply the fugitive disentitlement doctrine to dismiss a lawsuit or appeal if three elements are met: (1) the party against whom it is invoked is a fugitive; (2) his or her fugitive status has a sufficient connection to the present action; and (3) dismissal is necessary to effectuate the concerns underlying the doctrine.  *Ener*, 987 F.3d at 1331.  The doctrine applies in both civil and criminal proceedings, and in district courts as well as on appeal.  *Id.*

Each of those elements is satisfied here.  Thus, the Court should enter final judgment for Plaintiffs against Lopez Bello and the companies he has admitted he owns or controls.

### III.   ANALYSIS

Each of the three elements of the Fugitive Disentitlement Doctrine applies with full force here.  As will be explained in greater detail *infra*:

As to the first element: Lopez Bello is unquestionably a fugitive, he has even conceded as much, and the Eleventh Circuit has so found.

As to the second element: Lopez Bello's fugitive status has a sufficient connection to the present action.  The very reason that OFAC sanctioned Lopez Bello as a Kingpin is that Lopez Bello was helping Tareck El Aissami, the corrupt Venezuelan high official, by acting as El Aisssami's front-man and laundering El Aissami's drug proceeds.  That is why OFAC blocked these assets in the first place, and the reason Plaintiffs' execution efforts against the assets exists.  And Lopez Bello is a fugitive from the criminal indictment in the Southern District of New York, which charges him for *continuing to aid and assist El Aissami*, even after Lopez Bello was designated by OFAC, this time by using prohibited cash to evade the OFAC sanctions and fly both men out of Venezuela to various places like Russia and Turkey.  Thus, there is a close connection.

As to the third element: dismissal is necessary under the circumstances presented here to effectuate the concerns underlying the doctrine.  Indeed, it would be inequitable to allow Lopez Bello to game the American justice system as he has been doing, and as he hopes to continue doing if there will be a jury trial.  Applying the Eleventh Circuit's words from *Ener*, Lopez Bello's flight from American justice in his criminal case has turned the civil litigation into a "one-way street" in which Lopez Bello is essentially saying "heads I win, tails you'll never find me." *Ener*, 987 F.3d at 1332.  In a very real sense, Lopez Bello is prejudicing these Plaintiffs, making a mockery of the American court system, and essentially playing by his own set of rules.  When he wants to try to protect his U.S.-based property from judgment creditors, he invokes the full panoply of protections

8

of the American system of justice—due process, property rights, administrative procedures, etc.—but when he is charged with a criminal offense, he flouts that same American justice system by remaining a fugitive and preventing his criminal prosecution from going forward.  As the Eleventh Circuit noted in *Ener*, "[d]isallowing that gamesmanship avoids prejudice to the nonfugitive party" and "promotes the efficient, dignified operation of the courts[.]"  *Id.* (citations omitted).

### A.    LOPEZ BELLO IS A FUGITIVE

As noted *supra*, there is no dispute that Lopez Bello is a fugitive as that term is contemplated by the FDD.  Lopez Bello's counsel conceded the point to the Eleventh Circuit, and the Eleventh Circuit specifically stated in its *Stansell 2022* opinion that he is a fugitive. Ex. 1 at 8 (*Stansell 2022*, 14 F.4th at 1348).  That is the beginning and end of the matter.

But we would merely add that Lopez Bello could not seriously have contended otherwise. A party is a fugitive if he intentionally avoids arrest by fleeing, hiding within, or remaining absent from the jurisdiction. *United States v. Shalhoub*, 855 F.3d 1255, 1263 (11th Cir. 2017); *United States v. Fonseca-Machado*, 53 F.3d 1242, 1243–44 (11th Cir. 1995).  "Intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities." *United States v. Barnette*, 129 F.3d 1179, 1184 (11th Cir. 1997). (quotation and alteration omitted).  Lopez Bello is a fugitive from the American justice in that he continues not to surrender himself to face the indictment against him in the Southern District of New York. [8]

---

[8]Lopez Bello admitted that prior to his 2017 narcotics Kingpin designation, he "maintained a substantial presence in the United States, having made the United States his intended home" and that he "was physically present in the United States…approximately a week before his designation."  *See Lopez Bello v. Smith*, No. 1:21-cv-01727-RBW (D.D.C.), D.E. 8 at 27-28.  But whether Lopez Bello was in Russia, Iran, the Dominican Republic or his home country of Venezuela when the indictment was returned is "beside the point." *Shahoub*, 855 F.3d at 1263.  If he "knew of the indictment and 'refused to surrender himself to th[e] jurisdiction of the court," his is a fugitive under the FDD. *Id.* "A fugitive is someone who has been offered process and refuses it." *Id.* at 1264; *United States v. Martirossian*, 917 F.3d 883, 890 (6th Cir. 2019) ("a defendant need not be present in and leave a jurisdiction to become a fugitive; the mere refusal to report for

B.    **LOPEZ BELLO'S FUGITIVE STATUS IS SUFFICIENTLY CONNECTED TO THESE TRIA EXECUTION PROCEEDINGS**

The connection between Lopez Bello's fugitive status and these civil proceedings under TRIA is particularly close and connected.  Indeed, both stem from the exact same illicit relationship—Lopez Bello's actions taken to aid and assist Tareck El Aissami, to further El Aissami's illegal and corrupt conduct as a high-ranking Venezuelan official in the Maduro regime, and to avoid the legal consequences thereof.

To recap: Lopez Bello is under indictment for violating the Kingpin Act sanctions levied upon him in 2017.  His 2017 designation under the Kingpin Act designation was based on OFAC's determination that Lopez Bello was "playing a significant role in international narcotics trafficking" and factual findings including, *inter alia*:

- El Aissami's primary frontman, Venezuelan national Samark Jose Lopez Bello (Lopez Bello), was also designated for providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities of, and acting for or on behalf of, El Aissami.
- OFAC further designated or identified as blocked property 13 companies owned or controlled by Lopez Bello or other designated parties that comprise an international network spanning the British Virgin Islands, Panama, the United Kingdom, the United States, and Venezuela.
- Lopez Bello is a key frontman for El Aissami and in that capacity launders drug proceeds.  Lopez Bello is used by El Aissami to purchase certain assets.  He also handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami.

*See* D.E. 18-2 (OFAC Factual Findings).

Although much of OFAC's work, not surprisingly, is classified, OFAC has subsequently disclosed additional *unclassified* summaries of its fact-finding regarding Lopez Bello.  Many of these unclassified findings came to light when in 2021 Lopez Bello affirmatively sued the Acting

---

prosecution can constitute constructive flight"; "No one who is indicted and who declines to answer the charge has a right to be labeled a non-fugitive.").

Director of OFAC in the U.S. District Court for the District of Columbia, under the Administrative

Procedures Act, seeking to have his designation rescinded.[9]   Among OFAC's unclassified

summaries of its fact-finding is that:

- López Bello "is in charge of laundering drug proceeds through [PDVSA] and organizing the air and maritime cocaine routes to transport cocaine to the Middle East and Asia."
- López Bello "was used by El Aissami to purchase news outlets in Venezuela, which were the most critical of the Chavez regime, with Venezuelan government funds in order to influence public opinion in Venezuela."
- López Bello "is identified as the 'business representative,' 'money manager,' and 'money launderer' for El Aissami."
- López Bello "handles financial matters for El Aissami" and "manages Venezuelan bonds, as a private party, and conducts unspecific deals which generate significant profits."
- López Bello "has procured vehicles in the U.S. that were transported to Venezuela and ultimately went to El Aissami and other Venezuelan government officials."

*Lopez Bello v. Bradley Smith, Acting Director of OFAC*, Case No. 1:21-cv-01727-RBW

(D.D.C.), D.E. 8 at 17-18, ¶¶ 77-80.[10]

These OFAC fact findings overlap with the facts we previously proved to Your Honor's

satisfaction (and to the satisfaction of Magistrate Judge Torres) that Lopez Bello is indeed an

"agency or instrumentality" of the FARC.  The FARC is the world's largest supplier of cocaine.

Nicolas Maduro, the leader of the Venezuelan narco-regime, has been indicted as part of a

conspiracy between the Cartel of the Suns and the terrorist organization Revolutionary Armed

---

[9]As we will discuss in greater detail in Section III(c), *infra,* Lopez Bello privately sought from OFAC (and received) 13 consecutive extensions of time to submit evidence to OFAC in support his administrative petition to be de-listed, but then when the clock finally ran out, Lopez Bello ultimately asked to close his delisting petition "without a decision."  *Lopez Bello v. Bradley Smith, Acting Director of OFAC*, Case No. 1:21-cv-01727-RBW (D.D.C.), D.E. 14-1.

[10] The APA does not afford Lopez Bello the right to jury trial to challenge Executive Branch fact findings. *Cox v. United States*, 332 U.S. 442 (1947).  *Cox* stands for the general proposition that, even in actions otherwise being tried before a jury where the invalidity of an administrative order is a proper defense, the court should "withhold[ ] from the jury the question of validity of the order."  1 Kenneth Culp Davis, ADMINISTRATIVE LAW TREATISE § 8.16, at 597 (1958).

Forces of Colombia ("FARC') to use cocaine as a weapon to "flood" the United States.  *See* D.E. 505-1.  And "the El Aissami and Lopez Bello Network" was designated as "specially designated narcotics traffickers" by the Secretary of the Treasury, "in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State."  *See* 31 CFR § 598.314(b).

The facts underlying Lopez Bello's Kingpin Act designation and indictment overlap significantly with the facts establishing the link between Lopez Bello and the FARC, namely that Lopez Bello is involved in narcotics trafficking, and that he acts for and on-behalf-of Tareck El Aissami, one of the leaders of the Venezuelan Cartel of the Suns, which has a decades long history of drug trafficking with the FARC.  And the criminal indictment against Lopez Bello—from which Lopez Bello has chosen to remain a fugitive—charges Lopez Bello with, *inter alia*, avoiding OFAC sanctions against the two men by using bulk cash for Lopez Bello and El Aissami to travel to Russia together.  *United States v. Lopez Bello*, No. 19-Cr-44 (S.D.N.Y.), D.E. 1 (Indictment).  Put simply: the relationship between Lopez Bello and El Aissami—i.e., what exactly Lopez Bello has done (and continues to do) for El Aissami, and why Lopez Bello does it—is a central question in both the criminal case in the Southern District of New York, and also in this TRIA asset-collection matter here in the Southern District of Florida.[11]

---

[11] At the evidentiary hearing, when asked about this allegation of Lopez Bello using bulk cash to fly himself and El Aissami out of Venezuela, one of Plaintiffs' experts, Douglas Farah, testified that's precisely the kind of conduct that a testafero (front man) typically does to enable the trafficker he's fronting. DE 230 at 77-78 ("Q: Are you familiar with the role generally of a front man or testaferro in criminal organizations like the FARC or the Cartel de la Soles? A: I think in my 30 years of doing this, there has never been a major criminal organization that did not have front men who were able to move their money for them….So I think front men are fundamental. They are key cogs in any major criminal enterprise if the purpose of that enterprise is to generate illicit funds and then move the funds back as legitimate funds so they can be spent in the international financial system."); *id.* at 82 ("Q:  My question is simply, is the use of bulk cash to pay for private chartered jet service between a testaferro and his principal, is that consistent with your

In short, the second element of the FDD doctrine is satisfied here.  There is indeed a very close connection between Lopez Bello's fugitive status and the present action.[12]

C.     ENTRY OF FINAL JUDGMENT IN PLAINTIFFS' FAVOR IS NECESSARY TO EFFECTUATE THE CONCERNS UNDERLYING THE FUGITIVE DISENTITLEMENT DOCTRINE

The FDD is a common law doctrine, and as such, it has expanded and evolved over time. The doctrine was initially used to bar *convicted* fugitive appeals, but over time came to cover fugitives from indictment, district court proceedings in both criminal and civil actions, and claims challenging asset forfeitures.  Federal courts have recognized "various permutations" of the fugitive disentitlement doctrine for well over a century.  *United States v One 1988 Chevrolet Half-Ton Pickup Truck*, 357 F. Supp. 2d 1321, 1325 (S.D. Ala. 2005).

In addition to enforceability of judgment concerns, the doctrine also rested on the ground that a fugitive should not be able to exploit judicial processes to his advantage in one matter while scoffing at them in another. *United States v $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 35 (D.D.C. 2007).  Disentitlement is also a proper outgrowth of the basic judicial authority embodied by Federal Rules of Civil Procedure 37 and 41, which "render a party's misconduct a basis for the

---

understanding of the traditional role of a testaferro? A: Bulk cash is the preferred method of payment because it leaves no paper trial; therefore, it's impossible to trace to show that the money has ever moved. So yes, bulk cash shipment is a favorite methodology of moving money.").

[12] We are aware of the Eleventh Circuit's statement in *Stansell 2022* that "reasonable arguments can be made on both sides of that issue here."  Ex. 1 at 9 (*Stansell 2022*, 45 F.4th at 1348).  That statement is curious.  Perhaps it is attributable simply to the fact that the Eleventh Circuit never received any briefings on the FDD topic in this appeal; recall that the Eleventh Circuit posed the FDD question to the parties only 8 days prior to the oral argument and never asked for written briefing on it.  Or perhaps the Eleventh Circuit's statement was based on the reality that there are 2 cases involved here—one criminal and one civil—and some FDD decisions have involved only 1 case, so the connection element was crystal clear in those instances.  Nonetheless, we are aware of no precedent holding that the FDD can be applied where there is only 1 case involved, nor would that make any logical sense.  Or perhaps the Eleventh Circuit's statement was merely an attempt to speak in an evenhanded way, without tipping its hand, knowing that upon remand, Your Honor would be the one to make the call in the first instance.

dismissal of his case," especially since those Rules authorize dismissal for conduct "far less egregious than a flight from justice." *Ali v. Sims,* 788 F.2d 954, 959 (3d Cir. 1986).

In *Degen v. United States*, 517 U.S. 820, 825-28 (1996), the Supreme Court limited the judiciary's use of the fugitive disentitlement doctrine when based _solely_ on the indignity visited on the court based upon the fugitive's absence from a criminal proceeding or as a deterrent to flight. The Court stated that, _if only these two concerns_ were present, then "disentitlement is too blunt an instrument[.]" *Id*. Applying the doctrine based _solely_ upon indignity to the court and deterring flight would work "rough justice." *Id.[13]*

Applying logic similar to *Degen*, the Eleventh Circuit held in *FDIC v. Pharaon*, 178 F.3d 1159 (11th Cir. 1999), that "the fugitive disentitlement doctrine, _without more_, may not be applied to strike a civil defendant's answer and enter judgment against him." *Id*. at 1163 (emphasis added). *Pharaon* is one of the two cases the Eleventh Circuit cited in *Stansell 2022* when the Eleventh Circuit said: "[W]e have cases going both ways as to whether the doctrine can and should apply to litigants who are defending lawsuits." Ex. 1 at 9 (*Stansell 2022*, 45 F.4th at 1348). The other case the Eleventh Circuit cited—at the other end of the spectrum—was a case decided two years after *Pharaon*: *Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001). Ex. 1 at 9 (*Stansell 2022*, 45 F.4th at 1348).

---

[13] In 2000, Congress responded *Degen* by codifying a discretionary version of the FDD for civil forfeiture cases. *See* Civil Asset Forfeiture Reform Act ("CAFRA"). Pub. L. 106–185, 114 Stat. 202 (2000). The disentitlement provision, codified at 28 U.S.C. § 2466, sought to deal with the "unseemly spectacle" of "a criminal defendant who, facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction." *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004). Because a terrorism victim's TRIA execution can be similar to a forfeiture action—e.g., involving blocked assets of narcotics traffickers and money launderers connected to cartels and terrorist parties—application of the common law doctrine under the narrow facts of this case is fully consistent with the interests that animated Congress to enact 28 U.S.C. § 2466, even though § 2466, by its express terms, does not apply here.

A careful review of *Pharaon*, *Pesin*, other relevant precedents—and most importantly, the specific facts and circumstances of Lopez Bello's situation and the various litigation concerning him—reveals unmistakably that this particular case falls on the side of the line where applying the FDD would not be "rough justice," but rather is necessary to effectuate the purposes that underlie the doctrine. The concerns here are not merely the indignity to this Court (or the American justice system in general), nor the simple flight deterrence to others—though of course those do apply here. The significant additional concern present here is that Lopez Bello's fugitivity has worked *actual prejudice* to these Plaintiffs, and to the broader justice system as well. We now explain how:

*First*, in stark contrast to the defendant in *Pharaon*, here Lopez Bello has not merely been dragged into U.S. courts and operated exclusively in a defensive posture. Quite the opposite. In fact, while Lopez Bello has remained a fugitive from U.S. justice, Lopez Bello and his companies have been "affirmatively seeking relief" and have repeatedly "call[ed] upon the resources of the court for determination of [their] claims[,]" *Pharaon*, 178 F.3d at 1162, in a variety of American courts for years. For example:

(1) on October 9, 2017, Lopez Bello filed an administrative Petition with OFAC pursuant to 31 C.F.R. 501.807 seeking reconsideration of his designation under the Kingpin Act and his delisting from OFAC's SDN List;

(2) after voluntarily dismissing his administrative Petition with OFAC, he then filed an APA lawsuit against OFAC in the federal district court in the District of Columbia, and in that lawsuit, his requested relief included attorneys' fees and costs. *Lopez Bello v. Bradley Smith, Acting Director of OFAC*, No. 1:21-cv-01727-RBW (D.D.C.), D.E. 8 at 34, ¶G;

(3) in the Middle District of Florida—in a case where Lopez Bello had never been sued—Lopez Bello affirmatively filed a Rule 60(a) motion seeking to materially alter the final judgment that had been entered nearly a decade earlier. *Stansell v. FARC*, MDFL No. 09-2308, DE 1205.

(4) when his Rule 60(a) motion was unsuccessful, Lopez Bello then filed an appeal with the Eleventh Circuit, and the Eleventh Circuit affirmed. *Stansell et al. v. Lopez Bello et al.*, No. 20-13660 (11th Cir. July 19, 2022).

(5) throughout the litigation here in the Southern District of Florida—as Your Honor is undoubtedly well aware—Lopez Bello has filed a blizzard of motions, stay requests, and the like, often frivolous, repetitive, or merely dilatory. *See infra.*

*Second*, when Lopez Bello and his company have made filings, they have essentially sought to "game the system" or accomplish unwarranted delay—all while Lopez Bello evades the criminal justice system, and perhaps tries to negotiate with the rest of the Maduro regime for better treatment from U.S. authorities.  To list but a few examples:

(1) The Administrative Petition filed with OFAC: After Lopez Bello filed his Petition with OFAC seeking to be de-listed, OFAC formally requested that Lopez Bello provide additional requested information by answering a Questionnaire.  Over a span of 18 months, Lopez Bello then requested and received a total of *13 extensions* of time to submit this Questionnaire.  OFAC granted Lopez Bello each extension,.  Finally, after On June 2, 2021, Lopez Bello informed OFAC that he "decided to voluntarily withdraw the Petition and desired to have the matter closed administratively without a decision", which OFAC did on June 3, 2021.  *Lopez Bello v. Bradley Smith*, Case No. 1:21-cv-01727-RBW (D.D.C.), DE 14-1 at 3.  At no time following Lopez Bello's appearance in this action in March 2019 did he or his attorneys ever notify Plaintiffs or this Court that he had sought and received 13 extensions of time to provide requested information, or that he had voluntarily withdrawn his Petition.  It appears his Petition was merely a ruse for delay or to try to gather information about what OFAC's files said about him.

(2) SDFL Order DE 292 ("The motion is facially meritless. . . . The pending document sets forth no good cause why Defendants are entitled to another bite at the same rotten apple. . . . Counsel in this case are reminded that frivolous or vexatious filings in this action may be sanctioned under 28 U.S.C. s. 1927 and the Court's inherent powers. Motions such as this … fall in that category.)

(3) <u>SDFL Order DE 403</u> ("To the extent the Defendants again seek a stay of the Court's judgment, this request has been denied by this Court (Order denying stay, ECF No. 358; Order denying reconsideration of stay ECF No. 366.), the Eleventh Circuit (ECF No. 373-1), and the United States Supreme Court (ECF No. 396-1). Therefore, the request is denied.")

(4) <u>Eleventh Circuit Appeal No. 19-11415</u>: *Stansell v. Lopez Bello*, 802 F. App'x 445, 448 n.4 (11th Cir. 2020) ("Lopez Bello has filed a litany of other motions in an attempt to prevent the sales from occurring. In the District Court, Lopez Bello filed a motion for summary judgment and for dissolution of the writs of garnishment and execution, a motion to stay the sale of the real properties, a motion to administratively terminate the matter pending appeal, and a motion to stay the sale of the vessels. The District Court denied each of these motions. Lopez Bello also filed three separate emergency motions in this Court to stay the sales of his various properties pending appeal, all of which we denied.").

(5) <u>Repetitive, Identical Applications for a Stay from the U.S. Supreme Court</u>: *See* DE 396; 396-1 (6/26/20 application for emergency stay of execution, denied on 6/29/20). Two days after the emergency application was denied, on 7/1/20, Lopez Bello and his companies filed a renewed identical emergency petition seeking the same relief on July 1, DE 399; 399-1. The renewed petition was denied on denied on 7/3/2020. DE 470; 470-1.

<u>*Third*</u>, because of Lopez Bello's fugitivity, these Plaintiffs are being directly prejudiced in this asset-collection case, and in other such cases around the country. A federal criminal conviction is entitled to issue preclusive effect. *Abney v. Raiford (In re Raiford)*, 695 F.2d 521 (11th Cir. 1983); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005). Lopez Bello's co-defendant in the criminal case, Victor Mones Coro—the airplane pilot to whom Lopez Bello has been charged with making illegal bulk cash payments to fly Lopez Bello and El Assami out of Venezuela—has already plead guilty on the same indictment as Lopez Bello's. *United States v. Tareck El Aissami, Samark Lopez Bello, Victor Mones Coro et al.*, No. 1:19-cr-00144-AKH-1 (S.D.N.Y.), DE 195 (Judgment of Conviction). But Lopez Bello himself has been a fugitive from U.S. justice for 3.5 years, delaying his own criminal trial. Thus, his failure to face his criminal charges potentially denies Plaintiffs the ability to use his criminal conviction to

collaterally estop him in our civil suit, and in other TRIA executions, on certain key issues—namely the nature of Lopez Bello's relationship to Tareck El Aissami.[15]

_Fourth_, Lopez Bello's fugitivity will cause Plaintiffs even further prejudice if Your Honor were to decline to enter judgment for Plaintiffs based on the FDD and this matter proceeds to a jury trial. That is because, at such a jury trial, Lopez Bello will be free to brazenly lie at will, with total impunity. Indeed, Lopez Bello's lawyers will likely argue for him to "testify" from some undisclosed, remote location—probably from Venezuela, but who knows—where Lopez Bello can evade any real penalty, because he'll know that even a contempt citation from Your Honor or even a criminal referral for perjury is an empty gesture. As the United States has ~~recently~~ noted in recent filings to Your Honor, witness testimony in Venezuela is often unreliable because there is no recourse for committing perjury and no right of extradition. _United States v. Alex Saab_, No. 1:19-cr-20450-RNS (S.D. Fla.), DE 133 at 4. And this is especially true as to Lopez Bello, who is not just any run-of-the-mill Venezuelan citizen. Lopez Bello is not even an ordinary _fugitive_; he is on ICE's "Most Wanted" list with a $5 million reward for information leading to his capture. And, as OFAC has designated, he is closely enmeshed with the Maduro regime, fronting and protecting the activities of El Aissami, the former Venezuelan Vice President and current Minister. He'll have no fear that the Maduro regime will want to turn him over the U.S. authorities for a perjury prosecution. As the Eleventh Circuit stated when finding the FDD applicable in _Ener_, it will be a classic "heads I win, tails you'll never find me" situation for Lopez Bello. _Ener_, 987 F.3d at 1332-33. He will essentially be putting himself above the entire U.S. justice system,

---

[15] The inability/delay on trying Lopez Bello not only prejudices these Plaintiffs, but also the public at large, which has an "interest in the fair and expeditious administration of the criminal laws." _United States v. Dionisio_, 410 U.S. 1, 17 (1973). _See also Cobbledick v. United States_, 309 U.S. 323, 325 (1940) ("[E]ncouragement of delay is fatal to the vindication of the criminal law.").

playing by his own set of rules.  This is just the sort of thing the Eleventh Circuit was talking about when it said in *Ener*:

> It is unfair to allow[ ] a fugitive to use court resources only if the outcome is an aid to him.  Litigating from outside the jurisdiction can allow the fugitive to avoid complying with an adverse judgment: "heads I win, tails you'll never find me."  The fugitive's flight turns the litigation into "a one-way street."  Disallowing that gamesmanship avoids prejudice to the nonfugitive party, and promotes the efficient, dignified operation of the courts[.]

*Ener*, 987 F.3d at 1333 (internal citations and quotation marks omitted).  *See also Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001) (FDD applied to a civil defendant in a child abduction case); *United States v. Barnette*, 129 F.3d 1250 (11th Cir. 1997) (FDD applied to a civil defendant where the government attempted to collect on a forfeiture judgment); *Empire Blue Cross v. Finklestein*, 111 F.3d 278 (2d Cir. 1997) (FDD applied to a civil defendant in an effort to collect assets on a civil RICO judgment);  *Mishkin v, Gurian Trust*, 2008 WL 708733 (S.D. Fla. 2008) (Ryskamp, J.); *Vanmoor*, 2007 WL 9702031 (S.D. Fla. 2007) (Jordan, J.).

Here, applying the FDD to Lopez Bello would not be anything like the "rough justice" derided by *Degen* and *Pharaon*.  Rather, it is the necessary remedy for the specific facts and circumstances—and the prejudice—that have transpired here, and will continue to multiply if a jury trial were to occur.[17]  The Court should apply the doctrine, enter final judgment for Plaintiffs, or (at a minimum) give Lopez Bello a specified period of time to end his fugitivity and face his pending criminal indictment, if he wants to continue using the American justice system to fight the turnover of his OFAC-blocked property.

---

[17] Plaintiffs reserve the right file a renewed FDD motion if additional prejudice happens to arise later.

D.    THE FDD APPLIES NOT ONLY TO LOPEZ BELLO HIMSELF, BUT ALSO TO THE OFAC-BLOCKED COMPANIES THAT LOPEZ BELLO ADMITS HE OWNS OR CONTROLS

A final issue for consideration as posed by the Eleventh Circuit in *Stansell 2022* is, if the FDD applies to Lopez Bello, whether it applies to his companies too.  Ex. 1 (*Stansell 2022*, 14 F. 4th at 1348).  Under the circumstances presented, the answer is yes.  Lopez Bello has admitted that these companies—each of which has been designated by OFAC along with Lopez Bello himself—are merely his front companies that he owns or controls.  *See* DE 97-1 (Dec. of Wm. Marquardt at 4) ("entities disclosed as owned or controlled by Samark Jose Lopez Bello"); *see also id*. at App. 3 ("Samark Jose Lopez Bello Entities"); DE 18-2 (OFAC factual findings "13 companies owned or controlled by Lopez Bello").

The blocked entities here are merely the corporate form through which Lopez Bello owns or controls some of the OFAC-blocked property, and Lopez Bello has chosen to remain a fugitive. For this Court to apply the FDD to Lopez Bello but not to his OFAC-blocked companies would not only elevate form over substance, it would allow Lopez Bello to inflict the same prejudice and harm upon Plaintiffs—and the U.S. justice system—as we have just outlined.  *See, e.g., Fidelity & Deposit Co. v. USAFORM Hail Pool, Inc.*, 523 F.2d 744, 758 (5th Cir. 1975) ("the corporate form will be disregarded when not to do so would work an injustice upon innocent third parties").

## IV.    CONCLUSION

Lopez Bello has gamed the American justice system long enough.  It is time for him to return to the United States to answer to the criminal charge pending against him, or else stop utilizing the same system of justice he is flouting.

WHEREFORE, Plaintiffs respectfully request entry of final turnover judgments [identified in Order DE 339] in their favor and against Lopez Bello and his OFAC-blocked companies.

Respectfully submitted September 26, 2022

| | |
|---|---|
| Newton P. Porter (FL Bar: 833738) | Richard B. Rosenthal (FL Bar: 0184853) |
| Tony Korvick (FL Bar: 0768405) | THE LAW OFFICES |
| PORTER & KORVICK, P.A. | OF RICHARD B. ROSENTHAL, P.A. |
| Attorneys for Plaintiffs | Co-counsel for Plaintiffs |
| 9655 South Dixie Highway Suite 208 | 1581 Brickell Avenue |
| Miami, Florida 33156 | Suite 1408 |
| Telephone:    (305) 373-5040 | Miami, Florida 33129 |
| nporter@porterandkorvick.com | Telephone: (305) 992-6089 |
| tkorvick@porterandkorvick.com | rbr@rosenthalappeals.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 26, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing document and the notice of electronic filing by electronic mail to the following persons:

OFFICE OF FOREIGN ASSETS CONTROL
U.S. Department of the Treasury
1500 Pennsylvania Ave. NW
Washington DC
[by email service directly to OFAC counsel in compliance with 31 CFR 501.605]

/s/ Tony Korvick
TONY KORVICK  (FL Bar 768405)
PORTER & KORVICK, P.A.
Attorneys for Plaintiffs
9655 South Dixie Highway Suite 208
Miami, Florida 33156
Telephone:     (305) 373-5040
tkorvick@porterandkorvick.com