UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-20896-SCOLA

KEITH STANSELL, et al.

      Plaintiffs,

vs.

REVOLUTIONARY ARMED FORCES OF COLOMBIA, a/k/a FARC, et al.,

      Defendants.

_____/

### **PLAINTIFFS' MOTION FOR FINAL TURNOVER JUDGMENT**

On October 2, 2024, this Court issued a Notice to Appear to judgment debtors Samark Jose Lopez Bello ("Lopez") and Yakima Trading Corp. ("Yakima"). Nine days later, they filed a response to the Notice to Appear that is utterly insufficient to prevent entry of final turnover judgment as to the subject OFAC-blocked assets. Indeed, their response presented only arguments that are legally precluded or are otherwise meritless as a matter of law. Accordingly, under §201(a) of the Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. §1610 (note), and §56.29(6), Fla. Stat., Plaintiffs hereby move for entry of final turnover judgment.

### I.    **INTRODUCTION/SUMMARY**

All the elements for a Final Turnover Judgment have been satisfied:

1.    This Court has subject matter jurisdiction to conduct postjudgment execution proceedings of Plaintiffs' final judgment under the federal Anti-Terrorism Act ("ATA"), rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. §1963, with postjudgment execution under the ATA, TRIA §201, and Fed. R. Civ. Pro. 69(a), Florida Statutes § 56.29, as well as ancillary subject matter jurisdiction to enforce this Court's November 4, 2022 final judgment *directly against these judgment debtors* [ECF No. 548], who are the undisputed owners of the subject assets. *Fundamental Long Term Care Holdings, LLC v. Jackson-Platts*, 110 So. 3d 6, 7–8 (Fla. 2d DCA 2012); *Zureikat v. Shaibani*, 944 So. 2d 1019, 1023 (Fla. 5th DCA 2006).

2.     On February 13, 2017 the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") formally designated Lopez and Yakima as Kingpins under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"). 21 U.S.C. §1901 et seq.   ECF No. 18-2.   Lopez and Yakima remain OFAC designated Kingpins to this day.

3.     Plaintiffs have obtained an ATA judgment against the FARC—a "terrorist party" as defined by the TRIA Section 201(d)(4)—on a claim based on an "act of terrorism" as defined by TRIA Section 201(d)(1)(B), and now seek to enforce that ATA judgment against blocked assets of "any agency or instrumentality of that terrorist party" which includes both Lopez and Yakima.

4.     This Court has already conclusively determined that Lopez and Yakima are each an agency or instrumentality of the terrorist party FARC.   ECF Nos. 536, 547, 548.   Lopez and Yakima are the undisputed owners of the subject blocked assets, having admitted ownership in three separate filings in this Court. ECF No. 198-3; ECF No. 198-5; ECF No. 261.   The blocked Kingpin assets are within the meaning of "blocked assets" under TRIA and the ATA Clarification Act of 2018, 18 U.S.C. § 2333(e).   Lopez and Yakima's assets remain OFAC blocked and are therefore subject to TRIA execution by Plaintiffs in this case.   *See Stansell v. FARC*, 773 F.3d 713, 725 (11th Cir. 2014).

5.     TRIA provides this Court with subject matter jurisdiction over postjudgment execution and attachment proceedings against blocked assets of an agency or instrumentality of the judgment-debtor, even if the agency or instrumentality itself is not named in the judgment.   *Stansell v. FARC*, 771 F.3d 713, 737 (11th Cir. 2014); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010). The blocked assets at issue are not immune from attachment under the TRIA as sovereign, diplomatic, or consular property.

6.     No OFAC license is required for the party holding the blocked assets to liquidate the blocked assets and turn over the proceeds to Plaintiffs.   *Harrison v. Republic of Sudan*, 838 F.3d. 86, 98 (2nd Cir. 2016); Amicus Br. of  United States in *Stansell v. FARC/Mercurio*, No. 11-11125, at p. 10 (11th Cir. Sept. 21,

2011); Statement of Interest of the United States in *Stansell v. FARC*, No. 8:09-cv-02308-CEH, ECF No. 1197 at 7, (M.D. Fla. April 26, 2019) (when "a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC").

Because all the elements for a final turnover have been satisfied, and because each of the arguments presented in Lopez's and Yakima's response to the October 2, 2024 Notice to Appear is either barred or meritless as a matter of law, entry of final turnover judgment is appropriate.

## II.    FACTUAL & PROCEDURAL BACKGROUND

In 2019, Lopez and Yakima both appeared voluntarily in this Court and submitted to the Court's jurisdiction [ECF Nos. 55, 57], and in 2022 they each were conclusively determined by this Court to be an "agency or instrumentality" of the FARC as a matter of law.  ECF No. No. 548.  In so doing, this Court found that Lopez and Yakima had willfully violated pre-trial discovery orders—*including discovery requests on the specific security assets at issue herein.*  ECF No. 548.

In 2022, the Florida Supreme Court significantly expanded this Court's authority over certain property assets, such as the subject assets here of Lopez and Yakima. *Shim v. Buchel*, 339 So.3d 315 (Fla. 2022).

On June 20, 2023, Florida Statute, § 772.13(6) was enacted which codifies a "fugitive disentitlement doctrine" for terrorism victim postjudgment execution proceedings, and removes the statutory right to jury trial in these cases.

*Shim* significantly expanded this Court's powers over foreign assets under § 56.29(6) by virtue of a court's jurisdiction over the owner of the assets before the court (like Lopez Bello here).  *Shim* altered pre-existing Florida law by holding that § 56.29(6) "unambiguously provides a trial court broad authority" to order any property of judgment debtors be applied to satisfy a judgment debt, *including property located outside the U.S.  Id.* at 317.

On March 12, 2024, the D.C. Circuit affirmed the district court's dismissal of Lopez' suit against OFAC, in which he had challenged his 2017 Kingpin designation by OFAC. *Lopez Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024).  In

its opinion, the D.C. Circuit noted that Lopez "resided in Florida" and that an OFAC unclassified law enforcement summary documented Lopez's money laundering of drug proceeds through state-owned oil company Petroleos de Venezuela, S.A.; [and his] organization of trans-continental air and maritime cocaine routes[.]" *Id.*

On May 2, 2023, while still a fugitive, Lopez filed a motion to dismiss his indictment in the Southern District of New York, but the court denied it, noting:

> Lopez Bello is a constructive flight fugitive who learned of the charges against him while outside the United States and now refuses to return in order to avoid prosecution. . . . Prior to being sanctioned by OFAC February 2017, Lopez Bello lived in the United States with the intention of making it his permanent home. He enrolled his children in U.S. schools, owned property in the United States, and lived a luxurious life here. ... Lopez Bello is not entitled to see substantive relief, as in his motion to dismiss.

*United States vs. Lopez Bello*, S.D.N.Y. No. 1:19-cr-00144, ECF No. No. 275 at 2.

On April 9, 2024 Tareck El Aissami and his primary frontman Lopez were reported to have been simultaneously arrested in Venezuela by the Maduro regime. On May 17, 2024, Plaintiffs' appellate counsel, Richard B. Rosenthal, filed a Rule 28(j) letter notifying the Eleventh Circuit of the alleged arrests, and also of the United States' filing with the Second Circuit, in which DOJ argued that an April 2024 Venezuelan arrest/detention did not alter Lopez' fugitive status from his 2019 criminal indictment.[1] *United States v. Lopez Bello et al.*, 2d Cir. No. 23-6456, DOJ letter filed May 7, 2024, citing *United States v. Zedner*, 555 F.3d 68, 78 (2d Cir. 2008). The Second Circuit in *Zedner* expressly held that a defendant does "not shed his fugitive status by being accused of new criminal conduct that led to foreign governmental restrictions [on travel while abroad] more than three months after the deadline for his return." *Zedner*, 555 F.3d at 78. As a matter of law Lopez remains a fugitive.

---

[1] *Stansell v. Lopez Bello et al.*, 11th Cir. No. 22-13798, ECF No. 46. Again, FRAP 28(j) required any response to this letter to have been filed "promptly," but as of today, some five months later, Lopez still has not made any responsive filing.

On October 2, 2024—pursuant to the Plaintiffs' ex parte motion—this Court commenced proceedings supplementary and issued a statutory Notice to Appear to Lopez and Yakima pursuant to Florida Statutes § 56.29.

On October 11, 2024, Lopez and Yakima filed their response to the Notice to Appear.  ECF No. 570.  As explained *infra,* none of the arguments contained in Lopez's and Yakima's statutory response avoids the reality that final turnover judgment should be entered immediately as to the subject assets.  Indeed, each of those arguments is either barred and/or is meritless as a matter of law.

## II.   ARGUMENT

### A.   THE LEGAL ELEMENTS SUPPORTING ENTRY OF IMMEDIATE TURNOVER JUDGMENT AS A MATTER OF LAW

#### 1. LOPEZ BELLO HAS SUBMITTED TO THIS COURT'S JURISDICTION AND HAS ADMITTED THAT HE OWNS THE SECURITY ASSETS

Lopez and Yakima voluntarily intervened and appeared on February 28, 2019 and thereby acquiesced to this Court's jurisdiction.  ECF No. 55 & 57.  *See In Re Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 471 F.3d. 1233, 1248 (11th Cir. 2006).  Since their appearance in 2019, Lopez and Yakima have litigated extensively in this Court.  Thus, this Court's in personam jurisdiction over them is beyond dispute.

Lopez and Yakima own a substantial bond securities portfolio which remain blocked in the United States pursuant to their OFAC narcotics Kingpin designations [ECF No. 546-1 at 20-22, as sealed by Order ECF No. 555], including accrued cash from interest and dividend payments.  ECF No. 564-2.  The securities are intangible assets and consist of 133 distinct security entitlements[2] in stocks and bonds all issued in the U.S., which Lopez Bello and Yakima own through international securities intermediaries.[3]

---

[2] Under the UCC, "Security entitlement" means the rights and property interest of an entitlement holder with respect to a financial asset specified in part V.  *See* Fla. Stat. §678.1021(1)(q).

[3] In 2017, Lopez and Yakima's security entitlements were moved into a separate blocked account by Citibank, and Citibank has produced a confidential detailed listing of various

TRIA requires that Lopez and Yakima have an ownership interest in the subject blocked security assets, *see Levin v. JPMorgan Chase Bank, N.A.*, 17-3854-CV, 2018 WL 4901585, at *2 (2d Cir. Oct. 9, 2018), and here, it is undisputed that the subject securities are owned by Lopez and Yakima.  Indeed, they have formally <u>*admitted*</u> ownership in three separate filings in this Court:

1. ECF No. No. 198-3, ¶¶ 2-3, 5/5/19 Affid. of Jeffrey Scott, Esq. ("I am submitting this affidavit in response to writs of garnishment that were served upon … (g) Citibank, N.A. … <u>My clients are the owners</u> of the subject bank accounts") (emphasis added);

2. ECF No. No. 198-5 at 3, 4/3/19 Dec. of Samark Lopez Bello [opposing Citibank turnover motion]("Plaintiffs … seek to garnish bank accounts <u>that are owned by or titled to me or the Lopez entities</u>…") (emphasis added)];

3. ECF No. No. 261 at 18-19 ("Each motion was drafted and filed <u>on behalf of the entities owning the accounts</u>."- [then listing Lopez and Yakima Trading as the moving parties on the Citibank account]) (emphasis added).

Citibank's blocking reports to OFAC confirm these in-court admissions by identifying Lopez and Yakima as the owners of the security assets.  Citibank submitted an Initial Report of Blocked Property to OFAC reporting that it was holding "Security assets owned by SDN, Samark Jose Lopez Bello", and owned by Yakima Trading Corp.  [ECF No. 546-1 at 15-19, as sealed by Order ECF No. 555].  Citibank's Answers [ECF No. Nos. 87 and 126] do not identify *any other person or entity* with an ownership interest in these blocked assets.

---

securities, each with a specific U.S. security identifying number, including the specific quantities of each security, and a listing of the amount of accumulated cash from bond interest or maturity payments (or stock dividend payments) since the United States designated Lopez Bello and his entities as Kingpins and Citibank blocked all his "security assets." (ECF No. 546-1 at 20-22, as sealed by Order ECF No. 555; Ex. 2.). As owners, Lopez and Yakima possess all the rights and privileges that derive from ownership of these security assets (including income, voting rights and power to transfer, redeem, or liquidate them), regardless of how many intermediaries were used to purchase and own them, including through their Bank J Safra Sarasin accounts in Basel Switzerland [under client identification numbers: ***8764;  ***9270], all of which are subject to TRIA execution and turnover by this Court.

Notably, all the securities intermediaries were served with creditor process in the garnishment and none has ever asserted any claim to the securities. Intermediary SIX SIS Ltd. appeared and disavowed any claim to the securities. ECF No. 227 at 8.  The remaining intermediary, Bank J Safra Sarasin, was given statutory notice *twice*—first on March 22, 2019 [ECF No. 100] and then again on April 13, 2019 [ECF No. 191]—and it never appeared or asserted any claim. Indeed, as a matter of law, a securities intermediary has no ownership interest and only acts on behalf of its customer. U.C.C. § 8-503(a).[4]

## 2. THESE ARE SECTION 56.29 "PROCEEDINGS SUPPLEMENTARY" AGAINST LOPEZ BELLO AND YAKIMA AS THE <u>ASSET OWNERS</u>, NOT A GARNISHMENT CLAIM AGAINST CITIBANK

All four of Citibank's Answers filed to date [2019, 2019, 2020 and 2021] uniformly state that "Citibank was not and is not indebted to Lopez Bello or Yakima", and Citibank "has not had any tangible or intangible personal property of Lopez Bello or Yakima in its possession or control."[5]  These proceedings supplementary are not the same claim as the Chapter 77 garnishment *against Citibank* that this Court transferred to New York on April 30, 2020 under the "first-filed rule" and 28 U.S.C. §1404(a).  ECF No. 340. Those proceedings *against Citibank* pending in New York remain stayed to this date subject to orders issued March 10, 2020 and March 29, 2021 by ruling "this case is STAYED <u>pending a decision of the Southern District of Florida</u>."  *Stansell v. FARC*, S.D.N.Y. case 16-mc-405, ECF No. Nos. 67, 196 (emphasis added).  In that stayed S.D.N.Y.

---

[4] U.C.C. §8-503 (with respect to a securities intermediary's obligation to satisfy all securities entitlements regarding a specific financial asset, "all interests in that financial asset held by the securities intermediary are held by the securities intermediary <u>for the entitlement holders</u> [and] <u>are not property of the securities intermediary</u>[.]".  *Id.* (emphasis added).  *See also* U.C.C. Article 8, Prefatory Note ("Section 8-503 provides that these financial assets are held by the intermediary for the entitlement holders, <u>are not the property of the securities intermediary.</u>") (emphasis added).

[5] ECF No. 87, ¶¶ 1-2 (2019 Answer to SDFL writ of garnishment), 126 (2019 Amended Answer adding SIX SIS); S.D.N.Y. 16-mc-405 ECF No. 93 (2nd Amended Answer adding Pescatore creditors in 2020) and S.D.N.Y. ECF No. 324 (3rd Amended Answer adding Caballero creditors in 2021).

Citibank writ, Lopez and Citibank contend that Citibank is not the proper garnishee under U.C.C. § 8-112(c).

These proceedings supplementary will render moot any UCC-based defense that Lopez might attempt to be asserting because in 2022—two years after this Court transferred the garnishment against Citibank to the S.D.N.Y.— the Florida Supreme Court in *Shim v. Buchel*, 339 So.3d 315 (Fla. 2022), ruled for the first time that Your Honor has the power to act on Lopez and Yakima's intangible assets, *wherever they may be located*, by virtue of this Court's personal jurisdiction over Lopez and Yakima.  A turnover directly from the security asset owners themselves will obviate any need to proceed with a Citibank garnishment, and Lopez and Citibank could then no longer complain that Citibank is not the proper garnishee.

Put simply, in every meaningful way, this claim is entirely different from the garnishment action that was transferred to S.D.N.Y.  To wit: (1) it is a different claim; (2) based on a different statute; (3) filed against a different defendant/property holder; (4) based on a newly-operative legal regime.

Finally, state and federal courts have uniformly held that supplementary proceedings under § 56.29 remain with the court that entered the judgment, here the final judgment contained in ECF No. 548.[6]  *Estate of Jackson v. Ventas Realty, Ltd. Partnership*, 812 F. Supp. 2d 1306, 1311 (M.D. Fla. 2011); *MCI Telecom. Corp. v. O'Brien Mktg., Inc.*, 913 F Supp 1536, 1539 (S.D. Fla. 1995).

### 3. PLAINTIFFS HAVE SATISFIED ALL SECTION 56.29 REQUIREMENTS

Plaintiffs have satisfied the statutory criteria for commencing proceedings supplementary under § 56.29. ECF No. 564-2.  On October 2, 2024, the Court granted this motion by issuing a statutory Notice to Appear.  ECF No. 569.

Lopez and Yakima are now both the subject of final judgments before this Court.  Accordingly, this Court is the proper forum for these proceedings supplementary.  Proceedings supplementary under section 56.29 are ancillary,

---

[6] The November 4, 2022 judgment lien has been perfected in Florida against Lopez and Yakima by filing a judgment lien certificate with the Florida Secretary of State pursuant to Fla. Stat. § 55.203 (www.sunbiz.gov, registration number J24000597508).

postjudgment proceedings. *Fundamental Long Term Care Holdings, LLC v. Jackson-Platts*, 110 So. 3d 6, 7–8 (Fla. 2d DCA 2012). They enable the judgment creditor to execute upon the property of the judgment debtor, *regardless of whether that property is held by the debtor or by a third party. See* § 56.29(5); *Jackson–Platts*, 110 So. 3d at 8; *Zureikat v. Shaibani*, 944 So. 2d 1019, 1023 (Fla. 5th DCA 2006) (proceedings supplementary enable speedy and direct proceedings to better afford a judgment creditor the most complete relief possible in satisfying the judgment). *See also* Chief Magistrate Judge Torres' Order ECF No. 162 (April 19, 2019):

> The intent of the Florida legislature in enacting these provisions was to give creditors "a swift summary disposition of issues," while "preserving the equitable character of both proceedings and the remedies available." *Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc.,* 688 F. Supp. 1516, 1517 (S.D Fla. 1988) (citations omitted), aff'd, 900 F.3d 264 (11th Cir. 1990). "Proceedings supplementary are not independent causes of action but are post-judgment proceedings that permit a judgment creditor to effectuate a judgment lien that already exists." *Office Bldg., LLC v. CastleRock Sec., Inc.,* 2011 WL 1674963, at \*2 (S.D. Fla. May 3, 2011).

### 4. THE FLORIDA SUPREME COURT HAS CONFIRMED SECTION 56.29(6) GIVES THIS COURT POWER TO EXECUTE ON LOPEZ & YAKIMA'S ASSETS, EVEN IF THOSE ASSETS ARE ARGUABLY "LOCATED" IN NEW YORK OR EVEN A FOREIGN COUNTRY

In 2022, Florida's Supreme Court overturned an intermediate Florida appellate court ruling that had barred recovery of foreign assets to satisfy judgments. *Shim v. Buechel*, 339 So.3d 315 (Fla. 2022), overruling *Sargeant v. Al-Saleh*, 137 So.3d 432 (Fla. 4th DCA 2014). *Sargeant* had held that a trial court does not have authority to order a debtor to turn over stock certificates *located in another country* in order to satisfy a judgment under Fla. Stat. § 56.29(6). *Shim* rejected this, holding that Fla. Stat. § 56.29(6) provides trial courts the authority to act on any property, including property located abroad. The appellants in *Shim* argued that the trial court's undisputed *in personam* jurisdiction over Shim allowed it to compel Shim to transfer the $4 million to Florida and to creditors thereafter, and the Florida Supreme Court agreed. *Id.*

at 317. The Court went on to analyze Fla. Stat. § 56.29(6), holding that it "unambiguously provides a trial court broad authority" to order *any property* of judgment debtors to be applied to satisfy a judgment debt. *Id.*

Here, the undisputed owners of the subject security assets are before the Court, and the location of any intermediaries Lopez and Yakima used to purchase these U.S. issued and U.S. blocked assets does not affect this Court's power to enter appropriate execution orders and transfer ownership of same.

**B.**     **EACH OF THE ARGUMENTS CONTAINED IN LOPEZ'S AND YAKIMA'S STATUTORY RESPONSE TO THE SECTION 56.29 NOTICE TO APPEAR IS BARRED AND/OR MERITLESS AS A MATTER OF LAW**

Lopez' and Yakima's joint response (ECF No. 570) asserts ten separate defenses, many of which either overlap or are redundant, but we address each separately below. Each of these defenses is either barred or baseless as a matter of law. None of their arguments avoid entry of immediate turnover judgment.

*1st (Baseless) Asserted Defense: That This Court lacks jurisdiction over the Citibank Accounts because the property (accounts and securities) is not located in the State of Florida*

This defense is unquestionably incorrect as a matter of law after the Florida Supreme Court's decision in *Shim v. Buchel*, 339 So.3d 315, 317 (Fla. 2022). *Shim* expanded this Court's powers over "out-of-Florida" assets under § 56.29(6) and provided "broad authority" to order any property of judgment debtors be applied to satisfy a judgment debt, *including property located abroad* by virtue of a court's jurisdiction over the owner of the assets before the court *Id.* at 17. As explained *supra*, this is not a Chapter 77 garnishment action against Citibank, it is proceedings supplementary governed by Chapter 56, specifically § 56.29. This is an entirely different claim that was never transferred to New York, and it is a proceeding *directly against the asset owners* who have submitted to in personam jurisdiction before this Court, thereby rendering their assets subject to execution, including assets arguably "located" in New York or another country. Whatever force Lopez's argument might theoretically have had in a pre-*Shim*

world, the argument is squarely wrong as a matter of law now that *Shim* clearly provides the governing law.

Even before *Shim* existed, this Court rejected the same argument over four years ago, in Order ECF 339 at 2:

> Lopez Bello contends that the Court lacks subject matter jurisdiction over the financial accounts because the bank accounts are not located in Florida. Regardless of the accounts' locations, this Court has subject matter jurisdiction. *See Tribie v. United Development Group Intern. LLC*, 2008 WL 5120769, at *3 (S.D. Fla. Dec. 2, 2008) (Moreno, J.) (Florida has not adopted the "Separate Entity Rule, a somewhat dated and seldom-cited legal doctrine, [which] holds that each branch of a bank is a separate legal entity in the context of a garnishment action.")

*Id.*[7]

### 2nd (Baseless) Asserted Defense: That all matters related to the Citibank Accounts were transferred to the SDNY on April 30, 2024.

This defense fails as a matter of law because this claim was certainly not transferred to New York in 2020, nor could it have been, as the claim is entirely different from the matters transferred to New York—and indeed the legal basis for our present claim (the did not exist until 2022, when the Florida Supreme Court issued its decision regarding foreign assets in *Shim*.

Chief Magistrate Judge Torres' March 23, 2020 Report and Recommendations concluded that "the Writ and the Interpleader Claims should be transferred to the SDNY." ECF No. 323 at 14. This Court then entered an

---

[7] If Lopez and Yakima are arguing that this Court lacks jurisdiction to enforce its own judgments while an appeal is pending, that argument too has been squarely rejected by this Court. Order ECF No. 292 ("The motion is facially meritless. The Court decides when and how it adjudicates motions pending before it and subject to its jurisdiction over an action."). *See Showtime/ The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*, 895 F.2d 711, 713 (11th Cir. 1990) ("The district court retains authority to aid in the execution of a judgment that has not been superseded."). Other Orders of this Court expressly set forth the Court's continuing power to enforce its own judgments despite the pendency of an appeal. *See* ECF No. 247 Order at 4; ECF No. 249 Order at 3; ECF No. 250 Report at 4; ECF No. 254 Order adopting ECF No. 250.

Order transferring to New York "the interpleader claims" filed by Citibank, and Plaintiffs' writ with respect to the Citibank account.  ECF No. 340 at 2-3.

But our Section 56.29 claim is entirely distinct from Citibank's interpleader claim and the writ directed to Citibank.  Those were garnishment claims *against Citibank*; this is a § 56.29 claim directly *against Lopez and Yakima* as owners.  Citibank is not a party here, nor should they be under §56.29.  To repeat: this (1) it is a different claim; (2) based on a different statute; (3) filed against a different defendant/property holder; (4) based on a newly-operative legal regime.  Indeed, we presented these very points to this Honorable Court in our *ex parte* motion for issuance of a Section 56.29 Notice to Appear (ECF. No. 564) and the Court issued its October 2, 2024 Notice to Appear, commencing the statutory proceedings supplementary.  ECF No. 569.

The § 56.29 claim does not seek reconsideration of any prior transfer Orders of this Court.  Indeed, Lopez's and Yakima's protracted discussion about proceedings that have occurred in the SDNY is a complete red herring.

### 3rd Asserted (Baseless) Defense: all matters related to the Citibank Accounts are properly before the SDNY under the first-filed rule.

This argument is entirely redundant of Lopez and Yakima's 2nd defense, and fails for the same essential reasons.  There are, of course, no § 56.29 proceedings supplementary against Lopez and Yakima pending in New York, nor will there ever be, as that statutory execution procedure is unique to Florida. The only matters that were transferred to New York were *garnishment claims* against Citibank, and in those garnishment actions, Citibank alleged it does not even hold any of Lopez' property, and that Plaintiffs should go elsewhere because Citibank is not the proper garnishee. *See* ECF No. 126 ¶ 1("Citibank was not and is not indebted to Samark Jose Lopez Bello ("Lopez Bello") or Yakima Trading Corp. ("Yakima").); ¶ 2 ("Citibank … has not had any tangible or intangible personal property of Lopez Bello or Yakima in its possession or control at any of the times referenced in the Writ."). These proceedings supplementary are consistent with Citibank's stated position.

Notably, the garnishment proceedings against Citibank in New York have been stayed for almost five years awaiting resolution of the Florida proceedings.

> **4th (Baseless) Asserted Defense: That the Citibank Account is not indebted to López and therefore attachment and garnishment of the Citibank Accounts would be contrary to Florida or New York law**.

This argument is a nonsequitur. Citibank does hold the blocked security entitlements owned by Lopez and Yakima in a separate United States blocked account; indeed Citibank is *the only entity* that has ever reported to OFAC that it is holding these blocked assets. *See* ECF No. 546-1 at 16-19. But in any event, this is essentially beside the point, as these § 56.29 proceedings supplementary do not seek attachment or execution on Citibank, only execution and turnover against Lopez and Yakima themselves, who have conceded in multiple filings that they are the undisputed owners. ECF No. 198-3 at ¶¶ 2-3; ECF No. 198-5 at 3; ECF No. 261 at 18-19.

> **5th (Baseless) Asserted Defense: Any attempt by Plaintiffs to attach the Citibank Accounts for the purpose of satisfying their judgment against the FARC Defendants is in violation of The Honorable Robert N. Scola's Transfer Order of April 30, 2020, and the SDNY's Stay Orders of July 9, 2020 and March 29, 2021.**

This argument is entirely redundant with Defenses #2 and 3, and fails as a matter of law for the same reasons.

> **6th (Baseless) Asserted Defense: That López and Yakima were never an agent or instrumentality of the FARC. (See López Bello Declaration of April 3, 2019, ¶¶4, 5,6,7,8).**

The reality that Lopez and Yakima are each an agent or instrumentality of the FARC has been conclusively determined and adjudicated by this Court back in November 2022. ECF No. 548. The fact that, *3 years prior to that determination*, Lopez signed a 2019 affidavit asserting his "innocence" is irrelevant now, and his re-submission of that same 2019 affidavit now does not alter the preclusive effect of the 2022 final determination. Whether viewed through the lens of collateral estoppel or Law of the Case (or both) the upshot is the same: as a matter of law, Lopez and Yakima are agents of instrumentalities

of the FARC—and that reality cannot be disputed.  The pendency of an ongoing appeal from that final determination does not alter its preclusive effect.  *Coleman v. Tollefson*, 135 S.Ct. 1759, 1764 (2015).

### 7th (Baseless) Asserted  Defense: That TRIA, as applied to López , is unconstitutional.

This vague, unspecified argument is frivolous on its face, and in any event has been repeatedly rejected by the Eleventh Circuit.  *See Stansell et al. v. Lopez Bello et al.,* No. 19-11415, 2020 WL 290423 *3 (11th Cir. Jan. 21, 2020) ("Here, as established above, Lopez Bello received actual notice of the District Court's February 15 order after it was issued, and he had the opportunity to contest its findings. Therefore, he was not denied due process under the United States Constitution.").  Six years before this decision, the Eleventh Circuit again held that TRIA is not unconstitutional as applied. *Stansell v. FARC*, 771 F.3d 713, 728-29 (11th Cir. 2014).  *Stansell* held Florida's post-judgment procedures to be constitutional *when applied to third-party designated-and-blocked claimants.  Id.* ("Here, Claimants argue that they were denied due process because they were not granted pre-deprivation hearings — that is, prior to attachment under TRIA. On this point, we disagree. . . . Because the factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing *before the writ issued*. In sum, Claimants were entitled to notice and to be heard *before execution, though not necessarily before attachment*.").

For the third time, in 2022 Lopez again asserted constitutional challenges with the Eleventh Circuit, which again rejected his challenges.  *Stansell v. FARC,* 45 F.4th 1340, 1348 n.3, 1355 (11th Cir. 2022).

Put simply, the constitutional attacks have been squarely and repeatedly rejected.  They cannot be relitigated yet again now.

**8th (Baseless) Asserted Defense: That Initiating a claim under seal and maintaining the pleadings (D.E. 564) under seal without notice or disclosure to López Bello violates the Due Process Clause.**

Like the vague, unspecified constitutional challenge asserted in the 7th asserted defense, this argument, too, has been squarely answered already by the Eleventh Circuit.  In 2022, the Eleventh Circuit explained: "To the extent that the López appellants claim that the ex parte proceeding culminating in the initial writs of garnishment denied them due process, we rejected that argument in *Stansell IV*, 802 F. App'x at 448–49, and therefore do not address it further here." *Stansell*, 45 F.4th at 1348, n.3.

To be clear, there is no notice requirement when seeking merely *to attach* assets—or as here, taking *the preliminary step* of issuing a Notice to Appear, which is akin to issuing a writ to attach.  *Stansell v. FARC*, 771 F.3d 713, 728 (11th Cir. 2014) ("Claimants argue that they were denied due process because they were not granted pre-deprivation hearings—that is, prior to attachment under TRIA. On this point, we disagree.").  As the Eleventh Circuit held, the due process requirement of notice and opportunity to appear kicks in only *at the execution stage*, not at the *initial attachment* stage.  *Id.* at 729 ("Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment.").

Here, Lopez and Yakima appeared and submitted to the jurisdiction of the Court.  ECF Nos.  55 & 57.   There is no dispute that as parties to this litigation, their counsel received CMECF service of the Notice to Appear in accordance with *Stansell*, 771 F.3d at 728.  The ex parte motion and the public open-court service of the Notice to Appear follows *Stansell* and comports with due process.  *Id.*  The Notice to Appear placed Lopez and Yakima on notice of what blocked assets they own which could be used to partially satisfy Plaintiffs' judgments. All of this is appropriate, including the Lopez and Yakima's opportunity to respond now to this Motion for Final Turnover Judgment.[8]

---

[8] Plaintiffs filed a sealed, ex parte motion to commence proceedings supplementary on July 8, 2024 which requested an Order directing the Clerk to "maintain the seal until

**9th (Baseless) Asserted Defense: That the itemized security assets … are the same Citibank accounts and associated legal questions that were transferred to the SDNY on April 30, 2024. (D.E. 340 SDFLA).**

This argument is entirely redundant with Defenses #2 and 3, and fails as a matter of law for the same reasons.

**10th (Baseless) Asserted Defense: That Chapter 48 of the Florida Statutes required service methods upon Lopez such as those authorized by the Hague Convention.**

This argument is baseless as a matter of law.  Lopez and Yakima voluntarily intervened in this action and have each submitted to in personam jurisdiction of this Court.  ECF No. 55 & 57.  *See In Re Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 471 F.3d. 1233, 1248 (11th Cir. 2006).

Moreover, Lopez admitted that when he was blocked by OFAC he and his family were residing in Florida and intended to permanently relocate here. *United States vs. Lopez Bello*, S.D.N.Y. No. 1:19-cr-00144-AKH, ECF No. 275 at 2.

No further personal service on Lopez or Yakima was required where they affirmatively intervened in this action more than five years ago, back in 2019, and have been represented by six counsel of record at three different law firms, and have actively litigated in this court for over five years ever since.  Lopez and Yakima's counsel were served with the Notice to Appear by CM/ECF.  ECF No. 569.  No further formal service of process was required on a party who has intervened and appeared through counsel of record admitted to practice before

---

20 days after entry of the Court's Order on this Motion and issuance of the Statutory Notice to Appear to Lopez Bello and Yakima." ECF No. 564. The proposed Order and proposed Notice to Appear called for emailing the Order and Notice once entered to all of Lopez and Yakima's counsel of record, and plaintiffs ' counsel were prepared to do so. ECF No. 564, Exs. 4, 5.  However, the proposed Order and Notice to Appear were never entered.  The Notice to Appear that was ultimately issued was done so in a public filing and not ex parte, which allowed counsel for Lopez and Yakima to receive the publicly entered Notice to Appear ECF No. 569 via CM/ECF and not email from plaintiffs' counsel.  Plaintiffs' counsel have now provided Lopez' counsel with copies of the ex parte motion ECF No. 564 and exhibits thereto.

this Court.  These are ancillary proceedings to enforce a judgment against parties *who are already before the Court.*

**C.    AS INDEPENDENT, ALTERNATIVE BASES FOR GRANTING TURNOVER JUDGMENT, THE COMMON-LAW FUGITIVE DISENTITLEMENT DOCTRINE AND FLA. STAT. § 772.13(6) (2023) BOTH APPLY AND PRECLUDE LOPEZ AND YAKIMA FROM PREVENTING IMMEDIATE TURNOVER OF THE SUBJECT ASSETS.**

As wholly independent, alternative bases for turnover, Lopez and Yakima's statutory response and defenses are barred by the common-law fugitive disentitlement doctrine, *see Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001) (holding the doctrine applicable to civil plaintiffs); and/or Florida's statutory fugitive disentitlement doctrine.  *See* § 772.13(6), Fla. Stat.  This Court has previously discussed and applied the common law doctrine, so there is no need for protracted discussion of it here.

In Section 772.13(6), signed into law on June 20, 2023, the Florida Legislature expressly modified the procedure on execution of certain judgments:

> (6)(a)  In any postjudgment execution proceedings to enforce a judgment entered under this section or under 18 U.S.C. s. 2333 or a substantially similar law of the United States or of any state or territory of the United States:
> 1.   There is no right to a jury trial under s. 56.18 or s.77.08; and
> 2.   A defendant or a person may not use the resources of the courts of this state in furtherance of a defense or objection to postjudgment collection proceedings if the defendant or person purposely leaves the jurisdiction of this state or the United States, declines to enter or reenter this state or the United States to submit to its jurisdiction, or otherwise evades the jurisdiction of the court in which a criminal case is pending against the defendant or person. This subparagraph applies to any entity that is owned or controlled by a person to whom this paragraph applies.
> (b)  Paragraph (a) applies to any judgment collectible under state law and to any civil action pending or filed on or after June 20, 2023.

Fla. Stat. § 772.13(6).

Plaintiffs are engaged in post-judgment execution proceedings to enforce an ATA judgment under 18 U.S.C. § 2333, therefore this statute clearly applies.

They are entitled to enforce this judgment, and their 2022 final default judgment directly against Lopez and Yakima, against the blocked assets of Lopez and Yakima, who have each been determined to be an agency or instrumentality of the terrorist party FARC. *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 184 (2d Cir. 2019) ("A TRIA § 201 claim is not a suit for a judgment, but rather one to enforce a judgment already obtained."). *See Stansell,* 771 F.3d at 737 (same).

Subsection 6(a)(2) of the new statute has now codified a fugitive disentitlement doctrine in terrorism litigation. As this Court and the Eleventh Circuit have already determined Lopez to be a fugitive, *Stansell v. Revolutionary Forces of Colombia*, 45 F.4th 1340, 1348 (11th Cir. 2022), the net effect is that Lopez cannot use this Court to defend the § 56.29 proceeding while he remains a fugitive. Here Lopez has remained a fugitive for over five years since his indictment, and for more than one year since the enactment of § 772.13(6). Being a fugitive was *his choice.* He has therefore waived or abandoned his right to contest these proceedings supplementary.[9]  *See Tejada v In re Forfeiture of $406,626.11 In U.S. Currency*, 820 So. 2d 385, 388 (Fla. 3d DCA 2002) holding that "enforcement of a disentitlement rule under proper authority does not violate due process." *Id.* ("[Tejeda's] own actions or inactions as a fugitive after the enactment of the statute is what prevents him from pursuing his claim to the funds."). The statute applies with equal vigor to Yakima, the shell company owned or controlled by Lopez. Fla. Stat. § 772.13(6)(a)2; ECF No. 547 at 2.

Moreover, the statute specifies that in postjudgment execution proceedings such as these, "[t]here is no right to a jury trial under s. 56.18 or s.77.08[.]" Fla. Stat. § 772.13(6)(1)a. This negates Lopez and Yakima's argument (previously made to this Court and the Eleventh Circuit) that Florida statutory

---

[9] On December 4, 2023, the Florida Attorney General filed a response in opposition to the Lopez entities motion to find Fla. Stat. § 772.13(6) unconstitutional. *Marron v. Maduro et al.*, SDFL Case 21-cv-23190-FAM, ECF No. 129.

law "entitles" them to a jury trial.  That prior statutory right has now been legislatively rescinded.[10]

Lopez and Yakima fall squarely within the new statute – Lopez as a continuing fugitive and both because they are judgment debtors.  ECF No. 548. Here, the agencies or instrumentalities were afforded notice and an opportunity to be heard, and they have appeared and have been heard for years by this court, the Eleventh Circuit, and even multiple requests for certiorari relief to the United States Supreme Court.

All Lopez needs to do to resurrect the right to be heard and contest these proceedings is the same that fugitives must do who seek to contest government forfeitures under the Civil Asset Forfeiture Reform Act, 28 U.S.C. § 2466, or the Florida forfeiture statute, Fla. Stat. § 896.106—namely, he must appear and end his fugitivity.[11]  Plaintiffs notified Lopez of the enactment of § 772.13(6) on June 20, 2023, and he has nonetheless chosen to maintain his fugitive status.

The common law and statutory fugitive disentitlement doctrine provide independent, alternative bases to grant the relief requested herein.

---

[10] Plaintiffs respectfully note that the statute specifies that in postjudgment execution proceedings such as these, "[t]here is no right to a jury trial under s. 56.18 or s.77.08[.]" Fla. Stat. § 772.13(6)(1)(a).  In its October 2, 2024 Notice to Appear, this Court mentioned Lopez and Yakima's right to a jury trial.  ECF No. 569 at 2.  That prior statutory right has now been legislatively rescinded.  If this Court chooses to reach out to address the effect of the new Florida Statute—which again, it need not do at all in order to grant the present Motion—the Court should reconsider this aspect of its October 2, 2024 Notice to Appear that mentioned a jury trial right.

[11] Federal courts that have expressly decided due process challenges have unanimously held that fugitives have waived or abandoned their due process rights to defend civil forfeiture actions under CAFRA, and therefore there is no due process concern of applying the FDD in those actions. *United States v. Batato*, 833 F.3d 413, 427 (4th Cir. 2016); *United States v. $1,474,770.00 in U.S. Currency*, 538 F. Supp. 2d 1298, 1302 (S.D. Cal. 2008); *United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338*, 617 F. Supp. 2d 103, 129 (E.D.N.Y. 2007); *United States v $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 45 (D.D.C. 2007); *Collazos v. United States*, 368 F.3d 190, 202 (2d Cir. 2004).  The only Florida state court to have addressed this issue also held that "enforcement of a disentitlement rule under proper authority does not violate due process." *Tejada v. In re Forfeiture of $406,626.11 In U.S. Currency*, 820 So. 2d 385, 388 (Fla. 3d DCA 2002).

## IV.  CONCLUSION AND PRAYER FOR RELIEF

Accordingly, Plaintiffs request entry of a TRIA Turnover Judgment (in the proposed form attached as **Ex. 1**, pursuant to Local Rule 7.1(a)(2)):

A.    Confirming that Lopez and Yakima have submitted to the Court's jurisdiction, and have been determined to be agencies or instrumentalities of the FARC, thereby rendering their blocked assets, wherever located, subject to post-judgment execution under TRIA and F.S.§ 56.29;

B.    Transferring ownership of Lopez and Yakima's subject security entitlements and cash identified in: (i) ECF No. 546-1 at 15-19 & 20-22, as sealed by Order ECF No. 555; (ii) ECF 564-2; and (iii) Bank J Safra Sarasin Basel Switzerland accounts under Samark Jose Lopez Bello and Yakima Trading Corporation names or otherwise under client identification numbers: ***8764; ***9270 to the Plaintiffs c/o the "Porter & Korvick, P.A. Securities Trust Account" in Miami, including all the security assets set forth in the statutory Notice to Appear, and including all the rights and privileges that derive from ownership of these securities, including income, voting rights and power to transfer, redeem or liquidate;

C.    Directing Plaintiffs' counsel, within 48 hours of entry of the Order, to notify counsel for OFAC, Bank J Safra Sarasin, SIX SIS, Citibank, and The Depository Trust Corporation of the ownership transfer from Lopez and Yakima to Plaintiffs with instructions to transfer all the security entitlements and related cash assets to the "Porter & Korvick, P.A. Securities Trust Account" in Miami, in order to commence the process of liquidation of these security assets; and

D.    Directing Plaintiffs' counsel, within seven (7) business days of completing the liquidation process, to file a report with the Court detailing the total amount of the completed liquidation, including all accrued cash, and the net amount recovered after brokerage fees and liquidation expenses, so the Court can determine the remaining amount of the *Stansell* Plaintiff's ATA judgment.

Respectfully submitted October 14, 2024.

/s/ Newton P. Porter, Esq.   /s/Richard B. Rosenthal, Esq.
(FL Bar: 833738)      (FL Bar: 0184853)
/s/ Tony Korvick, Esq.     Co-counsel for Plaintiffs
(FL Bar: 0768405)      1581 Brickell Avenue
PORTER & KORVICK, P.A.   Suite 1408
Attorneys for the *Stansell* Plaintiffs Miami, Florida 33129
4000 Ponce de Leon Blvd Suite 470 Telephone: (305) 992-6089
Coral Gables, Florida 33146  rbr@rosenthalappeals.com
Telephone: (305) 373-5040
nporter@porterandkorvick.com
tkorvick@porterandkorvick.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing document and the notice of electronic filing by electronic mail to the following persons:

Plaintiffs have complied with all litigation reporting requirements to OFAC under 31 C.F.R. 501.605:

OFFICE OF FOREIGN ASSETS CONTROL
U.S. Department of the Treasury
1500 Pennsylvania Ave. NW
Washington DC
[by email service directly to OFAC counsel in compliance with 31 CFR 501.605]

      /s/ Tony Korvick
      TONY KORVICK_ (FL Bar 768405)
      PORTER & KORVICK, P.A.
      Attorneys for Plaintiffs
      4000 Ponce de Leon Blvd Suite 470
      Coral Gables, Florida 33146
      Telephone:  (305) 373-5040
      tkorvick@porterandkorvick.com