IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KEITH STANSELL, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC), et al.,<br><br>　　　　　　　　Defendants. | Civil Action: 1:19-cv-20896-RNS |

**SAMARK JOSE LÓPEZ BELLO'S AND YAKIMA TRADING CORPORATION'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TURNOVER JUDGMENT**

The undersigned counsel for Samark Jose López Bello and Yakima Trading Corporation[1] (hereinafter "López Bello") hereby files this Brief in Opposition to Plaintiffs' Motion for Turnover Order.

---

[1]　Counsel has not been able to communicate with López Bello either directly or through counsel since López Bello's publicly reported arrest in Venezuela on April 9, 2024. On October 2, 2024, the Court ordered López Bello and Yakima Trading Corporation to appear in 7 business days or suffer potential adverse consequences under Florida Statute 56.29. The adverse consequences, include but are limited to, a turnover order regarding the execution of accounts and securities.

　As officers of the Court, undersigned counsel was professionally obligated to respond to the Stansells' Motion for Turnover and raise defenses that were based on the historical record in the Southern District of Florida ("SDFL"), the Eleventh Circuit Court of Appeals, and the Southern District of New York ("SDNY"), where litigation over the Citibank accounts and securities, which are the subject of the Notice to Appear and Plaintiff's Turnover Motion is ongoing. As Officers of the Court, undersigned counsel was professionally obligated to disclose to this Court the procedural history regarding the "Citibank Accounts," which include this Court's Transfer Order of the Citibank Accounts to the SDNY on April 30, 2020, and the multiple stays entered by the SDNY regarding any action on the Citibank Accounts.

　Consultation with the client as to the procedural history and current status of the Citibank Accounts was unnecessary to fulfill the undersigned attorneys' obligation to the Court. Likewise, consultation with the client regarding defenses pled and legal arguments raised in opposition to the Motion for Turnover was unnecessary. The defenses include those that were previously adjudicated by this Court and were based on the historical record of the SDFL and transferred Citibank Accounts in the SDNY (cont.).

I. **Introduction**

Plaintiffs argue that its revamped Section 56.29 action is "entirely distinct from Citibank's interpleader claim and the writ directed to Citibank. Those were garnishment claims *against Citibank;* this is a § 56.29 claim directly *against Lopez and Yakima* as owners." (ECF No. 571 at 12). This is pure nonsense.

This Court's jurisdiction is based on TRIA, not Florida law. Only by virtue of TRIA are Plaintiffs able to seek attachment and execution of the alleged OFAC blocked asset. The question is whether the Citibank Accounts are attachable and are subject to execution based on TRIA, not state law. State law collection mechanisms, and the vagaries of state law, do not provide this Court with subject matter jurisdiction, TRIA grants subject matter jurisdiction, as Plaintiffs so admit. (ECF No. 571 at 1 ) ("This Court has subject matter jurisdiction to conduct postjudgment execution proceedings of Plaintiffs' final judgment under the federal Anti-Terrorism Act ("ATA"), rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. §1963, with postjudgment execution under the ATA, TRIA §201…") TRIA controls what is attachable and subject to execution. Plaintiffs method of attachment and execution is irrelevant. Whether Plaintiff seeks execution under Chapter 56 or Chapter 57 of the Florida Statues, TRIA controls.

This Court transferred the entire TRIA action related to the Citibank Accounts to the SDNY, which included all pleadings, and all defenses raised by López Bello. López Bello, in his SDFL pleadings, argued among others, that the Citibank Accounts were not attachable nor were the Citibank Accounts subject to execution. Citibank's Interpleader Action did not override López Bello's defenses and somehow made the Interpleader Action the primary action. In fact, it was Plaintiffs who caused Citibank to intervene and file an Interpleader Action.

Citibank's Interpleader Action was not, and is not, a new and separate claim from Plaintiffs' original TRIA action first filed in the SDNY and thereafter in the SDFL. Every single issue related to the Citibank Accounts were transferred to the SDNY, where it should remain for the reasons articulated in the April 30, 2020 Transfer Order. (SDFLA ECF Nos. 323 and 340),¹ and those that follow.

II. **PROCEDURAL HISTORY**

---

¹ Undersigned counsel, however, needs direct input and direction from López Bello to continue any further representation. As a result, undersigned counsel will soon be filing a Motion to Withdraw as counsel of record.

2

On October 2, 2004, Counsel received an ECF Notice which referenced an attached notice titled "Statutory Notice to Appear." The Notice to Appear states, in part:

> YOU ARE HEREBY NOTIFIED that, pursuant to section 56.29, Florida Statutes, proceedings supplementary to satisfy a judgment have been initiated against you by Judgment Creditors, Keith Stansell, Marc Gonsalves, Thomas Howes, Judith Janis, Michael Janis, Christopher Janis, and Jonathan Janis, who seek satisfaction of their unsatisfied judgment by application of the following intangible security assets owned by you:
> Itemized security assets identified and itemized at D.E. No. 546-1, Exs. 1,2, pp. 16–22, as amended and sealed by Order [D.E. 555], and related cash assets in the blocked securities account.
> You are required to serve an affidavit **no later than seven (7) business days from the date of service of this Notice** stating why the assets identified above should not be applied toward the satisfaction of the judgment. The affidavit must be served on counsel of Judgment Creditor: Newton Porter or Tony Korvick, Porter & Korvick, P.A., 400 Ponce De Leon Blvd., Suite 470, Coral Gables, FL 33146, via email at either Porter@porterandkorvick.com or tkorvick@porterandkorvick.com. You must file the original affidavit with the clerk of court either before service on the Judgment Creditor or immediately thereafter. Legal defenses need not be filed under oath but must be served contemporaneously with the affidavit.

(D.E. 569).

The SDFL docket indicates that a Motion ("Sealed Motion") was filed under Seal on July 8, 2024. (D.E. 564). The SDFL docket does not indicate that the Sealed Motion was served on López Bello or Counsel via ECF or any other means.

The references to certain exhibits in the Notice to Appear are taken directly from Plaintiffs' discovery requests related to the Citibank Accounts. The SDFL pleadings related to the Citibank Accounts revealed that those accounts and securities were created by Citibank at the request of SIX SIS Ltd., successor-in-interest to Intersettle Swiss Corporation for International Securities Settlements ("SIX") in the State of New York. (Report and Recommendation, 3/23/2020 D.E. No. 323 at 3, approved on 4/30/2020, ECF No. 340) (Attachment 2). Litigation to adjudicate the *res* and, concomitantly, all issues related to the Citibank Accounts were transferred to SDNY on April 30, 2020 (D.E. 340) (Attachment 1).

### A. The Itemized Accounts Set forth in the Notice to Appear were transferred by this Court to the Southern District of New York on April 30, 2020 (D.E. 340)

3

On March 18, 2019, Citibank served its Answers to the Writ of Garnishment with Affirmative Defenses. (D.E. 87 SDFL). On April 8, 2019, Citibank served and filed its Amended Answer to the Writ, adding a Counterclaim and Crossclaims Seeking Relief in the Nature of Interpleader. (D.E. 126). Citibank's original and amended answers to the Writ stated that they are not in custody or control of any account owned by López Bello and Yakima Trading Corporation. Citibank also verified that is not indebted to López Bello and Yakima Trading Corporation. (D.E. No. 87, ¶¶1-2; D.E. No. 126, ¶¶1-2). Citibank further pled that the so-called "blocked account numbers" (four redacted account numbers) referenced in the Writ are Citibank's reference numbers for four separate blocking transactions. Citibank stated that the blocked property is "maintained in a single blocked securities account, which bears Account No. (redacted) (the "Blocked Account") held in the name of SIX SIS Ltd., successor-in-interest to Intersettle Swiss Corporation for International Securities Settlements ("SIX")." (D.E. No. 126, ¶3).

At SIX's request, Citibank blocked —in four separate internal transactions — certain security entitlements originally held in SIX's securities account. Those security entitlements were blocked pursuant to the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. part 598 (the "SDNTK Regulations"), because, according to SIX, Lopez Bello and Yakima may have been the ultimate beneficiaries of the underlying securities. Citibank transferred the security entitlements identified by SIX to the Blocked Account, which was opened at Citibank's New York branch in SIX's name. (D.E. No. 126, ¶6).

In short, Citibank's pleadings attest that the accounts and securities referenced in D.E. No. 546-1, Exs. 1,2, pp. 16-22 are the same so-called OFAC "blocked account numbers" (four redacted account numbers) referenced in the original Writ of Garnishment.

On March 22, 2019, the Plaintiffs filed a Reply to Citibank's original answers and raised objections pursuant to Florida Statute § 77.061. The Plaintiffs did not dispute that Citibank opened the "blocked account" at Citibank's New York branch, in SIX's name. (D.E. 99, ¶5).

On April 22, 2019, López Bello and Yakima Trading Corporation filed a Motion to Dismiss Writ of Attachment and Interpleader Complaint of Citibank, or in the Alternative, Motion to Change Venue. (D.E. 174). That Motion was granted in part and denied in part on April 30, 2020. (D.E. 340) (Attachment 1). The April 30, 2020 Order transferred all matters relating to the Citibank account, over Plaintiffs' objection, to the Southern District of New York under the "first filed rule." (D.E. 340) (Attachment 1). As such, this Court has abdicated all adjudicatory function over the accounts identified by the October 2, 2024 Notice to Appear.

### B.     The Citibank Accounts

The accounts and securities referenced in D.E. No. 546-1, Exs. 1, 2, pp. 16-22 are the same *res* and subject matter of Plaintiff's TRIA Turnover Motion on the Citibank Accounts. (D.E. No. 177).  The April 30, 2020 Order transferred the Plaintiffs' *ex parte* application for a writ of attachment under TRIA (ECF No. 18) with respect to the Citibank account to the Southern District of New York.  The Court denied Plaintiffs' motion for entry of a TRIA Turnover Judgment on Citibank (ECF No. 177) as moot.

The Citibank Account, which is the same account and securities identified in D.E. No. 546-1, Exs. 1,2, pp. 16-22, was transferred to the Southern District of New York.  In transferring the matter to the Southern District of New York, the Court noted:

> The Blocked Account is comprised of security entitlements and related cash proceeds that were previously held in SIX's securities accounts that were maintained on the books of Citi's New York branch. These securities accounts originate from a Direct Custodial Services Agreement entered into by SIX and Citi in New York back on September 22, 1994. Citi acts as SIX's securities custodian under the agreement, holding securities at The Depository Trust Company and the Federal Reserve Bank of New York for SIX's benefit. In turn, Citi recorded the entitlements and related cash proceeds to those securities in accounts maintained on its own books in the name SIX. Citi moved this property to the Blocked Account after SIX reported to Citi that Movants may have been the ultimate beneficiaries of the underlying securities. Citi does not know if there are other beneficial owners of the Blocked Account, including SIX, and cannot confirm if Movants are the beneficial owners.

(Report and Recommendation, 3/23/2020 ECF No. 323 at 3, approved on 4/30/2020, ECF No. 340 SDFLA) (Attachment 2).  The Court further held, when recommending transfer of the Citibank account, that any potential discovery disputes regarding the Blocked Account and its creation and ownership could be resolved before the Court in the Southern District of New York because that is where it was created and currently managed.  Additionally, this District has no personal jurisdiction against SIX, the party that created the securities accounts that fund the Blocked Account.  *Id.* at 11.

On April 30, 2020, this Court relinquished jurisdiction over the Citibank Accounts, referenced in D.E. No. 546-1, as Exs. 1,2, pp. 16-22 (Attachment 1).  All issues related to the Citibank Accounts are currently pending and being adjudicated by SDNY.  These issues include the primary questions of whether the judgments entered in SDFL have collateral estoppel effect in SDNY and, if collateral estoppel does not apply, whether Plaintiffs have established agency or instrumentality sufficient to satisfy Second Circuit requirements.  The SDNY will also

adjudicate, in a second phase, whether, as a matter of law, the Citibank Accounts are even domestic and attachable under TRIA. That second phase question, however, cannot be answered until after discovery is completed.

        **C.**     **Post-Transfer of the Citibank Accounts**

              **1.**    **Plaintiffs, López Bello and Citibank's Status Report and Legal Positions**

On May 14, 2020, Plaintiffs, López Bello, and Yakima Trading Corporation filed a Joint Status Report in SDNY setting forth their legal positions. (Attachment 12). On May 26, 2020, Citibank reported that it does not believe "it is the proper garnishee for any attempted attachment of the Intervenors' interests, and Plaintiffs' arguments to the contrary appear to be unsupported." (Letter Brief (D.E. 76 16-405 (SDNY)) (Attachment 3).

On July 6, 2020, Plaintiffs sought discovery from López Bello and Yakima Trading Corporation by way of pre-motion letter. (D.E. 83 SDNY) (Attachment 4). López Bello and Yakima Trading Corporation objected to the request. (D.E. 85 SDNY) (Attachment 5).

On July 9, 2020, the Honorable Andrew Carter held a hearing to determine how to address the legal questions related to the Citibank Accounts. At the conclusion of the hearing, Judge Carter ordered that the question of whether the Citibank Accounts were attachable and collectible under TRIA would be broken down into two phases. Phase I would focus on whether López Bello was an agent or instrumentality of the FARC Defendants. Phase II would then decide the separate question of whether the Citibank Accounts are domestic and attachable under TRIA and Article 8 of the Uniform Commercial Code. Judge Carter issued an Order **staying all discovery** relating to the Citibank Accounts pending the outcome of Phase I.

              **2.**    **Phase I and Phase II**

Briefing on Phase I in the SDNY included four parts: (1) whether collateral estoppel applies to prevent Intervenors from litigating certain matters already determined by the U.S. District Court for Southern District of Florida ("SDFL"), in particular, whether Intervenors are each an "agency or instrumentality" of a terrorist party, i.e., the FARC; (2) if collateral estoppel does not apply here, whether Plaintiffs' writs to Intervenors in any event were valid pursuant to governing law; (3) whether the Intervenors have been afforded Due Process; and (4) whether the collectible amount of Plaintiffs' Anti-Terrorism Act Judgment is the full $318,030,000 compensatory amount stated on the face of the Judgment itself, as opposed to only one-third of that amount ($106,010,000). (Plaintiffs' Submission, July 20, 2020 (D.E. 86 SDNY)

(Attachment 6).² As of February 25, 2021, all the issues on Phase I were fully briefed by Plaintiffs, López Bello and Citibank. (*See* Plaintiffs' Submission, February 25, 2021 (D.E. 187 SDNY) (Attachment 7). **Importantly, even if Phase I ultimately in Plaintiff's favor, the question of whether the Citibank Accounts could be attached and collected upon still must be decided by SDNY.**

Per Judge Carter's July 9, 2020 Order, Phase II would only be reviewed and adjudicated upon completion of Phase I. Once Phase I is completed, Plaintiffs, Citibank and López Bello would be entitled to engage in discovery related to the Citibank Accounts and motion practice related to the legal question of whether the Citibank Accounts are attachable under TRIA and Article 8 of the Uniform Commercial Code. *See* 5/26/2020 Citibank Brief, (D.E. 76-2 (SDNY) (Citibank's Memorandum of Law sets forth the reasons why the Citibank Accounts are not subject to garnishment under TRIA or state law. (Attachment 8). Phase II has not begun because SDNY has not completed its review of the briefing on Phase I.

### 3. Plaintiffs' Motion to Lift Stay of Discovery in SDNY

In March 2023, Plaintiffs filed an application seeking to lift the stay of discovery and motion practice related to the Citibank Accounts. The SDNY Court denied Plaintiffs' request and reaffirmed the stay on all discovery and matters related to the Citibank Accounts. *Stansell v. Revolutionary Armed Forces of Colombia (FARC),* No. 16-mc-405LGSSN (SDNY Mar. 29, 2021) (Schofield, J.) (Attachment 9) ("Plaintiffs' request to lift the stay on discovery regarding whether Citibank is the proper garnishee as to Lopez Bello is **DENIED.** Pursuant to Judge Carter's ruling during the July 9, 2020, conference, the Court will first resolve the Phase I issues.") (emphasis in the original); *see also* Plaintiff's May 10, 2024 Letter addressed to Chief Magistrate Judge Netburn (SDNY D.E. 551) (Attachment 10).

Three years later, on May 10, 2024, Plaintiffs reported to Magistrate Netburn that all matters related to the Citibank Accounts involving López Bello, were stayed, and remained stayed in the SDNY. Plaintiffs' letter stated:

> There is a separate execution proceeding (commenced in January 2019) pending in this action, involving garnishee Citibank, N.A., and blocked assets owned by

---

² Only issue number four has been adjudicated by SDNY. *See Stansell v. Revolutionary Armed Forces of Colombia (FARC),* No. 16-mc-405LGSSN, 2022 WL 2530359, at *21 (S.D.N.Y. Mar. 29, 2022), *report and recommendation adopted sub nom. Stansell v. Revolutionary Armed Forces of Colombia,* No. 16-mc-405LGSSN, 2022 WL 17830551 (S.D.N.Y. Dec. 21, 2022) ("The ATA's treble damages provision is compensatory and judges in the Stansell litigation have awarded compensatory damages accordingly, so the whole judgment is collectable through TRIA § 201(a)").

>Samark Lopez Bello and Yakima Trading Corp. Dkt. Nos. 19, 26, 88. This is the only interpleader in this action that is fully at issue. Dkt. Nos. 324 (Citibank Third Amended Answer/Interpleader), 328 (Stansell/Janis Answer), 329 (Six Sis Answer), 335 (Caballero Answer), 347 Lopez Bello/Yakima Answer). This **interpleader has already been stayed**, and does not involve any Venezuelan state-owned entities or subsidiaries, and the subject assets were blocked under the Foreign Narcotics Kingpin Designation Act sanctions, not the Venezuelan government sanctions program. Judge Carter's March 10, 2020 Order staying the Citibank-Lopez Bello execution "pending resolution of the outstanding turnover motions in the Southern District of Florida" [Dkt. No. 67] was maintained by Judge Schofield's March 29, 2021 Order. Dkt. No. 196. In late 2022, the Southern District of Florida entered final default judgments against Samark Lopez and his entities and those final judgments are currently on appeal. 11th Cir. No. 22-13798. The Eleventh Circuit heard oral argument on January 24, 2024.

May 10, 2024 Letter (SDNY D.E. 551) (Attachment 10). Judge Netburn "So Ordered" Plaintiff's correspondence and the stay as to the Citibank Accounts remains in effect in the SDNY. *See id.* When that stay is lifted, SDNY will proceed to Phase II. Any adjudication related to the Citibank Accounts before that time would circumvent the protocol established by Judge Carter's Order and deprive all parties, including Citibank and SIX, of the opportunity to litigate those issues.

### III.  ARGUMENT

#### A.  Principles Of Comity Require This Court To Dismiss Plaintiffs' Motion For Turnover.

On April 30, 2020, this Court transferred all matters related to the Citibank Accounts to the SDNY under the first-filed rule. (Report and Recommendation, 3/23/2020 ECF No. 323 at 3, approved on 4/30/2020, ECF No. 340 SDFLA) (Attachment 2). The parties do not dispute that all litigation related to the Citibank Accounts is pending before the SDNY. The parties also do not dispute that the SDNY set forth a briefing schedule on the legal issues related to whether the Citibank Accounts were/are attachable under TRIA. The parties also agree that the SDNY placed the matter in stay pending resolution of other matters related to Plaintiffs' claims brought in the SDNY, which include the very *res* at issue. Under the principles of comity, this Court should deny Plaintiff's requested relief.

The Eleventh Circuit has determined that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Williams v. Mosley,* No. 21-CV-23242, 2021 WL 6197757, at *2 (S.D. Fla. Dec. 30, 2021) (citing *Manuel v.*

8

*Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005 The "'[t]he first-to-file rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions.'" *Williams,* 2021 WL 6197757, at *2 (citing *Alhassid v. Bank of Am., N.A.*, No. 14-20484-CIV, 2014 WL 2581355, at *2 (S.D. Fla. June 9, 2014)). On April 30, 2020, this Court applied the "first-filed" rule and all matters related to the Citibank Accounts were transferred to SDNY. This ruling is the law of the case and should not be disturbed.

Plaintiffs' Motion for Turnover is an attempt to relitigate the question of whether first-filed rule applied to the Citibank Accounts. In 2020, Plaintiffs objected to transferring the matter to the SDNY and argued that the "first-filed" rule did not apply. (ECF No. 329) (Pls. Objections to Report and Recommendation at 7-9; 20) ("The Court should REJECT EN TOTO the Magistrate Judge's Report and Recommendations DE 323, and thus should not transfer this matter to the Southern District of New York."). The SDFL rejected every single equitable and legal argument made by Plaintiffs. (ECF. No. 340). The question of whether the Citibank Accounts, the subject matter of the instant Turnover Motion, should be transferred to the SDNY was explicitly decided by the SDFL. Thus, Plaintiffs' Motion should be denied.

### B. TRIA Does Not Permit This Court To Execute Upon Foreign Assets That Are Not Blocked And Located In The United States

TRIA is the only relevant statute that permits Plaintiff to seek attachment and satisfaction of their Anti-Terrorism Act judgment against agents and instrumentalities of the FARC Defendants. *Stansell,* 802 F. App'x at 446–47 (citing *See* § 201(a) of TRIA, Pub. L. No. 107-297, 116 Stat. 2322 (codified at 28 U.S.C. § 1610(b)); *and Stansell I,* 771 F.3d at 726. The Kingpin Act gives OFAC the authority to designate foreign narcotics traffickers and block assets owned or controlled by those traffickers. *See* 21 U.S.C. § 1901 *et seq.*; 31 C.F.R. § 598.101 *et seq. Stansell v. Lopez Bello,* 802 F. App'x 445, 447 (11th Cir. 2020).

Under the TRIA, judgment creditors may satisfy an Anti-Terrorism Act judgment if (1) the asset is designated as "blocked" by the Department of Treasury's Office of Foreign Assets Control ("OFAC"); and (2) the judgment creditors establish that the blocked properties are owned by the terrorist organization they received a judgment against, or are owned by agencies or instrumentalities of that terrorist organization. *Stansell,* 802 F. App'x at 447. Under the Kingpin Act, "blocked assets" are defined as:

> (a) All property and interests in property that are in the United States, that come within the United States, or that are or come within the possession or control of

> any U.S. person, of a specially designated narcotics trafficker are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in.
> \*\*\*\*
> (c) Unless authorized by this part or by a specific license expressly referring to this part, any dealing in securities (or evidence thereof) held within the possession or control of a U.S. person and either registered or inscribed in the name of, or known to be held for the benefit of, or issued by, a specially designated narcotics trafficker is prohibited. This prohibition includes the transfer (including the transfer on the books of any issuer or agent thereof), disposition, transportation, importation, exportation, or withdrawal of, or the endorsement or guaranty of signatures on, any securities on or after the effective date. This prohibition applies irrespective of the fact that at any time (whether prior to, on, or subsequent to the effective date) the registered or inscribed owner of any such securities may have or might appear to have assigned, transferred, or otherwise disposed of the securities.

31 C.F.R. § 598.202. Here, the accounts at issue, as admitted by Plaintiffs, are not located in the United States. Turnover Mot. at 20 (Proposed Order directing foreign corporation Bank J Safra Sarasin Basel Switzerland to transfer Samark Jose Lopez Bello and Yakima Trading Corporations security entitlements and cash identified to "Porter & Korvick, P.A. Securities Trust Account" in Miami). Turnover Mot. at 7 ("All four of Citibank's Answers filed to date [2019, 2019, 2020 and 2021] uniformly state that "Citibank was not and is not indebted to Lopez Bello or Yakima", and Citibank "has not had any tangible or intangible personal property of Lopez Bello or Yakima in its possession or control.").

Because the accounts are located outside the United States and are not in the possession of, or in control of, by any U.S. person, the accounts and securities located outside the jurisdiction of the United States **are not subject to TRIA blocking, TRIA attachment, and TRIA execution**. 21 U.S.C. § 1904 (only property and interests in property within the United States, or within the possession or control of any United States person are subject to OFAC blocking). Neither the Kingpin Act nor TRIA authorizes a district court to reach across the territorial borders of the United States and order the liquidation of assets.

This Court is without jurisdiction to order foreign corporation Bank J Safra Sarasin Basel Switzerland to transfer Samark Jose Lopez Bello and Yakima Trading Corporations security entitlements and cash identified to "Porter & Korvick, P.A. Securities Trust Account" in Miami.

    **C.**  **TRIA Did Not Transform López Bello Into Judgment-Debtor.**

Plaintiffs argue that there is a final judgment and therefore this Court has jurisdiction to order foreign non-party, international Bank J Safra Sarasin Basel Switzerland, to liquidate accounts for their sole benefit, under Florida law. (ECF No. 571 at 8). Plaintiffs claim that López

10

Bello is a judgment-debtor, citing ECF No. 548 (Nov. 4, 2022 Final Judgment by Default). *See* Pls. Mot. Turnover at 1 (ECF No. 571). The Final Judgment makes no reference to López Bello as a judgment-debtor. And any attempt to convert López Bello's status as one of intervenor-claimant to judgment-debtor is contrary to the law of the case.

At all times, and under the law of the case, López Bello was neither an original defendant nor a judgment-debtor. *Stansell I,* 771 F.3d at 727 (López Bello, as non-judgment debtor third parties, were entitled to notice of the proceedings involving their assets.); *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006)("Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal."). Thus, Plaintiffs attempt to convert López Bello into a judgment-debtor must be rejected. The final judgment, based on discovery sanctions[3], did not transform López Bello into a judgment debtor.

### D. This Court Does Not Have *In Rem* Or In *Personam Jurisdiction Over Bank J Safra Sarasin Basel Switzerland*

Plaintiffs argue that *Shim v. Buechel,* 339 So.3d 315 (Fla. 2022) allows this Court to order Bank J Safra Sarasin Basel Switzerland to transfer López Bello's security entitlements, and cash identified located in Switzerland to "Porter & Korvick, P.A. Securities Trust Account" in Miami. (ECF No. 571 at 8).

Plaintiffs' requested relief (Turnover Order) is nothing more than a disguised garnishment action, as their relief seeks liquidation of funds not in the possession of López Bello. *DiFrancesco v. Home Furniture Liquidators, Inc.,* No. 06-21709-CIV, 2008 WL 4724504, at *2 (S.D. Fla. Oct. 24, 2008) ("garnishee is liable to the garnishor creditor for all

---

[3] Lopez Bello challenged the default judgment as improperly granted. This appeal remains pending, *Stansell et al. v. Lopéz Bello et al.,* Case No. 22-13798. The Eleventh Circuit has explained that the filing of a Notice of Appeal "generally divests a district court of jurisdiction as to those issues involved in the appeal." United States CFTC v. Escobio, 946 F.3d 1242, 1251 (11th Cir. 2020) (citing *RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC,* 718 F.3d 1308, 1314 (11th Cir. 2013)). While, absent a stay, a district court retains jurisdiction to enforce the judgment, here, the judgment in question related only to certain bank accounts that the court had already found were blocked by OFAC. Plaintiffs here do not seek simply to "enforce" that judgment; they seek rather to use the default that is currently being reviewed on appeal to attach additional assets. This court's jurisdiction does not extend so far.

debts which the garnishee owes to the defendant debtor at the time the writ of garnishment is filed…"). Here, intentional Bank J Safra Sarasin Basel Switzerland is akin to a garnishee foreign bank. Florida law does **not** allow courts to issue writs of garnishment seeking to garnish funds held in bank accounts in jurisdictions outside the territorial limits of the State of Florida. *Stansell v. Revolutionary Armed Forces of Colombia (FARC),* 149 F. Supp. 3d 1337, 1342 (M.D. Fla. 2015). In any garnishment action, the Court must not only have personal jurisdiction over the garnishee, but also jurisdiction over the property or "res" that is the subject of the writ of garnishment. *Stansell,* 149 F. Supp. 3d at 1339.

In an attempt to avoid this jurisdictional doctrine, Plaintiffs distort the holding in *Shim v. Buechel,* 339 So. 3d 315 (Fla. 2022), and argue that even though the Court cannot issue a writ of garnishment over foreign banks for lack of both *in rem* and *personam* jurisdiction, the court has authority to order the foreign bank to liquidate the assets of a non-judgment debtor, to satisfy their judgment against the original defendant. *Shim* does not allow this Court to take any such action.

"Impleader under § 56.29 does not establish the third party's liability." *Fuller v. Carollo,* No. 1:18-CV-24190-RS, 2024 WL 3838520, at *2 (S.D. Fla. Apr. 5, 2024) *Off. Bldg., LLC v. CastleRock Sec., Inc.*, No. 10-61582-CIV, 2011 WL 1674963, at *3 (S.D. Fla. May 3, 2011). Section 56.29 "provides for impleading any party that may hold the judgment debtor's property and ordering the impleaded party to appear before the court and show cause why the property should not be applied toward satisfaction of the judgment creditor's judgment." *ABM Fin. Servs., Inc. v. Express Consolidation, Inc.*, No. 07-60294, 2011 WL 915669, at *2 (S.D. Fla. Mar. 16, 2011). "After due process concerns have been met, the court may order any property of the judgment debtor, not exempt from execution, in the hands of an impleaded party to be applied toward satisfaction of the judgment debt." *Id.*

While *Shim* may give authority to compel **the defendant** over whom the Court has personal jurisdiction to act on foreign property, neither the holding in *Shim* nor § 56.29(6) gives the Court authority over international bank Bank J Safra Sarasin Basel Switzerland, a foreign bank, that has not submitted itself to the jurisdiction of this Court, nor who has been impleaded as a party. *Shim,* 339 So. 3d at 318 ("section 56.29(6) provides a trial court the authority to order a defendant over whom it has in personam jurisdiction to act on foreign property and disapprove *Sargeant* to the extent that it holds otherwise). For this reason, Plaintiffs request for relief must be denied.

### E. The Fugitive Disentitlement Doctrine And Florida Statute 772.13(6) do not bar López Bello from Defending this Action

The Supremacy Clause bars the use of Florida Statute 772.13(6) in this TRIA action because it conflicts with the United States Constitution. The Supremacy Clause, Art. VI, cl. 2, reads:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

"It is apparent that this Clause creates a rule of decision: Courts "shall" regard the "Constitution," and all laws "made in Pursuance thereof," as "the supreme Law of the Land." They must not give effect to state laws that conflict with federal laws. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (citing *Gibbons v. Ogden,* 9 Wheat. 1, 210 (1824)). Fla. Stat. § 772.13(6) conflicts with TRIA because it precludes a third-party, who is not the judgment-debtor, from defending his/her property based on unsubstantiated allegations of agency and instrumentality. Fla. Stat. § 772.13(6) conflicts with TRIA because it precludes the third-party from raising jurisdictional defenses and defenses as to whether the property sought to be executed upon is attachable and subject to judgment under TRIA.

The Supreme Court has long held that the Supremacy Clause prevents a state from interfering with a valid exercise of federal authority. *See Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 180 n.1 (1988) (Supremacy Clause "immunizes the activities of the Federal Government from state interference"); *Johnson v. Maryland,* 254 U.S. 51, 55 (1920) (preventing state from requiring federal postal employee to obtain driver's license from state before employment and holding states cannot "interrupt the acts of the general government itself"). Just as a state cannot pass a law interfering with how a United States postal employee conducts his federal business, a state also cannot pass a law interfering with how a United States court conducts its federal business in adjudicating a dispute based on a federal statute – TRIA.

In addition, the law does not apply here because a TRIA action does not seek to enforce a judgment "collectible under state law."  The recently passed law, on its face, "applies to any judgment collectible ***under state law*** and to any civil action pending or filed on or after the effective date of the act." Fla. Stat. § 772.13(6)(b) (emphasis added). Not only does this language make no references to federal courts, the reference to judgments "collectible under *state* law" indicates Fla. Stat. § 772.13(6)(b) was not intended to apply to TRIA actions in federal court. The plain meaning of the phrase "under law" means authorized by a law. *See In re Grand Jury Invest.,*

13

Grand Jury Action No. 18-34, 2018 US Dist. LEXIS 134601 (D.D.C. Aug. 8, 2018). Plaintiffs here do not seek to use a Florida state law to collect blocked property owned by a third party based on a determination that a third party is an agency or instrumentality of a terrorist party against whom a plaintiff has a judgment based on acts of terrorism; they use a federal law – TRIA. Moreover, the phrase "resources of the courts of this state" is vague, and legislative history confirms that the law was meant to apply to save the resources of Florida state courts, not Federal ones. That legislative history references foreclosure of a fugitive's uses of the "resources of this state" – demonstrating that the legislature intended for the restriction to preserve state – not federal – resources. Given the demonstrated constitutional infirmities with the statute, and the ambiguity of the term "courts of this state," this Court should construe Fla. Stat. § 772.13(6)(b) as inapplicable to a TRIA action pending in federal court.

*Stansell II* holds that TRIA confers upon a non-judgment debtor a constitutionally guaranteed opportunity to be heard under before their assets may be taken to satisfy another's judgment. *Stansell v. FARC,* 771 F.3d 713, 726 (11th Cir. 2014). But Fla. Stat. § 772.13(6)(a) takes away that constitutional right as punishment for nonappearance in cases insufficiently related to a separate civil suit defending against the acquisition of property, rather than as an "adverse presumption," and therefore is unconstitutional as applied. Aa number of federal appellate courts evaluating the constitutionality of a fugitive disentitlement statute for civil forfeiture actions, 28 U.S.C. § 2466, have held that the statute passed muster because it included a requirement that the civil forfeiture case "was related" to the criminal case for which the defendant was a fugitive. *See United States v. Batato*, 833 F.3d 413, 429 (4th Cir. 2016) ("As § 2466 predicates disentitlement on an allowable presumption that a criminal fugitive lacks a meritorious defense to a related civil forfeiture, we find it does not violate the Due Process Clause"); *Collazos v. United States,* 368 F.3d 190, 205 (2d Cir. 2004) (same). When a statute has no such "relatedness" requirement, then the "disentitlement" is properly construed as impermissible punishment, not an appropriate presumption. *See Batato*, 833 F.3d at 427 (when the statute contains a relatedness requirement, "the refusal to face criminal charges that would determine whether or not the claimants came by the property at issue illegally supports a presumption that the property was, indeed, so obtained").

Finally, Fla. Stat. § 772.13(6)(a) also does not grant this Court *in personam* jurisdiction *over* an international bank, such as Bank J Safra Sarasin Basel Switzerland. And to the extent this Florida statute is to read as doing so, such interpretation would violate Bank J Safra Sarasin Basel Switzerland's due-process-based personal-jurisdiction protections under the Fourteenth Amendment. *See Douglass v. Nippon Yusen Kabushiki Kaisha,* 46 F.4th 226, 233 (5th Cir.

2022), *cert. denied,* 143 S. Ct. 1021 (2023) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987). Likewise, Fla. Stat. § 772.13(6)(a) does not grant this Court *in rem* jurisdiction over property that is not located in the United States and when the property holder, as Bank J Safra Sarasin Basel Switzerland, is not within the confines of the district. *Heghmann v. Hafiani,* No. 21-12650, 2022 WL 14803783, at *6 (11th Cir. Oct. 26, 2022), *cert. denied,* 143 S. Ct. 2640 (citing *Shaffer v. Heitner*, 433 U.S. 186, 199 & n.17 (1977) (explaining that *in rem* and quasi *in rem* jurisdiction are "based on the court's power over property within its territory"); *World Wide Supply OU v. Quail Cruises Ship Mgmt.*, 802 F.3d 1255, 1259–60 (11th Cir. 2015) (explaining that quasi *in rem* jurisdiction involves an action "against a party who is not personally present in the district but whose property is present"). Any such expansive interpretation of Fla. Stat. § 772.13(6)(a) would gut due-process-based personal-jurisdiction protections under the Fourteenth Amendment.

The final judgment, which concluded that López Bello was an agent and instrumentality of the FARC based on a discovery default and not on the merits, answers only the first question under TRIA. The issue of whether the foreign international property in the possession of Bank J Safra Sarasin Basel Switzerland were attachable has not been determined. The mere allegations that Citibank created a blocked account, which it states is not subject to TRIA attachment and collection, is **subject of pending litigation in the SDNY**. This is so because, even the blocking of assets by OFAC does not necessarily bring those assets within the ambit of TRIA execution." *Stansell v. Revolutionary Armed Forces of Colombia,* 771 F.3d 713, 723 (11th Cir. 2014).

To deprive López Bello of his opportunity to litigate these lofty and complicated questions of TRIA would violate his due process rights. Any such deprivation would run afoul of the Eleventh Circuit holding in *F.D.I.C. v. Pharaon*, 178 F.3d 1159, 1162 (11th Cir. 1999) which held that it was an abuse of discretion to strike a fugitive's answer and affirmative defenses in a civil case even if the criminal case from which he fled were related to the civil case he sought to defend. As this Court previously held:

> Preventing Mr. Lopez (and his companies) from defending themselves at all in this case, however, would be a step too far under the Eleventh Circuit's precedent. *Id.*; *Pharaon,* 178 F.3d at 1163. Read cohesively, the Eleventh Circuit's precedent clearly establishes that the fugitive disentitlement doctrine may be appropriate as a basis by which to deny affirmative relief, in the form of an appeal, a lawsuit, or a motion. Ener, 987 F3d at 1333 (affirming dismissal of civil lawsuit where plaintiff was a fugitive in related case); *Pesin,* 244 F.3d at 1253 (dismissing a civil defendant's appeal where that defendant had ignored multiple court orders, including contempt orders, in the underling case). But the Eleventh Circuit also

15

> clearly holds that the fugitive disentitlement doctrine may not be used to prevent a civil defendant from defending himself. *Pharaon,* 178 F.3d at 1163 ("We therefore hold that the fugitive disentitlement doctrine, without more, may not be applied to strike a civil defendant's answer and enter judgment against him.").

(ECF No. 536 at 4). Any application of Fla. Stat. § 772.13(6)(a) to the facts of this case would violate López Bello's due process rights, including the ability to challenge the application of unconstitutional statutes as applied.

## IV. CONCLUSION

For the reasons set forth above, and the reasons more fully discussed by this Court, all matters related to the Citibank Accounts were transferred to the SDNY on April 30, 2020. This Court should reject any attempt by Plaintiffs to litigate any matters related to the transferred

Citibank Accounts, and dismiss any action related to the Notice to Appear.

Dated: October 28, 2024  Respectfully submitted,

/s *Adam S. Fels*

Adam S. Fels
Fridman Fels & Soto, PLLC
150 Alhambra Cir.
Suite 715
Coral Gables, FL 33134
Telephone: (305) 569-7701
afels@ffslawfirm.com

and

Jeffery M. Scott, Esq. (Pro Hac Vice)
Kerri E. Chewning, Esq. (Pro Hac Vice)
ARCHER & GREINER, P.C.
Three Logan Square
1717 Arch Street
Philadelphia, Pa 19103
Tel: 215-279-9693
Email: jscott@archerlaw.com
Email: kchewning@archerlaw.com
*Attorneys for Samark Jose López Bello and Yakima Trading Company*