UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-20896-SCOLA

KEITH STANSELL, et al.

    Plaintiffs,

vs.

REVOLUTIONARY ARMED FORCES OF COLOMBIA, a/k/a FARC, et al.,

    Defendants.
_____/

### PLAINTIFFS' RESPONSE TO "AMENDED MOTION TO WITHDRAW AS COUNSEL AND STAY PROCEEEDINGS" [ECF NO. 591]

On November 7, 2024, counsel for Samark Jose Lopez Bello and Yakima Trading Corporation filed both an "Amended Motion to Withdraw as Counsel and Stay Proceedings" [ECF 590] as well as a Reply [ECF 591] regarding their original motion to withdraw and for stay [DE 581].  In those two documents, counsel continue to improperly use their "withdrawal" motion(s) to smuggle-in substantive arguments that contest our pending Motion for Entry of Final Turnover Judgment regarding some of Lopez and Yakima's assets.  Ironically, they do so while chiding us (Reply at 1-2) for having not told them our position on their withdrawal motion before we were actually sent that motion so we could see it.  It's a good thing we waited to see what they're actually saying before giving them our position.  In any event, their "Amended Motion" and Reply add only 5 new things, which we will address right here at the outset.  Then, so that this Court will not have to deal with a cross-reference from us, we simply reproduce in full the Response [ECF 582] that we filed to their initial withdrawal motion.

First, they add that attorney Jeffery Kolansky wishes to withdraw.  As with the other attorneys, we take no position on this.

Second, they say they "take no position" on whether this Court's withdrawal terms should mirror those that Judge Moreno imposed when he allowed Lopez's counsel to withdraw in Marron.  How counsel could possibly not

consent to these terms eludes us. If all of Lopez and Yakima's lawyers withdraw, with no replacement counsel coming in at present, obviously Plaintiffs will need email and mailing addresses to continue serving Lopez and Yakima. Judge Moreno's conditions make good sense; otherwise, the lawyers' withdrawal could be used as a ploy to stymie all ongoing or future collection efforts against their fugitive client.

Third, counsel argue that we have relied on the improper standard regarding their request for a stay. Not so. This Court in *Martinez v. Experian Info. Sols., Inc.*, Case No. 22-20443-CIV-SCOLA, 2022 U.S. Dist. LEXIS 163993, *2 (S.D.Fla. Sep. 12, 2022) examined the following factors:

> Courts generally examine several factors when determining whether to issue a stay: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court.

*Id.* at 2. We maintain that the Supreme Court's articulation in *Nken* governs all stay requests, as our earlier Response noted—but even assuming otherwise, *arguendo*, the case at bar is quite unlike *Martinez*. Unlike the facts in *Martinez*, here the parties are *not* identical. This Court transferred a Citibank *garnishment writ* and Citibank interpleader to New York, where here this is a direct Section 56.29 proceeding *against Lopez and Yakima* as the owners. And Lopez and Yakima will suffer absolutely no prejudice from this Court issuing an up-or-down ruling on our Section 56.29 turnover motion, whereas a stay/transfer instead of issuing a ruling on it here would sound the *de facto* death-knell of that claim before its merits can even be considered, thereby working an undue prejudice to these victims of terrorism.

Moreover, Lopez and Yakima reject the Eleventh Circuit's standard and rulings on agency or instrumentality and argue in New York that collateral estoppel should not apply. *Stansell v. FARC*, S.D.N.Y. 16-mc-405, ECF 87 at p. 7 ("this Court should not apply collateral estoppel to the issue of agency and instrumentality"). Lopez' requested stay will clearly prejudice Plaintiffs because

we notwithstanding the recent Eleventh Circuit affirmance, Plaintiffs would have to relitigate the "Phase I" agency or instrumentality issues in New York at undue expense after fully litigating this issue successfully here.

A stay will also prejudice Plaintiffs because Lopez seeks to force Plaintiffs to litigate the "Phase II" U.C.C. issues against Citibank in New York, where Lopez claims that Citibank is not the proper garnishee. Here, Plaintiffs' turnover motion under § 56.29 does not involve any U.C.C. issues, and will indeed moot those issues, relieving both courts of having to resolve those issues and therefore will streamline the litigation.

Fourth and finally, counsel continue to argue that our turnover motion should be stayed because it has been transferred to SDNY. That fallacy is thoroughly debunked in our briefing regarding the turnover motion [ECF 571, 580], where it is more properly addressed—not here, in the context of an attorney withdrawal motion.

Fifth, Lopez' argues that the Second Circuit's stay of his criminal appeal [ECF 591-2] somehow supports a stay here. But that was Lopez requesting a stay *of his own appeal* from the denial of his motion to dismiss his criminal indictment, which would have had no practical effect on the indictment because Lopez remains a fugitive and the United States cannot proceed with the criminal case until his capture. A stay of Lopez' criminal appeal is not a basis for a stay of Plaintiffs' civil proceedings.

Those 5 new items having now been addressed, we now reproduce below verbatim the entire Response we filed regarding the original withdrawal motion.

\*   \*   \*

On October 30, 2024, the Eleventh Circuit released its opinion affirming this Court's 2022 entry of final judgment against Samark Jose Lopez Bello and Yakima Trading Corporation, the 2022 order having conclusively determined each of them to be an agency or instrumentality of the FARC. *Stansell v. FARC et al.,* 11th Cir. Appeal No. 22-13798 (11th Cir. Oct. 30, 2024) (A copy of the Eleventh Circuit's Slip Opinion is attached hereto as **Exhibit 1**). In a unanimous, 27-page published opinion, authored by the Honorable Adalberto

3

Jordan, the panel affirmed Your Honor's entry of final judgment, concluding: "Given its findings that Mr. López and the companies acted willfully, and that they did not intend to comply with its discovery orders, the district court did not abuse its discretion in entering default judgments against them as a sanction." Slip Op. at 4. The Eleventh Circuit also added: "As to any issues not discussed, we summarily affirm." *Id.* at 4 n.1.

Approximately 90 minutes later, the entire legal team for Lopez Bello and his companies here in the Southern District of Florida—i.e., Jeffrey M. Scott, Esq.; Kerri E. Chewning, Esq.; Adam S. Fels, Esq.; and Glen M. Lindsay,Esq.;-- filed a "Motion to Withdraw as Counsel and Stay Proceedings." ECF NO. 581. Had that motion been filed merely as a motion to withdraw as counsel, Plaintiffs would be taking no position on the request and filing a simple one-sentence Response saying just that: "Plaintiffs take no position." Candidly, and with all due respect, it does not matter to us who Lopez and his companies choose to use as their attorneys, because we are confident that the facts and the law are squarely on our side.[1]

However, what these attorneys filed yesterday was not just a vanilla motion to withdraw. Rather, they utilized that document—improperly—as a Trojan Horse to smuggle-in arguments against the turnover motion [ECF NO. 571] that had already been fully briefed when we filed our Reply [ECF NO. 580] only a few hours earlier. In other words, they have attempted to smuggle-in an unauthorized, *de facto* Sur-reply. They also utilized their "attorney withdrawal" document to request a stay of any ruling on our Section 56.29 action from this Court—which has been fully briefed and is ready for disposition by Your Honor— until their preferred venue (SDNY) issues a ruling on our garnishment action, which has been pending in SDNY for over five years now. We note here that we have reviewed the SDNY docket sheet, as well as the Eleventh Circuit docket

---

[1] And whether the unusual circumstances that led up to the first withdrawal motion, *see* ECF No. 580 at 1-3, constitute proper attorney conduct is really a question for this Honorable Court, not for us.

4

sheet, and notably, there has been nothing filed by any of these lawyers asking either of those tribunals to let them withdraw as counsel there.

These sleight-of-hand tactics are wholly improper, and Plaintiffs hereby oppose the requested "stay" because it finds no support in the law.

## **ARGUMENT**

Before we address how none of the elements of a stay are satisfied here, one housekeeping item bares mention.  In their motion, the lawyers seeking to be withdrawn mention that they "did provide notice to and has attempted to confer with Plaintiffs' counsel to determine their position on the motion by email yesterday at 12:36 p.m., but opposing counsel has not yet responded with their position." Motion at 6.  That may be technically true but it is misleading.  When counsel emailed us, our 3-man legal team (Mr. Porter, Mr. Korvick, and Mr. Rosenthal) were feverishly finishing up the Reply brief regarding the turnover motion on our Section 56.29 claim, which we filed yesterday morning.  And while counsel may have technically complied with the letter of Local Rule 7.1(a)(3), they certainly did not comply with its spirit, because their email asking for our position did not attach a draft of their impending motion, nor their proposed order on such a motion.  Had we seen such documents—with all the improper argumentative surplusage and additional requests contained therein—of course we would not have consented to that.  But counsel didn't share that with us.[2]

### I.   **REGARDING COUNSELS' REQUEST TO WITHDRAW**

Plaintiffs take no position on whether these attorneys should be permitted to withdraw at this juncture and under these circumstances.  However, we wish to emphasize that any withdrawal should not be used as a mechanism for any

---

[2]Notably, this is not the first time that these judgment debtors have attempted to bootstrap a stay request in this case under the guise of another motion. *See* ECF Nos. 68 (Motion) and 68-2 (proposed order seeking indefinite stay not requested in motion).  This Court denied Lopez's first attempt to smuggle in an indefinite stay.  ECF No. 70.  As to Lopez's second attempt at a disguised indefinite stay [ECF No. 291], the Court stated: "The motion is facially meritless. . . . The pending document sets forth no good cause why Defendants are entitled to another bite at the same rotten apple. The motion, if intended to be another motion to stay, is Stricken." ECF No. 292.

further delay in Plaintiffs' collection efforts. To that end, if Your Honor does decide to let these attorneys withdraw, then Plaintiffs would request that the order of withdrawal contain terms that mirror those entered by Judge Moreno in *Marron v. Maduro*, No. 21-CV-23190-FAM, ECF No. 205 in his order granting Mr. Fels' emergency motion to withdraw, so that Plaintiffs can continue their execution efforts against the blocked assets of the El Assaimi and Lopez Bello Network. Those conditions here are:

> Counsel for Lopez Bello and Yakima Trading Corporation: Mr. Fels, Mr. Scott, Ms. Chewning, and Mr. Lindsay shall provide Plaintiffs' counsel with: (i) the personal email address of Mr. Lopez Bello; (ii) Lopez Bello's personal address in Venezuela before his incarceration; (iii) contact information for Lopez Bello's Venezuelan counsel; (iv) and a current mailing address for the nine (9) companies whose representation they seek to end. This Court will also allow Plaintiffs to serve Lopez Bello and the entities, including Yakima Trading Corporation by mailing to the addresses provided by counsel, and by emailing to Lopez bello's personal email address.

## II. REGARDING THE REQUESTED STAY

As for the requested stay, there is zero basis for this, and the Motion doesn't really try to offer any. None of the legal elements for a stay are met here. In determining whether a stay is appropriate, courts look to four particular factors: (1) whether the stay applicant can make a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent entry of a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). A stay is not a matter of right – "even if irreparable injury might otherwise result" – and the decision to grant or deny a stay rests within the Court's sound discretion. *Nken*, 556 U.S. at 433-34 (citations omitted). The Motion fails every element of this test.

As to the first prong, there is no likelihood of success, much less a substantial one. Lopez and Yakima have each been determined as a matter of law to be an agency or instrumentality of the FARC, and the Eleventh Circuit

6

has now affirmed that, and our Section 56.29 briefing explains why our turnover motion there should be granted. As to the second prong, Lopez and Yakima will not be irreparably harmed if a stay is not issued; they will simply receive a court ruling from Your Honor in due time, which hardly constitutes "irreparably injury." As to the third prong, any stay would indeed injure these terrorism victims in their continuing efforts to collect the blocked assets of Lopez Bello and his entities. We continue to be in a race to the assets against other competing judgment creditors, and against all sorts of efforts from Lopez and others to hide and spirit away their assets. And as our briefings on the Section 56.29 claim explain, transferring that matter to SDNY would effectively be a fatal blow to that claim. As to the fourth and final prong, the public interest lies in Plaintiffs' favor here. The legislative history of TRIA "evinces a broader Congressional purpose to 'deal *comprehensively* with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction.'" *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 531 (S.D.N.Y. 2010).

In short, the Motion's request to stay is wholly unsupported by any law and should be denied.

Respectfully submitted November 8, 2024.

/s/ Newton P. Porter, Esq.
(FL Bar: 833738)
/s/ Tony Korvick, Esq.
(FL Bar: 0768405)
PORTER & KORVICK, P.A.
Attorneys for the *Stansell* Plaintiffs
4000 Ponce de Leon Blvd Suite 470
Coral Gables, Florida 33146
Telephone: (305) 373-5040
nporter@porterandkorvick.com
tkorvick@porterandkorvick.com

/s/Richard B. Rosenthal, Esq.
(FL Bar: 0184853)
Co-counsel for Plaintiffs
1581 Brickell Avenue
Suite 1408
Miami, Florida 33129
Telephone: (305) 992-6089
rbr@rosenthalappeals.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 8, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I served the foregoing document and the notice of electronic filing by electronic mail to the following persons:

Plaintiffs have complied with all litigation reporting requirements to OFAC under 31 C.F.R. 501.605:

> OFFICE OF FOREIGN ASSETS CONTROL
> U.S. Department of the Treasury
> 1500 Pennsylvania Ave. NW
> Washington DC
> [by email service directly to OFAC counsel in compliance with 31 CFR 501.605]

/s/ Tony Korvick
TONY KORVICK  (FL Bar 768405)
PORTER & KORVICK, P.A.
Attorneys for Plaintiffs
4000 Ponce de Leon Blvd Suite 470
Coral Gables, Florida 33146
Telephone:  (305) 373-5040
tkorvick@porterandkorvick.com