**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KEITH STANSELL, *et al.*,

      *Plaintiffs*,

    v.

REVOLUTIONARY ARMED FORCES OF
COLOMBIA, *et al.*,

      *Defendants*.

Case No. 1:19-cv-20896-RNS

**PETROCEDEÑO, S.A.'S MOTION TO VACATE**
**ORDER AND TURNOVER JUDGMENT, DISSOLVE**
**WRITS OF GARNISHMENT, AND DISMISS ACTION WITH PREJUDICE**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................3

ARGUMENT .............................................................................................................................4

I.      PLAINTIFFS WERE REQUIRED BUT FAILED TO ESTABLISH THIS COURT'S
        JURISDICTION IN A NEW ACTION TO HOLD PETROCEDEÑO LIABLE FOR
        THEIR DEFAULT JUDGMENT AGAINST THE FARC ..................................................4

II.     THE *EX PARTE* JUNE 17 ORDER AND WRITS DENIED PETROCEDEÑO BASIC
        DUE PROCESS RIGHTS AND ARE VOID FOR INEFFECTIVE SERVICE ................6

III.    TRIA DOES NOT APPLY TO PETROCEDEÑO AS A MATTER OF LAW .................9

        A.      TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of
                Terrorism Only........................................................................................................9

        B.      Plaintiffs Failed To Show Petrocedeño Is An "Agency Or Instrumentality" Of
                The FARC ...............................................................................................................13

        C.      Plaintiffs Failed To Show The Blocked Assets Are Assets "Of" The FARC .......18

IV.     PDVSA IS AN INDISPENSABLE PARTY UNDER RULE 19 ....................................19

V.      THIS COURT LACKED IN REM JURISDICTION TO ISSUE THE JPMC WRIT ......20

CONCLUSION..........................................................................................................................20

REQUEST FOR HEARING.......................................................................................................21

RULE 7.1(A)(3) CERTIFICATION...........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anago Franchising, Inc. v. Shaz, LLC*,
    599 F. App'x 937 (11th Cir. 2015) ..................................................................................14

*APR Energy, LLC v. Pakistan Power Resources*, *LLC*,
    2009 WL 425975 (M.D. Fla. Feb. 20, 2009) .................................................................20

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) .......................................................................................................20

*Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Co.*,
    581 U.S. 170 (2017) .......................................................................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) .......................................................................................................13

*Butler v. Polk*,
    592 F.2d 1293 (5th Cir. 1979) .........................................................................................5

*Caballero v. Fueraz Armadas Revolucionarias de Colombia*,
    2023 WL 125240 (S.D. Tex. Jan. 6, 2023) ...............................................................6, 8, 9

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
    2021 WL 1884110 (W.D.N.Y. May 11, 2021) ...............................................................15

*Cohen v. Empire Blue Cross & Blue Shield*,
    176 F.3d 35 (2d Cir. 1999) .............................................................................................12

*De Gazelle Group, Inc. v. Establishment*,
    817 F.3d 747 (11th Cir. 2016) .........................................................................................6

*Diamond Crystal Brands, Inc. v. Food Movers International*,
    593 F.3d 1249 (11th Cir. 2010) .......................................................................................5

*First National City Bank v. Banco Para El Comercio Exterior De Cuba*,
    462 U.S. 611 (1983) .......................................................................................................11

*Grogan v. Garner*,
    498 U.S. 279 (1991) .......................................................................................................14

*Hausler v. JPMorgan Chase Bank, N.A.*,
    845 F. Supp. 2d 553 (S.D.N.Y. 2012) ........................................................................18, 19

*In re Terrorist Attacks on Sept. 11, 2001,*
    657 F. Supp. 3d 311 (S.D.N.Y. 2023)..................................................................15, 16, 18

*Jackson-Platts v. General Electric Capital Corp.,*
    727 F.3d 1127 (11th Cir. 2013) ...........................................................................5, 6

*Janvey v. Libyan Investment Authority,*
    840 F.3d 248 (5th Cir. 2016) ...............................................................................12

*Kirschenbaum v. Assa Corp.,*
    934 F.3d 191 (2d Cir. 2019)..................................................................................18

*Mamani v. Berzain,*
    2018 WL 1010582 (S.D. Fla. Feb. 22, 2018) .......................................................17

*Marvel Characters, Inc. v. Kirby,*
    726 F.3d 119 (2d Cir. 2013)..................................................................................17

*Mohamad v. Palestinian Authority,*
    566 U.S. 449 (2012)..............................................................................................13

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)..............................................................................................14

*Murphy Brothers v. Michetti Pipe Stringing,*
    526 U.S. 344 (1999)..............................................................................................6, 8

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
    558 F.3d 1210 (11th Cir. 2009) ............................................................................6

*PDVSA United States Litigation Trust v. Lukoil Pan Americas LLC,*
    65 F.4th 556 (11th Cir. 2023) ..............................................................................15

*Peacock v. Thomas,*
    516 U.S. 349 (1996)..............................................................................................5

*Republic of Philippines v. Pimentel,*
    553 U.S. 851 (2008)..............................................................................................19

*Republic of Sudan v. Harrison,*
    587 U.S. 1 (2019)..................................................................................................9

*Robers v. United States,*
    572 U.S. 639 (2014)..............................................................................................9

*Rubin v. Islamic Republic of Iran,*
    583 U.S. 202 (2018)..............................................................................................11

*Samantar v. Yousuf,*
    560 U.S. 305 (2010)....................................................................................12

*Simmons v. Indian Rivers Mental Health Ctr.,*
    652 F. App'x 809 (11th Cir. 2016) .............................................................14

*Skulas v. Loiselle,*
    2010 WL 1790439 (S.D. Fla. Apr. 9, 2010) ...............................................20

*Stansell v. Revolutionary Armed Forces of Colombia (FARC),*
    149 F. Supp. 3d 1337 (M.D. Fla. 2015) .....................................................20

*Stansell v. Revolutionary Armed Forces of Colombia (FARC),*
    45 F.4th 1340 (11th Cir. 2022) ....................................................16, 17, 18

*Stansell v. Revolutionary Armed Forces of Colombia (FARC),*
    771 F.3d 713 (11th Cir. 2014) ...........................................................7, 8, 9, 17

*Taylor v. Polhill,*
    964 F.3d 975 (11th Cir. 2020) ....................................................................14

*United States v. Daniels,*
    91 F.4th 1083 (11th Cir. 2024) ..................................................................17

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
    486 U.S. 694 (1988)..................................................................................6, 7

*Water Splash, Inc. v. Menon,*
    581 U.S. 271 (2017)......................................................................................7

*Zivotofsky v. Kerry,*
    576 U.S. 1 (2015)........................................................................................15

## STATUTES AND RULES

28 U.S.C. § 517..................................................................................................2, 19

28 U.S.C. § 530....................................................................................................12

28 U.S.C. § 624....................................................................................................12

28 U.S.C. § 1404..................................................................................................20

28 U.S.C. § 1603........................................................................................ *passim*

28 U.S.C. § 1604....................................................................................................5

28 U.S.C. § 1610........................................................................................ *passim*

iv

28 U.S.C. § 1930 ................................................................................................................13

Fed. R. Civ. P. 4 .................................................................................................................7

Fed. R. Civ. P. 19 ..............................................................................................................19

Fed. R. Civ. P. 69 ...............................................................................................................7

Fed. R. Evid. 801 ..............................................................................................................17

Fed. R. Evid. 802 ..............................................................................................................17

Fed. R. Evid. 803 ..............................................................................................................18

## REGULATIONS

Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. part 598 (2000) ..............................19

Foreign Terrorist Organization Sanctions Regulations, 31 C.F.R. part 597 (1997) .....................19

Global Terrorism Sanctions Regulations, 31 C.F.R. part 594 (2003) ...........................................19

Venezuela Sanctions Regulations, 31 C.F.R. part 591 (2019) .....................................................19

## TREATIES

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and
    Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 .......................................................2, 7, 8

## MISCELLANEOUS

6 AM. JUR. 2d (2024) ........................................................................................................14

148 Cong. Rec. 10311–12, 10352, 23122 (2002) ...........................................................11, 12

Brief for the United States of America, *In re 650 Fifth Avenue and Related Properties*,
    No. 17-3258 (2d Cir. Aug. 31, 2018) ......................................................................................18

H.R. 3210, 107th Cong. (2001) .........................................................................................11

S. 2134, 107th Cong. (2002) .............................................................................................12

Statement of Interest of the United States of America, *Caballero v. Fuerzas Armadas
    Revolucionarias De Colombia*, No. 20-mc-40 (W.D.N.Y. Sept. 20, 2022) ..............2, 9, 10, 20

Statement of Interest of the United States of America, *Havlish v. Bin-Laden*,
    No. 03-cv-09848 (S.D.N.Y. Feb. 11, 2022) ......................................................................9, 10

Pursuant to Rules 12(b)(1), (2), and (4)–(7), 12(h)(3), 54(b), 60(b)(4), and 69(a)(1) of the Federal Rules of Civil Procedure, Non-Party Respondent Petrocedeño, S.A. hereby moves to (1) dissolve the October 15, 2024 writ of garnishment as to assets held by JPMorgan Chase Bank ("JPMC") (ECF 572) ("JPMC writ"), (2) vacate the June 17, 2020 order (ECF 367) ("June 17 Order"), the predicate for that writ; (3) dissolve the writs of garnishment as to assets held by SSM Petcoke LLC, Oxbow Carbon LLC, and Oxbow Energy Solutions LLC (ECF 368, 370, 371) ("SSM/Oxbow writs"), (4) vacate the September 11, 2020 turnover judgment as to SSM Petcoke (ECF 499), and (5) dismiss this action as to Petrocedeño's assets with prejudice.

## PRELIMINARY STATEMENT

Plaintiffs, the victims of heinous acts of terrorism perpetrated by the defunct Colombian narco-terrorist organization Fuerzas Armadas Revolucionarias de Colombia ("FARC"), initiated this action to enforce their default Anti-Terrorism Act ("ATA") judgment against the FARC. Plaintiffs seek to satisfy their default judgment by executing against assets of non-party Petrocedeño as though it were liable for the ATA judgment. Plaintiffs' enforcement activities are marred by jurisdictional and substantive infirmities and fundamental due process violations.

Without ever making Petrocedeño a party, serving Petrocedeño, or establishing this Court's jurisdiction, Plaintiffs obtained *ex parte* the June 17 Order holding that Petrocedeño's assets are available to satisfy Plaintiffs' default judgment against the FARC. At Plaintiffs' urging, and in the absence of an adversarial process, this Court reached that conclusion by improperly taking judicial notice of a one-sentence determination, made in an unrelated case in this district, *Doe v. Ejercito De Liberacion Nacional*, No. 10-cv-21517 ("*Doe*"), that Petrocedeño is an "agency or instrumentality" of the FARC under the Terrorism Risk Insurance Act of 2002 ("TRIA"). The *Doe* court's unsupported finding was based on the false allegation — repeated by Plaintiffs here — that Venezuela's wholly-owned national oil company Petróleos de Venezuela, S.A. ("PDVSA")

1

is an "agency or instrumentality" of the FARC and, therefore, so too is its subsidiary, Petrocedeño.

More than four years after using the June 17 Order to obtain the SSM/Oxbow writs and turnover judgment, in October 2024, Plaintiffs used that order to obtain the JPMC writ. This time, Plaintiffs purported to provide notice to Petrocedeño via mail and email to undersigned counsel. Although such methods are not proper service of process, Petrocedeño responds to the JPMC writ seeking its dismissal, along with vacatur and dissolution of all orders, writs, and judgments entered as to Petrocedeño in this action for the reasons stated herein, many of which bear directly on U.S.-foreign policy interests upon which the United States has opined in other similar cases. *See, e.g.*, Ex. 1 (U.S. Br., *Caballero v. FARC*, No. 20-mc-40 (W.D.N.Y.), ECF 125). This Court, like others facing similar issues, should invite the views of the United States. *See* 28 U.S.C. § 517.

*First*, a judgment creditor seeking to hold a third party liable for their judgment must bring a new action against the third party and establish the court's subject-matter and personal jurisdiction, which Plaintiffs failed to do.

*Second*, Plaintiffs were required to properly serve Petrocedeño in compliance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361. Proper service additionally required that Plaintiffs serve their initial pleading naming Petrocedeño, together with a summons, prior to obtaining the June 17 Order. Plaintiffs did not do so.

*Third*, Plaintiffs have not and cannot establish that Petrocedeño is an "agency or instrumentality" of the FARC. The legal term of art "agency or instrumentality" in TRIA refers only to an "agency or instrumentality of a foreign state," as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(b), which "foreign state" has been designated as a state sponsor of terrorism. TRIA § 201(a). While PDVSA is an "agency or instrumentality of a

2

foreign state" under the FSIA, Petrocedeño is not, and Venezuela has never been designated as a state sponsor of terrorism. Notwithstanding this legal infirmity, Plaintiffs failed to: (i) prove Petrocedeño is an "agency or instrumentality" of the FARC under TRIA; (ii) establish the assets are those "of" a terrorist party, i.e., the FARC owns the assets, or (iii) show Petrocedeño's assets, which the United States has protectively blocked, are available to satisfy judgments of the FARC.

*Fifth*, these actions must be dismissed because PDVSA is a necessary party that cannot be joined due to its presumptive foreign sovereign immunity from jurisdiction under the FSIA.

*Sixth*, because the JPMC account at issue is not located within the State of Florida, this Court lacked *in rem* jurisdiction to issue the JPMC writ, and the writ must be dismissed.

## BACKGROUND

On July 28, 2010, Plaintiffs registered their June 15, 2010 default ATA judgment against the FARC for $318 million. ECF 1. On June 10, 2020, Plaintiffs moved *ex parte* for post-judgment writs of garnishment against Petrocedeño's assets under TRIA on the purported basis that Petrocedeño is an "agency or instrumentality" of the FARC under TRIA. ECF 360 at 1–2.

In their motion, Plaintiffs requested that the Court take judicial notice of Judge Paul C. Huck's June 5, 2020 Order in the unrelated *Doe* action, (*Doe*, ECF 288) ("*Doe* Order"), granting an *ex parte* motion filed by the *Doe* plaintiffs on October 1, 2019. *See Doe*, ECF 258 at 6–7; ECF 360 at 1–2, 7–8. Plaintiffs requested that the Court take judicial notice of the findings that (1) the assets of Petrocedeño are "'blocked assets'" as defined under TRIA; (2) the "'blocked assets' are assets 'of' Petrocedeño, S.A., such that TRIA's ownership requirement has been met"; and (3) that Petrocedeño is "an agency or instrumentality of the FARC" whose "blocked assets are [therefore] subject to attachment and execution pursuant to the TRIA." ECF 360 at 7–8. Plaintiffs also argued that the *Doe* Order was subject to the doctrine of collateral estoppel. ECF 360 at 6–7. Plaintiffs did not attempt to serve their motion on Petrocedeño. *See* ECF 360 at 8–9, 11.

On June 17, 2020, the Court granted Plaintiffs' motion and took judicial notice of — but did not give preclusive effect to — the *Doe* Order's finding that Petrocedeño "is an agency or instrumentality of the FARC and its blocked assets are therefore subject to attachment and execution pursuant to TRIA and [the ATA]." June 17 Order at 1. The Court directed the Clerk to issue the SSM/Oxbow writs, which the Clerk did that day. ECF 367 at 2; ECF 368, 370, 371. Plaintiffs purported to serve Petrocedeño with the writs and motion for writs, via "int[ernational] first class mail" on June 23, 2020. ECF 488-2 at 1.

On July 10, 2020, SSM Petcoke (ECF 432), Oxbow Carbon (ECF 431), and Oxbow Energy Solutions (ECF 433) filed Answers to the writs. Only SSM Petcoke responded that it held assets owed to Petrocedeño. ECF 432. On August 21, 2020, Plaintiffs moved for a turnover judgment as to the assets held by SSM Petcoke. ECF 488. Relying on the June 17 Order, Plaintiffs claimed the funds were available for turnover because Petrocedeño was an "agency or instrumentality" of the FARC and had "failed to appear" to contest that designation (despite no proper service). *Id.* at 1. On September 10, 2020, the Court issued the turnover judgment. ECF 499.

More recently, on October 15, 2024, the Clerk issued a writ as to Petrocedeño's assets held by JPMC. ECF 572. On October 17, 2024, Plaintiffs purported to mail notice and copies of the 2020 motion for writs, June 17 Order, and JPMC writ via first class mail to Petrocedeño in Venezuela and via email to "last known counsel." ECF 574 at 1. On November 4, 2024, JPMC answered the writ, and among other things, sought interpleader relief and requested transfer of the action to the U.S. District Court for the Southern District of New York. ECF 584 at 15.

**ARGUMENT**

**I.    PLAINTIFFS WERE REQUIRED BUT FAILED TO ESTABLISH THIS COURT'S JURISDICTION IN A NEW ACTION TO HOLD PETROCEDEÑO LIABLE FOR THEIR DEFAULT JUDGMENT AGAINST THE FARC**

Plaintiffs' attempt to use TRIA to hold Petrocedeño liable for their default ATA judgment

against the FARC "is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the [ATA] case." *Peacock v. Thomas*, 516 U.S. 349, 359 (1996) (holding court lacked ancillary jurisdiction over effort to enforce judgment against third party based on alleged civil conspiracy and fraudulent transfer of judgment debtor's assets); *see Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013) ("Under our settled precedent, actions are not ancillary and are instead independent civil actions when they are 'in effect suits involving a new party litigating the existence of a new liability.'" (quoting *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979)). Plaintiffs were thus required to initiate a new civil action and establish this Court's subject-matter and personal jurisdiction for their claim against Petrocedeño. *See Peacock*, 516 U.S. at 355 (holding a "subsequent lawsuit" based on an existing federal judgment must have an "independent basis for jurisdiction"). Plaintiffs did not do so.

Plaintiffs instead purported to initiate ancillary post-judgment proceedings to satisfy their default judgment against the FARC, to which Petrocedeño is not a party, by executing against assets belonging to Petrocedeño. As a result, Plaintiffs never alleged, much less established, this Court's subject-matter jurisdiction.[1] *See Peacock*, 516 U.S. at 355. And Plaintiffs have likewise never established (and cannot establish) this Court's personal jurisdiction over Petrocedeño. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (holding plaintiff bears the burden to establish personal jurisdiction over non-resident defendant).

To establish personal jurisdiction for the liability determination they sought against

---

[1] Petrocedeño is not a "foreign state" within the meaning of the FSIA, 28 U.S.C. § 1603(a)–(b). However to the extent this Court accepts Plaintiffs' claim that Petrocedeño "is synonymous with" PDVSA, ECF 360 at 3, a foreign state entitled to presumptive foreign sovereign immunity under the FSIA, 28 U.S.C. § 1604 — which claim Petrocedeño denies — Petrocedeño reserves all rights, privileges, protections, immunities, and defenses arising from PDVSA's status as a foreign state, including as to subject-matter jurisdiction and service of process under the FSIA.

Petrocedeño, Plaintiffs were required, but failed, to show that: (1) Petrocedeño was properly served with a summons and complaint, (2) the Court had a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction satisfied constitutional due process.  *See De Gazelle Grp., Inc. v. Establishment*, 817 F.3d 747, 748 (11th Cir. 2016).  Plaintiffs have not proffered *any* factual allegations as to Petrocedeño, much less allegations sufficient to establish personal jurisdiction, relying instead on the *Doe* Order, which makes no jurisdictional findings.

Because Plaintiffs failed to establish this Court's jurisdiction for a new action against Petrocedeño, the June 17 Order and JPMC writ are void and must be vacated and this action dismissed.  *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217–24 (11th Cir. 2009) (reversing denial of request for vacatur of judgment where court lacked personal jurisdiction).

## II. THE *EX PARTE* JUNE 17 ORDER AND WRITS DENIED PETROCEDEÑO BASIC DUE PROCESS RIGHTS AND ARE VOID FOR INEFFECTIVE SERVICE

"[T]he hallmark of due process is notice and a chance to be heard."  *Caballero v. FARC*, 2023 WL 125240, at *7 (S.D. Tex. Jan. 6, 2023).  Yet Plaintiffs "never sued, served, or summoned" Petrocedeño in their ATA action against the FARC.  *Jackson-Platts*, 727 F.3d at 1134.  And Plaintiffs' defective purported service of their motion and ensuing writs failed to accord Petrocedeño its due process rights.

However it may have been styled, Plaintiffs' motion seeking to hold Petrocedeño liable for their default judgment against the FARC was the first judicial document "legally sufficient to charge [Petrocedeño] with notice of [this] pending action."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988).  Plaintiffs were therefore required to serve their motion on Petrocedeño in accordance with applicable law governing service of process.  *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting

6

measure stating the time within which the party served must appear and defend.").

Here, Plaintiffs were thus required to serve their motion via the Hague Service Convention to which the United States and Venezuela are parties. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies."); Fed. R. Civ. P. 4(f) (requiring service of summons and complaint via Hague Service Convention where applicable). In acceding to the Hague Service Convention, Venezuela objected to service of process and judicial documents by mail and required all documents be served with Spanish translation. *See* Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to the Hague Service Convention; *Water Splash*, 581 U.S. at 284 ("[I]n cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.").

Plaintiffs did not comply with any of these requirements. Instead, Plaintiffs proceeded *ex parte*. Only after obtaining the June 17 Order did Plaintiffs purport to serve Petrocedeño in accordance with Fla. Stat. § 77.041 by mailing and emailing the motion and writs to counsel without translation. *See* ECF 488-2, 574; Ex. 2. But even if they were otherwise applicable, the service provisions of Florida garnishment statutes do not apply in the face of conflicting federal law, i.e., the Hague Service Convention, which "pre-empts inconsistent methods of service prescribed by state law." *Schlunk*, 486 U.S. at 699; *see* also Fed. R. Civ. P. 69(a)(1) (providing that a money judgment is enforced by following the execution "procedure of the state where the court is located, *but a federal statute governs to the extent it applies*" (emphasis added)).

Plaintiffs' invocation of *Stansell v. FARC*, 771 F.3d 713 (11th Cir. 2014) ("*Stansell II*"), does not support the *ex parte* procedures they employed in this action as to Petrocedeño. *See* ECF

360 at 4.  In that case, which arose from similar enforcement proceedings in this action brought by Plaintiffs against other non-parties, the Eleventh Circuit undertook an exhaustive, fact-specific inquiry into the procedures Plaintiffs employed as to each non-party to determine whether those procedures comported with due process.  *See Stansell II*, 771 F.3d at 735–48.  In so doing, the Eleventh Circuit held that due process *sometimes* allows a court to delay the right to be heard until after the targeted assets have been attached but *always* requires, at a minimum, the right to:  "notice and to be heard before execution."  *Id.* at 729.  Specifically, the Eleventh Circuit viewed Plaintiffs' "factual proffers" as to each non-party as sufficient to diminish the "risk of erroneous deprivation" that would otherwise require a pre-attachment hearing.  *Id.*; *accord Caballero*, 2023 WL 125240, at *3 (rejecting contention that *Stansell II* provides "blanket approval" for proceeding *ex parte*).

Given their *complete failure to make any factual proffer* as to Petrocedeño, Plaintiffs magnified the risk of — and in fact achieved — the erroneous deprivation of due process that *Stansell II* warned against.  Here, at Plaintiffs' urging and without the benefit of the adversarial process, the Court concluded that Petrocedeño is an "agency or instrumentality" of the FARC solely by taking judicial notice of a conclusory finding in a different action (the *Doe* Order).  *See supra* § I.  Under *Stansell II*'s balancing framework, Plaintiffs' failure to make a factual proffer required notice prior to attachment, which Plaintiffs did not provide.

Plaintiffs' purported "notice" was both defective under the Hague Service Convention and untimely under *Stansell II* resulting in Petrocedeño being deprived of due process at all stages of this enforcement proceeding.  *See Murphy Bros.*, 526 U.S. at 350 (holding service of process "is fundamental to any procedural imposition on a named defendant").  The June 17 Order must therefore be vacated, the JPMC writ dissolved, and this action dismissed.  *See Caballero*, 2023 WL 125240, at *7 (holding *ex parte* "agency or instrumentality" TRIA order violates due process);

8

*see also Republic of Sudan v. Harrison*, 587 U.S. 1, 18–19 (2019) (holding defects in service require vacatur even where defects were "highly technical" and "belatedly raised").

## III.   TRIA DOES NOT APPLY TO PETROCEDEÑO AS A MATTER OF LAW

### A.   TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of Terrorism Only

The *Doe* Order determined that Petrocedeño was an "agency or instrumentality" of the FARC based on the erroneous assumption that the "terms" as used in TRIA "must be given their ordinary meaning." *Doe* ECF 258 at 13 (citing *Stansell II*, 771 F.3d at 732). In doing so, the *Doe* court erroneously conflated the common law term "agent" with the statutory term of art "agency or instrumentality" defined in § 1603(b) of the FSIA as any entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country. 28 U.S.C. § 1603(b).

Section 1603 provides that the definitions contained in this section apply "[f]or purposes of this chapter," in which TRIA is codified as a note. Thus, as used in TRIA § 201(a), the term "agency or instrumentality" should be given the meaning ascribed to it under § 1603(b). *See generally Robers v. United States*, 572 U.S. 639, 643 (2014) ("[I]dentical words used in different parts of the same statute are . . . presumed to have the same meaning"). Petrocedeño acknowledges that *Stansell II* held that § 1603(b)'s definition of "agency or instrumentality" does not apply to its use in TRIA. Petrocedeño respectfully submits that *Stansell II* was wrongly decided without the benefit of views of the United States (*see, e.g.*, Ex. 1 and U.S. Br., *Havlish v. Bin-Laden*, No. 03-cv-09848 (S.D.N.Y. Feb. 11, 2022), ECF 563), and therefore preserves the issue for appellate review.

9

Importantly, the United States has advocated *against* applying the broader definition of "agency or instrumentality" in TRIA adopted by the *Doe* Order. Specifically, in *Caballero*, another judgment creditor of the FARC sought to execute his judgment upon assets belonging to PDVSA and certain of its subsidiaries. *See Caballero*, No. 20-mc-40, ECF 85-1. Like Plaintiffs here, Caballero's agency or instrumentality theory as to PDVSA's subsidiaries there solely was based on purported acts of PDVSA and the former Chávez and Maduro regimes. The United States advocated against applying the Second Circuit's definition of "agency or instrumentality" — which is derived from the Eleventh Circuit's definition applied in *Doe* — to agencies or instrumentalities of foreign states. Ex. 1 at 31–35, 33 n.10. The United States expressed concerns that such a broad definition would "eliminate Congress's careful application of TRIA to state sponsors of terrorism" and "would allow state assets to be attached under a broad range of circumstances . . . without any state sponsor of terrorism requirement, in contravention of FSIA's targeted approach and the specific language of TRIA that references that targeted approach." *Id.* at 33–34; *see also* U.S. Br. at 22, *Havlish v. Bin-Laden*, No. 03-cv-09848 (S.D.N.Y.), ECF 563 (noting definition of agency or instrumentality "may differ" when question is whether foreign state "can also act as an agency or instrumentality of a non-state entity"). Those concerns are particularly important here, where Plaintiffs seek to execute on Petrocedeño's assets based *solely on purported acts of PDVSA* — an undisputed agency or instrumentality of a foreign state — and the Venezuelan government (as led by the former Chávez and Maduro regimes), which has not been designated a state sponsor of terrorism by the Executive Branch.

Moreover, *Stansell II* did not consider TRIA's legislative history. Indeed, TRIA's legislative history makes clear that Congress intended the phrase "agency or instrumentality" in TRIA to mean the "agency or instrumentality of a foreign state" adjudged liable for a terrorism-

related claim. *See generally Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 181–82 (2017) (examining the FSIA's language, history, and structure to determine applicable standard for subject-matter jurisdiction). In particular, Congress sought to overcome the presumption of juridical separateness with respect to agencies and instrumentalities of state sponsors of terrorism. *See Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 209–10 (2018) (stating that *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 628 (1983) establishes that, "as a default, []agencies and instrumentalities of a foreign state [are] to be considered separate legal entities that cannot be held liable for acts of the foreign state"). TRIA was enacted to permit victims of terrorism who had successfully sued state sponsors of terrorism to satisfy their judgments "against the assets that have been seized from primarily two countries that have been involved — Iran and Iraq." 148 Cong. Rec. 10312 (2002); *id.* at 23121.

At the time of TRIA's passage, such victims had obtained judgments against Iran, Iraq, and other state sponsors of terrorism, but were unable to satisfy those judgments from the over $3.7 billion in blocked assets belonging to those states and their agencies or instrumentalities. *See id.* at 10311. Thus, Congress enacted TRIA "for purposes of enforcing a judgment against a terrorist state," to clarify that the law "does not recognize any juridical distinction between *a terrorist state* and its agencies or instrumentalities." *Id.* at 23122 (emphasis added). Notably, the term "agency or instrumentality" was added to the text of draft § 201(a) at the same time as its companion language — "for which a terrorist party is not immune under section 1605A or 1605(a)(7)" — signifying that Congress intended for plaintiffs with judgments against state sponsors of terrorism to be able to satisfy their judgments against blocked property of that state's agencies or instrumentalities. *Compare* H.R. 3210 § 15(f), 107th Cong. (Nov. 19, 2001) (omitting reference to "agencies or instrumentalities"), *with* H.R. 3210 § 15(e), 107th Cong. (Nov. 29, 2001) (including

11

quoted text).  Further, the final enacted text of TRIA was drafted by Senator Harkin and adopted

wholesale from a bill that Senator Harkin explained "only applie[d] to 'terrorist states.'"  148

Cong. Rec. 10352 (2002) (statement of Sen. Harkin); *see* S. 2134, 107th Cong. (Apr. 16, 2002)

("To allow American victims of state sponsored terrorism to receive compensation from blocked

assets of those states.").  In his floor speech urging final passage of TRIA, Senator Harkin further

explained that TRIA "expressly addresses" and thereby resolves the then-existing

> dispute over the availability of "agency and instrumentality" assets to satisfy
> judgments against a terrorist state itself.  Let there be no doubt on this point.  [TRIA]
> operates to strip a terrorist state of its immunity from execution or attachment in
> aid of execution by making the blocked assets of that terrorist state, including the
> blocked assets of any of its agencies or instrumentalities, available for attachment
> and/or execution of a judgment issued against that terrorist state.

148 Cong. Rec. 23122 (2002).  Thus, the legislative history demonstrates the phrase "agency or

instrumentality" in TRIA is the same as that used in § 1603(b) of the FSIA.

Additionally, the Supreme Court expressly rejected the notion that "agency or

instrumentality" can be "given the meaning of 'any thing or person through which action is

accomplished.'"  *Samantar v. Yousuf*, 560 U.S. 305, 315 (2010) (citation omitted); *see also Cohen

v. Empire Blue Cross & Blue Shield*, 176 F.3d 35, 41–42 (2d Cir. 1999) (holding that an "agent"

is not an "agency" for purposes of Title 28); *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 259 (5th

Cir. 2016) (holding "the term '*agent*' should not [] be confused with the term 'agency' in the phrase

'*agency* or instrumentality'").  And reading "agency or instrumentality" to be synonymous with

something akin to a common law "agent" would be a radical departure from the meaning ascribed

to the phrase throughout the U.S. Code, which always denotes a relationship between a government

and a separate or inferior governmental body.  *See, e.g.*, 28 U.S.C. § 530D(a)(1)(C)(i)–(ii)

(referencing "the United States (including any agency or instrumentality thereof)"); 28 U.S.C.

§ 624(2) (directing every "department, agency, or instrumentality" of "the Government" to comply

with requests); 28 U.S.C. § 1930 note (discussing the "Administrative Office of the [U.S.] Courts, or any other agency or instrumentality of the United States"); *cf. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 n.3 (2006) (Scalia, J.) ("Our more natural reading is confirmed by the use of the word 'contract' elsewhere in the [U.S.] Code."). Looking even more broadly, in the 2003 version of the U.S. Code, reflecting the text as it stood at the time of TRIA's enactment, the term appeared in 558 different sections. *See* Ex. 3. The abundant use of the term in the U.S. Code demonstrates that Congress understands the term "agency or instrumentality" to refer to the federal government or of a state, local, tribal, or foreign government. *See* Ex. 4 (collecting examples).

The *Doe* Order, and thus, the June 17 Order are entirely inconsistent with the meaning of "agency or instrumentality" in its context of the FSIA, in the context of Title 28, and in the context of the whole of the *corpus juris*. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 455 (2012) ("Congress remains free, as always, to give [a] word a broader or different meaning. But . . . there must be *some* indication Congress intended such a result." (emphasis in original)). The term as used in TRIA thus warrants application of the same definition prescribed in § 1603(b).

### B.    Plaintiffs Failed To Show Petrocedeño Is An "Agency Or Instrumentality" Of The FARC

Plaintiffs failed to establish the purported "agency or instrumentality" status of Petrocedeño even under *Stansell II*'s test. Plaintiffs procured the June 17 Order, on which the JMPC writ is based, with far-reaching consequences on an astoundingly bare evidentiary record. Indeed, Plaintiffs' motion is devoid of *any* factual allegations supporting their contention that Petrocedeño is an "agency or instrumentality" of the FARC.

Instead, Plaintiffs urged this Court to take judicial notice of the *Doe* Order or apply the doctrine of collateral estoppel to the *Doe* court's findings. *See* ECF 360 at 6–8. But it is well-settled in this Circuit that judicial notice of another court's order is limited to "recognizing the

judicial act that the order represents or the subject-matter of the litigation," but not for establishing "the truth of the facts set forth in that order." *Anago Franchising, Inc. v. Shaz, LLC*, 599 F. App'x 937, 937–38 (11th Cir. 2015) (cleaned up). And application of collateral estoppel is inappropriate here where Petrocedeño was never properly served (*see supra* § II) and never appeared, denying Petrocedeño a "full and fair opportunity" to litigate the issue, which was not "actually litigated." *Simmons v. Indian Rivers Mental Health Ctr.*, 652 F. App'x 809, 817 (11th Cir. 2016) (noting default judgments are "not given preclusive effect" because "nothing [was] 'actually litigated'") (cleaned up); *accord Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding "[a]n elementary and fundamental requirement of due process" is notice and an opportunity to be heard). Plaintiffs' JPMC writ must therefore be dismissed because Plaintiffs have failed to state a claim against Petrocedeño. *See Taylor v. Polhill*, 964 F.3d 975, 981 (11th Cir. 2020) ("Dismissal under Rule 12(b)(6) is proper when the facts alleged in the complaint fail to state a claim to relief that is plausible on its face.") (cleaned up). And Plaintiffs' failure otherwise to show by a preponderance of the evidence that they are entitled to execute on Petrocedeño's blocked assets warrants vacatur of the June 17 Order and JPMC writ. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) (holding, where statute is silent, "preponderance-of-the-evidence standard" is generally "applicable in civil actions between private litigants").

As a critical threshold matter, Plaintiffs have not and cannot put forward any allegations or evidence that Petrocedeño was an "agency or instrumentality" of the FARC at any relevant time. *See* 6 AM. JUR. 2d *Attachment & Garnishment* § 185 (2024) (stating validity of attachment depends on "the facts existing at the time the writ was issued"). To the extent Plaintiffs' writs, including their October 2024 JPMC writ, are supported by any factual allegations at all, those allegations were made by the *Doe* plaintiffs in 2019 and describe alleged conduct of Petrocedeño's parent,

PDVSA, and regimes of former Venezuelan presidents, Hugo Chávez and Nicolás Maduro, *in decades prior, including in the "mid-2000s" until 2013. See, e.g.*, ECF 360-4 ¶¶ 16, 20, 23 (describing purported acts of Venezuelan military in the "mid-2000s"); ECF 360-5 ¶¶ 13–16, 27–28 (describing purported acts of former PDVSA president "between 2003 to 2013").

Moreover, Plaintiffs rely impermissibly on purported acts of the illegitimate Maduro regime and PDVSA (as usurped by Maduro) post-dating January 2019, that cannot be imputed to PDVSA at a time when it was (and still is) operating under the authority of an Ad Hoc Board established by the emergency transition laws of the U.S.-recognized opposition government of Venezuela. *See, e.g.*, ECF 360-4 ¶¶ 19, 21 (describing present-day acts of Maduro as the "current Venezuela Government"); *id.* ¶ 26 (describing present-day speculation that "FARC and PDVSA are close allies" based on acts of Maduro regime). Specifically, in January 2019, the United States ceased recognition of the illegitimate Maduro regime and recognized the 2015 National Assembly and its former Interim Government as the only legitimate government of Venezuela. *PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*, 65 F.4th 556, 561 (11th Cir. 2023). Since then and presently, PDVSA has been under the legal control of the Ad Hoc Board of PDVSA, a board appointed and authorized to act for PDVSA by Venezuelan government institutions recognized by the United States. *See* Medina ¶¶ 4–12; *see also LukOil*, 65 F.4th at 561 (holding Maduro-appointed board of PDVSA not entitled to represent PDVSA in U.S. courts); *see also Caballero v. FARC*, 2021 WL 1884110, at *7–8 (W.D.N.Y. May 11, 2021) (same). This Court is thus required to treat only the actions of the U.S.-recognized Venezuelan government and the Ad Hoc Board as actions of the Venezuelan government and PDVSA after January 2019. *Zivotofsky v. Kerry*, 576 U.S. 1, 19 (2015) (holding "recognition [is] the exclusive prerogative of the Executive"); *see also In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d 311, 333–34

(S.D.N.Y. 2023) (declining to find Afghanistan's Central Bank an agency or instrumentality of the Taliban because doing so be judicial recognition of the Taliban).  Plaintiffs' reliance on conduct of the Maduro regime and PDVSA (as directed by Maduro) after January 2019 is thus irrelevant.

Plaintiffs otherwise failed to adduce any evidence of Petrocedeño's alleged relationship with the FARC in the relevant time period.  Petrocedeño acknowledges the Eleventh Circuit rejected the imposition of a temporal limit for assessing agency or instrumentality status in *Stansell v. FARC*, 45 F.4th 1340, 1357 (11th Cir. 2022) ("*Stansell V*").  However, it did so by examining the broader definition of "agency or instrumentality" that has been called into question by the United States.  *See supra* § II.A.  Nonetheless, Petrocedeño submits this aspect of *Stansell V* was incorrect and preserves all arguments for appellate review.

But even despite the obvious temporal defects, Plaintiffs have not otherwise adduced any admissible evidence demonstrating that Petrocedeño is an "agency or instrumentality" of the FARC.  Though the Eleventh Circuit has recognized that an indirect relationship may be sufficient, "the more attenuated the link[,] the more difficult it [is] to prove agency/instrumentality status." *Stansell V*, 45 F.4th at 1357.  Here, Plaintiffs' theory is premised upon conclusory testimony in a different case purporting to link the FARC, to the Cartel of the Suns and the former Chávez and illegitimate Maduro regimes, to the entirety of the Venezuelan government, then to PDVSA, and then finally, to Petrocedeño.  *See e.g.*, ECF 360-4 ¶¶ 11, 16–28; *see also* ECF 360 at 3 (claiming baselessly that "Petrocedeño is synonymous with and an a/k/a for PDVSA").  This daisy-chain is far too attenuated to establish that Petrocedeño is an agency or instrumentality of the FARC, even if Plaintiffs adduced reliable, admissible evidence.  Here, they have not.

Though Plaintiffs principally rely on the *Doe* Order, Plaintiffs also attached the Fonseca and Gaddis affidavits, also filed in the *Doe* action, to their motion.  *See* ECF 360-4, 360-5.  Neither

16

of those affidavits are admissible nor do they demonstrate that Petrocedeño is an agency or instrumentality of the FARC.  Importantly, Fonseca *does not even mention Petrocedeño.  See* ECF 360-5.  And Gaddis, aside from an offhanded conclusory statement that Petrocedeño is an "example" of PDVSA's purported use of its "ownership and managing influences over subsidiaries" to "cooperat[e]" with the FARC, does not otherwise mention any specific act connecting Petrocedeño — even indirectly — to the FARC.  ECF 360-4 ¶¶ 18, 27.

Moreover, both the Gaddis and Fonseca affidavits are inadmissible hearsay and hearsay-within-hearsay.  Fed. R. Evid. 801 & 802.  For example, both the Gaddis and Fonseca affidavits consist largely of prolonged quotations from or recitations of, *inter alia*, news articles, press releases, and think tank reports.  *See, e.g.*, ECF 360-4 ¶¶ 16–24; ECF 360-5 ¶¶ 16–33.  None of this evidence is admissible under any hearsay exception.  *See* Fed. R. Evid. 802–03; *Mamani v. Berzain*, 2018 WL 1010582, at *3 n.6 (S.D. Fla. Feb. 22, 2018) ("'[A] party cannot call an expert simply as a conduit for introducing hearsay.'") (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)).  And Gaddis's "opinion" that Petrocedeño is an "agency or instrumentality" of the FARC (ECF 360-4 ¶ 29) is an inadmissible legal conclusion.  *See United States v. Daniels*, 91 F.4th 1083, 1096 (11th Cir. 2024) ("A witness may not testify to the legal implications of conduct; the court must be the jury's only source of law.") (cleaned up).

Plaintiffs have adduced no credible, admissible evidence in support of their claim that Petrocedeño is an agency or instrumentality of the FARC, and thus the June 17 Order should be vacated, the JPMC writ dissolved, and this action dismissed.  At a minimum, this Court should hold an evidentiary hearing for Petrocedeño to contest Plaintiffs' meager evidence on the agency or instrumentality issue.  *See Stansell II*, 771 F.3d at 727 (holding alleged agency or instrumentality "entitled to be heard on their challenge to the agency or instrumentality issue"); *see also Stansell*

*V*, 45 F.4th at 1360 (remanding for jury trial on agency or instrumentality question).

      **C.**     **Plaintiffs Failed To Show The Blocked Assets Are Assets "Of" The FARC**

Plaintiffs' attempt to attach Petrocedeño's assets also fails because Plaintiffs have not proven the assets are "blocked assets *of* that terrorist party (*including* the blocked assets of any agency or instrumentality of that terrorist party)." TRIA § 201(a) (emphasis added). The plain meaning of the emphasized language is that "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party." U.S. Br. at 303, *In re 650 Fifth Ave. and Related Props.*, No. 17-3258 (2d Cir. Aug. 31, 2018), ECF 140 (citing *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211 (2d Cir. 2014)); *see In re Terrorist Attacks*, 657 F. Supp. 3d at 332–33 (holding TRIA requires assets be "of" the judgment debtor). Further, the word "including" (instead of "and" or "or") underscores that "the terrorist party" must have at least an ultimate-beneficial ownership interest in "the blocked assets." TRIA § 201(a). But Plaintiffs have never alleged the assets they seek are property "of" the FARC, or that the FARC has any ownership interest in the assets, which puts TRIA out of reach. *Cf. Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019) (noting "concerns" that, "if broadly construed, *Kirschenbaum*'s reading of TRIA could invite lawsuits against a third-party . . . that had only incidental and perhaps unintentional involvement with a terrorist party").

Moreover, the assets are not "available for execution" under TRIA because they are not "blocked pursuant to the particular regulation or administrative action directed at the particular terrorist-party judgment debtor" — here, the FARC. *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 567 (S.D.N.Y. 2012) ("TRIA does not permit a party with a judgment against Iran to execute against funds blocked pursuant to the [Cuban Assets Control Regulations], which are, of course, targeted at Cuba."), *rev'd on other grounds*, 770 F.3d 207 (2d Cir. 2014). In 2019, OFAC protectively blocked PDVSA's and its subsidiaries' assets to "prevent further diverting of

Venezuela's assets by Maduro and preserve these assets for the people of Venezuela." Ex. 5 at 1; *see also* Venez. Sanctions Regs. (31 C.F.R. part 591 (2019)). The FARC, meanwhile, was designated as a significant foreign narcotics trafficker, a Foreign Terrorist Organization, and a Specially Designated Global Terrorist. *See* Ex. 6 at 2; Foreign Terrorist Org. Sanctions Regs. (31 C.F.R. part 597 (1997)); Global Terrorism Sanctions Regs. (31 C.F.R. part 594 (2003)); Foreign Narcotics Kingpin Sanctions Regs. (31 C.F.R. part 598 (2000)). This lack of overlap between the relevant sanctions precludes execution on Petrocedeño's assets under TRIA (*Hausler*, 845 F. Supp. 2d at 567) and counsels against effectuating "the judicial seizure of the property of a friendly state" — the U.S.-recognized government of Venezuela. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 866 (2008) (cleaned up). These comity concerns provide another ground upon which this Court may vacate, dissolve, and dismiss. At a minimum, the Court should invite the views of the United States. 28 U.S.C. § 517.

## IV. PDVSA IS AN INDISPENSABLE PARTY UNDER RULE 19

Because Plaintiffs' claims rest entirely on purported acts of PDVSA, PDVSA is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. And because PDVSA is an undisputed agency or instrumentality of a foreign state under the FSIA, Plaintiffs must join PDVSA and establish an exception to its presumptive foreign sovereign immunity. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (holding "the FSIA [is] the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts"); *see Pimentel*, 553 U.S. at 867 ("A case may not proceed when a required-entity sovereign is not amenable to suit."); Ex. 1 (stating judgment creditor must establish exception to FSIA immunity in post-judgment TRIA enforcement proceeding). Plaintiffs have made no attempt to do so, and vacatur and dismissal is warranted for this reason as well.

19

## V.      THIS COURT LACKED IN REM JURISDICTION TO ISSUE THE JPMC WRIT

On November 4, 2024, JPMC answered the writ and asserted that the account at issue is held in New York, not Florida.  ECF 584 at 6.  Florida courts are clear, however, that writs may not issue upon accounts held outside of the forum.  In particular, as explained in *Stansell v. FARC*, 149 F. Supp. 3d 1337, 1341 (M.D. Fla. 2015), "nothing in the language or structure of the Florida garnishment statutes demonstrates that they were intended to apply to bank accounts located outside the state of Florida."  As a result, the court concluded "that under Florida law [courts] lack[] subject matter jurisdiction to issue writs of garnishment seeking to garnish funds held in bank accounts in jurisdictions outside the territorial limits of the State of Florida."  149 F. Supp. 3d at 1342.  Given JPMC has answered that the account is located "outside the territorial limits of the State of Florida," the JPMC writ must be dissolved.  *Id.* at 1342–43; *see also APR Energy, LLC v. Pakistan Power Res., LLC*, 2009 WL 425975, at *2–3 (M.D. Fla. Feb. 20, 2009) (dissolving writs issued on out-of-state accounts for lack of jurisdiction); *Skulas v. Loiselle*, 2010 WL 1790439, at *3 (S.D. Fla. Apr. 9, 2010) (similar), *adopted*, 2010 WL 1790433 (S.D. Fla. May 5, 2010) (similar).  Nevertheless, should the Court decline to dissolve the writ, Petrocedeño consents to JPMC's request (ECF 584 at 6) to transfer the action to the Southern District of New York, given that the property is located there, and Plaintiffs have been attempting to collect on their judgment in that district since 2016.  *See Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (S.D.N.Y.); *see also* 28 U.S.C. § 1404 (allowing transfer at parties' consent).

### <u>CONCLUSION</u>

For the foregoing reasons, Petrocedeño respectfully requests that the Court dismiss the JPMC writ (ECF 572), vacate the June 17 Order (ECF 367), dismiss the entire action as to Petrocedeño with prejudice, and, for the reasons stated in §§ I–IV above, vacate the turnover judgment (ECF 499) and other writs issued pursuant to the June 17 Order (ECF 368, 370, 371).

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), Petrocedeño requests oral argument on this motion to enable full development of the issues and arguments raised by both parties, which Petrocedeño submits would facilitate the Court's resolution of this motion.

## RULE 7.1(A)(3) CERTIFICATION

Undersigned counsel has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion. Plaintiffs oppose the motion, and JPMC does not intend to oppose.  SSM Petcoke takes no position on the motion.  The Oxbow garnishees did not respond.

Dated:  November 22, 2024

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Jaime Bianchi*
Jaime Bianchi
W. Dylan Fay
200 S Biscayne Blvd.
Miami, FL 33131
jbianchi@whitecase.com
dylan.fay@whitecase.com
(305) 371-2700

Claire A. DeLelle (*pro hac vice* pending)
Blair E. Trahan (*pro hac vice* pending)
Benedict S. Bernstein (*pro hac vice* pending)
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
blair.trahan@whitecase.com
benedict.bernstein@whitecase.com

*Counsel for Petrocedeño, S.A.*

21