**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:19-cv-20896-SCOLA/TORRES**

| | |
|---|---|
| KEITH STANSELL, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) |
| REVOLUTIONARY ARMED FORCES | ) |
| OF COLOMBIA ("FARC"), et al., | ) |
| | ) |
|     Defendants, | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |
| | ) |
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
|     Garnishee – Counterclaimant, | ) |
| | ) |
|     v. | ) |
| | ) |
| KEITH STANSELL, et al., | ) |
| | ) |
|     Garnishor – Counterclaim Defendants. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |
| | ) |
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
|     Garnishee – Third-Party Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| PETROCEDENO, S.A., PETROLEOS DE | ) |
| VENEZUELA, S.A., CARLOS EDUARDO | ) |
| MARRÓN, JANE DOE, C.R., a Minor, S.A., a | ) |
| Minor, MEUDY ALBAN OSIO in Her Personal | ) |
| Capacity and in Her Capacity as the Personal | ) |
| Representative of the Estate of FERNANDO | ) |
| ALBERTO ALBAN, FERNANDO ALBAN | ) |
| OSIO, MARIA FERNANDA ALBAN OSIO, | ) |
| ANTONIO CABALLERO, OLIVIA | ) |
| PESCATORE, JOSH PESCATORE, JADA | ) |
| PESCATORE, JARROD PESCATORE, JORDAN | ) |
| PESCATORE, CAROLYN PESCATORE AS | ) |

THE REPRESENTATIVE OF THE ESTATE )
OF FRANK PESCATORE, SR., CAROL )
PESCATORE HARPSTER, RICHARD )
PESCATORE, JOHN PESCATORE, and )
JOHN DOES 1-10, )
  )
     Third-Party Defendants. )
_____ )

**MOTION BY GARNISHEE JPMORGAN CHASE BANK, N.A. TO (i) CONSOLIDATE THE STANSELL AND OSIO INTERPLEADER PROCEEDINGS CONCERNING THE VALERO-PETROCEDENO BLOCKED ACCOUNT, AND (ii) TRANSFER THE <u>CONSOLIDATED PROCEEDINGS TO THE SOUTHERN DISTRICT OF NEW YORK</u>**

Garnishee JPMorgan Chase Bank, N.A. ("JPMorgan") hereby moves (the "Motion") for an order:

1.     Under Fed. R. Civ. P. 42, consolidating the judgment enforcement proceedings in this case ("*Stansell*") and in *Osio et al. v. Maduro Modos et al.*, 21-cv-20706-Gayles ("*Osio*"), in both of which the plaintiffs seek to execute on the same asset – referred to here as the "Valero-Petrocedeno Blocked Account" or the "Blocked Account" – maintained at JPMorgan in New York.  Those judgment enforcement proceedings include the proceedings relating to JPMorgan's "Answer, Counterclaim and Third-Party Complaint for Relief in Interpleader" in this case (the "Stansell Interpleader," D.E. 585) and in *Osio* (the "Osio Interpleader," *Osio* D.E. 242).

2.     Under 28 U.S.C. § 1404(a), or in the alternative under 28 U.S.C. § 1406(a) or § 1631, transferring the consolidated Stansell Interpleader and Osio Interpleader to the United States District Court for the Southern District of New York ("SDNY"), where the court has *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account and where there is a pending case entitled *Caballero v. Fuerzas Armadas Revolucionarias de Colombia et al.*, No. 20-mc-00249 (Caproni, J.) ("*Caballero*"), in which Antonio Caballero ("Caballero"), another judgment creditor of the FARC, has also commenced a proceeding for the turnover of the same Valero-Petrocedeno Blocked Account under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA").[1]

## PRELIMINARY STATEMENT

As of the time of this Motion, there are three separate proceedings in two separate courts – *Stansell* and *Osio* in this Court, and *Caballero* in the SDNY – in which two different sets of FARC judgment creditors seek to execute under TRIA on the same Valero-Petrocedeno Blocked

---

[1]  JPMorgan will move for the same relief in *Osio* shortly after filing this Motion.

Account, which is held at JPMorgan in New York and has a balance of more than $170 million. A third party with an interest in the Blocked Account, Petrocedeno, S.A. ("Petrocedeno"), has moved in this Court (D.E. 600) for the dissolution of the Stansell Plaintiffs' writ of garnishment on the Blocked Account (the "Stansell Writ," D.E. 572), and is expected to move in *Osio* for the dissolution of the Osio Plaintiffs' writ on the same Blocked Account (the "Osio Writ," *Osio* D.E. 243-1).

As the garnishee of the Valero-Petrocedeno Blocked Account, JPMorgan, which has no interest in the Blocked Account, is currently subject to the risk of conflicting rulings on the final disposition of funds in the Blocked Account, a risk that exposes it to potential double liability on a blocked asset whose balance now exceeds $170 million. So even though JPMorgan has no interest in the Blocked Account or a position on which competing claimant is entitled to the funds therein, JPMorgan accordingly seeks to ensure that any turnover order that directs it to turn over the funds in the Blocked Account be enforceable, lawful and immune from future challenge.

As a matter of law, there is also only one court – the SDNY – that has *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account, which is held in New York, and the resulting authority to direct a turnover of the funds in the Blocked Account. As set forth in Section II below, the exclusive jurisdictional authority of the SDNY compels that all proceedings to execute on the Blocked Account, including the Stansell Interpleader and the Osio Interpleader, be transferred to the SDNY. The court with exclusive *in rem* jurisdiction over the Blocked Account can then hear and adjudicate the competing claims to the funds in the Blocked Account with the requisite jurisdictional authority, providing finality, subject to any appeals, for the relevant parties and the garnishee.

Moreover, as set forth in Section I below, and for the sake of judicial efficiency, the proceedings in the Stansell and Osio Interpleaders should first be consolidated under Fed. R. Civ.

P. 42 because they both involve the same blocked asset held by JPMorgan in New York, the same parties, the same core factual and legal issues, and two groups of plaintiffs whose interests are aligned.  Upon consolidation, these proceedings can then be transferred together to the SDNY, where they can be assigned to the *Caballero* court as a related case or otherwise consolidated with *Caballero*.

But whether or not Petrocedeno's motions remain in and are decided by this Court, and whether or not the Stansell and Osio Interpleaders are consolidated in this Court, those proceedings should each still be transferred to the SDNY due to this Court's lack of *in rem* jurisdiction to direct a turnover of the Valero-Petrocedeno Blocked Account – a jurisdictional defect that cannot be waived.[2]  JPMorgan is a neutral stakeholder in its interpleader proceedings with no claim to the funds in the Valero-Petrocedeno Blocked Account, but it must also ensure that any order or judgment directing it to turn over those funds is immune from legitimate future challenge so that JPMorgan is not exposed to the risk – heightened here due to the sheer size of the Blocked Account – of double liability.  JPMorgan accordingly makes this consolidation and transfer Motion not to delay these proceedings or for its own convenience, but rather to ensure that the court that renders any eventual turnover order has unassailable jurisdictional authority to do so, and to avoid the risk of conflicting rulings by three different judges now being asked to decide the disposition of the Valero-Petrocedeno Blocked Account.

---

[2]  *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1339–40 (M.D. Fla. 2015) ("While personal jurisdiction may be waived, '*in rem* jurisdiction is a very special type of necessary judicial subject matter jurisdiction' under Florida law – one that cannot be waived.") (citing *Center Capital Corp. v. Gulfstream Crane, LLC,* 2009 WL 4909430, at *7 (S.D. Fla. 2009)); *Center Capital, id.* ("a party cannot waive *in rem* jurisdiction under Florida law, and a court proceeding pursuant to *in rem* jurisdiction must actually possess *in rem* jurisdiction over the property that is the subject of the matter") (internal quotation marks and citations omitted).

## PERTINENT FACTS AND PROCEDURAL HISTORY

The Stansell Plaintiffs obtained the Stansell Writ, served on JPMorgan on October 15, 2024, as part of their efforts to enforce, under TRIA, a default judgment they obtained against the FARC and others under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333 (the "Stansell Judgment").  The Stansell Judgment was entered on June 15, 2020 by the Middle District of Florida in an action entitled *Stansell, et al. v. Revolutionary Armed Forces of Colombia (FARC), et al.*, No. 09-cv-2308 (RAL)(MAP).

In *Osio*, the Osio Plaintiffs obtained the Osio Writ, served on JPMorgan on September 23, 2024, as part of their efforts to enforce a default judgment they obtained in *Osio* on August 4, 2023, under the ATA, against the FARC and the individual defendants in *Osio* (the "Osio Judgment," *Osio* D.E. 91).

In *Caballero*, Caballero, on December 9, 2024, obtained a writ of execution on the Valero-Petrocedeno Blocked Account (the "Caballero Writ," Ex. 1), served on JPMorgan on December 10, 2024, as part of his effort to enforce a judgment entered on May 20, 2020 under the ATA against the FARC and the Norte del Valle Cartel (the "Caballero Judgment").[3]  *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-25337 (S.D. Fla. May 20, 2020) (D.E. 63).  Caballero registered the Caballero Judgment in the SDNY on July 6, 2020.

The Stansell Writ, the Osio Writ issued by the *Osio* court, and the Caballero Writ issued by the SDNY all apply to the same Valero-Petrocedeno Blocked Account, which JPMorgan established on April 3, 2024 at the request of non-party Valero Marketing and Supply Company ("Valero").  Valero made that request to segregate from its own operating account at JPMorgan certain funds because, according to Valero, an OFAC-sanctioned party had an ownership interest

---

[3]   References herein to "Ex. __" are to the exhibits to this Motion.

in the funds.  Specifically, Valero indicated that the funds belonged to Petrocedeno, which is alleged to be a joint venture in which Petroleos de Venezuela, S.A. ("PDVSA") – a sanctioned Venezuelan governmental entity designated by the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department as a Specially Designated National ("SDN") – is said to have an indirect 100% interest.  To establish the Blocked Account, JPMorgan transferred $166,818,471.76 from Valero's operating account at JPMorgan to a new account, with account number ending 2927, that JPMorgan simultaneously blocked under Executive Order 13850 and 31 C.F.R. Part 591, the Venezuela Sanctions Regulations administered by OFAC.  Two days later, on April 5, 2024, JPMorgan filed a "Report on Blocked Property" with OFAC (Ex. 2, as partially redacted), notifying OFAC of its establishment of the Valero-Petrocedeno Blocked Account.

JPMorgan has been the garnishee of the Valero-Petrocedeno Blocked Account, and the Account has been held in New York, ever since the bank set up the account.  As garnishee, JPMorgan administers and controls the Blocked Account, subject to OFAC regulations. JPMorgan can unblock the Blocked Account and release the funds in the Account if and when it is legally authorized to do so consistent with TRIA, OFAC regulations, and state garnishment laws.  Valero, whose only involvement with the Blocked Account was to request that JPMorgan set it up to hold blocked funds in which an SDN has an interest, has no role in administering the Blocked Account and no control over the Blocked Account or the funds therein.

JPMorgan filed the Stansell Interpleader on November 4, 2024.  The Stansell Interpleader is designed to bring before the Court all parties with a potential interest in the Valero-Petrocedeno Account, and names as third-party defendants, among others, the Osio Plaintiffs,

Caballero, Petrocedeno and PDVSA.[4]  Because the Osio Plaintiffs had obtained the separate

Osio Writ in *Osio*, JPMorgan, on November 12, 2024, filed the Osio Interpleader (*Osio* D.E.

242), whose objective is the same as that of the Stansell Interpleader, and which names as parties

all of the same parties named in the Stansell Interpleader.  Each answer and third-party complaint

alleges that this Court lacks *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account

(D.E. 585 at ¶12; *Osio* D.E. 242 at ¶13), and each alleges that venue is improper in this Court

"for purposes of Plaintiffs' efforts to execute on the Blocked Account, over which the Court

lacks *in rem* jurisdiction" (D.E. 585 at ¶24; *Osio* D.E. 242 at ¶25).

The Stansell Plaintiffs, in *Stansell* and in *Osio*, have filed separate but substantively

identical motions (D.E. 603; *Osio* D.E. 300) to dismiss the Stansell and Osio Interpleaders.

JPMorgan has not responded to the motions as of the time of this Motion, but it will be opposing

each motion on the primary, and obvious, ground that JPMorgan requires interpleader relief

because three competing parties are vying for the same Valero-Petrocedeno Blocked Account

held at JPMorgan.

On November 22, 2024, Petrocedeno filed a motion in *Stansell* (D.E. 600) to dissolve the

Stansell Writ, asserting arguments as to why it believes the Stansell Writ is invalid, including

that the Court lacks *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account.

Petrocedeno states in its motion that it consents to the transfer of the proceedings regarding the

Blocked Account to the SDNY "given that the property is located there, and Plaintiffs have been

attempting to collect on their judgment in that district since 2016." *Id.* at 20.

In *Caballero*, which has been pending since 2020, Caballero obtained the Caballero Writ

(Ex. 1) on December 9, 2024, pursuant to an order entered that day (*Caballero* D.E. 118; Ex. 3)

---

[4]   The Osio Plaintiffs were adverse to the Stansell Plaintiffs at the time the Stansell Interpleader
was commenced.

directing the Clerk of the SDNY to issue the "Writ of Execution for the levy of the blocked

assets within this Court's jurisdiction held by Garnishee, JPMorgan Chase Bank, N.A. ('JPM')

for service and levy on JPM to execute and/or attach any assets (up to Plaintiff Antonio

Caballero's outstanding trebled portion of his compensatory damages award – i.e.,

$119,749,608.07 – plus interest) within this Court's jurisdiction in the putative name of, or for

the benefit of, or that were blocked due to an association with Petrocedeño S.A." (*Id.* at ¶5)

Caballero served the Caballero Writ on JPMorgan on December 10, 2024.

## ARGUMENT

**I.     THE *STANSELL* AND *OSIO* INTERPLEADERS SHOULD BE CONSOLIDATED BECAUSE THEY INVOLVE THE SAME BLOCKED ACCOUNT, THE SAME PARTIES AND THE SAME CORE ISSUES**

Under Fed. R. Civ. P. 42, "[i]f actions before the court involve a common question of law

or fact, the court may: . . . (2) consolidate the actions; or (3) issue any other orders to avoid

unnecessary cost or delay." "Rule 42 is a codification of a trial court's inherent managerial

power to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Biver v. Nicholas Fin. Inc.*, No. 14-cv-250-T-33TGW, 2014

WL 1763211, at \*2 (M.D. Fla. 2014) (internal quotations omitted) (quoting *Hendrix v.

Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). Rule 42 "'is permissive and

vests a purely discretionary power in the district court.'" *Young v. City of August, Ga. Through

DeVaney*, 59 F.3d 1160, 1168 (11th Cir. 1995) (quoting *In Re Air Crash at Fla. Everglades,* 549

F.2d 1006, 1013 (5th Cir. 1977)). The exercise of a court's discretion requires a determination of

"whether the specific risks of prejudice and possible confusion [are] overborne by the risk of

inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses

and available judicial resources posed by multiple lawsuits, the length of time required to

conclude multiple suits as against a single one, and the relative expense to all concerned of the

single-trial, multiple-trial alternatives." *Nobel v. S. Fla. Stadium, LLC*, No. 24-CV-22751, 2024 WL 4433469, at *2 (S.D. Fla. Oct. 7, 2024) (citation omitted).

That the Stansell Interpleader proceedings and Osio Interpleader proceedings should be consolidated is beyond dispute.  Both proceedings involve the same Valero-Petrocedeno Blocked Account, the same parties, and the same core legal and factual issues, including whether the Blocked Account is subject to execution under TRIA § 201(a), whether this Court has *in rem* jurisdiction over the Blocked Account, the extent to which Petrocedeno's arguments for invalidating the Stansell Writ and Osio Writ have merit, and whether the Stansell Plaintiffs and Osio Plaintiffs have priority over Caballero.  Moreover, although *Stansell* and *Osio* are before different district judges, Magistrate Judge Torres has been assigned to both cases, is familiar with the issues and procedural posture in each, and can continue to render rulings or reports or recommendations in both cases to the extent necessary up to the time JPMorgan's motion to transfer, if granted, is adopted by the district court.

Above all, the alignment of the Stansell Plaintiffs' and Osio Plaintiffs' respective interests confirms that the two interpleader proceedings should be consolidated.  That alignment of interests means that, even if there are any factual differences between the two proceedings – most or all of which will relate to Petrocedeno's arguments – those differences will have the same consequential effect on both plaintiff groups regardless of how they are resolved.  They will not divide the Stansell Plaintiffs' and Osio Plaintiffs' collective recovery efforts, which should be resolved anyway in the SDNY.

In short, the proceedings in the Stansell Interpleader and Osio Interpleader overlap almost entirely and should accordingly be consolidated.  *E.g.*, *Biver*, 2014 WL 1763211, at *2 (consolidating separation litigation where the "[a]ctions present virtually *identical* factual and legal issues, assert *identical* claims under the securities laws, and name the *same defendants*. . .

8

[and] are based on the same facts and involve the same subject matter") (emphasis added). The consolidation of the proceedings also then allows for a single ruling on that prong of this Motion that seeks to transfer the proceedings to the SDNY.

## II.   THE STANSELL AND OSIO INTERPLEADERS, WHETHER AS CONSOLIDATED OR AS SEPARATE PROCEEDINGS, SHOULD BE TRANSFERRED TO THE SDNY AND MERGED WITH *CABALLERO*

Based foremost on the Court's lack of *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account, the proceedings in the Stansell and Osio Interpleaders should be transferred to the SDNY under 28 U.S.C. § 1404(a), § 1406(a) or § 1631 and merged with *Caballero*. Although the Stansell and Osio interpleader proceedings, as shown, should first be consolidated, they should be transferred to the SDNY in all events, whether as a consolidated proceeding or as separate proceedings.

### A.   The Proceedings in the Stansell Interpleader and Osio Interpleader Should Be Transferred to the SDNY under 28 U.S.C. § 1404(a)

Section 1404(a) states in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

> To determine the propriety of transfer to a different district, courts engage in a two-step analysis under section 1404(a). *Abbate v. Wells Fargo Bank, Nat. Ass'n,* 09-62047-Civ, 2010 WL 3446878, at *4 (S.D. Fla. Aug. 31, 2010). "First, courts determine whether the action could have been brought in the venue in which transfer is sought. Second, courts assess whether convenience and the interest of justice require transfer to the requested forum." *Id.* In deciding the second step, "courts focus on a number of potential factors including: (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.'" *Id.*, at *5.

*Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263-64 (S.D. Fla. 2013).  "Once a court determines that venue in the transferee district is proper, the court has broad discretion to decide whether to transfer the case for the convenience of the parties and in the interest of justice."  *Sutherland v. Wells Fargo Bank, N.A.,* No. 1:17-cv-20157-KMM, 2017 WL 7796325, at *1 (S.D. Fla. July 27, 2017).

Here, the threshold question – whether proceedings to execute on the Valero-Petrocedeno Blocked Account, which gave rise to the Stansell Interpleader and Osio Interpleader, could have been brought in the SDNY, as the venue in which a transfer is sought – is readily met.  The Stansell Plaintiffs and the Osio Plaintiffs could, like Caballero has done, have commenced proceedings in the SDNY to execute on the Blocked Account, which is held in New York and over which the SDNY has *in rem* jurisdiction.  JPMorgan's interpleader proceedings could then have been brought in the SDNY too.

Turning to the second step in a transfer analysis, the most important factor compelling a transfer is that the SDNY unambiguously has *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account while this Court does not, leaving the SDNY as the sole forum with jurisdictional authority to direct a turnover of the funds in the account.  Magistrate Judge Torres made a comparable determination in this case in his March 23, 2020 Report and Recommendation (D.E. 323), later adopted by Order dated April 29, 2020 (D.E. 340), recommending that the Stansell Plaintiffs' judgment enforcement proceeding as to a blocked account held by Citibank in New York be transferred under § 1404(a) to the SDNY, stating: "But most compellingly, the SDNY is where Citi's Blocked Account is located and where Citi has sought to protect the interests of its account holders.  That fact is far more persuasive than where Plaintiffs have first filed their turnover motion."  *Id.* at 10.  Given the importance of *in rem* jurisdiction to this transfer motion, we set forth the principles on *in rem* jurisdiction under

Florida law, reaffirmed by Magistrate Judge Torres in the 2020 Report and Recommendation, as follows:

Florida law has long confirmed that a court's power to order the turnover of a given asset depends on its having *in rem* jurisdiction over the asset.  As stated in *APR Energy, LLC v. Pakistan Power Res., LLC*, No. 3:08-cv-961-J-25MCR, 2009 WL 425975 (M.D. Fla. Feb. 20, 2009), "'[g]arnishment proceedings have a dual nature:  while a garnishment action moves against the garnishee in personam, the object of such proceedings is to obtain a judgment against the debtor's property, and the court issuing the process must have jurisdiction over **both** the garnishee and any property which is held by the garnishee.'"  *Id.* at *2 (citing 6 Am. Jur. 2d Attachment and Garnishment § 19 (2008)) (emphasis in original).  "Accordingly, not only must the Court have personal jurisdiction over Garnishee, but it must also have jurisdiction over the property to be garnished, in this case, the bank account."  *Id.*  Nor, as noted can *in rem* jurisdiction, unlike personal jurisdiction, be waived, so JPMorgan cannot simply consent to the Court's *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account.  *E.g.*, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, *supra*, 149 F. Supp. 3d at 1339-40.

In *APR Energy*, the court concluded that whether or not it had personal jurisdiction over the garnishee at issue, it had no *in rem* jurisdiction over the garnishee's bank account in Oklahoma.  2009 WL 425975, at *1-2.  The court accordingly dissolved a writ of garnishment on that account.  *Id.* at *2 ("As this Court does not have jurisdiction to issue a writ of garnishment against the bank accounts in Oklahoma, Garnishee's Motion to Dissolve is due to be granted.").  Likewise, in *Skulas v. Loiselle*, No. 09-60096-CIV, 2010 WL 1790439 (S.D. Fla. April 9, 2010) (Mag. J.), *aff'd and adopted by* No. 09-60096-CIV, 2010 WL 1790433 (S.D. Fla. May 5, 2010), in which the plaintiff served a writ of garnishment directed to a bank account in Pennsylvania, the court adopted the reasoning of *APR Energy*, holding that:  (i) Florida's garnishment statutes,

11

Fla. Stat. § 77.01 *et seq.*, did not have extraterritorial effect; (ii) the court lacked *in rem* jurisdiction over the account; and (iii) the writ on the account was subject to dissolution. *Id.* at *3 ("[B]ecause the bank account at issue is located in Pennsylvania, the Court does not have jurisdiction over it and the instant Writ of Garnishment should be dissolved."). The court accordingly dissolved the writ, adding that the plaintiff was "not left without recourse" but could "seek relief from a Pennsylvania court in satisfying his outstanding judgment." *Id.*

More recently, Judge Moreno, adhering to *APR Energy* and *Skulas*, held that bank accounts located in South Carolina were outside the Court's *in rem* jurisdiction, and, as a result, dissolved a previously issued writ of garnishment covering the accounts. *Codeventures, LLC v. Vital Motion Inc.*, 20-21574-CIV, 2021 WL 3742059, at *2 (S.D. Fla. Aug. 23, 2021). Noting that "garnishment proceedings are *quasi in rem*, meaning that the presiding court must have personal jurisdiction over the garnishee (*in personam*) and jurisdiction over the property or *res* (*in rem*)," the Court concluded:

> This case is more analogous to *Skulas* because, '[t]he issue here is whether, under Florida's garnishment statute, a judgment creditor can garnish a bank account maintained outside of Florida.' [Citing *Skulas*, 2010 WL 1790439, at *2] Like in *Skulas*, where the court recommended dissolving a writ of garnishment concerning a bank account in Pennsylvania, here the Court must dissolve Codeventures' writ of garnishment because Vital's three bank accounts are located in South Carolina. [Citing *Skulas*, 2010 WL 1790439, at *2-3].

*Id.* at *3.

A year before *Codeventures*, this Court reached the same result in *Inversiones y Procesadora Tropical Inprotsa, S.A. v. Del Monte Int'l GmbH*, No. 16-civ-24275, 2020 WL 6384878 (S.D. Fla. Aug. 5, 2020), *report and recommendation adopted*, 2020 WL 6384299 (S.D. Fla. Oct. 30, 2020) (Moreno, J.), holding that the court lacked *in rem* jurisdiction to levy a writ of garnishment on bank accounts located in Costa Rica. And in *Stansell*, the Middle District of Florida, following *APR Energy* and *Skulas*, held in the context of a TRIA judgment

12

enforcement proceeding that it had no *in rem* jurisdiction over bank accounts held in New York and dissolved writs of garnishment on those accounts.  *Stansell*, 149 F. Supp. 3d at 1339–40.

The *Stansell* court made clear, moreover, that an interpretation of Florida's garnishment statutes as having no extraterritorial effect did not conflict with TRIA or impede judgment creditors' enforcement efforts under TRIA.  The court stated:

> [T]he Court finds no conflict between the TRIA and interpreting the Florida garnishment statutes to extend only to property within the state, because such an interpretation does not prevent judgment creditors from attaching blocked assets of terrorist parties to satisfy judgments in terrorism cases – the object of the TRIA. ***Such assets will continue to be available to judgment creditors, provided that enforcement proceedings are commenced in the correct jurisdiction. Plaintiffs may seek to attach the blocked accounts, without any jurisdictional objection, by registering their judgment in the district where the property is located pursuant to 28 U.S.C. § 1963 and thereafter by commencing garnishment proceedings, as other similarly situated judgment creditors have done.*** *Hausler v. Republic of Cuba,* Case No. 09–22108–CIV–AJ, Agreed Order (S.D. Fla. Oct. 14, 2009) (Dkt. 25) (transferring judgment enforcement proceeding to Southern District of New York by agreement).

*Id.* at 1342 (emphasis added).

Based on prior filings in this case and in *Osio*, it is expected that any opposition to this transfer motion will rely on a separate line of authority under Florida law recently affirmed by the Florida Supreme Court in *Shim v. Buechel*, 339 So. 3d 315, 316 (Fla. 2022).  There, the court stated that "a court's personal jurisdiction over a defendant gives the court the power to require a defendant to do or refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of such territory."  *Id.* Based on that principle, the court directed the judgment debtor, who had lost in the underlying litigation and had a judgment against him, to bring into Florida for purposes of enforcing that judgment a negotiable instrument drawn on funds deposited in a South Korean bank.  *Id.* at 318.

But the principle relied on by the *Shim* court is not new to Florida law, and as in *Shim* itself, it has been applied exclusively or predominantly to judgment debtors, not to disinterested

non-party garnishees such as JPMorgan.  Indeed, Florida courts have often found they had *in rem* jurisdiction over an asset outside Florida solely "because a party that had consented to the in personam jurisdiction of the Court was either a claimant to the res in question or was the plaintiff that had consented to the jurisdiction of the court." *Stansell*, 149 F. Supp. 3d at 1441.  "In contrast," as the *Stansell* court wrote describing the bank garnishees at issue there, "here, all of the Garnishees are disinterested stakeholders only.  They do not claim any right to the funds in question, have not themselves invoked the jurisdiction of this Court, and have not filed any claims seeking affirmative relief." *Id.*

The same is true of JPMorgan.  It is a neutral stakeholder only, it asserts no claim to the funds in the Valero-Petrocedeno Blocked Account, it has not itself invoked this Court's jurisdiction other than as a garnishee/third-party plaintiff in an already pending turnover proceeding, and it seeks no affirmative relief other than the assurance that any order directing it to turn over the funds in the Valero-Petrocedeno Blocked Account be in accordance with all applicable laws and immune from legitimate future challenge.

But just as importantly, the Valero-Petrocedeno Blocked Account is fundamentally a different kind of asset than any other asset, including, for example, a standard bank account that can be drawn from at locations outside the state in which the account sits.  JPMorgan cannot unilaterally transfer the Valero-Petrocedeno Blocked Account out of New York – including into the registry of this Court, as has wrongly been suggested in other filings in this proceeding.  To effect a transfer of the Valero-Petrocedeno Blocked Account from its location in New York without violating the OFAC sanctions regulations governing the Blocked Account and exposing the bank to the risk of being penalized by OFAC, JPMorgan would need to receive a license from OFAC, obtained by an interested party, authorizing it to do so.  *See* 31 C.F.R. 591.301.

OFAC's sanctions regulations applicable to the Valero-Petrocedeno Blocked Account show why JPMorgan cannot unilaterally transfer the Valero-Petrocedeno Blocked Account from New York to another location outside New York.  The Account is governed by Executive Orders 13692 and 13850 and the Venezuela Sanctions Regulations ("VSR"), 31 C.F.R. 591.  The VSR defines blocked property "as any account or property subject to the prohibitions in [the VSR] held in the name of a person whose property and interest in property are blocked pursuant to [the VSR], or in which such person has an interest, and with respect to which payments, *transfers*, exportations, *withdrawals*, or *other dealings* may not be made or effected *except pursuant to a license or other authorization from OFAC expressly authorizing such action*."  *See* 31 C.F.R. 591.301 (emphasis added).

The VSR defines "transfer" as "any actual or purported act or transaction, whether or not evidenced by writing, and whether or not done or performed within the United States, the purpose, intent, or effect of which is to create, surrender, release, *convey, transfer, or alter*, directly or indirectly, any right, remedy, power, privilege, or *interest with respect to any property*."  *See* 31 C.F.R. 591.310 (emphasis added).  Under the VSR, "transfer" also includes "the making of any payment . . . the issuance, docketing, or filing of, or levy of or under, any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment."  *Id*.  Any transfer of blocked assets in violation of the VSR "is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privileged with respect to such property or property interests."  *See* 31 C.F.R. 591.202(a).

Executive Orders 13692 and 13850, issued respectively by then-Presidents Barack Obama and Donald Trump under the International Emergency Economic Powers Act (IEEPA) (50 U.S.C. § 1701 *et seq.*), contain similar prohibitions, barring "any transaction that evades or

15

avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth [in Executive Order 13692 or 13850]."  And as set forth in 31 C.F.R. 510.701, "[a] person who willfully commits, willfully attempts to commit, willfully conspires to commit, or aids or abets in the commission of a violation of any regulation or prohibition [of IEEPA] may, upon conviction, be fined not more than $1,000,000, or if a natural person, be imprisoned for not more than 20 years, or both."

As the foregoing sanctions regulations show, JPMorgan cannot unilaterally transfer, without an OFAC license, the Valero-Petrocedeno Blocked Account out of New York without being in violation of those regulations and at risk of being penalized by OFAC.  Moreover, those JPMorgan employees who would need to manually effectuate such a transfer would themselves be at risk of a penalty.  And the size of the Valero-Petrocedeno Blocked Account – the account today holds more than $170 million – greatly heightens those risks.

Given the applicable regulations and concomitant penalties, it is not JPMorgan's practice to transfer of blocked property without an OFAC license or other specific authorization from OFAC, as stated in the accompanying declaration of Jose Fanjul (Ex. 4), a JPMorgan officer who advises on OFAC-administered sanctions.  Although judgment creditors with an order under TRIA directing the turnover of a blocked property need not obtain a license to recover that property, no turnover order has been issued as to the Valero-Petrocedeno Blocked Account, which accordingly remains blocked pursuant to OFAC sanctions regulations.[5]

---

[5]   Based on prior filings here and in *Osio*, any opposition to this transfer motion can also be expected to contend that, even if the Court lacks *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account, it can still exercise jurisdiction over the account pursuant to a nationwide service-of-process provision in the ATA, 18 U.S.C. § 2334.  But the proceedings to effect a turnover of the Valero-Petrocedeno Blocked Account are under TRIA, not the ATA, and TRIA has no comparable provision on service of process.  We are aware of no case in which a court has relied on the ATA as an independent basis for *in rem* jurisdiction over an OFAC-regulated blocked account.  *See Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 548 (S.D.N.Y.

As to the other factors potentially relevant to a transfer analysis, some of them do not apply to this post-judgment proceeding,[6] and those that do apply further compel that the proceedings in the Stansell and Osio Interpleaders be transferred to the SDNY, where they can be consolidated with *Caballero*. The following factors weigh in favor of a transfer:

- The Valero-Petrocedeno Blocked Account – the subject matter of the Stansell and Osio Interpleaders – is located within the SDNY, which gives the SDNY exclusive *in rem* jurisdiction over the turnover proceeding.

- The Stansell Plaintiffs have been litigating judgment enforcement proceedings in the SDNY since 2016 (*see Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (S.D.N.Y.), as well as in other jurisdictions nationwide,[7] so they and the Osio Plaintiffs, who are aligned and working with the Stansell Plaintiffs, have the means and ability to pursue their claim to the Valero-Petrocedeno Blocked Account in the SDNY.

- The SDNY has decades of experience and familiarity with TRIA, which governs the proceedings to execute on the Valero-Petrocedeno Blocked Account. *See Sutherlin*, 2017 WL 7796325, at *1 ("Courts routinely transfer cases to districts where the court had handled related litigation and is familiar with the relevant issues" (collecting cases)).

- The SDNY is already the forum in which *Caballero*, which presents the same core issues presented in *Stansell* and *Osio*, is pending, so a transfer will ensure that there will be no inconsistent orders concerning the Valero-Petrocedeno Blocked Account. Nor is there any reason to believe that interpleader proceedings in *Caballero* will proceed at a pace materially different from that of the *Stansell* and *Osio* interpleader proceedings in this Court.

---

2005), *aff'd*, 332 F. App'x 643 (2d Cir. 2009) ((i) analyzing the jurisdictional reach of Fed. R. Civ. P. 69 in the context of post-judgment proceedings, (ii) concluding that New York's long-arm statute, not the ATA, was the appropriate measure of personal jurisdiction, (iii) noting that the proceeding was not brought under the ATA, and (iv) adding, "[n]or does the ATA contain any supervening provisions related to enforcement of judgments that would command this Court to apply its wider jurisdictional reach to ancillary Rule 69 proceedings against third parties.").

[6] The convenience of witnesses, the ability of process to compel the attendance of unwilling witnesses, the convenience of the parties, and the location of sources of proof are factors that do not apply in these turnover proceedings because the resolution of the competing claims to the Valero-Petrocedeno Blocked Account is highly unlikely to involve a trial with witnesses, including the Stansell Plaintiffs and Osio Plaintiffs themselves. It will almost certainly be based on a dispositive turnover motion or other motion.

[7] *E.g. Stansell et al. v. Fuerzas Armadas Revolucionarias de Colombia*, 15-cv-06826 (N.D. Ill.).

- All of the three Osio Plaintiffs reside in New York, as stated in their complaint in *Osio* (*Osio* D.E. 1 at ¶¶16-18), and the Stansell Plaintiffs reside in New York, Connecticut, Alabama and Virginia as well as Florida.  (*See* D.E. 585 at ¶26.)

In sum, all of the factors relevant to whether the judgment enforcement proceedings, including the Stansell and Osio Interpleader proceedings, as to the Valero-Petrocedeno Blocked Account should be transferred to the SDNY compel that it should, including the fact that all of the Osio Plaintiffs reside in New York and most of the Stansell Plaintiffs reside outside Florida. And the factor unique to this case – the Court's lack of *in rem* jurisdiction over the Valero-Petrocedeno Blocked Account – cements that conclusion.  It is in the "interest of justice," within the meaning of § 1404(a), for JPMorgan not to be exposed to the risk of double liability, on a $170 million blocked account, based on its compliance with a turnover order rendered by a court that lacks the jurisdictional authority to direct the turnover.

**B.     The Proceedings in the Stansell Interpleader and Osio Interpleader**
**Can Also Be Transferred to the SDNY under 28 U.S.C. § 1406(a)**

The proceedings in the Stansell and Osio Interpleaders can also be transferred under 28 U.S.C. § 1406(a), which states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

For the reasons stated above, and as stated Stansell Interpleader (D.E. 585 at ¶24), venue in this Court is improper – specifically as to the proceedings to execute on the Valero-Petrocedeno Blocked Account – due to the Court lack of *in rem* jurisdiction to direct the turnover of the account.  For that reason alone, those proceedings can be transferred to the SDNY under § 1406(a) just as they can under § 1404(a), and they can then be consolidated with *Caballero* so that the competing claims to the Blocked Account can be resolved by a single district court.

**C.    28 U.S.C. § 1631 Independently Compels That the Proceedings in the Stansell Interpleader and Osio Interpleader Be Transferred to the SDNY Due to This Court's Lack of *In Rem* Jurisdiction Over the Valero-Petrocedeno Blocked Account**

Finally, 28 U.S.C. § 1631 further compels that the proceedings relating to the Stansell and Osio Interpleaders be transferred to the SDNY.  Section 1631 states in pertinent part that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."  Although the Florida federal courts do not appear to have addressed § 1631 in the *in rem* jurisdiction context, federal courts elsewhere have confirmed that § 1631 encompasses any type of jurisdiction, including *in rem* jurisdiction.  *See United States v. Am. River Transp., Inc.*, 150 F.R.D. 587, 592-93 (C.D. Ill. 1993) ("The Court relies on the plain language of [28 U.S.C. § 1631], the purpose of the Act, as well as the precedent cited above in finding that this provision applies to any type of jurisdiction, including *in rem* jurisdiction."); *Ferrostaal, Inc. v. Haci Hassan Yardim*, No. 03 CV 4886 (GBD), 2006 WL 2819585, at *4 (S.D.N.Y. Sept. 29, 2006) ("The lack of *in rem* jurisdiction of this Court . . . could be cured by the transfer of this case to a court that could assert such jurisdiction" under 28 U.S.C. § 1631).

Just as with § 1404(a), the "interest of justice" within the meaning of § 1631 requires that JPMorgan not to be exposed to the risk of double liability, on a $170 million blocked account, based on its compliance with a jurisdictionally deficient turnover order.  Section 1631 is accordingly an independent basis compelling that the proceedings relating to the Stansell and Osio Interpleaders be transferred to the SDNY and then consolidated with *Caballero*.

<u>**CONCLUSION**</u>

For the reasons given above, all of the proceedings in *Stansell* and *Osio* concerning the Valero-Petrocedeno Blocked Account, including the Stansell Interpleader and the Osio

Interpleader, should be consolidated, and the consolidated proceedings should then be transferred to the SDNY, where they can be assigned to the *Caballero* court as a related case or otherwise consolidated with *Caballero*.

Dated:  December 13, 2024                               Respectfully submitted,

*/s/ Mark A. Salky*

Mark A. Salky
Florida Bar No. 588221
salkym@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4100
Miami, Florida 33131
Tel – 305.579.0500

and

*/s/ Steven B. Feigenbaum*

Steven B. Feigenbaum
Admitted *Pro Hac Vice*
sfeigenbaum@braverlaw.net
BRAVERMAN GREENSPUN P.C.
110 East 42nd Street
New York, New York 10017
Tel – 212.682.2900

*Co-Counsel for Garnishee, Counterclaimant and Third-Party Plaintiff JPMorgan Chase Bank, N.A.*

## LOCAL RULE 7.1(A)(3) PRE-FILING CERTIFICATION

Undersigned counsel hereby certify that they conferred by email on December 13, 2024 with the Stansell Plaintiffs' counsel and the Osio Plaintiffs' counsel regarding the relief requested on this Motion.  Counsel for the Stansell Plaintiffs and for Osio Plaintiffs both said they oppose that relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of December, 2024, the foregoing was filed and uploaded to the Court's CM/ECF system, providing notice to all counsel of record.

By: */s/ Mark A. Salky*
MARK A. SALKY

21