UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:19-cv-20896-SCOLA/TORRES

KEITH STANSELL, et al.,
    Plaintiffs,
vs.

REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC); et al.,
    Defendants.
_____/

**PLAINTIFFS' MOTION FOR ENTRY OF FINAL TRIA TURNOVER JUDGMENT, BASED ON GARNISHEE JPMORGAN CHASE BANK N.A.'S ANSWER TO WRIT OF GARNISHMENT [ECF 584 REFILED AT 585]**

Plaintiffs move for entry of a TRIA Turnover Judgment directing Garnishee JPMORGAN CHASE BANK N.A. ("JPMCB") to turn over the blocked assets of PETROCEDENO, S.A. ("Petrocedeno"), to partially satisfy Plaintiffs' Final Judgment against Defendants, pursuant to: (i) the Anti-Terrorism Act ("ATA"), 18 U.S.C. §2333; (ii) Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. §1610 note; (iii) Fed. R. Civ. P. 69(a); (iv) Florida garnishment statutes [Ch. 77]; (v) *Stansell v. FARC*, 771 F. 3d 713, (11th Cir. 2014); (vi) the International Emergency Economic Powers Act ("IEEPA") Executive Order 13857 (National Emergency with respect to Venezuela); and (vii) this Court's own June 17, 2020 Order [DE 367] and September 11, 2020 TRIA Turnover Judgment [ECF 499].

Despite some unnecessary procedural complications occasioned by an (ostensibly "neutral") Garnishee (JPMCB), this matter is actually remarkably straightforward. Specifically: JCMCB is holding the OFAC-blocked assets of Petrocedeno; Petrocedeno has already been determined by this Court to be an agency or instrumentality of the terrorist party FARC; and Plaintiffs have complied with all procedural and/or substantive prerequisites for entry of a TRIA turnover judgment; and there are no competing judgment creditors because all the victim families who issued writs on these assets in this District are fully cooperating pursuant to sharing agreements; and all other interested persons have received constitutionally-adequate statutory notice and have either failed to appear or otherwise possess a clearly chronologically-inferior claim. That being so, entry of an immediate turnover judgment is warranted and appropriate.

Petrocedeno filed a motion to vacate [ECF 600], but as noted *infra* and as our Response

[ECF 612] to that motion explains in greater detail, Petrocedeno's motion failed to include any evidence or anything else that might even theoretically rebut Plaintiffs' evidence or this Court's prior agency or instrumentality findings made by Judge Scola in ECF 367 and 499. Those rulings are law of the case. But whether viewed from the lens of "law of the case" or through the statutory default provision, §77.07(2), Fla. Stat., the end result is exactly the same: Petrocedeno cannot (and has not) submitted anything that would prevent entry of an immediate turnover judgment.

## I.  BACKGROUND

As this Court is well aware at this point, the Plaintiffs' ATA Judgment was rendered June 15, 2010 by the U.S. District Court for the Middle District of Florida in the amount of $318,030,000 in compensatory damages, and was duly registered in this District on July 28, 2010 pursuant to 28 U.S.C. § 1963, and may now be enforced like a judgment from this District. *See ECF* 1. The Judgment was obtained pursuant to a civil action brought under the Anti-Terrorism Act, 18 U.S.C. § 2333, arising from the FARC's targeting of Americans and its shoot down of a U.S. civilian narcotics counter-surveillance plane, its murder of Tom Janis (retired U.S. military and former member of the Army's Delta Force) on February 13, 2003 and the FARC's hostage taking and 1,967 days of captivity and torture—from February 13, 2003 until July 2, 2008—of Keith Stansell (mission commander, former US Marine), Marc Gonsalves (intel officer, former USAF) and Thomas Howes (co-pilot).[1] There currently remains due and owing $230,358,541.92 on the Judgment.

## II.  THE BLOCKED ASSETS ARE SUBJECT TO EXECUTION UNDER TRIA

Under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified at 28 U.S.C. § 1610 note, Plaintiffs are entitled to satisfy their ATA judgment from the OFAC-blocked assets of any "agency or instrumentality" of the FARC even if the "agency or instrumentality" itself is not named in the judgment. Under the Venezuela Sanctions Program, 31 C.F.R. Part 591 and Executive Orders 13850 and 13857, OFAC issued sanctions against Petroleos de Venezuela, S.A. ("PDVSA") and its corporate subsidiaries, including Petrocedeno, thereby

---

[1] The time for filing an appeal has lapsed. None of the FARC defendants have appeared and defaults were properly entered against them all prior to entry of the Default Judgment in MDFL Case 8:09-cv-2308. Accordingly, no further notice, service of pleadings, motions or writs is required to be served on the FARC or the individual FARC members identified in the ATA Judgment. Fed. R. Civ. P. 5(a)(2).

blocking all of Petrocedeno's assets in the U.S., including the subject account which is currently held by JPMCB.

### A. Plaintiffs Complied with the Florida Garnishment Statute and All Applicable Eleventh Circuit Law for this TRIA Execution

"Florida law has specific requirements for notice and an opportunity to be heard." *Stansell v. FARC*, 771 F. 3d 713, 725 (11th Cir. 2014). Florida's notice requirements apply to these post judgment TRIA executions. *Id*. *See Stansell v. Lopez Bello*, No. 19-11415, 2020 WL 290423 *3 (11th Cir. Jan. 21, 2020) (the notice requirements in Florida garnishment statute, as applied to third-party non-judgment debtor, again "found to be constitutionally adequate."). Pursuant to Fla. Stat. § 77.01, Plaintiffs filed an *ex parte* motion attaching extensive supporting evidence and seeking issuance of TRIA writs of garnishment on the basis that the property was (and still is) blocked by OFAC, and that the blocked property owner is an "agency or instrumentality" of a terrorist party, i.e., the FARC. *Stansell*, 771 F. 3d at 729 ("Before a writ of garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the property owner … is an agency or instrumentality of the judgment debtor terrorist party. The district court did that here, after Plaintiffs made factual proffers on those issues. The risk of erroneous deprivation is therefore diminished."). *See also* DE 360 through DE 360-10 (Plaintiffs' Motion & Exhibits supporting agency or instrumentality and issuance of writs, including sworn, unrebutted expert witness testimony).

This Court properly engaged in the two-step TRIA analysis as required under the Eleventh Circuit's opinion in *Stansell*, 771 F. 3d at 726, before it entered its Order [ECF 367] issuing writs finding that Petrocedeno is an agency or instrumentality of the judgment debtor. The Clerk issued a writ of garnishment to JPMCB on October 15, 2024. ECF 572. The U.S. Marshals served the writ of garnishment that same day by serving JPMCB's registered agent for service of process in Florida. ECF 573. Plaintiffs perfected their judgment lien priority over this blocked account by service of this writ. Fla. Stat. § 77.06(1). Plaintiffs served the notice of levy on the known addresses for the account owner Petrocedeno on October 17, 2024 in compliance with Fla. Stat. §

3

77.041. ECF 574.[2] JPMCB filed its Answer on November 4, 2024. ECF 584 refiled at 585.[3] On November 5, 2024 Plaintiffs served the statutory notice of the Garnishee's Answer, and the notice of 20 day statutory deadline to file a motion to dissolve the writ, all in compliance with Fla. Stat. § 77.055. ECF 586. Plaintiffs also provided § 77.055 notice to Petrocedeno's counsel on November 5, 2024. ECF 600-2.[4]

### B. The Time Within Which to Move to Dissolve the Writ has Expired & the Florida Garnishment Statutes' Time Limits are Strictly Construed

Florida's garnishment statute itself provides for no extension of the 20-day time limitation—for any reason—to file a motion to dissolve the writ. Fla. Stat. § 77.07(2). *See BNP Paribas v. Wynne III*, 994 So. 2d 1004, 1005 (Fla. Dist. Ct. App. 2005) (trial court properly denied request for extension because "the trial court does not have the same discretion to bend time requirements that might be allowed under the rules of civil procedure."). The Florida statute's 20-day time limit must be "strictly construed." *Regions Bank v. Hyman*, 91 F. Supp. 3d 1234, 1241 (M.D. Fla. 2015) ("Pursuant to Fed. R. Civ. P. 69(a), proceedings supplementary to and in aid of judgment or execution, the procedure followed must accord with the procedure of the state in which the Court is located. . . . The procedures outlined in Ch. 77, Florida Statutes govern this garnishment proceeding [and] . . . must be strictly construed."). The Eleventh Circuit in *Stansell* has already determined that, within the TRIA execution context, the provisions of the Florida garnishment statute provide timely and adequate due process to those who oppose execution. *Stansell,* 771 F. 3d at 741 (OFAC-blocked persons/entities are "not prevented from taking advantage of Florida law specifically provided for third-party challenges to garnishment proceedings. *See* Fla. Stat. § 77.07(2)."); *Stansell*, 2020 WL 290423 at *3 "constitutionally

---

[2] The blocked parties are not entitled to hearing *before* a writ gets issued. *Stansell*, 771 F. 3d at 729 ("Because the factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing before the writ issued. In sum, Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment."). The TRIA turnover procedures under the Florida garnishment statute and its safeguards are "constitutionally adequate." *Stansell,* 2020 WL 290423 at *1, 3. Service of the writ creates an immediate lien on the property, Fla. Stat. § 77.06(1).
[3] JPMCB's Answers ECF 584 and 585 are identical.
[4] Plaintiff John Doe also provided prior statutory notices to Petrocedeno. in 2019 in compliance with Fla. Stat. §§ 77.041 and 77.055. *See* SDFL Case 1:10-cv-21517-PCH, ECF 258-3, 258-4. Petrocedeno did not appear in *Doe* and its $16.4 million was turned over by Judge Huck on June 8, 2020. *Id*., ECF 288. Petrocedeno does not dispute the turnover of its funds in the *Doe* case.

adequate"). *See* Order ECF 70 (declining to extend the Florida garnishment statutory deadlines).

Under Florida law, Petrocedeno had a strict "20 days after the date indicated in the certificate of service on the defendant and such other person of the plaintiff's notice required by s. 77.055, stating that any allegation in plaintiff's motion for writ is untrue." Fla. Stat § 77.07(2). ***That 20 day strict time limit expired on November 25, 2024***. Petrocedeno appeared and on November 22, 2024 filed a Rule 60(b) motion [ECF 600] —which itself was untimely under Rule 60 time limits—to vacate, quash and dismiss. In that Rule 60(b) motion, Petrocedeno asserted only legal defenses —all of which fail on the merits—without providing any evidence whatsoever on the agency or instrumentality issue. That Rule 60 motion has been fully briefed, including Plaintiffs' Response [ECF 612], and Petrocedeno's Reply [ECF 623].

In its Rule 60 Motion, Petrocedeno failed to file any affidavit or evidence whatsoever to rebut Plaintiffs' evidence [ECF 360 Exs. 4, 5], or contest the agency or instrumentality findings— ***zero actual evidence***. A close read of the exhibits attached to Petrocedeno's Motion reveals ***not a single evidentiary-based rebuttal*** to the agency or instrumentality findings from Judge Scola's two prior orders from 2020. Accordingly, there are **no disputed issues of material fact** on Petrocedeno's status as an agency or instrumentality. Viewed through a statutory lens, ***Petrocedeno is now in default on that issue***. Fla. Stat. § 77.07(2). *See Stansell*, 771 F. 3d at 741 (appellants "had the opportunity to present evidence refuting the agency or instrumentality designation. They simply did not present any evidence that changed the district court's position on the agency or instrumentality determination."). The strict 20-day time limit from § 77.07(2) having elapsed on November 25, it is now too late for Petrocedeno to try to "amend" or supplement its utterly deficient November 22 filing.

With respect to Mr. Caballero, another potentially-interested person, though his counsel of record he received ECF notice of the October 15, 2024 issuance and Marshal's levy of Plaintiffs' writ on JPMCB. Because JPMCB's Answer [ECF 584/585] alleged that Mr. Caballero was a potential claimant, Plaintiffs provided the requisite statutory notice to Mr. Caballero of his 20-day deadline to file a motion to dissolve. The *Stansells* provided their § 77.055 statutory notice to Caballero on November 5, 2024 via first class mail [ECF 586], and also via separate email to his counsel. Moreover, Caballero's counsel remain on the Court's Notice of Electronic Filing system in this case and they accordingly received further actual notice of both the garnishee's Answer and Plaintiffs' § 77.055 notice. ECF 584/585, 586. Nonetheless , Mr. Caballero failed to respond by

5

**November 25, 2024** and thus, under the Florida statute, he is in default as a matter of law.  Fla. Stat. § 77.07(2).  Moreover, Mr. Caballero's New York writ was not issued until December 9, 2024, and levied on December 10, 2024 [ECF 619-1], 26 days after Plaintiffs writ was levied on JPMCB, and Mr. Caballero's writ was issued and levied 14 days after his § 77.07(2) default.  Mr. Caballero's writ is chronologically inferior to the *Stansell* and *Alban* writs and thus cannot defeat the *Stansell* October 15, 2024 statutory lien (or the earlier levied Alban writ).  Put simply, Mr. Caballero's filings in New York are essentially nullities, as he had already been defaulted here by operation of law and also his writ fails the "first in time, first in right" rule that governs these collection proceedings.

   C. *Judge Scola's 2020 Orders were Supported by Competent--and Now Unrebutted-- Evidence*

Judge Scola's 2020 TRIA Turnover Judgment against Petrocedeno [ECF 499] was expressly based "upon due and careful consideration" of, *inter alia*, sworn testimony of expert witnesses Mr. Gaddis and Mr. Fonseca.  ECF 360 Exs. 4, 5.  Plaintiffs filed the affidavit of David Gaddis, a former senior official with the Drug Enforcement Administration and former Deputy Chief of Operations, Office of Global Operations, Chief of Enforcement Division.  ECF 360, Ex. 4.  Among other thing, Mr. Gaddis testifies that:

> 18. I am also aware of connections between the FARC and PDVSA, and they are embedded in the common link with the Venezuela military. PDVSA's oil generates almost all of Venezuela's export revenue, yet with its oil exports approximately 25% of what they were a decade ago, and that number still falling sharply, **PDVSA is laundering money for the Venezuelan military and military proxy forces of the FARC** and ELN - revenue gained from illegal drug trafficking in both Venezuela and Colombia. According to reports:
>
>> Illicit operations carried out by white collar networks within the state-owned petroleum company PDVSA were reported in 2007, when the director of the Reporte Económico newspaper declared in statements to a Spanish newspaper that "PDVSA has become a nest of corruption, money laundering, and narcotrafficking." A subsequent investigation conducted by the Financial Crimes Enforcement Network (FinCEN), an anti-moneylaundering unit of the U.S. Department of the Treasury, revealed that nearly $2 billion had been laundered through PDVSA and the Banca Privada d́Andorra (BPA)
>
> 19. More specifically, the connection between the Venezuelan military and PDVSA lies in PDVSA's President and Chief Executive Officer, Manuel Quevedo. Quevedo, a career military officer with no past experience in the oil industry, was installed by Venezuela President Nicolas Maduro to head the broken state-run oil

conglomerate. Since taking over PDVSA, Quevedo has militarized the company by nominating numerous Venezuelan military soldiers to executive posts in the company, none with significant experience in the oil industry. Since Quevedo taking over PDVSA, oil production has decreased approximately twenty percent. With such a sharp loss in revenue, the illegal proceeds from FARC and ELN drug trafficking activities substantially aid a steady revenue stream for PDVSA.

\* \* \*

21. There has been long-standing cooperation between the FARC and ELN and the Venezuelan government, the Venezuelan military, Venezuelan state-owned companies generally, and PDVSA specifically, in a joint criminal enterprise to send cocaine to the United States and launder the proceeds. ***This is accomplished in part through PDVSA's ownership and managing influences over subsidiaries in Venezuela and countries abroad. One example is Petrocedeno S.A***.

22. The current Venezuela Government, similar to the Chavez Government before his death, is relying on FARC drug trafficking enterprises that are comingled with government connected corporations in order to boost finances of civilian government and military leaders. According to recent summations of the relationship:

> "This alliance of Bolivarian states together with the FARC have coalesced into what we define as the Bolivarian Joint Criminal Enterprise – or a consortium of criminalized states and non-state actors working in concert with shared objectives. This joint criminal enterprise has not only taken billions of dollars from Venezuelan state coffers, but also used PDVSA as the central structure for money laundering and corruption throughout the region. The criminal portfolio used by those in this movement has continued to diversify as oil prices dropped and PDVSA's production stalled. Such conditions forced incoming president Nicolas Maduro to rely even more on activities like cocaine trafficking and illicit gold production, but even with PDVSA's decline the regime continues to function as a criminal operation.

29. The public positions of the Venezuelan government concerning both the FARC (welcoming and supporting it with PDVSA-generated dollars) and PDVSA (publicly associating it with drug traffickers allied with the FARC), leave no doubt that FARC and PDVSA are close allies. In fact, ***PDVSA and its subsidiaries, due to their size and scope, are one of the primary means through which FARC proceeds are laundered***, in terms of aggregate dollar value. "The primary money laundering structure for the FARC (as well as the Maduro regime and other criminal groups) is the Venezuelan state oil company PDVSA, sanctioned by the U.S. government on multiple occasions."

ECF 360, Ex. 4**,** Affid. of David Gaddis ¶¶ 18, 19, 21, 22, 29 (emphases added). Mr. Gaddis also specifically testified that Petrocedeno is an agency or instrumentality of the FARC. *Id*. at ¶ 29.[5]

---

[5] Judge Scola also relied upon the affidavit of expert witness Brian Fonseca. ECF 360-5**.**

7

> D. *As if Any More Were Necessary (and it is not), Judge Scola's 2020 Orders are also Independently Supported by Materials contained in the United States' indictment of Nicolas Maduro and Petrocedeno Officials' SDFL Guity Pleas*

Although the evidence that Judge Scola relied upon in determining that Petrocedeno is an agency or instrumentality of the FARC is itself entirely sufficient, even more evidence has come to light. The United States has indicted Nicolas Maduro, FARC leaders, and PDVSA as part of a Cartel of the Suns conspiracy:

> From at least in or about 1999, up to and including in or about 2020, NICOLAS MADURO MOROS, DIOSDADO CABELLO RONDON, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLIVER ANTONIO ALCALA CORDONES, LUCIANO MARIN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNANDEZ SOLARTE, a/k/a "Jesus Santrich," the defendants, participated in a corrupt and violent narco-terrorism conspiracy between the Venezuelan *Cartel de Los Soles* and the *Fuerzas Armadas Revolucionarias de Colombia* ("FARC").
>
> \* \* \*
>
> In or about 2008, Chavez, who was at that time the president of Venezuela and one of the leaders of the Cartel de Los Soles, agreed with LUCIANO MARIN ARANGO, a/k/a "Ivan Marquez," the defendant, to use funds from the Venezuelan state-owned oil producer, Petroleos de Venezuela (PDVSA), to support the FARC's drug-trafficking and terrorist operations.

*United States v. Nicolas Maduro Moros et al.*, SDNY Case 11-cr-205, ECF 11 Superseding Indictment at pp. 1, 11.

The Cartel of the Suns, through its leaders, including Nicolas Maduro and former Oil Minister Tareck El Aissami,[6] sustains itself not only from its narco-trafficking operations with the FARC, but also by using PDVSA and its subsidiaries in various criminal money laundering

---

[6] After the United States designated El Aissami as a narcotics trafficker under the Kingpin Act in 2017, then-President Maduro transferred El Aissami from Vice-President to Minister of Oil with direct operational control over PDVSA and its subsidiaries. *Venezuela appoints alleged drug trafficker El Aissami as oil minister*, Reuters, April 27, 2020, https://www.reuters.com/article/world/venezuela-appoints-alleged-drug-trafficker-el-aissami-as-oil-minister-idUSKCN2292TP/

schemes. PDVSA's efforts to claim status as a "victim" of these activities was flatly rejected by Judge Williams, overseeing a sprawling investigation and prosecutions in this District. *See United States v. Ortega*, No. 1:18-cr-20685-KMW (S.D. Fla. June 18, 2021), ECF 428. In that case, Mr. Ortega—the former Executive Director of Financial Planning for PDVSA—pled guilty to money laundering charges and admitted that PDVSA "served as the source of foreign currency used to fund corrupt foreign exchange embezzlement schemes." *Id*. at 2. When PDVSA claimed restitution as an alleged "victim," Judge Williams specifically held that "[a]lthough PDVSA seeks to characterize Mr. Ortega as a 'rogue employee,' the record supports a finding that *PDVSA was involved in pervasive, constant, and consistent illegal conduct during the relevant time period and, therefore, is not entitled to victim status*." *Id*. at 6 (emphasis added). Among the list of Petrocedeno officials who pled guilty were Lennys Rangel, Petrocedeno's former head of procurement (where Petrocedeno's president worked before being elevated to president), and Edoardo Orsoni, former general counsel to both PDVSA and Petrocedeno. *See United States v. Lennys Rangel, SDFL Case No.* :19-cr-20726-JEM, ECF 22; *United Sates v. Edoardo Orsoni*, SDFL Case No. 19-cr-20725-MGC, ECF 25. Judge Williams in *Ortega* also rejected PDVSA's argument that the involvement of the "Ad Hoc" board of PDVSA "cleanses PDVSA of any imputed prior criminal wrongdoing by rogue employees." *United States v. Ortega*, ECF No. 428 at 7-8.

### III. THIS COURT HAS JURISDICTION TO ENTER AN IMMEDIATE, FINAL TURNOVER JUDGMENT

This Court has previously determined that it has subject matter jurisdiction under TRIA and the ATA. DE 367 at 1. Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides this Court with subject matter jurisdiction over post-judgment execution and attachment proceedings against *blocked assets* of an agency or instrumentality of the judgment-debtor, even if the agency or instrumentality itself is not named in the judgment. *Stansell* , 771 F. 3d at 737 ("The district court had subject matter jurisdiction."). *See also Weinstein v. Islamic Republic of Iran*, 609 F. 3d 43, 50 (2d Cir. 2010) ("Accordingly, we find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment."). Blocked assets of an agency or instrumentality of the judgment-debtor are subject to execution by ATA Judgment-holders like these Plaintiffs. 18 U.S.C. § 2333. *See Stansell*, 771 F. 3d at 730 (blocking makes assets "fall within the ambit of TRIA § 201" and "subject to execution").

Back in 2020, Petrocedeno failed to appear and contest the agency or instrumentality determinations that Judge Scola entered against it, despite Petrocedeno having received constitutionally adequate notice back then. ECF 499. Moreover, Petrocedeno has received constitutionally adequate notice of this 2024 TRIA execution against its blocked assets being held by JPMCB. ECF 574; 586; ECF 600-2. Petrocedeno had the "opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." *See Stansell* 771 F. 3d at 726. Unlike in 2020, Petrocedeno has appeared pursuant to this (2024) statutory notice, but has wholly failed to rebut the agency or instrumentality determinations in Order ECF 367 and TRIA Turnover Judgment ECF 499. Because Petrocedeno has failed to rebut this Court's determination that Petrocedeno is an agency or instrumentality of the terrorist party FARC, turnover is appropriate here. *See Stansell*, 771 F. 3d at 741 (appellants "had the opportunity to present evidence refuting the agency or instrumentality designation. They simply did not present any evidence that changed the district court's position on the agency or instrumentality determination."). Plaintiffs may now execute on the blocked assets of Petrocedeno as an agency or instrumentality of the FARC held by Garnishee JPMCB under TRIA.

It is not disputed that the subject assets held by JPMCB are blocked under IEEPA [ECF 585 at 3, ¶ 3], and Petrocedeno has **admitted** that it owns these assets. *See* ECF 600 at 4 ("Petrocedeno's assets") & 11 ("assets belonging to Petrocedeno"); JPMCB Answer ECF 585 at 3 (funds belong to Petrocedeno).

Garnishee JPMCB has filed an Answer to the garnishment writ and has not contested personal jurisdiction. This Court having jurisdiction over JPMCB—the Garnishee holding Petrocedeno's blocked account—there is no further requirement of *in rem* jurisdiction in this case (and in any event, alternatively, the ATA's nationwide service of process provision applies). *See* ECF 612 at 16-20; 18 U.S.C. § 2334; FRCP 4.1.

IV.  **PLAINTIFFS HAVE SATISFIED ALL THE REQUIREMENTS FOR IMMEDIATE ENTRY OF A FINAL TRIAL TURNOVER JUDGMENT**

Plaintiffs have satisfied all the requirements of TRIA, in that we have obtained an ATA judgment against the FARC, a "terrorist party" as defined by the TRIA Section 201(d)(4), on a claim based on an "act of terrorism" as defined by TRIA Section 201(d)(1)(B), and we now seek to enforce that ATA judgment against blocked assets of "any agency or instrumentality of that terrorist party[,]" which includes blocked assets of individuals, organizations, entities or cartels that have been designated by OFAC and have a nexus with the FARC. 18 U.S.C. § 2333. The

10

blocked assets at issue are not immune from attachment under the TRIA as sovereign, diplomatic or consular property.

The TRIA allows terrorism victim judgment holders to execute on blocked assets of designated persons, entities or organizations not named in the ATA Judgment. *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) ("Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.").

As this Court has recognized by virtue of its prior TRIA turnover orders to these (and other) Plaintiffs, OFAC does not require a license for Plaintiffs to execute on blocked assets under the TRIA. *See Weininger v. Castro*, 462 F. Supp. 2d. 457, 499 (S.D.N.Y. 2006); *Harrison v. Republic of Sudan*, 838 F.3d. 86, 98 (2nd Cir. 2016). Plaintiffs have complied with all litigation reporting requirements to OFAC under 31 C.F.R. 501.605.

This particular turnover has nothing to do with the FSIA or a foreign state because Petrocedeno is not a foreign state. Indeed, Petrocedeno has admitted this. *See* ECF 600 at n.1 (Petrocedeno's admission that it is not a foreign state)). Put simply, Petrocedeno's blocked accounts are therefore not immune from attachment and execution here.

At this juncture in the litigation, it is now beyond any dispute (and indeed it has gone undisputed) that : (1) these particular assets are "blocked assets" within TRIA's definition; (2) the blocked assets are owned by Petrocedeno; and (3) Petrocedeno is an agency or instrumentality of the FARC under TRIA; (4) this Court has subject matter jurisdiction, personal jurisdiction over the Garnishee, and venue is proper here; and lastly, (5) Plaintiffs' ATA Judgment remains unsatisfied. That is all that is required for an immediate entry of a TRIA final turnover judgment.

**WHEREFORE** Plaintiffs request entry a TRIA Turnover Judgment directing Garnishee JPMCB to turn over the blocked assets of Petrocedeno to Plaintiffs in the proposed form attached hereto as Exhibit 1.

<u>SDFL Local Rule 7.1(a)(3) Certification</u>

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), undersigned counsel represents that this rule does not apply since it seeks entry of final garnishment judgment.

11

Respectfully submitted December 19, 2024

/s/ Newton P. Porter (FL Bar: 833738)  
/s/ Tony Korvick (FL Bar: 0768405)  
PORTER & KORVICK, P.A.  
Attorneys for Plaintiffs  
4000 Ponce de Leon Blvd., Suite 470  
Coral Gables, Florida 33146  
Telephone:    (305) 373-5040  
nporter@porterandkorvick.com  
tkorvick@porterandkorvick.com  

/s/ Richard B. Rosenthal (FL Bar: 0184853  
THE LAW OFFICES  
OF RICHARD B. ROSENTHAL, P.A.  
Co-counsel for Plaintiffs  
1581 Brickell Avenue  
Suite 1408  
Miami, Florida 33129  
Telephone: (305) 992-6089  
rbr@rosenthalappeals.com  

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 19, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that I served the foregoing document and the notice of electronic filing by electronic mail to the following persons:

OFFICE OF FOREIGN ASSETS CONTROL  
U.S. Department of the Treasury, 1500 Pennsylvania Ave. NW Washington DC  
[by email service directly to OFAC counsel in compliance with 31 CFR 501.605]

/s/Tony Korvick  
TONY KORVICK (FL Bar 768405)  
PORTER & KORVICK, P.A.  
Attorneys for Plaintiffs  
4000 Ponce de Leon Blvd. Suite 470  
Coral Gables, Florida 33146  
Telephone:    (305) 373-5040  
tkorvick@porterandkorvick.com