# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20896-CV-SCOLA/TORRES

KEITH STANSELL, *et al.*,

      Plaintiffs,

v.

REVOLUTIONARY ARMED FORCES OF
COLOMBIA, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON JPMORGAN'S MOTION TO CONSOLIDATE AND TRANSFER

This cause comes before the Court on non-party, JPMorgan Chase Bank, N.A.'s ("JPMorgan") Motion to Consolidate and Transfer the *Stansell* and *Osio* Interpleader Proceedings to the Southern District of New York. [D.E. 619]. The plaintiffs in the *Stansell* and *Osio* actions (collectively, "Plaintiffs") have joined to file a response, JPMorgan has filed a reply, and Antonio Caballero—an individual who is the plaintiff in a similar action pending in the Southern District of New York—has also filed a response. The motion, therefore, is ripe for disposition.[1] After careful review of the briefing and relevant authorities, and for the reasons set forth below, we recommend that JPMorgan's Motion be **GRANTED**.

---

[1] On December 18, 2024, the Honorable Robert N. Scola referred this matter to the Undersigned Magistrate Judge for a Report and Recommendation.

1

## I. BACKGROUND

The pending motion centers on three sets of plaintiffs seeking to execute on the same bank account: two in the Southern District of Florida, and one in the Southern District of New York. Those three separate actions are: the pending case (S.D. Fla.); *Osio et al. v. Maduro Moros et al.*, No. 21-20706-CIV-Gayles (S.D. Fla.); and *Caballero v. Fuerza Armadas Revolucionarias de Colombia et al.*, No. 20-mc-00249-Caproni (S.D.N.Y.).

The bank account, meanwhile, is located and maintained in New York by JPMorgan on behalf of Valero Marketing and Supply Company ("Valero"). Valero indicated to JPMorgan that the funds belong to Petrocedeno, S.A—an entity alleged to be a joint venture with Petroleos de Venezuela, S.A. ("PDVSA"). Upon learning that PDVSA had an interest in the funds, JPMorgan filed a "blocked report" with the Office of Foreign Assets Control ("OFAC"). Consequently, OFAC blocked the funds.

Now, the *Stansell* plaintiffs, *Osio* plaintiffs, and *Caballero* plaintiffs all seek to execute on the Valero account (currently valued at $166,818,471.00) and apply it to their outstanding, TRIA judgments. In both the *Stansell* and *Osio* actions, JPMorgan filed an interpleader to determine the proper recipient of the Valero account. The plaintiffs in both actions filed motions to dismiss JPMorgan's interpleader. Further, in the *Osio* action, the plaintiffs filed a motion to compel production from Valero. And in the *Stansell* action, the plaintiffs filed a motion to deposit the Valero funds into this Court's registry. The plaintiffs in the *Stansell* action also filed a motion for a TRIA turnover judgment of the Valero funds.

Now, in the pending Motion, JPMorgan seeks to consolidate and transfer the interpleader actions (and the related motions) to the Southern District of New York—i.e., the location where the Valero account is located and where the *Caballero* plaintiffs seek the same account. That way, argues JPMorgan, the three cases will not run the risk of inconsistent turnover judgments which could, in turn, expose JPMorgan to double liability and increased litigation.

The *Stansell* and *Osio* plaintiffs have consolidated their positions as to this Motion and oppose the transfer of the case. They argue that this Court has jurisdiction over the Valero account and could more conveniently and expediently resolve the interpleader proceedings. The plaintiffs do not, however, oppose the consolidation of the interpleader actions.

## II.   ANALYSIS

The Court will first determine whether consolidation is proper before analyzing whether the action should be transferred.

### *A. Consolidation*

"Under Federal Rule of Civil Procedure 42(a), 'a district court may consolidate multiple actions that "involve a common question of law or fact."'" *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017). Further, "[a] district court's decision under Rule 42(a) is purely discretionary." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985). In exercising their discretion, district courts should consider: "risks of prejudice and possible confusion …, the burden on the parties, witnesses and available judicial resources, the length of time required to conclude

multiple suits as against a single one, and the relative expense to all concerned ….." *Id.* (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *cert. denied,* 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983)).

Here, JPMorgan has made a convincing showing (explicitly unopposed by Plaintiffs) that the Court should exercise its discretion to consolidate the *Stansell* and *Osio* interpleader actions. Specifically, both actions involve: the same parties; the same sought after account; the same legal issues; and similar operative facts. Further, neither party has argued that prejudice or undue expense would result, which is further bolstered by the fact that JPMorgan's Motion is, on this issue, unopposed. Moreover, the *Stansell* and *Osio* plaintiffs have filed a joint response to the pending Motion, which undoubtedly indicates that the factual and legal considerations in both actions overlap.

In light of these considerations, we recommend that JPMorgan's unopposed request for consolidating the interpleader actions (and the related motions) be granted.[2] *See Eghnayem*, 873 F.3d at 1314 ("The district court did not abuse its

---

[2] There exists support for a limited and/or partial consolidation of actions. *See Katz v. Realty Equities Corp. of New York*, 521 F.2d 1354, 1362 (2d Cir. 1975) (affirming the district court's limited consolidation of two actions "for pretrial purposes"); *Carroll v. Tavern Corp.*, No. 1:08-CV-2514-TWT-JFK, 2009 WL 10666084, at *1 (N.D. Ga. Feb. 27, 2009) ("Plaintiff Shaw has no objection to limited consolidation for purposes of discovery and pretrial motions, while Plaintiff Carroll has not stated any objection to consolidation or to a limited consolidation. Based on the above factors in these proceedings, the court finds that limited consolidation pursuant to Rule 42(a) is appropriate at this time for purposes of discovery and pretrial matters only."); *Singleton v. Merrill*, No. 2:21-CV-01530-AMM, 2021 WL 5979497, at *2 (N.D. Ala. Nov. 23, 2021) (consolidating cases "for the limited purposes of discovery and a hearing in connection with the requests in those cases for preliminary injunctive relief").

discretion in concluding that the considerations surrounding consolidation weighed in favor of joining these suits for trial. The plaintiffs all brought the same claims based largely on the same facts: BSC's Pinnacle device was unreasonably dangerous by design, and BSC failed to include sufficient warnings with the device to alert physicians to that danger. Although each plaintiff's proof of causation was necessarily different, generally differences in causation are not enough, standing alone, to bar consolidation of products liability claims. And any danger of prejudice arising from the consolidation was reduced in this case, because the district court explained the consolidated nature of the trial to the jury and expressly instructed it to consider each plaintiff's claims separately."); *Ramsay v. Broward Cnty. Sheriff's Off.*, 303 F. App'x 761, 766 (11th Cir. 2008) (affirming district court's decision to consolidate two actions and finding that the district court did not "abuse[ ] its discretion by consolidating the two actions" because there existed "no evidence establishing prejudice or confusion"); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) (granting motion for consolidation where "the complaints present[ed] virtually identical claims for relief based upon a single course of conduct," the "complaints present[ed] similar issues of law and fact," and consolidation "promote[d] judicial economy").

### *B. Transfer*

Next, we must determine whether the consolidated interpleader action should be transferred to the Southern District of New York for disposition. JPMorgan's primary argument is that the Southern District of New York has in rem jurisdiction over the Valero account, whereas this Court does not; accordingly, that is the venue

5

in which all three of these actions should be resolved. Otherwise, JPMorgan argues, there is a risk that this Court and the Southern District of New York enter inconsistent orders of turnover that may require JPMorgan to pay two different judgment creditors the same sum of money (or, at the very least, to engage in further litigation). To both avoid a jurisdictional quandary and efficiently resolve who should receive the blocked Valero account, JPMorgan argues that we should transfer the action to the Southern District of New York.

In response, Plaintiffs argue that there exists no jurisdictional issue because this Court has jurisdiction over JPMorgan, and hence has jurisdiction over JPMorgan's intangible assets (i.e., the Valero account). Further, Plaintiffs argue that efficiency and expediency considerations weigh in favor of this Court—the venue where JPMorgan has filed two interpleader actions, and where Plaintiffs' counsel resides.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Further, "[t]he decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (citing *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981)).

In determining whether to transfer a case, district courts consider a two-prong test. "First, the alternative venue must be one in which the action could originally have been brought by the plaintiff." *Steifel Lab'ys, Inc. v. Galderma Lab'ys, Inc.*, 588

6

F. Supp. 2d 1336, 1338 (S.D. Fla. 2008). "The second prong requires courts to balance private and public factors to determine if transfer is justified." *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) (*citing Miot v. Kechijian*, 830 F. Supp. 1460, 1465–66 (S.D. Fla. 1993)). As to the second-prong factors, courts consider "the plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the costs of change, and the public interest." *Steifl Lab'ys, Inc.*, 588 F. Supp. 2d at 1339 (citing *Gonzalez v. Pirelli Tire, LLC*, 2008 WL 516847, at *2 (S.D. Fla. 2008)).

As for the first prong, the proceedings to execute on the Valero bank account (and the subsequent interpleader actions) certainly could have been brought in the Southern District of New York. After all, the Valero account is located and administered in New York, and, as evidenced by the *Caballero* action, there is no barrier to this action being in New York. Further, Plaintiffs offer no meaningful argument that this action could not have been brought in New York. While, of course, Plaintiffs argue that New York is not the best place for this action, they do not argue the action could not have been brought there. Accordingly, we find that JPMorgan has carried its burden under the first prong and has shown that the relevant action could have been brought in the Southern District of New York.

As to the second prong, JPMorgan argues that the Valero account is located in New York, which undermines this Court's in rem jurisdiction over the account. JPMorgan also points out that the *Stansell* plaintiffs have already been litigating an

7

enforcement action in the Southern District of New York; the *Caballero* case is currently pending in the Southern District of New York; and all three of the *Osio* plaintiffs (per their Complaint) reside in New York. Thus, JPMorgan argues that, in addition to the primary appeal of avoiding inconsistent judgments, convenience of the parties and jurisdictional benefits also favor New York.

In response, Plaintiffs argue that in rem jurisdiction is a non-issue, because the asset in question is intangible and thus, because Florida has personal jurisdiction over JPMorgan (and the judgment debtors), Florida has jurisdiction over the Valero account. Further, Plaintiffs aver that counsel for the *Stansell*, *Osio*, and *Callbero* plaintiffs reside in Florida, and JPMorgan also has counsel in Florida. Plaintiffs also argue that their counsels' means are slim as compared to counsel for JPMorgan; this District (and specifically this Court) is more familiar with the governing law and prior proceedings; Plaintiffs chose to file their lawsuit (and writ of garnishment) in this District; and a transfer would cause delay and inefficiency.

While the Court will not assess every factor delineated in *Steifyl Laboratories* and similar cases (for example, because these proceedings almost undoubtedly will not be brought to a trial, we need not consider the location of witnesses), we will consider factors that materially apply. Particularly, the Court will consider the parties' initial choice of forum, the convenience of the parties involved, and the impact of the jurisdictional analysis.

### *1. Choice of Forum*

As an initial matter, we must consider Plaintiffs' choice of forum. "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell*, 650 F.2d at 616). Here, Plaintiffs chose to file their lawsuit in this forum; Plaintiffs chose to move for a writ on the Valero account in this forum; and JPMorgan filed their interpleader actions in this forum. Accordingly, the chosen forum clearly is the Southern District of Florida.

### *2. Convenience of the Parties*

On this front, both parties aver that their desired forum is more convenient. We find, however, that JPMorgan has carried its burden of proving that the Southern District of New York is more convenient. On balance, out of the three parties who have a stake in the Valero account, (1) the *Caballero* plaintiff is already seeking the Valero account in New York, (2) the *Stansell* plaintiffs are litigating a different post-judgment matter in New York, and (3) the three *Osio* plaintiffs reside in New York. Accordingly, all three involved parties have a clear interest in, and stand to benefit from, litigating this action in New York.

Further, these factors weigh much more heavily than Plaintiffs' counsels' complaints that JPMorgan's counsel has greater means, which, in essence, is the only material point of convenience raised by Plaintiffs. *See Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ("The Plaintiffs' attorney resides in this forum, but the convenience of counsel is not relevant to the issue of transferring venue. Although a transfer of this case may require the Plaintiffs to secure local

9

counsel in a different forum, the balance of the factors in this prong of the analysis strongly weighs in favor of transferring this case to the Federal Court for the District of Colorado.").

So, while the factor of convenience does not alone outweigh the "choice of forum" prong, it does weigh in JPMorgan's favor.

### *3. Jurisdictional Concerns*

Next, we will consider the expediency and efficiency concerns that could arise from the jurisdictional dilemma and potentially inconsistent judgments.

JPMorgan argues that the Valero account itself is located in New York, therefore making litigation in the Southern District of Florida not only impractical, but perhaps impossible. To that end, JPMorgan argues that the Court does not have in rem jurisdiction over the Valero account. Moreover, JPMorgan asserts that the account is blocked by OFAC—an agency with strict rules for under what conditions a blocked account may be transferred—thus rendering a transfer burdensome. JPMorgan has also averred via affidavits that its practice is to *not* transfer blocked accounts out of New York. This is especially true where different judgment creditors are fighting over the same blocked account; a transfer of the blocked account to a different jurisdiction may, in JPMorgan's eyes, unfairly advantage one of the judgment creditors and taint JPMorgan's neutrality.[3]

---

[3] We give no consideration to Plaintiffs' argument that JPMorgan is, in fact, conspiring with Petrocedeno to keep the account in New York and accrue interest. Plaintiffs have put forth absolutely no evidence to corroborate this alleged conspiracy. JPMorgan, meanwhile, has put forth evidence that it cannot collect interest on blocked accounts. Thus, the Court will not give credibility to Plaintiffs' accusations.

We agree with JPMorgan that there is a contentious question as to whether this Court has jurisdiction over the Valero account, and thus it is less efficient, more expensive, and possibly impracticable to continue the Valero account litigation in Florida.

Indeed, numerous federal courts in Florida have held that extraterritorial bank accounts are outside of their jurisdictional reach, even where the relevant banks operated branches in Florida. *See Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1339 (M.D. Fla. 2015) (determining whether the Middle District of Florida could preside over garnishment proceedings of a New York bank account in a FARC proceeding and "conclud[ing[ that [the court] lacks subject matter jurisdiction to garnish any funds in any bank accounts located outside the State of Florida"); *Skulas v. Loiselle*, No. 09-60096-CIV, 2010 WL 1790439, at *3 (S.D. Fla. Apr. 9, 2010), *report and recommendation adopted*, 2010 WL 1790433 (S.D. Fla. May 5, 2010) (concluding in a post-judgment garnishment proceeding that "because the bank account at issue is located in Pennsylvania, the Court does not have jurisdiction over it," even where the bank holding the funds also had branches in Florida); *Power Rental Op Co, LLC v. Virgin Islands Water & Power Auth.*, No. 3:20-CV-1015-TJC-JRK, 2021 WL 9881137, at *8 (M.D. Fla. July 6, 2021) (rejecting an "expansive reading of the Florida garnishment statute" and "hold[ing] that the Florida garnishment statute does not apply extraterritorially to out-of-state bank accounts"); *Fed. Deposit Ins. Corp. for GulfSouth Priv. Bank v. Amos*, No. 3:12CV548/MCR/EMT, 2017 WL 9439161, at *7 (N.D. Fla. Jan. 10, 2017), *report and*

11

*recommendation adopted in part sub nom.*, 2017 WL 772340 (N.D. Fla. Feb. 28, 2017) ("In light of the foregoing, it is the recommendation of the undersigned that Amos' motion be granted, based on a finding that this court lacks jurisdiction over the bank accounts and safe-deposit box in Georgia that have been restricted pursuant to the writ of garnishment served upon CB&T."); *Codeventures, LLC v. Vital Motion Inc.*, No. 20-21574-CIV, 2021 WL 3742059, at *4 (S.D. Fla. Aug. 23, 2021) ("Thus, based on the authorities cited and the arguments made by the parties, Vital's motion to dissolve the writ of garnishment is granted because Vital's three Bank of America accounts are located in South Carolina, outside of the reach of Florida's writ of garnishment statute.").

To undermine JPMorgan's position, Plaintiffs rely primarily on *Shim v. Buechel*, 339 So. 3d 315 (Fla. 2022). There, the Florida Supreme Court interpreted section 56.29(6), Fla. Stat. to mean that, because the court had "in personam jurisdiction over [the judgment debtor], … it therefore could compel him to act on his foreign assets under section 59.29(6)." *Shim*, 339 So. 3d at 318. But *Shim* did not hold that the Court—directly—could attach or execute upon the extraterritorial assets of the judgment debtor. Rather, *Shim* held merely that the court could compel the judgment debtor to act upon those assets.

Here, compelling the judgment debtors (i.e., Nicolas Maduro and the Cartel) to act upon their assets would be an exercise in futility for all parties involved. Recognizing this, Plaintiffs have chosen a different route—seeking direct relief against non-parties. But Plaintiffs have pointed to no authority in which courts in

this Circuit have applied *Shim* to hold that Florida courts may order a bank, non-party asset holder, or any one aside from the judgment debtor, to transfer funds to Florida for the benefit of the judgment creditor. And more importantly, Plaintiffs have offered no authority that any of the pre-*Shim* caselaw germane to this dispute is now overruled or abrogated. This makes sense, of course, considering that *Shim* was not interpreting a new statute.

Outside of *Shim*, Plaintiffs rely on no authoritative caselaw to compel a finding that we have jurisdiction over the Valero account. Sure, Plaintiffs provide cases in which courts have held that, even though the relevant bank account was located outside of the state in which the court sat, the assets could still be reached.[4] These cases disagree with—but do not overrule—the plethora of federal cases in Florida which hold the opposite, and in fact are in the minority of the persuasive authority on the subject. Thus, seeing that there is no binding Eleventh Circuit caselaw on this precise issue, and the majority of the persuasive authority weighs in favor of

---

[4] *See Stansell v. Revolutionary Armed Forces of Columbia*, No. 19-20896-CIV, 2019 WL 5290922, at *1 (S.D. Fla. Sept. 26, 2019) (finding that "[r]egardless of the accounts' locations, this Court has subject matter jurisdiction"); *Acme Contracting, Ltd. v. Toltest, Inc.*, No. 07-10950, 2008 WL 4534175, at *7 (E.D. Mich. Oct. 3, 2008) ("Here, it is undisputed that the funds in TolTest's account are available to TolTest at any Fifth Third Bank branch-including the numerous branches that are located in Michigan. Because the funds are available to TolTest at Fifth Third Bank's Michigan branches, the Court concludes that the funds are located within the boundaries of the State of Michigan for purposes of M.C.L. § 600.4011(1)."); *Boland Marine & Indus., LLC v. Bouchard Transportation Co.*, No. 1:20-CV-66-LY-ML, 2020 WL 10051743, at *7 (W.D. Tex. Feb. 28, 2020), *report and recommendation adopted sub nom.*, 2020 WL 10051738 (W.D. Tex. Mar. 26, 2020) ("Here, it is undisputed that Wells Fargo has "multiple Wells Fargo branches in Austin and the immediate surrounding area." Thus, Bouchard had access to the Account's funds in Austin just as it did in New York. Accordingly, Bouchard's intangible property – the Account – is found within the Western District of Texas.").

JPMorgan, there is certainly a colorable dispute as to our jurisdiction. This is especially true where at issue is not an ordinary checking or savings account, but a $166,818,471.00 account that is blocked by OFAC, located in New York, and, per JPMorgan's affidavits, is governed differently and more conservatively than most other checking or savings accounts.

To be clear, we do not squarely hold that this Court lacks in rem jurisdiction over the Valero account—nor must we squarely decide that issue. Rather, we find that at most the Court wants for jurisdiction, and at least there is a colorable argument that the Court wants for jurisdiction. Consequently, it is certainly in the best interest of the parties, judicial efficiency, and expediency for the Southern District of New York—who undoubtedly has in rem jurisdiction over the Valero account and is already resolving a claim to the same account in *Caballero*—to handle the pending litigation.

For one, a transfer would minimize the chances that this Court enters a turnover order as to the Valero account that conflicts with a turnover order entered by the Southern District of New York. Moreover, a transfer also eliminates the chance that this Court enters a turnover order that gets appealed on jurisdictional grounds. And even if that appeal is unsuccessful, the parties would still expend myriad time and resources that they would not have to expend if this action was transferred to the Southern District of New York (where in rem jurisdiction over the Valero account undoubtedly lies). Indeed, any minimal cost imposed on Plaintiffs for litigating this

14

action in New York will almost certainly be exceeded if Plaintiffs litigate in Florida and occasion the above obstacles.

At the end of the day, numerous sets of Plaintiffs seek one account. Undoubtedly, that action should be resolved in one jurisdiction to avoid inconsistent judgments. Practically every point in the *Osio* and *Stansell* Plaintiffs' favor is a point against the *Callabero* plaintiffs. Further, *Stansell* is already litigating a post-judgment action in New York and the *Osio* plaintiffs reside in New York. This, of course, is coupled with the fact that a transfer of the funds to this Court's registry is outside of JPMorgan's typical practice; would require OFAC circumvention; and would likely cause the account to lose money in interest. And most critically (and perhaps, most inconveniently and expensively to Plaintiffs), there is a genuine question about whether this Court has jurisdiction over the Valero account, while there is no dispute that the Southern District of New York has such jurisdiction. Overall, then, we find that the balance of expediency, consistency, and efficiency weighs in favor of transferring the Valero account actions to the Southern District of New York, and heavily outweighs the fact that this action was first-filed in the Southern District of Florida. Thus, we recommend that JPMorgan's Motion be granted as to both consolidation and transfer.

### IV. CONCLUSION

For the reasons set forth above, we recommend that JPMorgan's Motion be **GRANTED**. As a result, the Court should consolidate and transfer the following Motions to the Southern District of New York, for the convenience of the parties, to

avoid results inconsistent with the *Caballero* case, and to obviate jurisdictional concerns:

- JPMorgan's Answer, Counterclaim and Third-Party Complaint for Relief in Interpleader [D.E. 585 in *Stansell*; D.E. 242 in *Osio*];

- the *Stansell* and *Osio* Plaintiffs' Motions to Dismiss JPMorgan's Counterclaim and Third-Party Complaint [D.E. 603 in *Stansell* and D.E. 300 in *Osio*];

- the *Stansell* Plaintiffs' Motion for Entry of Final TRIA Turnover Judgment regarding the Valero account [D.E. 624];

- the *Osio* Plaintiffs' Motion to Compel Production of Documents from Valero Energy [D.E. 262 in *Osio*]; and

- the *Stansell* and *Osio* Plaintiffs' Motion to Direct Deposit Into Court Registry [D.E. 629 in *Stansell*].

Accordingly, we recommend that the above matters should be consolidated into the *Stansell* action (because it is the earlier-filed action) and transferred to the Southern District of New York for disposition.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal

conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers at Miami, Florida this 22nd day of January, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge