**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KEITH STANSELL, *et al.*,

        *Plaintiffs*,

    v.

REVOLUTIONARY ARMED FORCES OF
COLOMBIA, *et al.*,

        *Defendants*.

Case No. 1:19-cv-20896-RNS

**PETRÓLEOS DE VENEZUELA, S.A. AND PETROCEDEÑO, S.A.'S**
**AMENDED MOTION TO VACATE ORDER AND TURNOVER JUDGMENT,**
**DISSOLVE WRITS OF GARNISHMENT, AND DISMISS ACTION WITH PREJUDICE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................4

ARGUMENT ..............................................................................................................................5

I.  PLAINTIFFS FAILED TO ESTABLISH THIS COURT'S JURISDICTION IN A NEW
    ACTION TO HOLD PETROCEDEÑO AND PDVSA LIABLE FOR THEIR
    DEFAULT JUDGMENT AGAINST THE FARC ..............................................................5

    A.  Plaintiffs Failed To Initiate A New Civil Action......................................................5

    B.  Plaintiffs Failed To Establish Subject-Matter Jurisdiction ......................................6

    C.  Plaintiffs Failed To Establish Personal Jurisdiction ................................................8

II. THE *EX PARTE* JUNE 17 ORDER AND WRITS DENIED PDVSA AND ITS
    SUBSIDIARIES DUE PROCESS AND ARE VOID FOR INEFFECTIVE SERVICE ....8

III. TRIA DOES NOT APPLY TO PDVSA AND ITS SUBSIDIARIES..............................11

    A.  TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of
        Terrorism Only.......................................................................................................11

    B.  Petrocedeño Is Not An "Agency Or Instrumentality" Of The FARC ....................11

    C.  Plaintiffs May Not Attempt Enforcement Against The Assets Of PDVSA Or
        Its Subsidiaries Without An "Agency or Instrumentality" Determination ............16

    D.  Plaintiffs Failed To Show The Blocked Assets Are Assets "Of" The FARC .......17

IV. THIS COURT SHOULD DISSOLVE ALL EXTRATERRITORIAL WRITS...............18

V.  THE TVFA DOES NOT APPLY TO THESE PROCEEDINGS.....................................20

CONCLUSION...........................................................................................................................20

REQUEST FOR HEARING........................................................................................................21

RULE 7.1(A)(2) CERTIFICATION ............................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anago Franchising, Inc. v. Shaz, LLC*,
  599 F. App'x 937 (11th Cir. 2015) ........................................................................................12

*Argentine Repub. v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) ..............................................................................................................6

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  581 U.S. 170 (2017) ..............................................................................................................6

*Buis v. Universal Prop. & Cas. Ins.*,
  394 So. 3d 738 (Fla. Dist. Ct. App. 2024) ...........................................................................19

*Butler v. Sukhoi Co.*,
  579 F.3d 1307 (11th Cir. 2009) .............................................................................................6

*Caballero v. Fueraz Armadas Revolucionarias de Colombia*,
  No. 21-cv-140, 2023 WL 125240 (S.D. Tex. Jan. 6, 2023) ..........................................8, 9, 11

*Caballero v. Fuerzas Armadas Revolucionarias de Columbia*,
  2021 WL 1884110 (W.D.N.Y. May 11, 2021) ......................................................................13

*Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.*,
  49 F.4th 802 (2d Cir. 2022) .................................................................................................10

*Diamond Crystal Brands, Inc. v. Food Movers Int'l*,
  593 F.3d 1249 (11th Cir. 2010) .............................................................................................8

*Doe v. Ejercito De Liberacion Nacional*,
  2013 U.S. Dist. LEXIS 186742 (S.D. Fla. Sep. 12, 2013) ......................................................1

*Does v. Taliban*,
  101 F.4th 1 (D.C. Cir. 2024) ............................................................................................7, 8

*Hausler v. JP Morgan Chase Bank, N.A.*,
  770 F.3d 207 (2d Cir. 2014) ................................................................................................17

*Hausler v. JPMorgan Chase Bank, N.A.*,
  845 F. Supp. 2d 553 (S.D.N.Y. 2012) .................................................................................18

*Hercaire Int'l, Inc. v. Argentina*,
  821 F.2d 559 (11th Cir. 1987) .............................................................................................17

*In re Terrorist Attacks*,
   657 F. Supp. 3d 311 (S.D.N.Y. 2023)...........................................................................7, 13, 17

*Jackson-Platts v. GE Capital Corp.*,
   727 F.3d 1127 (11th Cir. 2013) .............................................................................................6, 8

*Kim v. Democratic People's Republic of Korea*,
   774 F.3d 1044 (D.C. Cir. 2014)................................................................................................16

*Kirschenbaum v. Assa Corp.*,
   934 F.3d 191 (2d Cir. 2019)......................................................................................................17

*Levin v. JPMorgan Chase Bank, N.A.*,
   751 F. App'x 143 (2d Cir. 2018) ..............................................................................................18

*Loper Bright v. Raimondo*,
   603 U.S. 369 (2024)....................................................................................................................15

*Mamani v. Berzain*,
   2018 WL 1010582 (S.D. Fla. Feb. 22, 2018) ..........................................................................15

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013)......................................................................................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)....................................................................................................................12

*Murphy Bros. v. Michetti Pipe Stringing*,
   526 U.S. 344 (1999)..............................................................................................................9, 11

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ............................................................................................6, 8

*PDVSA United States Litig. Tr. v. Lukoil Pan Americas LLC*,
   65 F.4th 556 (11th Cir. 2023) ............................................................................................13, 14

*Peacock v. Thomas*,
   516 U.S. 349 (1996)......................................................................................................................6

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008)....................................................................................................................18

*Republic of Sudan v. Harrison*,
   587 U.S. 1 (2019)....................................................................................................................2, 11

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
   23 F.4th 1036 (D.C. Cir. 2022)................................................................................................10

iii

*Saudi Arabia v. Nelson,*
   507 U.S. 349 (1993)..................................................................................................6

*Simmons v. Indian Rivers Mental Health Ctr.,*
   652 F. App'x 809 (11th Cir. 2016) ........................................................................12

*Stansell v. Revolutionary Armed Forces of Colom. (FARC),*
   149 F. Supp. 3d 1337 (M.D. Fla. 2015)................................................................19

*Stansell v. Revolutionary Armed Forces of Colom. (FARC) ("Stansell V"),*
   45 F.4th 1340 (11th Cir. 2022) .......................................................................14, 16

*Stansell v. Revolutionary Armed Forces of Columbia (FARC),*
   771 F.3d 713 (11th Cir. 2014) .................................................................11, 15, 16

*United States v. Daniels,*
   91 F.4th 1083 (11th Cir. 2024) ..............................................................................15

*Van Loon v. Dep't of Treasury,*
   122 F.4th 549 (5th Cir. 2024) ................................................................................15

*Vera v. Argentaria,*
   946 F.3d 120 (2d Cir. 2019).....................................................................................7

*Vermeulen v. Renault, U.S.A., Inc.,*
   985 F.2d 1534 (11th Cir. 1993) ...............................................................................8

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
   486 U.S. 694 (1988)............................................................................................9, 10

*Water Splash, Inc. v. Menon,*
   581 U.S. 271 (2017)............................................................................................9, 10

*Zivotofsky v. Kerry,*
   576 U.S. 1 (2015)....................................................................................................13

## STATUTES AND RULES

28 U.S.C. § 517...................................................................................................2, 18

28 U.S.C. § 1330........................................................................................................8

28 U.S.C. § 1604....................................................................................................3, 6

28 U.S.C. § 1605A......................................................................................................7

28 U.S.C. § 1608...............................................................................................3, 8, 10

28 U.S.C. § 1609........................................................................................................3

Fed. R. Civ. P. 4 ............................................................................................................................11

Fed. R. Civ. P. 69 ..........................................................................................................................10

Fed. R. Evid. 801 ...........................................................................................................................15

Fed. R. Evid. 802 ...........................................................................................................................15

Fed. R. Evid. 803 ...........................................................................................................................15

Fla. Stat. § 77.041 ............................................................................................................................9

Fla. Stat. § 77.055 ..........................................................................................................................10

Fla. Stat. § 772.13 ..........................................................................................................................19

## MISCELLANEOUS

6 Am. Jur. 2d *Attachment & Garnishment* § 185 (2018) ...............................................................12

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ..........................................................9, 10

Pursuant to Rules 12(b)(1), (2), (4)–(6), 12(h)(3), 54(b), 60(b)(4), and 69(a)(1) of the Federal Rules of Civil Procedure and this Court's June 10, 2025 Order (ECFs 743, 744), Non-Party Respondents Petróleos de Venezuela, S.A. ("PDVSA") and Petrocedeño, S.A., hereby move to (1) vacate the June 17, 2020 order (ECF 367) ("June 17 Order"); (2) dissolve the writs of garnishment as to the assets of PDVSA and its subsidiaries (ECFs 368, 370, 371, 572, 707, 710, 711, 712, 713, 714, 715, 716, 721, 798); (3) vacate the September 11, 2020 turnover judgment (ECF 499); (4) dissolve any remaining writs of garnishment as to the assets of PDVSA and its subsidiaries (ECFs 697, 699, 709, 793); and (5) dismiss this action as to PDVSA and its subsidiaries' assets with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiffs, the victims of heinous acts of terrorism perpetrated by the defunct Colombian narco-terrorist organization Fuerzas Armadas Revolucionarias de Colombia ("FARC"), initiated this action to enforce their default Anti-Terrorism Act ("ATA") judgment against the FARC. Plaintiffs seek to satisfy their default judgment by executing against assets of non-parties PDVSA and its subsidiary Petrocedeño as though they were liable for the ATA judgment. Plaintiffs' enforcement activities are marred by jurisdictional and substantive infirmities and fundamental due process violations that this Court should correct.

Without ever making Petrocedeño a party, serving it, or establishing this Court's jurisdiction, Plaintiffs obtained *ex parte* the June 17 Order making Petrocedeño's assets available to satisfy Plaintiffs' default judgment against the FARC. At Plaintiffs' urging, and in the absence of an adversarial process, this Court reached that conclusion by improperly taking judicial notice of a one-sentence determination, made in an unrelated case in this district, *Doe v. Ejercito De*

---

[1] PDVSA and Petrocedeño do not waive, and expressly reserve, all their rights and defenses.

*Liberacion Nacional*, No. 10-cv-21517 (S.D. Fla. May 10, 2010) ("*Doe*"), that Petrocedeño is an "agency or instrumentality" of the FARC under the Terrorism Risk Insurance Act of 2002 ("TRIA").    Neither this Court nor *Doe* made a single factual finding supporting such determination.

Moreover, neither the *Doe* court's order nor the June 17 Order found that PDVSA is an "agency or instrumentality" of the FARC.  Instead, PDVSA is an "agency or instrumentality of a foreign state"—Venezuela—entitled to presumptive immunity from the jurisdiction of courts in the United States under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*., and whose assets are beyond Plaintiffs' reach.  Nonetheless, Plaintiffs apparently have used those orders in respect of Petrocedeño to obtain writs against PDVSA's assets as well.

This Motion should be granted on several fundamental grounds, including many upon which the United States expressly agrees.  Indeed, the United States has filed Statements of Interest in substantially similar cases, supporting PDVSA's and Petrocedeño's defenses.  U.S. Br. Ex. 1, *Caballero v. FARC*, No. 20-mc-40 (W.D.N.Y. filed Sept. 20, 2022), ECF 125; U.S. Br. Ex 2, *In re September 11, 2001 Terrorist Attacks*, No. 03-md-01570 (S.D.N.Y. filed Feb. 11, 2022), ECF 7661.    Although the United States has made clear its views agreeing with PDVSA and Petrocedeño, should this Court have any doubts, it should invite the view of the United States under 28 U.S.C. § 517.  *See Republic of Sudan v. Harrison*, 587 U.S. 1, 16 (2019) (counseling that the Court pays "special attention" to the views of the United States regarding the FSIA).

*First*, a judgment creditor seeking to hold a third party liable for their judgment must bring a new action against the third party and establish the court's subject-matter and personal jurisdiction, which Plaintiffs failed to do.  And because PDVSA is an "agency or instrumentality of a foreign state" entitled to presumptive immunity under the FSIA, 28 U.S.C. §§ 1604, 1609

Plaintiffs were required, but failed, to establish this Court's jurisdiction as to PDVSA under the FSIA. The United States agrees that the FSIA is the exclusive basis for jurisdiction against foreign states (or their agencies or instrumentalities) and that TRIA does not provide an independent basis for subject-matter jurisdiction against a foreign state (or its agencies or instrumentalities) that, like Venezuela, is not a state sponsor of terrorism.

*Second*, Plaintiffs failed to serve PDVSA in compliance with the FSIA, 28 U.S.C. § 1608. The United States agrees that the FSIA's service provisions apply in TRIA proceedings. Plaintiffs also failed to serve Petrocedeño in compliance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361. Proper service additionally required that Plaintiffs serve their initial pleading naming Petrocedeño, together with a summons, complete with Spanish translations, prior to obtaining the June 17 Order. Plaintiffs did not do so.

*Third*, Plaintiffs cannot establish that either PDVSA or Petrocedeño is an "agency or instrumentality" of the FARC as a matter of law. The phrase "agency or instrumentality" in TRIA refers only to an "agency or instrumentality of a foreign state," as defined in the FSIA, which "foreign state" has been designated as a state sponsor of terrorism. TRIA § 201(a). While PDVSA is an "agency or instrumentality of a foreign state" under the FSIA, Petrocedeño is not, and Venezuela has never been designated as a state sponsor of terrorism.

*Fourth*, notwithstanding the above legal infirmities, this Court has never determined that PDVSA is an "agency or instrumentality" of the FARC, despite Plaintiffs purporting to issue a writ as to its property. Plaintiffs also failed to prove that either PDVSA or Petrocedeño is an "agency or instrumentality" of the FARC under TRIA. And Plaintiffs failed to establish that the assets are those "of" a terrorist party (*i.e.*, that the FARC owns the assets) or that the assets, which

3

the United States has protectively blocked, are available to satisfy judgments of the FARC.

*Fifth*, this Court lacked in rem jurisdiction to issue writs for assets located outside Florida.

## BACKGROUND

On July 28, 2010, Plaintiffs registered their default ATA judgment against the FARC for $318 million. *Stansell v. FARC*, No. 10-mc-22724 (S.D. Fla. July 28, 2010), ECF 1. Ten years later, on June 10, 2020, Plaintiffs moved *ex parte* for post-judgment writs of garnishment against Petrocedeño's assets under TRIA, alleging that Petrocedeño is an "agency or instrumentality" of the FARC. ECF 360 at 1–2.

Plaintiffs asked the Court to take judicial notice of Judge Paul C. Huck's June 5, 2020 Order in the unrelated *Doe* action (*Doe*, ECF 288 ("*Doe* Order")), granting an *ex parte* motion filed by the *Doe* plaintiffs on October 1, 2019. *See Doe*, ECF 258 at 6–7; ECF 360 at 1–2, 7–8. Plaintiffs asked the Court to take judicial notice of the *Doe* Order's findings, arguing, *inter alia*, Petrocedeño is "an agency or instrumentality of the FARC" whose "blocked assets are [therefore] subject to attachment and execution pursuant to the TRIA." ECF 360 at 7–8. Plaintiffs did not attempt to serve their motion on Petrocedeño. *See* ECF 360 at 8–11.

On June 17, 2020, this Court granted Plaintiffs' motion and took judicial notice of—but did not give preclusive effect to—the *Doe* Order's finding that Petrocedeño "is an agency or instrumentality of the FARC and its blocked assets are therefore subject to attachment and execution pursuant to TRIA and [the ATA]." June 17 Order at 1. The Clerk issued writs to garnishees (ECFs 367, 368, 370, 371), which Plaintiffs purported to serve on Petrocedeño via "int[ernational] first class mail" on June 23, 2020. ECF 488-2 at 1.

After the garnishees filed answers to the writs, Plaintiffs moved for a turnover judgment as to the assets held by garnishee SSM Petcoke. ECF 488. Relying on the June 17 Order, Plaintiffs claimed the funds were available for turnover because Petrocedeño was an "agency or

instrumentality" of the FARC and "failed to appear" to contest that designation (despite no proper service). *Id.* at 1. On September 10, 2020, the Court issued the turnover judgment. ECF 499.

Four years later, Plaintiffs used the June 17 Order to obtain a writ as to Petrocedeño's assets held by JP Morgan Chase Bank, N.A. ("JPMC"). ECF 572. Plaintiffs purported to provide notice to Petrocedeño via mail and email to undersigned counsel. ECF 586; Email Ex. 3. Although such methods are not proper service of process, Petrocedeño responded on November 22, 2024, seeking dissolution of the JPMC writ, along with vacatur and dissolution of all orders, writs, and judgments entered as to Petrocedeño. *See* ECF 600. JPMC filed an interpleader to determine the proper recipient of the assets, which has since been transferred to the Southern District of New York where the assets are located. ECFs 689, 690, 691.

Plaintiffs then asked this Court to bar Petrocedeño under Florida's Fugitive Disentitlement Statute ("TVFA") from defending against Plaintiffs' attempts to seize its assets. ECF 605. Petrocedeño opposed the motion because the TVFA does not apply. ECF 618. Plaintiffs later argued that certain statutory amendments made the TVFA applicable and changed the garnishment laws relevant to these proceedings. ECFs 725, 739. This Court permitted Petrocedeño to respond by filing the instant Amended Motion to Vacate. ECFs 743, 744. Neither Petrocedeño nor PDVSA has ever been properly served with the writs but they nonetheless appear to defend their rights.

## ARGUMENT

## I.   PLAINTIFFS FAILED TO ESTABLISH THIS COURT'S JURISDICTION IN A NEW ACTION TO HOLD PETROCEDEÑO AND PDVSA LIABLE FOR THEIR DEFAULT JUDGMENT AGAINST THE FARC

### A.   Plaintiffs Failed To Initiate A New Civil Action

Plaintiffs' attempt to use TRIA to hold Petrocedeño, and apparently PDVSA and its other subsidiaries, liable for their default ATA judgment against the FARC "is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered

judgment in the [ATA] case." *Peacock v. Thomas*, 516 U.S. 349, 359 (1996).[2]  Plaintiffs were thus required to initiate a new civil action and establish this Court's subject-matter and personal jurisdiction for their claim against PDVSA and its subsidiaries. *See id.* at 355 (A "subsequent lawsuit" based on an existing federal judgment must have an "independent basis for jurisdiction."). Because Plaintiffs failed to do so, the June 17 Order and all writs issued pursuant thereto are void and must be vacated, and this action must be dismissed. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217–24 (11th Cir. 2009) (vacating judgment as void for lack of jurisdiction).

## B.     Plaintiffs Failed To Establish Subject-Matter Jurisdiction

Instead of filing a new action, Plaintiffs purported to initiate ancillary post-judgment proceedings to satisfy their default judgment by executing against assets belonging to PDVSA and its subsidiaries.  As a result, Plaintiffs never alleged, much less established, subject-matter (or personal) jurisdiction for suit against Petrocedeño or PDVSA.

As to suit against PDVSA, Plaintiffs were required to establish subject-matter jurisdiction under the FSIA because the FSIA provides "the sole basis for obtaining jurisdiction" over a foreign state, including its agencies and instrumentalities. *Argentine Repub. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).[3]  To establish jurisdiction over PDVSA, Plaintiffs were required to show an exception to PDVSA's presumptive immunity under §§ 1605–1607 of the FSIA. *See* 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 180 (2017).  Plaintiffs cannot do so because no immunity exception would apply to any such action.  The United States agrees. U.S. Br. Ex. 1, at 9–24 (explaining that a judgment creditor must establish an exception to FSIA

---

[2] *Accord Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013).

[3] *Accord Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009) (plaintiffs bear the burden of establishing that an exception to the foreign state's immunity applies).

immunity in a post-judgment TRIA proceeding and Venezuela has never been designated as a state sponsor of terrorism, as required).

Plaintiffs incorrectly claim TRIA provides a separate exception to immunity independent from the FSIA. *See Does v. Taliban*, 101 F.4th 1, 14 (D.C. Cir. 2024); *Vera v. Argentaria*, 946 F.3d 120, 133 (2d Cir. 2019); *In re Terrorist Attacks*, 657 F. Supp. 3d 311, 330–32 (S.D.N.Y. 2023) ("*Havlish*"). TRIA provides an exception to immunity from attachment and execution only where a plaintiff has *already* overcome the immunity of a state sponsor of terrorism under § 1605(a) of the FSIA. U.S. Br. Ex. 1, at 9–24; *see* TRIA § 201(a), (d)(4). That does not apply here because Plaintiffs have not obtained a judgment against Venezuela under § 1605A (formerly § 1605(a)(7)) and because Venezuela has never been designated a state sponsor of terrorism. *See* 28 U.S.C. § 1605A(a)(2)(A)(i); *Does*, 101 F.4th at 10; *Havlish*, 657 F. Supp. 3d at 330–32.

At least two courts have considered whether TRIA provides an independent grant of subject-matter jurisdiction over a foreign state's assets where jurisdiction has not been established under the FSIA's exception to immunity for state sponsors of terrorism. They agree with the United States and PDVSA that TRIA does not provide a jurisdictional grant in such circumstances. *Does*, 101 F.4th at 8–15; *Havlish*, 657 F. Supp. 3d at 330–32; U.S. Br. Ex. 1, at 9–24; U.S. Br. Ex. 2, at 27 n.9[4]; *see Vera*, 946 F.3d at 133. The strong consensus is that "asset recovery under Section 201(a) can come only from parties over whom subject matter jurisdiction has already been established." *Does*, 101 F.4th at 9. Plaintiffs failed to show one of the FSIA's exceptions applied to establish this Court's jurisdiction. *Id.*[5]

---

[4] *Havlish* is on appeal, No. 23-258 (2d Cir. argued Oct. 9, 2024), so this Court could exercise its discretion to stay the case pending the Second Circuit's decision, as other district courts have done.

[5] Petrocedeño is not a "foreign state" under the FSIA. But if this Court concludes it is, Petrocedeño reserves all rights, privileges, protections, immunities, and defenses arising from PDVSA's status as a foreign state, including as to subject-matter jurisdiction and service of process under the FSIA.

### C.     Plaintiffs Failed To Establish Personal Jurisdiction

Plaintiffs have likewise never established (and cannot establish) this Court's personal jurisdiction over PDVSA or its subsidiaries.  *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (holding plaintiff bears the burden to establish personal jurisdiction over non-resident defendants).  To establish personal jurisdiction for the liability determination they obtained against Petrocedeño, Plaintiffs were required, but failed, to show that (1) Petrocedeño was properly served with a summons and complaint and (2) the Court had a statutory basis for exercising personal jurisdiction.  Regarding PDVSA, against which no liability determination exists, Plaintiffs must establish that (1) they have properly served PDVSA under the FSIA, 28 U.S.C. § 1608(b) and (2) an exception to PDVSA's jurisdictional immunity applies.  28 U.S.C. § 1330.  As to both Petrocedeño and PDVSA, Plaintiffs also must show that (3) the exercise of personal jurisdiction satisfied constitutional due process.  *See Vermeulen v. Renault, U.S.A., Inc*., 985 F.2d 1534, 1553 (11th Cir. 1993).  Plaintiffs failed to make any of these showings and therefore the Motion should be granted.  *Oldfield*, 558 F.3d at 1217–24 (11th Cir. 2009) (vacating judgment for lack of jurisdiction).

## II.     THE *EX PARTE* JUNE 17 ORDER AND WRITS DENIED PDVSA AND ITS SUBSIDIARIES DUE PROCESS AND ARE VOID FOR INEFFECTIVE SERVICE

"[T]he hallmark of due process is notice and a chance to be heard."  *Caballero v.* FARC, 2023 WL 125240, at \*7 (S.D. Tex. Jan. 6, 2023).  Yet, Plaintiffs "never sued, served, or summoned" PDVSA and its subsidiaries in their ATA action against the FARC.  *Jackson-Platts*, 727 F.3d at 1134.  And Plaintiffs' defective purported service of their motion and ensuing writs failed to accord PDVSA and its subsidiaries their due process rights.  When a similar attempt to attach property occurred in the Southern District of Texas, the district court vacated the writs of attachment as unconstitutional.  *Caballero v. FARC*, 2023 WL 125240, at \*7.

Plaintiffs' motion seeking to hold Petrocedeño liable for their FARC default judgment was the first judicial document "legally sufficient to charge [Petrocedeño] with notice of [this] pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). Plaintiffs were thus required to serve their motion in accordance with applicable law governing service of process. *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons.").

In particular, Plaintiffs were required to serve their motion via the Hague Service Convention. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies.") (citation omitted); Fed. R. Civ. P. 4(f) (requiring service of summons and complaint via Hague Service Convention where applicable). In acceding to the Hague Service Convention, Venezuela objected to service of process and judicial documents by mail and required all documents be served with Spanish translation. *See* Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to the Hague Service Convention; *Water Splash*, 581 U.S. at 284 (Service by mail under the Hague Service Convention requires that "the receiving state has not objected to service by mail.") (citation omitted).

Plaintiffs did not comply with any of these requirements. Instead, Plaintiffs proceeded *ex parte*. Only after obtaining the June 17 Order did Plaintiffs purport to serve Petrocedeño in accordance with Fla. Stat. § 77.041 by mailing the motion and writs to addresses in Venezuela without translation. *See* ECFs 488-2, 574. But even if they were otherwise applicable, the service provisions of Florida garnishment statutes do not apply in the face of conflicting federal law, *i.e.*, the Hague Service Convention, which "pre-empts inconsistent methods of service prescribed by state law." *Schlunk*, 486 U.S. at 699; *see* Fed. R. Civ. P. 69(a)(1) (providing that a money judgment

9

is enforced by following the execution "procedure of the state where the court is located, *but a federal statute governs to the extent it applies*" (emphasis added)).

As to PDVSA, Plaintiffs purported to serve the improper writs under Fla. Stat. § 77.055 more than four years after obtaining the June 17 Order as to Petrocedeño. ECFs 574, 586. Despite having no TRIA determination as to PDVSA, any service of process implicating PDVSA's rights had to comply with the hierarchical procedures of 28 U.S.C. § 1608(b). *Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 812 (2d Cir. 2022). As there is no "special arrangement for service," 28 U.S.C. § 1608(b)(1), Plaintiffs were required to serve PDVSA via the Hague Service Convention, "an applicable international convention on service of judicial documents." *See id*. § 1608(b)(2); *Water Splash,* 581 U.S. at 273 ("[T]he Hague Service Convention specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies." (citation modified)).

As Venezuela objects to service by mail, to properly serve PDVSA, and Petrocedeño, under the Hague Service Convention, a plaintiff must (1) attempt service through Venezuela's central authority, (2) wait a period of at least six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) absent such a certificate, serve the defendant consistent with Venezuelan law. Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to Hague Service Convention; *see Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038–43 (D.C. Cir. 2022). If such service could not be effected, Plaintiffs would then, as to PDVSA, be required to attempt service under one of the methods in § 1608(b)(3), and as to Petrocedeño, under another manner permitted under Rule 4(f). Plaintiffs' decision to mail their purported service to an address in Venezuela and, later, to PDVSA's counsel did not meet such requirements.

10

Plaintiffs' purported "notice" was defective under the Hague Service Convention and the FSIA, resulting in PDVSA and its subsidiaries being deprived of due process at all stages of this enforcement proceeding.  *See Murphy Bros.*, 526 U.S. at 350 (holding service of process "is fundamental to any procedural imposition on a named defendant").  The June 17 Order must therefore be vacated, the writs dissolved, and this action dismissed.  *See Caballero*, 2023 WL 125240, at \*6–7 (holding *ex parte* "agency or instrumentality" TRIA order violates due process); *Sudan*, 587 U.S. at 18–19 (2019) (holding defects in service require vacatur even where defects were "highly technical" and "belatedly raised").

## III.   TRIA DOES NOT APPLY TO PDVSA AND ITS SUBSIDIARIES

### A.   TRIA Applies To "Agencies Or Instrumentalities" Of State Sponsors Of Terrorism Only

A judgment holder seeking to attach assets under TRIA must establish that the assets are blocked assets of a terrorist party or an "agency or instrumentality of that terrorist party."  TRIA § 201(a).  The position of PDVSA and its subsidiaries is that the term "agency or instrumentality" of a terrorist party in TRIA § 201 is coextensive with the FSIA's definition of the term and thus refers to an agency or instrumentality of a foreign state that is also a state sponsor of terrorism. The Eleventh Circuit disagrees.  *See Stansell v. FARC*, 771 F.3d 713, 731 (11th Cir. 2014) ("*Stansell II*"); *contra* U.S. Br. Ex. 1, at 9–11.  PDVSA and its subsidiaries nonetheless restate it here to preserve their argument for further review that TRIA does not apply because (1) although PDVSA is an agency or instrumentality of a foreign state (Venezuela), Venezuela is not a state sponsor of terrorism, and (2) Petrocedeño is not an agency or instrumentality of a foreign state, much less a state sponsor of terrorism.

### B.   Petrocedeño Is Not An "Agency Or Instrumentality" Of The FARC

Plaintiffs have never requested or obtained an "agency or instrumentality" determination

11

as to PDVSA, nor can they, because PDVSA is not an "agency or instrumentality" of the FARC.

Plaintiffs' motion was devoid of *any* factual allegations supporting their contention that Petrocedeño is an "agency or instrumentality" of the FARC, even under *Stansell II*'s test.  Instead, Plaintiffs urged this Court to take judicial notice of the *Doe* Order or to apply collateral estoppel to the *Doe* court's findings.  *See* ECF 360 at 6–8.  But it is well-settled in this Circuit that judicial notice of another court's order is limited to "recognizing the judicial act that the order represents or the subject-matter of the litigation," but not for establishing "the truth of the facts set forth in that order."  *Anago Franchising, Inc. v. Shaz, LLC*, 599 F. App'x 937, 937–38 (11th Cir. 2015) (citation modified).  And application of collateral estoppel is inappropriate here where Petrocedeño was never properly served (*see supra* § II) and thus did not appear as a result, denying Petrocedeño a full and fair opportunity to litigate the issue, which was not "actually litigated."  *Simmons v. Indian Rivers Mental Health Ctr.*, 652 F. App'x 809, 817 (11th Cir. 2016) (noting default judgments are "not given preclusive effect" because "nothing [was] 'actually litigated'") (citation modified); *accord Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

As a threshold matter, Plaintiffs have not and cannot put forward any allegations or evidence that Petrocedeño was an "agency or instrumentality" of the FARC at any relevant time.  *See* 6 AM. JUR. 2d *Attachment & Garnishment* § 185 (2024) (validity of attachment depends on "the facts existing at the time the writ was issued").  To the extent Plaintiffs' writs are supported by any factual allegations, those allegations were made by the *Doe* plaintiffs in 2019 and describe alleged conduct of Petrocedeño's parent, PDVSA, and regimes of former Venezuelan presidents, Hugo Chávez and Nicolás Maduro, *in decades prior, including in the "mid-2000s" until 2013*.[6]

Plaintiffs also rely impermissibly on purported acts of the illegitimate Maduro regime and

---

[6] *See, e.g.*, ECF 360-4 ¶¶ 16, 20, 23; ECF 360-5 ¶¶ 13–16, 27–28.

PDVSA (as usurped by Maduro) post-dating January 2019 that cannot be imputed to PDVSA at a time when it was (and still is) operating under the authority of an Ad Hoc Board established by the emergency transition laws of the U.S.-recognized opposition government of Venezuela. *See, e.g.*, ECF 360-4 ¶¶ 19, 21 (describing present-day acts of Maduro as the "current Venezuela Government"); *id.* ¶ 26 (describing present-day speculation that "FARC and PDVSA are close allies" based on acts of Maduro regime). Specifically, in January 2019, the United States ceased recognition of the illegitimate Maduro regime and recognized the 2015 National Assembly and its former Interim Government as the only legitimate government of Venezuela. *PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*, 65 F.4th 556, 561 (11th Cir. 2023).

Since then, PDVSA has been under the legal control of the Ad Hoc Board of PDVSA, a board appointed to act for PDVSA by Venezuelan government institutions recognized by the United States. *See* Medina Decl. Ex. 7, ¶¶ 4–12; *LukOil*, 65 F.4th at 561 (holding Maduro-appointed board of PDVSA not entitled to represent PDVSA in U.S. courts); *Caballero v. FARC*, 2021 WL 1884110, at *7–8 (W.D.N.Y. May 11, 2021) (same). This Court is thus required to defer to the Executive Branch and treat only the actions of the U.S.-recognized Venezuelan government and the Ad Hoc Board as actions of the Venezuelan government and PDVSA after January 2019. *Zivotofsky v. Kerry*, 576 U.S. 1, 19 (2015) ("[R]ecognition [is] the exclusive prerogative of the Executive."); *Havlish*, 657 F. Supp. 3d at 333–35 (declining to find Afghanistan's Central Bank an agency or instrumentality because doing so would be judicial recognition of the Taliban); U.S. Br. Ex. 2, at 25–27. Plaintiffs' reliance on conduct of the Maduro regime and PDVSA (as directed by Maduro) after January 2019 is improper, and the June 17 Order impermissibly decided a nonjusticiable political question. *See LukOil*, 65 F.4th at 563–64.

Plaintiffs otherwise failed to adduce any evidence of Petrocedeño's or PDVSA's alleged

relationship with the FARC in the relevant period.  Petrocedeño and PDVSA acknowledge the Eleventh Circuit rejected the imposition of a temporal limit for assessing agency or instrumentality status in *Stansell v. FARC*, 45 F.4th 1340, 1357 (11th Cir. 2022) ("*Stansell V*").  However, it did so by examining the broader definition of "agency or instrumentality" that has been called into question by the United States.  *See supra* § II.A.  Nonetheless, PDVSA and its subsidiaries submit this aspect of *Stansell V* was incorrect and preserve all arguments for appellate review.

Even despite the obvious temporal defects, Plaintiffs have not adduced any admissible evidence demonstrating that Petrocedeño or PDVSA is an "agency or instrumentality" of the FARC.  Though the Eleventh Circuit has recognized that an indirect relationship may be sufficient, "the more attenuated the link[,] the more difficult it [is] to prove agency/instrumentality status." *Stansell V*, 45 F.4th at 1357.  Here, Plaintiffs' theory is premised upon conclusory testimony in a different case purporting to link the FARC, to the Cartel of the Suns and the former Chávez and illegitimate Maduro regimes, to the entirety of the Venezuelan government, then to PDVSA, and then finally, to Petrocedeño.  *See, e.g.*, ECF 360-4 ¶¶ 11, 16–28; *see also* ECF 360 at 3.  This daisy-chain is far too attenuated to establish that PDVSA is an agency or instrumentality of the FARC, let alone Petrocedeño, even if Plaintiffs adduced reliable, admissible evidence.  They have not.

Though Plaintiffs principally rely on the *Doe* Order, Plaintiffs also attached the Fonseca and Gaddis affidavits, also filed in the *Doe* action, to their motion.  *See* ECF 360-4, 360-5.  Neither of those affidavits is admissible, much less in this action, nor do they demonstrate that Petrocedeño or PDVSA is an agency or instrumentality of the FARC.  Importantly, Fonseca *does not even mention Petrocedeño*.  *See* ECF 360-5.  And Gaddis, aside from an offhanded conclusory statement that Petrocedeño is an "example" of PDVSA's purported use of its "ownership and managing

14

influences over subsidiaries" to "cooperat[e]" with the FARC, does not otherwise mention any specific act connecting Petrocedeño—even indirectly—to the FARC.  ECF 360-4 ¶¶ 18, 27.

Moreover, the Gaddis and Fonseca affidavits are inadmissible hearsay and hearsay-within-hearsay.  Fed. R. Evid. 801, 802.  Both affidavits consist largely of prolonged quotations from or recitations of, *inter alia*, news articles, press releases, and think tank reports.  *See, e.g.*, ECF 360-4 ¶¶ 16–24; ECF 360-5 ¶¶ 16–33.  None of this evidence is admissible under any hearsay exception.[7]  And Gaddis's "opinion" that Petrocedeño is an "agency or instrumentality" of the FARC (ECF 360-4 ¶ 29) is an inadmissible legal conclusion.  *See United States v. Daniels*, 91 F.4th 1083, 1096 (11th Cir. 2024) (citation modified).  The single sentence determination as to Petrocedeño in *Doe* could not have been based on any admissible evidence for there was none.

Finally, to the extent Plaintiffs or the *Doe* Order rely on OFAC's protective blocking of PDVSA's assets to support its findings, that is error.  First, the Eleventh Circuit has made clear that the agency-or-instrumentality determination is "not dispositively decided by OFAC designation." *Stansell II*, 771 F.3d at 726–27.  "[T]he agency or instrumentality determination is separate from the determination that an asset is blocked and carries more immediate and substantial consequences than does the [OFAC] designation." *Id.*  Indeed, "designation is a unilateral move that takes place and blocks [an entity's] assets before [it] has an opportunity to challenge the designation." *Id.*  Second, the Supreme Court has eliminated the *Chevron* doctrine requiring judicial deference to agency action.  *Loper Bright v. Raimondo*, 603 U.S. 369 (2024); *Van Loon v. Dep't of Treasury*, 122 F.4th 549, 562 (5th Cir. 2024) (applying *Loper* to OFAC action and reversing for erroneously affording heightened deference).  Third, OFAC has never made a

---

[7] *See* Fed. R. Evid. 802–03; *Mamani v. Berzain*, 2018 WL 1010582, at *3 n.6 (S.D. Fla. Feb. 22, 2018) ("'[A] party cannot call an expert simply as a conduit for introducing hearsay.'") (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)).

determination regarding PDVSA or its subsidiaries and the FARC.  Nor has it designated PDVSA or its subsidiaries for terrorist conduct.  Instead, OFAC designated PDVSA and its subsidiaries to protect their assets from usurpation by the Maduro regime.  Press Release Ex. 4, at 1.

In sum, Plaintiffs have adduced no sufficient, admissible evidence to support their claim that Petrocedeño is an agency or instrumentality of the FARC, and thus the June 17 Order should be vacated, the writs dissolved, and this action dismissed.  The writs should also be dissolved as to PDVSA because Plaintiffs have never obtained a TRIA determination against PDVSA, much less done so through sufficient, admissible evidence.  *See Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1049 (D.C. Cir. 2014) (requiring "compelling, admissible evidence").  This Court should at least, subject to any intervening appellate rights, require Plaintiffs to discharge their burden through an evidentiary hearing for PDVSA and its subsidiaries to contest Plaintiffs' meager evidence.  *See Stansell II*, 771 F.3d at 727 (alleged agency or instrumentality "entitled to be heard on their challenge to the agency or instrumentality issue"); *Stansell V*, 45 F.4th at 1360 (remanding for trial on agency or instrumentality question).

## C.    Plaintiffs May Not Attempt Enforcement Against The Assets Of PDVSA Or Its Subsidiaries Without An "Agency or Instrumentality" Determination

Plaintiffs have obtained numerous writs as to the assets of PDVSA and PDVSA's subsidiaries without any order from this Court authorizing these writs or finding any of these entities "agencies or instrumentalities" of the Defendants.  Instead, Plaintiffs obtained these writs as to the assets of PDVSA and its subsidiaries—including Bariven S.A., PDVSA Services, B.V., and Petropiar, S.A.—by impermissibly leveraging the June 17 Order as to Petrocedeño.  While the June 17 Order is invalid as to Petrocedeño, as explained, using such Order to obtain writs as to PDVSA and its subsidiaries defies basic principles of corporate separateness.  *See Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 564 (11th Cir. 1987) (The foreign state's total ownership of the

corporate entity was insufficient to overcome the "presumption of separate juridical existence.").

Indeed, Plaintiffs never alleged, nor has this Court ever held, that Petrocedeño's corporate form should be ignored.  In *Osio*, Magistrate Judge Torres recommended that the Court uphold PDVSA's corporate separateness—and dissolve the plaintiffs' writs seeking to attach the assets of PDVSA's subsidiaries—because the plaintiffs failed to satisfy their burden to make a particularized showing that the subsidiaries were themselves agencies or instrumentalities of the FARC.  R&R at 19–21, *Osio v. Maduro*, No. 1:21-cv-20706 (S.D. Fla. Apr. 9, 2025) (ECF 401). This Court should do the same here.

### D.      Plaintiffs Failed To Show The Blocked Assets Are Assets "Of" The FARC

Plaintiffs have not proven the assets are "blocked assets *of* that terrorist party (*including* the blocked assets of any agency or instrumentality of that terrorist party)."  TRIA § 201(a) (emphasis added).  The plain meaning of the emphasized language is that "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party."  U.S. Br. Ex. 5, at 303, *In re 650 Fifth Ave. and Related Props.*, No. 17-3258 (2d Cir. Aug. 31, 2018), ECF 140 (citing *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211 (2d Cir. 2014)); *see Havlish*, 657 F. Supp. 3d at 332–33 (holding TRIA requires assets be "of" the judgment debtor).  Further, the word "including" (instead of "and" or "or") underscores that "the terrorist party" must have at least an ultimate-beneficial ownership interest in "the blocked assets."  TRIA § 201(a).  But Plaintiffs have never alleged the assets they seek are property "of" the FARC, or that the FARC has any ownership interest in the assets, which puts TRIA out of reach.  *Cf. Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019) ("[I]f broadly construed, *Kirschenbaum*'s reading of TRIA could invite lawsuits against a third-party . . . that had only incidental and perhaps unintentional involvement with a terrorist party.").  TRIA additionally does not permit attachment of the blocked assets of PDVSA or its subsidiaries because they are not assets "of" even any alleged agency or

instrumentality. *See, e.g., Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143, 147 (2d Cir. 2018). Plaintiffs do not allege Petrocedeño owns the funds targeted, *e.g.*, ECF 775-13, which presents yet another ground to dissolve the writs.

Also, the assets are not "available for execution" under TRIA because they are not "blocked pursuant to the particular regulation or administrative action directed at the particular terrorist-party judgment debtor"—here, the FARC. *Hausler*, 845 F. Supp. 2d at 567 ("TRIA does not permit a party with a judgment against Iran to execute against funds blocked pursuant to [Regulations] . . . targeted at Cuba."), *rev'd on other grounds*, 770 F.3d 207 (2d Cir. 2014). In 2019, OFAC protectively blocked PDVSA's and its subsidiaries' assets to "prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela." Press Release Ex. 4 at 1. The FARC was designated as a significant foreign narcotics trafficker, a Foreign Terrorist Organization, and a Specially Designated Global Terrorist. Press Release Ex. 6 at 2; Foreign Terrorist Org. Sanctions Regs. (31 C.F.R. part 597 (1997)); Global Terrorism Sanctions Regs. (31 C.F.R. part 594 (2003)); Foreign Narcotics Kingpin Sanctions Regs. (31 C.F.R. part 598 (2000)). This lack of overlap precludes execution under TRIA (*Hausler*, 845 F. Supp. 2d at 567) and counsels against effectuating "the judicial seizure of the property of a friendly state"—the U.S.-recognized government of Venezuela. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 866 (2008) (citation modified). These comity concerns provide another ground to vacate, dissolve, and dismiss. The Court should also invite the views of the United States. 28 U.S.C. § 517.

## IV.     THIS COURT SHOULD DISSOLVE ALL EXTRATERRITORIAL WRITS

This Court has denied as moot Plaintiffs' motion for a turnover judgment as to the blocked assets of Petrocedeño held by JPMC. ECF 689. This Court reasoned the turnover motion and its related pleadings (ECF 603, 624) were transferred to the Southern District of New York, where

the account is held.  ECF 584 at 6; *see* ECFs 687, 794.  For the same reason, this Court should grant PDVSA and its subsidiaries' request to dissolve the JPMC writ.

Given the Court's transfer order, this Court did not address the merits; but, granting PDVSA and its subsidiaries relief on the merits would be appropriate because this Court lacks in rem jurisdiction over the JPMC assets and all assets located outside Florida that Plaintiffs have obtained or will obtain.  Florida courts are clear that writs may not issue upon accounts held outside the forum.  *Stansell v. FARC*, 149 F. Supp. 3d 1337, 1341–42 (M.D. Fla. 2015).

Plaintiffs argue that these judicial decisions have been overturned by recent amendments to Fla. Stat. § 772.13.  ECF 725, 726.  Even assuming Plaintiffs' statutory interpretation were correct, the amendments would not affect the proceedings at issue here because the statute, by its plain terms, would apply only to "postjudgment execution proceedings."  And, as explained below, the proceedings at issue here do not qualify as such within the meaning of Fla. Stat. § 772.13.

This Court should also decline to adopt Plaintiffs' interpretation of the statute under the constitutional avoidance doctrine because their interpretation would raise serious constitutional questions.  For example, it would raise the question of whether the statute's alleged retroactive application "impairs a vested right, creates a new obligation, or imposes a new penalty" in violation of the Florida Constitution.  *See Buis v. Universal Prop. & Cas. Ins.*, 394 So. 3d 738 (Fla. Dist. Ct. App. 2024) (citation omitted).  Also, the statute may give rise to competing judicial decisions because it would permit multiple forums to exercise jurisdiction over the same assets.  *See* ECF 794 at 4 (Transferring the JPMC interpleader actions "would minimize the chances that this Court enters a turnover order that conflicts with a turnover order" in another forum.).  So, Plaintiffs' interpretation would also raise the question of whether the statute violates the Full Faith and Credit Clause of the U.S. Constitution, which requires each state to respect the "public acts, records, and

19

judicial proceedings" of other states.  U.S. Const. art. IV, § 1.  To the extent the statute's service provisions conflict with federal law or treaty obligations of the United States (*e.g.*, the FSIA; Hague Service Convention), the statute may violate the Supremacy Clause of the U.S. Constitution, which makes clear that federal law preempts state law.  U.S. Const. art. VI, cl. 2.

## V.    THE TVFA DOES NOT APPLY TO THESE PROCEEDINGS

The Florida Victim Fugitive Disentitlement Act ("TVFA"), Fla. Stat. § 772.13(6), prohibits fugitives (and entities they own or control) from using courts "[i]n any postjudgment execution proceedings to enforce a judgment entered under" TRIA.  Contrary to Plaintiffs' claim, the TVFA does not apply.  At least two courts have already held the TVFA does not apply to the proceedings here—where the alleged "agency or instrumentality" has not had the opportunity to contest the determination in an evidentiary hearing or trial—because that stage of the proceedings "is not a postjudgment *execution* proceeding as to the Interested Parties."  ECF 618 at 1, 3–9.

Nothing in the recent amendments to the TVFA changes that result.  The amendments do not make the prohibition applicable because they do not state that the agency-and-instrumentality stage of the litigation, where entities like Petrocedeño are merely defending against their preliminary designation, constitutes a "postjudgment execution proceeding" within the meaning of the TVFA.  Even if it did, such an interpretation would still raise the serious constitutional questions identified in Petrocedeño's opposition to Plaintiffs' motion seeking the TVFA's application and thus should be rejected under the constitutional-avoidance doctrine.  *See id.*

## CONCLUSION

For all these reasons, the Court should vacate the June 17 Order (ECF 367), vacate the turnover judgment (ECF 499), dissolve the writs as to PDVSA's and its subsidiaries' assets issued under the June 17 Order, and dismiss the action as to PDVSA and its subsidiaries with prejudice.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), PDVSA and its subsidiaries request oral argument on this Motion to enable full development of the issues and arguments raised in this case and to facilitate the Court's resolution of the Motion.

## RULE 7.1(A)(2) CERTIFICATION

Undersigned counsel has conferred with all parties or non-parties who may be affected by the relief sought in the Motion in a good faith effort to resolve the issues raised in the Motion. Plaintiffs oppose the Motion. JPMC and Truist Bank take no position on the Motion.

Dated: July 2, 2025

Respectfully submitted,

**WHITE & CASE LLP**

By: */s/ Jaime Bianchi*
Jaime Bianchi
W. Dylan Fay
200 S Biscayne Blvd.
Miami, FL 33131
(305) 371-2700
jbianchi@whitecase.com
dylan.fay@whitecase.com

Claire A. DeLelle (*pro hac vice*)
Danielle S. Tarin (*pro hac vice*)
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
danielle.tarin@whitecase.com

*Counsel for PDVSA and Petrocedeño, S.A.*

21