UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:19-cv-20896-SCOLA-TORRES

KEITH STANSELL, et al.
    Plaintiffs,
vs.

REVOLUTIONARY ARMED FORCES OF COLOMBIA, a/k/a FARC, et al.,
    Defendants.
_____/

**PLAINTIFFS' MOTION FOR FINAL TRIA TURNOVER JUDGMENT**
**& MEMORANDUM OF LAW**

*JPMCB Answer ECF 760/Writ 698*

Plaintiffs move for entry of a Final TRIA Turnover Judgment on JPMorgan Chase Bank, N,A, ("JPMCB")'s Answer ECF 760 on OFAC blocked assets held by JPMCB and undisputedly owned by Kingpin and FARC agency or instrumentality Momade Bachir Suleman *aka* Mohamed Bachir Suleman ("Suleman"). Plaintiffs file this motion pursuant to: (i) § 201(a) of the Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. § 1610 (note); (ii) Foreign Narcotics Kingpin Designation Act ("Kingpin Act"),  21 U.S.C. § 1901 et seq.; (iii) Chapter 77 Florida garnishment statutes; (iv)  Fed. R. Civ. Pro. 69(a); (v) Fla. Stat. § 772.13(6)(a) (2025); and (vi) *Stansell*, 771 F. 3d 713, 736 (11th Cir. 2014).  All the elements for a Final TRIA Turnover Judgment have been satisfied.  The grounds for this motion are:

    1.    This Court has subject matter jurisdiction to conduct postjudgment execution proceedings on Plaintiffs' final judgment under the federal Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. § 1963, with postjudgment execution under the ATA, TRIA § 201, and Fed. R. Civ. Pro. 69(a), Florida Statutes Chapter 77 and § 772.13(6)(a).

    2.    Mohamed Bachir Suleman was designated by OFAC as a narcotics Kingpin on June 1, 2010 and remains so designated.  According to OFAC, he is a "large-scale narcotics trafficker in Mozambique, and his network contributes

to the growing trend of narcotics trafficking and related money laundering across southern Africa." Mozambique is increasingly becoming a transit country for the shipment of narcotics, according to the U.S. Department of State's 2010 International Narcotics Control Strategy Report. Mozambique serves as a transshipment point for cocaine which are consumed either in Europe and South Africa.  OFAC Press Release June 1, 2010:  *Treasury Sanctions Entities Owned By Drug Kingpin Mohamed Bachir Suleman Treasury Action Targets Narcotics Trafficking Network in Mozambique.*[1]

3.     In accordance with 11th Circuit precedent, *Stansell v. FARC*, 773 F. 3d 713, 746 (11th Cir. 2014), Plaintiffs filed the expert testimony of former DEA Deputy Chief of Operations David Gaddis in support of their ex parte motion in to issue the writ.  ECF 696; 696-1.  Mr. Gaddis testified that Mohamed Bachir Suleman is an agency or instrumentality of the FARC:

> 17.    My experience in the DEA includes knowledge of increased cocaine trafficking not only to West African countries, but also to Mozambique and the Bachir Suleman DTO.  Since the FARC controlled such a vast percentage of the world's cocaine supply over the past 2 decades it is beyond certainty that cocaine trafficked by the Mohamed Bachir Suleman DTO included FARC cocaine.
>
> \*       \*       \*
>
> 21.    It is my opinion based upon my education, training and over 25 years of experience in the DEA that **MOHAMED BACHIR SULEMAN aka MOMADE BACHIR SULEMAN**, and his Mozambique drug trafficking organization and all of its Kingpin designated members, front-persons, supporters, front companies, and financial networks are agencies or instrumentalities of the FARC because: (i) of its significant material assistance in direct support of the international narcotics trafficking activities of the FARC; (ii) its active involvement in cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, and distribution of FARC cocaine and/or paste; and (iii) playing a significant role in international narcotics trafficking of the FARC.

---

[1] https://home.treasury.gov/news/press-releases/tg729.

*See* Affidavit of David Gaddis, **Ex. 1** at ¶¶17, 21 (emphasis in original).  OFAC identifies the alias name of Momade Bachir Suleman as Mohamed Bachir Suleman.  **Ex. 2**.

4. Garnishee, JPMCB's blocking report attached to Answer ECF 760 as ECF 760-1 undisputedly identifies "Momade Bachir" or "Momade Suleman" as the "UBO" – Ultimate Beneficial Owner of the blocked wire transfer.  *See* ECF 760-1 at 2 (JPMCB Blocking Report).  As the ultimate intended beneficiary of the funds, Suleman owns the blocked funds.  Fla. Stat § 772.13(6)(a)5 (agency or instrumentality is deemed owner of blocked wire if originator or beneficiary – wire subject to garnishment and execution).[2] JPMCB's blocking software successfully identified Suleman as the Ultimate Beneficial Owner in this wire transfer scheme and blocked the wire.

5. It is undisputed that (i) the assets are blocked and (ii) Suleman is the owner of the blocked assets held by JPMCB.  *See* Answer ECF 760; Fla. Stat. § 772.13(6)(a)5; *Stansell v. FARC*, 773 F. 3d 713, 726 (11th Cir. 2014). The blocked assets are not immune from attachment under the TRIA as sovereign, diplomatic, or consular property.

6. TRIA provides this Court with subject matter jurisdiction over postjudgment execution and attachment proceedings against blocked assets of an agency or instrumentality of the judgment-debtor, even if the agency or instrumentality itself is not named in the judgment, which includes Suleman. *Stansell v. FARC*, 771 F. 3d 713, 737 (11th Cir. 2014); *Weinstein v. Islamic Republic of Iran*, 609 F. 3d 43, 50 (2d Cir. 2010).

7. Plaintiffs satisfy all requirements for TRIA execution:  (i) They have obtained an ATA judgment against the FARC—a "terrorist party" as defined by the TRIA Section 201(d)(4); (ii) On a claim based on an "act of terrorism" as defined by TRIA Section 201(d)(1)(B); (iii) the blocked assets held by garnishee

---

[2] Ultimate Beneficial Ownership refers to the identification of the natural person(s) – individual people – who ultimately owns or controls a legal entity or arrangement. The primary purpose of UBO is to enhance transparency and  prevent illicit activities such as money laundering, terrorist financing, and tax evasion.

are "blocked assets" within the meaning of TRIA; and (iv) Plaintiffs' judgment is for compensatory damages fully collectable under TRIA.[3] *Stansell v. Lopez Bello et al.*, 40 F. 4th 1308, 1312 (11th Cir. 2022). Plaintiffs now seek to enforce that ATA judgment against blocked assets of FARC agency or instrumentality Suleman.

8. No OFAC license is required for the party holding the blocked assets to liquidate the blocked assets and turn over the proceeds to Plaintiffs. *Harrison v. Republic of Sudan*, 838 F.3d. 86, 98 (2nd Cir. 2016); Amicus Br. of United States in *Stansell v. FARC/Mercurio*, No. 11-11125, at p. 10 (11th Cir. Sept. 21, 2011).

9. Garnishee JPMCB has appeared and is subject to the court's jurisdiction.

10. Plaintiffs have followed the elements required for a TRIA attachment and execution without delay. *See Stansell v. FARC et al.*, 771 F. 3d 713, 728-29 (11th Cir. 2014) (TRIA favors "minimally intrusive manner" of "immediate attachment"). Plaintiffs followed the SDFL's procedure by filing an *ex parte* motion to issue a writ of garnishment providing evidence of agency of instrumentality. *Id.* (ex parte proceeding to attach appropriate under TRIA). *See Stansell*, 713 F. 3d at 746 ("Plaintiffs proffered evidence" of agency or instrumentality). The court issued the TRIA writ without delay.

11. Rule 69(a)(1) requires this Court to follow Florida state law procedures on execution, including statutory garnishment. The blocked accounts are subject to TRIA attachment and execution under Fla. Stat § 772.13(6)(a)(2) (intangible assets like out of state held accounts subject to garnishment without territorial limitation if court has personal jurisdiction over garnishee). The situs of any intangible assets held or maintained by or in the possession, custody, or control of a person or entity so served shall be deemed

---

[3] Plaintiffs' recovery here will not result in their overall recovery of more than the $230,358,541.92, outstanding judgment balance because the blocked account(s) balance is approximately $ $2,500,102.24.

4

to be in this state for the purposes of a proceeding under chapter 56 or chapter 77. Fla. Stat § 772.13(6)(a)(3). Service of a writ or notice to appear under this section shall provide the court with in rem jurisdiction over any intangible assets regardless of the location of the assets. *Id.* The new statute expressly applies retroactively to "any postjudgment execution proceedings, including creditor process under chapter 56 or chapter 77 served, pending, or filed before, on, or after July 1, 2025." Fla. Stat. § 772.13(6)(b) (2025).

12. The Eleventh Circuit has held Florida law governs these TRIA garnishment actions. *Stansell*, 771 F. 3d at 733. "Florida's notice requirements simply provide the procedure for executing." *Id.* at 730. Florida's postjudgment procedures in TRIA executions are constitutional and satisfy due process for timely and adequate notice as applied to Suleman. *Id.* at 728-29. No further notice is required to any potential claimant or the owner. *Stansell v. Lopez Bello*, 802 F. Appx. 445, 449, 2020 WL 290423, at *3 (11th Cir 2020) (Florida garnishment statute's notice requirements in TRIA execution "found to be constitutionally adequate.").

13. Plaintiffs have complied with all Chapter 77 statutory notice requirements to complete this execution: (i) Plaintiffs filed a motion providing evidence of agency or instrumentality, attaching the proper form of writ and served by the U.S. Marshal pursuant to Fla. Stat. § 77.03, § 77.04, *Stansell*, 773 F. 3d at 746, Fed. R. Civ. P. 4.1(a), 28 U.S.C. § 566(c) [ECF 696, 698, 731 at 11 (USM 285)]; (ii) Plaintiffs provided Fla. Stat. § 77.041(2) notice of the motion and writ to Suleman [ECF 775-1]; and (iii) Plaintiffs provided § 77.055 notice of the garnishee's answer to Suleman [ECF 776-15].

14. Suleman has not appeared, has not filed a motion to dissolve the garnishment or otherwise challenge the garnishment within the time required under the Fla. Stat. § 77.055. ECF 776-15. Suleman has failed to do so despite being provided timely and adequate due process and a full opportunity to be heard. *Stansell v. Lopez Bello*, 802 F. Appx. 445, 449, 2020 WL 290423, at *3 (11th Cir. 2020) (Florida garnishment statute's notice requirements as applied

to Lopez in TRIA execution "found to be constitutionally adequate."). Suleman is therefore in default as a matter of law. Fla. Stat. § 77.07(2) ("Failure of the … interested person to timely file and serve the motion to dissolve within such time limitation shall result in … "the proceedings shall be in a default posture as to the party involved."). Suleman's failure to rebut evidence of agency or instrumentality of the FARC means that his blocked assets held by JPMCB are subject to turnover under TRIA. *See* Fla. Stat. ¶ 77.055; *Stansell v. FARC*, 773 F. 3d 713, 746 (claimants "failed to rebut" evidence provided to district court on agency or instrumentality).

15. The Florida garnishment statute deadlines must be strictly construed, and cannot be extended by agreement or court order. *See Regions Bank v. Hyman*, 91 F. Supp. 3d 1234, 1241 (M.D. Fla. 2015) ("Pursuant to Fed. R. Civ. P. 69(a), proceedings supplementary to and in aid of judgment or execution, the procedure followed must accord with the procedure of the state in which the Court is located. . . . The procedures outlined in Ch. 77, Florida Statutes govern this garnishment proceeding [and] . . . must be strictly construed."); *Branch Banking and Trust. Co. v. Carrerou*, 730 F. App'x 869, 870-71 (11th Cir. 2018), (under Florida law garnishment proceedings are "statutory in nature and require strict adherence to the provisions of the statute."), *Id.*, at 871, *quoting Zivitz v. Zivitz*, 16 So. 3d 841 (Fla. 2d DCA 2009); *BDT Investments, Inc. v Lisa, S.A.*, 18-22005-CIV, 2019 WL 7373084, at *6 [SD Fla Oct. 31, 2019] (Garnishment statutes "require strict adherence."); *BNP Paribas v. Wynne III*, 994 So. 2d 1004, 1005 (Fla. 4th DCA 2005) (trial court properly denied request for extension because "[i]n a special statutory proceeding . . . the trial court does not have the same discretion to bend time requirements that might be allowed under the rules of civil procedure.").

16. No other person or entity has ever appeared in this action within the statutory 20 day deadline to assert any claim of ownership in these blocked assets, or to otherwise challenge the allegations in Motion at ECF 696 as untrue,

6

or that they have ownership rights in the blocked proceeds that are superior to the perfected lien rights of the Plaintiffs.

17. Garnishee JPMCB "has no claim to the funds in the Blocked Account." Answer ECF 760 at 4.

WHEREFORE, Plaintiffs respectfully request entry of a Final TRIA Turnover Judgment on Garnishee JPMorgan Chase Bank, N.A.'s Answer ECF 760 and ordering turnover of Momade Bachir Suleman aka Mohamed Bachir Suleman's blocked assets identified in Answer ECF 760 in the proposed form attached as **Ex. 3**, pursuant to Local Rule 7.1(a)(2).

Respectfully submitted July 3, 2025.

/s/ Newton P. Porter, Esq.
(FL Bar: 833738)
/s/ Tony Korvick, Esq.
(FL Bar: 0768405)
PORTER & KORVICK, P.A.
Attorneys for the *Stansell* Plaintiffs
4000 Ponce de Leon Blvd Suite 470
Coral Gables, Florida 33146
Telephone: (305) 373-5040
nporter@porterandkorvick.com
tkorvick@porterandkorvick.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared. I further certify that I served this Motion by electronic mail to the following persons:

MOMADE BACHIR SULEMAN
c/o Grupo MBS Limitada
Avenida Vlademir Lenin 2836
Maputo, Mozambiqu

OFFICE OF FOREIGN ASSETS CONTROL U.S. Department of the Treasury 1500 Pennsylvania Ave. NW Washington DC Via email to OFACReport@treasury.gov, in compliance with 31 CFR 501.605(A)(3)

/s/ Tony Korvick
TONY KORVICK  (FL Bar 768405)
PORTER & KORVICK, P.A.
Attorneys for Plaintiffs
4000 Ponce de Leon Blvd Suite 470
Coral Gables, Florida 33146
Telephone:  (305) 373-5040
tkorvick@porterandkorvick.com