**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:19-cv-20896-SCOLA/TORRES**

| | |
|---|---|
| KEITH STANSELL, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| REVOLUTIONARY ARMED FORCES | ) |
| OF COLOMBIA ("FARC"), et al., | ) |
| | ) |
|    Defendants, | ) |
| _____ | ) |

**GARNISHEE JPMORGAN CHASE BANK, N.A.'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
FOR FINAL TRIA TURNOVER JUDGMENT AS TO BLOCKED
ACCOUNT RELATING TO MOMADE BACHIR SULEMAN [D.E. 840]**

     Garnishee JPMorgan Chase Bank, N.A. ("JPMorgan") submits this response in opposition to Plaintiffs' "Motion For Final TRIA Turnover Judgment" (the "Turnover Motion," D.E. 840) as to a blocked account, held by JPMorgan in New York (the "Blocked Account"), alleged to be the property of Momade Bachir Suleman ("Suleman").

**PRELIMINARY STATEMENT**

     The Turnover Motion seeks the entry of an order or judgment under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA," codified as a note to 28 U.S.C. § 1610) for the turnover of the Blocked Account, on which Plaintiffs (also referred to as the "Stansells") served JPMorgan with a writ of execution on May 22, 2025 (the "Stansell Writ" or the "Writ," D.E. 698).  The Turnover Motion is part of the Stansells' efforts to enforce their default judgment against defendant Fuerzas Armadas Revolucionarias de Colombia (the "FARC") and others, under the Anti-Terrorism Act, 18 U.S.C. § 2333 (the "Stansell Judgment"), entered on June 15,

2010 by the Middle District of Florida in *Stansell, et al. v. Revolutionary Armed Forces of Colombia (FARC), et al.*, No. 09-cv-2308 (RAL)(MAP).  The Stansell Judgment is in the combined amount of $318,030,000, some part of which Plaintiffs contend is unsatisfied.

The Blocked Account contains the funds from a blocked wire transfer and was set up on or about January 15, 2024, in the amount of $2,500,102.24, in accordance with the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. Part 598, administered by the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department.  More specifically, JPMorgan blocked the wire transfer because Suleman – a citizen of Mozambique who was designated by OFAC as a Specially Designated Nationals and Blocked Persons ("SDNTK") on June 1, 2010, and who remains on the SDN list today – appeared to have an interest in the wire transfer.  JPMorgan has always been the garnishee of the Blocked Account, whose account number ends 3375, and the Blocked Account has always been held in New York.

In accordance with Fla. Stat. § 77.04, JPMorgan filed an answer (the "Answer," D.E. 760) to the Stansell Writ on June 11, 2025.  Because no other judgment creditors of the FARC or of any other terrorist party, besides the Stansells, have served JPMorgan with a writ covering the Blocked Account, JPMorgan did not assert a third-party claim in interpleader.  *See* D.E. 760 at ¶5.  JPMorgan did, however, observe that two other parties, besides Suleman, may have a potential interest in the Blocked Account and are entitled under Fla. Stat. § 77.05 to notice of this turnover proceeding:  BCPBT CI Liquidation Company ("BCPBT"), a Cayman Islands-based company identified as the originator of the blocked wire transfer; and RBC Royal Bank Cayman Limited ("RBC"), which was the beneficiary of the wire transfer.  *Id.* at ¶6.

JPMorgan is a neutral garnishee in this proceeding and makes no claim to the funds in the Blocked Account.  JPMorgan is sympathetic to terrorist victims and has in recent years, including just a few months ago, turned over millions of dollars to terrorist victims from

2

accounts blocked under OFAC sanctions and found by courts to meet the legal requirements for execution under TRIA § 201(a) or § 1610(g) of the Foreign Sovereign Immunities Act ("FSIA"). But JPMorgan must also ensure that any order directing it to turn over blocked funds accords with governing law and procedures and is immune from legitimate future challenge. Without such safeguards, JPMorgan is exposed to the risk of duplicative liability in an amount equal to or exceeding the value of funds turned over.

To avoid that risk, JPMorgan opposes the Turnover Motion on multiple grounds that show why an order granting the requested turnover of the Blocked Account would be vulnerable to legal challenges. First, the Blocked Account is not subject to execution under TRIA § 201(a) under the law of the Second Circuit – in which jurisdiction the Account sits, and whose law may apply here – and it also appears not to meet the standards for execution under the provision on blocked wire transfers in the new Florida legislation enacted on May 22, 2025, Fla. Stat. § 772.13(6)(a)(5), on which Plaintiffs rely.

Second, the Stansells did not serve the Stansell Writ, the Answer, or any other filings in this turnover proceeding on BCPBI or RBC, as required under Fla. Stat. § 77.055. Third, there is a material question as to whether this Court had *in rem* jurisdiction to issue the Stansell Writ, and while JPMorgan does not request at this time that the Turnover Motion be transferred to the SDNY, that uncertainty is a basis for denying the Turnover Motion and requiring the Stansells to reapply for a writ in the Southern District of New York ("SDNY"). The SDNY has clear *in rem* jurisdiction over the Blocked Account and is where the Stansells are still litigating in their proceeding, brought in 2016, entitled *Stansell et al. v. Revolutionary Armed Forces of Colomnbia, et al.*, No. 16-mc-405 (S.D.N.Y.). Fourth, the Stansells must show that they properly served Suleman with the Stansell Writ and JPMorgan's Answer, an issue that is difficult

to determine based solely on the Stansells' Notices of Compliance under § 77.041(2) (D.E. 775-1) and § 77.055 (D.E. 776-15).

Finally, if the Court is inclined to grant the Turnover Motion, then JPMorgan requests the opportunity to submit its own proposed turnover order that, unlike the Stansells' proposed order, includes standard protections normally afforded garnishees in JPMorgan's position. Those standard provisions consist of, at a minimum: (i) a release and discharge of JPMorgan, as garnishee, upon its transfer of the funds in the Blocked Account; (ii) a bar on future litigation involving the Blocked Account; (iii) the vacating of the Stansell Writ and any other restraints on the Blocked Account; and (iv) a deferral of JPMorgan's transfer of the blocked funds until after the turnover order has become final and no longer subject to appeal.

## PERTINENT FACTS

A.   **The Nature of the Blocked Account and the Writs on the Account**

The facts underlying the establishment of the Blocked Account come from the "Report of Blocked Transaction" (the "Blocking Report," D.E. 760-1 and annexed as Ex. 1) that JPMorgan, as required by OFAC regulations, submitted to OFAC on or about November 27, 2023 notifying OFAC of the Blocked Account and the basis for the block. The Blocked Account contains a blocked wire transfer, in the amount of $2,500,102.24, that was initiated by BCPBT on or about November 20, 2023. BCPBT was the originator of the wire transfer, and RBC was the beneficiary of the wire. JPMorgan was the intermediary financial institution in the wire transfer chain, and it blocked the wire under the SDNTK sanctions because it identified, "within the remittance info," Suleman as having a potential interest in the wire transfer (Ex. 1 at 2). JPMorgan then created the Blocked Account in New York to hold the blocked funds in accordance with OFAC's SDNTK sanctions regulations.

The Stansells served JPMorgan with the Stansell Writ (D.E. 698) on the Blocked Account on May 22, 2025. The Stansells obtained the Stansell Writ based on an *ex parte* motion that remains under seal to this day, and that JPMorgan has never seen despite requests to the Stansells' counsel for a courtesy copy of the motion.[1] It appears, however, from the docket in the case that the Stansells obtained the Stansell Writ on May 6, 2025. D.E. 698.

**B.     The Filing of JPMorgan's Answer and
        Subsequent Procedural Developments**

In response to the Stansell Writ, JPMorgan filed the Answer on June 11, 2025, and the Stansells filed their reply (D.E. 813) to the Answer on July 1, 2025. On June 13, 2025, the Stansells filed their Notices of Compliance with Fla. Stat. § 77.055 (D.E. 776-15) and § 77.041(2) (D.E. 775-1), which together state that the Stansell Writ and JPMorgan's Answer had been mailed to Suleman at an address in Mozambique. Nothing in the docket indicates that the requisite notice under § 77.055 was sent to BCPBT or RBC, as the parties to the blocked wire transfer.

**ARGUMENT**

**I.    THE BLOCKED ACCOUNT IS NOT SUBJECT TO EXECUTION UNDER TRIA UNDER SECOND CIRCUIT LAW, AND IT ALSO DOES NOT APPEAR TO BE SUBJECT TO EXECUTION UNDER FLA. STAT. § 772.13(6)(a)(5)**

No judgment creditor of the FARC can execute on the Blocked Account under TRIA § 201(a) without first meeting the burden of proof on all elements of a turnover claim under § 201(a). One such element is whether the blocked asset on which a judgment creditor seeks to

---

[1] The Stansells' *ex parte* motion may include factual or other information that bears on such issues as *in rem* jurisdiction and on whether the Blocked Account is subject to execution under TRIA § 201(a). Yet the Stansells' counsel has repeatedly rejected JPMorgan's counsel's requests for the motion, saying they would later move to unseal the motion. No such unsealing motion has ever been filed. That no parties to this proceeding have received the *ex parte* motion is in itself a reason to deny, as premature, or suspend the Turnover Motion until after it is unsealed and made accessible to all parties.

execute – here, the Blocked Account – is the property of the judgment debtor – here, the FARC – or of an agency or instrumentality of the judgment debtor – here, Suleman, as alleged by Plaintiffs. Because the Blocked Account consists of funds from a blocked wire transfer, whether the Account is the property of Suleman turns on the test of ownership of a blocked wire transfer under whichever law – Second Circuit decisional law or Florida statutory law – the Court deems to govern the issue.

"The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (1992). JPMorgan has found no caselaw directly on point on the issue of whose law applies to the question of whether the Blocked Account, as a blocked wire transfer, is subject to execution under TRIA § 201(a). But certain factors strongly suggest that New York has a greater interest in the interpleader proceeding regarding the Blocked Account than does Florida: (i) the Blocked Account is held in New York; (ii) as the garnishee of more than 8,000 blocked deposit and wire transfer accounts in the U.S., almost all of which are held in New York, JPMorgan has an interest in having issues on whether any of those accounts are subject to execution under TRIA or the FSIA governed uniformly by a single and predictable set of rules that does not depend on the forum in which a turnover proceeding is filed; (iii) New York is a major financial hub for U.S. dollar clearing, and it, too, has an incentive in ensuring that wire transfers and other transactions that pass through New York financial institutions are subject to predictable bodies of law; and (iv) the Osio Plaintiffs, who have a sharing agreement with the Stansells, all reside in New York, while the Stansells reside all over the U.S., including New York.

If the Court determines that New York law applies, the issue of whether the Blocked Account, as a blocked wire transfer, is the property of Suleman is governed by the Second

6

Circuit's decisions in *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 893 (2016) ("*Calderon-Cardona*"), and *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014), *cert. denied sub nom. Hausler v. JPMorgan Chase Bank, N.A.*, 136 S. Ct. 893 (2016) ("*Hausler*"). Under those decisions, a blocked wire transfer held by an intermediary bank, such as JPMorgan here, is subject to execution under TRIA § 201(a) (or FSIA § 1610(g)), as property of a judgment debtor such as the FARC or an instrumentality thereof, "only where either the state itself or an agency or instrumentality thereof . . . transmitted the EFT [electronic funds transfer] directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona*, 770 F.3d at 1002 (construing FSIA § 1610(g)); *Hausler*, 770 F.3d at 212 (construing TRIA § 201(a)).

As to the Blocked Account, that requirement has not been met because the entity that transmitted the wire transfer to JPMorgan, which blocked the wire, was BCPBT, as the originator of the wire transfer. Because BCPBT is not an instrumentality of the FARC, the funds in the Blocked Accounts are not, under *Hausler*, subject to execution under TRIA § 201(a). Nor does that outcome change even if a party to a wire transfer who has a legal interest in blocked funds disclaims that interest or otherwise fails to appear or participate in an interpleader or turnover proceeding. *See Doe v. JPMorgan Chase Bank, N.A. et al.*, 899 F.3d 152, 157-58 (2d Cir. 2018).

If, as the Stansells contend, Florida law applies, then the issue of ownership is likely governed by Fla. Stat. § 772.13(6)(a)(5), which addresses blocked wire transfers and which is part of the broader new legislation signed into law on May 22, 2025. Under § 772.13(6)(a)(5), a wire transfer blocked under OFAC sanctions programs is subject to execution if "a terrorist party or any agency or instrumentality thereof was either the originator or the intended beneficiary," in which case "the blocked funds shall be deemed owned by the terrorist party or its agency or

7

instrumentality."[2] As to the Blocked Account, it appears that this requirement has not been met because Suleman was neither the "originator" (BCPBT) nor the "intended beneficiary" (RBC) of the blocked wire transfer that underlies the Blocked Account. According to the Blocking Report, JPMorgan blocked the wire under the SDNTK sanctions because it identified Suleman "within the remittance info." Ex. 1 at 2. But the Blocking Report contains no other information, and the Stansells cite to no other information regarding the wire transfer or the nature of Suleman's potential interest in the blocked funds.

Even if Suleman does have a property interest in the Blocked Account, whether he can be deemed an "intended beneficiary" of the blocked wire transfer within the meaning of § 772.13(6)(a)(5) is, given the newness of the statute, a novel issue that no court to JPMorgan's counsel's knowledge has ever addressed. But under the plain language of § 772.13(6)(a)(5), it seems clear that RBC was the intended beneficiary of the wire transfer, in which case Suleman lacks ownership of the Blocked Account, and the blocked funds are immune from execution under TRIA § 201(a). *E.g.*, *Just. Admin. Comm'n v. Harp*, 24 So. 3d 779, 781 (Fla. 5th DCA 2009) ("When the language of the statute is plain and not ambiguous, the statute must be interpreted in accordance with that plain language.") (citing *State v. Bradford,* 787 So.2d 811, 817 (Fla. 2001)). And statutory construction aside, the evidence submitted on the Turnover Motion does not definitively show in the first place that Suleman was the intended recipient of the wired funds.

---

[2] Section 772.13(6)(a)(5) states in full: "Notwithstanding s. 670.502(4), when an electronic funds transfer is not completed within 5 banking days and is canceled pursuant to s. 670.211(4) because a United States intermediary financial institution has blocked the transaction in compliance with a United States sanctions program, and a terrorist party or any agency or instrumentality thereof was either the originator or the intended beneficiary, then the blocked funds shall be deemed owned by the terrorist party or its agency or instrumentality and shall be subject to execution and garnishment."

Under these circumstances, the Turnover Motion does not meet Plaintiffs' burden of showing that the funds in the Blocked Account are the property of Suleman. That deficiency requires that the Motion be denied.

## II. PLAINTIFFS HAVE NOT GIVEN THE REQUISITE NOTICE UNDER FLA. STAT. § 77.055 TO BCPBT OR RBC

The Turnover Motion should be denied on the additional ground that Plaintiffs have failed to meet their statutory obligation under Fla. Stat. § 77.055 to notify BCPBT or RBC of this proceeding by serving them with the Stansell Writ and the Answer. Section 77.055 requires that those filings be served on "any other person disclosed in the garnishee's answer to have any ownership interest in the deposit, account, or property controlled by the garnishee."

Here, such "other person[s]" included BCPBT and RBC, as the Answer sets forth after noting that no other FARC judgment creditor has served a writ on the Blocked Account:

> There are, however, other parties with a potential interest in the Blocked Account. Suleman presumably has such an interest. BCPBT, as the originator of the blocked wire transfer underlying the Blocked Account, may also have an interest, as may RBC, as the beneficiary of the wire transfer. ***The Stansells are obligated under Fla. Stat. § 77.055 to provide each of those parties with notice of this proceeding and a copy of this Answer, and no final disposition of the funds in the Blocked Account can be rendered until after the Stansells have met that obligation,*** and Suleman, BCPBT and RBC have been given actual notice and the opportunity to assert a claim to the Blocked Account or otherwise respond to the Stansell Writ.

D.E. 760 at ¶6 (emphasis added).

JPMorgan highlighted BCPBT and RBC for the same reasons discussed in Section I above: That as parties to the blocked wire transfer underlying the Blocked Account, and in view of *Hausler* and *Calderon-Cardona*, BCPBT and RBC could each have a conceivable claim to some or all of the blocked funds. That the odds of any such claim may be low does not obviate Plaintiffs' obligation under § 77.055 to give BCPBT and RBC notice of this turnover proceeding.

9

Plaintiffs have nonetheless failed to do so. *See* D.E. 776-15 (Stansells' Notice of Compliance with § 77.055, which shows that the Answer was sent solely to an address for Suleman). Although a failure to abide by § 77.055 may be "fatal" to a writ, *Five for Ent., S.A. v. Rodriguez*, No. 11-24142-CV-Seitz/Turnoff, 2015 WL 13642469, at *2 (S.D. Fla. Sept. 2, 2015) (collecting cases), JPMorgan does not argue that Plaintiffs' failure to serve BCPBT and RBC warrants the dissolution of the Stansell Writ. Plaintiffs are not entitled to a turnover of the Blocked Account until that statutory notice requirement has been met.

**III. THERE IS A MATERIAL ISSUE AS TO WHETHER THE COURT HAD *IN REM* JURISDICTION TO ISSUE THE STANSELL WRIT, AND THAT UNCERTAINTY COMPELS THE STANSELLS TO MOVE FOR A WRIT AND TURNOVER ORDER IN THEIR SDNY PROCEEDING**

An order directing the turnover of the Blocked Account to Plaintiffs would also be vulnerable to future challenge because there is a foundational issue, in light of the Blocked Account's location in New York, as to whether the Court had *in rem* jurisdiction to issue the Stansell Writ.

Because the Stansells have not disclosed or sought to unseal the *ex parte* motion for the issuance of the Stansell Writ, the public record is unclear on when the Writ was obtained. But the docket entry referencing the Writ is dated May 6, 2025, so it is likely the Writ was issued that day. But the amendment to Fla. Stat. § 772.13(6)(a)(3)[3] regarding *in rem* jurisdiction had not

---

[3] Section 772.13(6)(a)(3) states in pertinent part: "Creditor process issued under chapter 56 or chapter 77 may be served upon any person or entity over whom the court has personal jurisdiction. Writs of garnishment issued under s. 77.01 and proceedings supplementary under s. 56.29 apply to intangible assets wherever located, without territorial limitation, including bank accounts as defined in s. 674.104(1)(a) . . . The situs of any intangible assets held or maintained by or in the possession, custody, or control of a person or entity so served shall be deemed to be in this state for the purposes of a proceeding under chapter 56 or chapter 77. Service of a writ or notice to appear under this section shall provide the court with in rem jurisdiction over any intangible assets regardless of the location of the assets."

10

been enacted by then, so federal common law precedents – most of which held that Florida courts lack *in rem* jurisdiction over bank accounts held outside the state[4] – would then have governed the question of *in rem* jurisdiction over the Blocked Account, not § 772.13(6)(a)(3).

The Court's lack of clear-cut *in rem* jurisdiction over the Blocked Account parallels the same lack of clear jurisdiction over the Petrocedeno-Valero Blocked Account that was the subject of a recent transfer motion granted by this Court. This Court transferred the interpleader proceeding regarding the Petrocedeno-Valero Blocked Account to the SDNY because, in part, it is the SDNY "who undoubtedly has in rem jurisdiction" over the account. R&R, D.E. 654 at 14; D.E. No. 687 at 6 (adopting R&R). And here, too, there is a material question as to whether this Court had *in rem* jurisdiction over the Blocked Account at the time the Stansell Writ was issued.

JPMorgan does not now request that the Turnover Motion be transferred to the SDNY, since Plaintiffs could be directed to reapply for a writ in the SDNY so as to ensure that any eventual order for the turnover of the Blocked Account is free from jurisdictional challenge. As noted above, the Stansells have had a still-active judgment enforcement proceeding pending in the SDNY since 2016 (No. 16-mc-405), so reapplying for a writ and moving for a turnover order in the SDNY places no undue burden on them.

### IV. ANY TURNOVER ORDER REQUIRES A PRIOR FINDING THAT SULEMAN WAS PROPERLY SERVED AND ON NOTICE OF THIS PROCEEDING

To obtain a turnover order, Plaintiffs must also establish that they have properly served Suleman with the Stansell Writ and the Answer. But while they have filed Notices of Compliance under Fla. Stat. §§ 77.041(2) and 77.055, there is nothing in the record confirming

---

[4] *E.g.*, *APR Energy, LLC v. Pakistan Power Res., LLC*, No. 3:08-cv-961-J-25MCR, 2009 WL 425975 (M.D. Fla. Feb. 20, 2009); *Skulas v. Loiselle*, No. 09-60096-CIV, 2010 WL 1790439 (S.D. Fla. April 9, 2010) (Mag. J.), *aff'd and adopted by* No. 09-60096-CIV, 2010 WL 1790433 (S.D. Fla. May 5, 2010).

11

that those mailings were actually delivered to the corporate address in Mozambique cited in the notices, or that Suleman receives mailings at that address.[5]

JPMorgan requests only that, to the extent the Court were inclined to grant the Turnover Motion, the Court carefully consider whether Plaintiffs' mailings were adequate to put Suleman on actual notice of this proceeding and provide him an opportunity to participate in it, thereby helping protect any turnover order against future challenges.

V. **IF THE TURNOVER MOTION IS GRANTED, ANY TURNOVER ORDER OR JUDGMENT SHOULD INCLUDE (i) A RELEASE AND DISCHARGE OF JPMORGAN UPON ITS TURNOVER OF THE BLOCKED FUNDS, (ii) A BAR ON FUTURE LITIGATION REGARDING THE BLOCKED ACCOUNT, AND (iii) A DEFERRAL OF JPMORGAN'S OBLIGATION TO TRANSFER THE BLOCKED FUNDS UNTIL AFTER THE TURNOVER ORDER OR JUDGMENT HAS BECOME FINAL AND NON-APPEALABLE**

If the Court ultimately grants Plaintiffs' Motion and enters a turnover order directing JPMorgan, as garnishee, to transfer the funds in the Blocked Account to Plaintiffs, then that order should contain standard provisions that protect JPMorgan from the risk of double liability if the order is ever challenged by parties seeking money damages based on a claim that the blocked funds should not have been turned over. Those provisions are fourfold and consist of: (i) a release and discharge of JPMorgan upon its transfer of the funds in the Blocked Account, (ii) a bar on future litigation involving the Blocked Account, (iii) the vacating of the Writ and any other restraints on the Blocked Account, and (iv) a deferral of JPMorgan's transfer of the blocked funds until after the turnover order has become final and is no longer subject to appeal.

Those provisions are not controversial and are standard in turnover orders and judgments directing garnishee banks to release accounts blocked under OFAC sanctions for judgment enforcement purposes under TRIA § 201(a) or FSIA § 1610(g). As an example, in *Caballero v.*

---

[5] That address is c/o Grupo MBS Limitada, Avenida Vlademir Lenin 2836, Maputo, Mozambique. *See* D.E. 776-15.

*Fuerzas Armadas Revolucionarias de Colombia et al*., No. 20-mc-00249 (S.D.N.Y.) (Caproni, J.), Judge Caproni entered a turnover order, previously prepared jointly by JPMorgan and Caballero, on February 12, 2025 granting Caballero's motion for the turnover of a blocked account in which Lopez Bello had an interest and affording JPMorgan the following protections:

> 3. Upon JPMorgan's transfer of the funds in the Blocked Account to Caballero's counsel:
>
> a. <u>Release and Discharge</u>: JPMorgan shall have no further obligations of any kind with respect to the Blocked Account. JPMorgan shall accordingly have no liability to, and is hereby discharged, held harmless and released from, any potential claims by or liability to Caballero, Lopez Bello, Postar, Yakima, Bunge, the Marron Plaintiffs, the Osio Plaintiffs, the Stansell Plaintiffs, the John Doe Plaintiffs, the 9/11 Plaintiffs, any agencies or instrumentalities of the FARC or of any of the other defendants, and any other persons or entities worldwide as to any matters based on, arising from or otherwise relating to JPMorgan's transfer of the funds in the Blocked Account to Caballero in accordance with this Order and Final Turnover Judgment.
>
> b. <u>Permanent Bar on Future Litigation</u>: Caballero, Lopez Bello, Postar, Yakima, Bunge, the Marron Plaintiffs, the Osio Plaintiffs, the Stansell Plaintiffs, the John Doe Plaintiffs, the 9/11 Plaintiffs, any agencies or instrumentalities of the FARC or of any of the other defendants, and any other persons or entities worldwide shall be permanently restrained and enjoined from instituting or pursuing any legal action or proceeding, in any jurisdiction worldwide, against JPMorgan for damages allegedly arising from or otherwise relating to JPMorgan's transfer of the funds in the Blocked Account to Caballero in accordance with this Order and Final Turnover Judgment.
>
> c. <u>Dissolution of All Writs</u>: All writs of execution – including the Caballero Writ – notices of pending action, restraining notices and other judgment creditor process of any kind served on, or delivered to, JPMorgan, to the extent they apply to or attach the funds in the Blocked Account, are hereby deemed vacated and null and void.
>
> d. <u>Deferral of Transfer Until After Order Is Final and Non-Appealable</u>: JPMorgan's obligation under Section 2 above to transfer the funds in the Blocked Account to Caballero shall arise only after this Order and Final Turnover Judgment has become final and no longer subject to appeal. This Order and Final Turnover Judgment shall be considered final and non-appealable when the time to file an appeal from it has expired or, if an appeal is filed and not dismissed, then after the Order and Final Turnover Judgment is upheld in all material respects on appeal or after review by writ of certiorari and is no longer subject to review upon appeal or review by writ of certiorari. For purposes of this Section 3(d), the time by which any Interested Party must file an appeal shall begin to run on the day that Caballero serves

>them with this Order and Final Turnover Judgment by the means previously authorized by the Court. Caballero must provide proof of service with the Court by no later than one day after service.

*Caballero* D.E. 135 at ¶3(a)-(d). Other than a release of JPMorgan and a dissolution of the Stansell Writ, the Stansells' proposed turnover order (D.E. 821-1) does not include provisions like those in the turnover order in *Caballero*.

Because of the flaws in the Turnover Motion, JPMorgan does not submit with this Response its own proposed order for the turnover of the account. JPMorgan does, however, request that if the Court were inclined to grant the Turnover Motion, the bank be given an opportunity to submit its own proposed order before a turnover order or judgment is entered.

## CONCLUSION

For the foregoing reasons, the Turnover Motion should be denied or, if it is granted, any turnover order should include the provisions, identified in Section V, necessary to protect JPMorgan from the risk of duplicative liability.

Dated: July 24, 2025

Respectfully submitted,

*/s/ Mark A. Salky*
Mark A. Salky
Florida Bar No. 588221
salkym@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4100
Miami, Florida 33131
Tel – 305.579.0500

and

*/s/ Steven B. Feigenbaum*
Steven B. Feigenbaum
Admitted *Pro Hac Vice*
sfeigenbaum@braverlaw.net
BRAVERMAN GREENSPUN P.C.
110 East 42nd Street
New York, New York 10017
Tel – 212.682.2900

*Co-Counsel for Garnishee, Counterclaimant and Third-Party Plaintiff JPMorgan Chase Bank, N.A.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of July 2025, the foregoing was filed and uploaded to the Court's CM/ECF system, providing notice to all counsel of record.

By: /s/ Mark A. Salky
MARK A. SALKY