UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20896-CIV-SCOLA/TORRES

KEITH STANSELL, *et al.*,

    *Plaintiffs*,

v.

REVOLUTIONARY ARMED FORCES OF
COLOMBIA, *et al.*

    *Defendants.*
_____/

**ORDER ON EXPEDITED MOTION FOR CLARIFICATION OR TO STAY AND ORDER ON MOTION TO CONTINUE HEARING**

This matter first came before the Court on non-parties, Petroleos de Venezuela, S.A. and Petrocedeno, S.A.'s (collectively, "the Movants") Expedited Motion for Clarification Or, in the Alternative, to Stay [D.E. 944], in relation to the Movants' pending Motion to Vacate. [D.E. 827]. The Court set an evidentiary hearing as to that Motion, primarily to determine whether the Movants received proper notice of the proceedings they seek to vacate, and whether the Movants are agencies or instrumentalities of Defendants under the Terrorism Risk Insurance Act ("TRIA").

In that first pending Motion, the Movants argue that the Court has no authority to hold that hearing until a preliminary determination is made as to subject matter jurisdiction. Specifically, in dispute is whether subject matter jurisdiction is

1

founded by the Foreign Sovereign Immunities Act, or whether, independently, subject matter jurisdiction is founded under the TRIA.

In the second pending motion filed thereafter, the Movants seek, alternatively, a continuance of the scheduled hearing based on conflicts of counsel, as well as the need for additional time to set a pretrial disclosure schedule in advance of the hearing. [D.E. 952].

The two motions will be adjudicated together and based on the face of the record given the request for expedited treatment in advance of the scheduled evidentiary hearing.

### A. *There is no Basis to Stay Adjudication of the Motion to Vacate*

Under long-established federal law "the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment." *Bennett v. Islamic Republic of Iran*, 825 F.3d 949, 958 (9th Cir. 2016) (quoting *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010)); *see also Hausler Republic of Cuba v. Comcast IP Phone II*, No. 09-20942-CV-JORDAN, 2010 WL 11442514, at *5 (S.D. Fla. Oct. 14, 2010) (citing *Weininger v. Castro, et al.*, 462 F. Supp. 2d 457, 478 (S.D.N.Y. 2006)) ("The purpose of the TRIA is to override any immunity from execution that the 'blocked assets' of terrorist entities might otherwise enjoy under the Foreign Sovereign Immunities Act. … In other words, the TRIA confers courts with subject-

matter jurisdiction over enforcement actions, such as this one, that would otherwise fall under the parameters of immunity provided by the FSIA.").

This line of cases compelled Judge Gayles to affirm our determination in a separate case involving related issues raised by Movants and others, *Alban v. Maduro*, No. 1:21-CV-20706-DPG, 2025 WL 1891862, at *2 (S.D. Fla. July 9, 2025), that "the Court agrees that TRIA confers this Court with subject matter jurisdiction over the post-judgment proceedings [. . . .]"

And this same line of cases just compelled the Second Circuit to rule on August 26, 2025, in a scholarly decision that thoroughly analyzed the intersection of FSIA immunity and TRIA proceedings, that "TRIA § 201(a) supersedes the FSIA's jurisdictional immunity provisions in addition to its execution immunity provisions. We therefore conclude that neither jurisdictional nor execution immunity can prevent [federal courts] from subjecting [a terrorist party's agency or instrumentality] to [subject matter] jurisdiction under the TRIA." *Havlish v. Taliban,* Case No. 23-258, D.E. 277-1 at 42, (2d Cir. Aug. 26, 2025).  The Second Circuit's analysis also pointed out that the crux of any such dispute requires factual analysis of whether, in fact, an entity's blocked assets could be attached under TRIA if a plaintiff proved that it was an agency or instrumentality of a terrorist party. "[W]e find that the TRIA overrides any jurisdictional or execution immunities granted to [a foreign state/entity] by the FSIA and creates an independent basis for the court to exercise subject matter jurisdiction over [the entity's] blocked assets—provided that [it] is an agency or instrumentality of [a Terrorist party]." *Id*. at 44.  And that determination should be

3

made as of the date that the assets in question were in fact blocked by OFAC because "blocked assets are not 'of' a terrorist party' if those assets did not belong to either the terrorist party, or an entity then operating as an agency or instrumentality of the terrorist party, as of the date that the assets were blocked." *Id.* at 52.

Thus the Movants' argument for delay based on their challenge to subject matter jurisdiction is totally baseless. In this case, in light of the Movants' pending motion to vacate, we have to determine in the first instance whether the Court has subject matter jurisdiction under the TRIA; i.e. whether the Movants are an agency or instrumentality of the Defendants/Judgment Debtors in this case. If the answer is no, that concludes matters and requires vacating the writs. If the answer is yes, then we can proceed to tackle their subject matter jurisdiction arguments under the FSIA (that the Second Circuit has now rejected) and decide in this case what the Court's judgment is on that score. If we change our minds at the Movants' behest, then Plaintiffs can appeal that final ruling. If we do not, Movants' right to appeal is also certainly preserved.

Consequently, the Movants' contention that the Court has no authority to hold an evidentiary hearing to determine our subject matter jurisdiction—because first, the Court must assess whether it has subject matter jurisdiction—is circular. Accordingly, on that score, the Motion is denied.

The Movants separately argue that the Court should stay disposition of their Motion to Vacate, because in a separate, similar case (*Osio v. Maduro Moros*, 21-cv-20706-GAYLES), the Movants have appealed whether subject matter jurisdiction can

4

be conferred by the TRIA. The Movants point out that the Court has discretion to stay a matter while similar or controlling issues are pending on appeal, for the sake of judicial resources and convenience. While that may be true, there is little basis to exercise our discretion in that manner.

While the Movants belabor the point that a successful appeal in *Osio* would resolve several of the pending issues, the Movants do little to persuade the Court that they have a high likelihood of success on that appeal. Indeed, a plethora of other decisions and circuits, in addition to the Second Circuit, have decided that the TRIA can confer subject matter jurisdiction in similar factual settings, notwithstanding potential FSIA immunity. *See, e.g., Bennett*, 825 F.3d at 958; *Hausler Republic of Cuba*, 2010 WL 11442514, at *5; *Hill v. Republic of Iraq*, No. CIV.A. 1:99CV03346TP, 2003 WL 21057173, at *2 (D.D.C. Mar. 11, 2003) (internal citations omitted) ("Section 201 of the TRIA states that '[n]otwithstanding any other provision of law,' the blocked assets of a terrorist party 'shall be subject to execution or attachment in aid of execution.' As this Court has frequently recognized, 'the phrase "notwithstanding any other provision of law," or a variation thereof, means exactly that; it is unambiguous and effectively supersedes all previous laws. Accordingly, by its plain terms, the TRIA overrides any immunity from execution that blocked Iraqi property might otherwise enjoy under the Vienna Convention or the FSIA. Indeed, any contrary construction of the TRIA would frustrate the statutory objective of ensuring that judgments rendered against terrorist states based upon terrorist acts 'are to be enforced.'").

But putting that issue aside, and just taking a look at the practicalities of the Movants' arguments, they fail there too. True, one of the Movants here, PDVSA, sought to prevent attachment of its assets in *Alban* and challenged jurisdiction under the FSIA. Following Judge Gayles' finding, albeit in a non-final Order, PDVSA sought to appeal that finding to the Eleventh Circuit. But this case is in a different posture. No such finding has been made here with respect to these Movants or these assets. And PDVSA has no pending writs against it from these plaintiffs involving blocked assets in this case. Instead, the pending motion to vacate [D.E. 927] addresses PDVSA's and Petrocedeno's challenge to Judge Scola's 2020 turnover judgment only on blocked assets of Petrocedeno. On August 21, 2025, Plaintiffs withdraw all of their writs of garnishment directed to blocked assets of PDVSA. [D.E. 946]. Accordingly, there are no writs, orders or judgments involving PDVSA in this case. So the hearing set by the Court's Order now only pertains to Petrocedeno.

So the hearing now that must be had on the motion to vacate must tackle that separate legal entity's status as an agency or instrumentality of the judgment debtor here. And to the extent PDVSA seeks to participate in that hearing it can (although Plaintiffs are raising a standing challenge that need not be adjudicated now). But it certainly does not have to and simply allow Petrocedeno to fend for itself. But nothing involving PDVSA or its appeal in *Alban* has any bearing on what the Court needs to do now with respect to the pending writs of garnishment.

And even if it did, these are different plaintiffs, who are entitled to pursue their claims and make their case. If they cannot show that Petrocedeno is an

instrumentality of the judgment debtor, then the process is at its end, as the Second Circuit's holding makes clear. If Plaintiffs can make that showing, there will be plenty of opportunities for appeal at that stage, from a *final* order. That appeal could also certainly include another subject matter challenge to convince the Eleventh Circuit that all these cases, and the plain language of the TRIA, are just wrong and that PDVSA, an arm of a designated terrorist state, can walk away with its blocked assets intact.

Accordingly, the Movants have not carried their burden of demonstrating that a stay pending appeal (in a separate case) is appropriate. *See United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992) (internal citations omitted) ("The grant of a motion to stay the trial court's mandate is an exceptional response granted only on a showing of a probable likelihood of success on the merits on appeal, or upon a lesser showing of a substantial case on the merits when the balance of the equities weighs heavily in favor of granting the stay. Appellant neither has demonstrated a probable likelihood of success on the merits on appeal, nor that the balance of equities weighs heavily in favor of granting the stay."); *see also Washington v. Dep't of Child. & Fams.*, No. 8:08-CV-48-T-33TBM, 2009 WL 10708488, at *1 (M.D. Fla. Feb. 20, 2009) ("Plaintiff's motion [for stay pending appeal] is due to be denied because he is not likely to prevail on appeal and he will not suffer irreparable injury absent the stay.").

If the Movants wish to present evidence at the scheduled evidentiary hearing [D.E. 935, 943] to undermine a potential finding of subject matter jurisdiction, the

7

Movants may do so. But the Court does not find cause to stay the hearing, nor disposition of the Movants' Motion to Vacate. [D.E. 827].

For the reasons set forth above, the pending Motion to Stay [D.E. 944] is **DENIED**.

### B. *The Motion for Continuance is Granted in Part*

The second pending motion, filed after the motion to stay, also seeks a delay in the scheduled hearing on other bases. First, counsel for PDVSA has scheduling conflicts that could be alleviated if the Court continued the hearing for another date. Second, PDVSA witnesses who may have knowledge of the factual issues in dispute are not available as well. And, third, the Movants seek an extension of the process and time built into the schedule in advance of the hearing for discovery and pretrial disclosures. So the whole matter should simply be extended, a pretrial scheduling Order entered, and the hearing reset for some time after May 2026. Plaintiffs, naturally, oppose such relief.

The Court also opposes it for the most part. The requested delay based on conflicts of counsel or witnesses is certainly reasonable. The Court arbitrarily selected the September date but knowing full well that adjustments may need to be made. In light of the Movants' good cause showing, the hearing is now CONTINUED and will be reset for October 22, 2025.

As to the request for an extended scheduling Order, along with disclosures deadlines, motion deadlines, etc., that is not warranted. The burden in this post-judgment process falls squarely on Plaintiffs to prove that Petrocedeno is an agency

or instrumentality of the Judgment debtors. So Movants could stay silent and still win at the end of the day because they shoulder no burden in this regard under the Eleventh Circuit's formulation of an instrumentality (based on FSIA) or the Second Circuit's own formulation (based on its application of TRIA). Either way, the issues are relatively straightforward.

Second, this is not a separate lawsuit. This is a post-judgment collection process that is supposed to be resolved expeditiously. There is no right to take depositions or extensive discovery because the Court's jurisdiction is simply to enforce the provisions of Rule 69, which in turn requires application of Florida law. Under Florida law, post-judgment proceedings, like this one, are permitted so as to provide a "useful, efficacious, and salutary remedy at law enabling the judgment creditor not only to discover assets which may be subject to his judgment, but to subject them thereto *by a speedy and direct proceeding in the same court in which the judgment was recovered." Regent Bank v. Woodcox,* 636 So. 2d 885, 886 (Fla. 4th DCA 1994) (emphasis in original) (citation omitted). They are designed to avoid the necessity of a judgment creditor having to initiate an entirely separate action in order to reach assets of a judgment debtor. *Id.; Tomayko v. Thomas,* 143 So. 2d 227, 229 (Fla. 3d DCA 1962) (statutory proceedings supplementary to execution are a substitute for a creditor's bill which was the traditional process for reaching assets of a judgment debtor); *Cuban Cigar Brands, NV v. Tabacalera Popular Cubana, Inc.,* 2008 WL 4279641, at *2 (S.D. Fla. Sept.16, 2008) (the proceeding is "equitable in nature and should be interpreted liberally to ensure that a judgment creditor receives the most

complete relief possible *without the necessity of initiating a separate action."* (emphasis supplied) (internal citations omitted)); *Schwartz v. Capital City First Nat'l Bank,* 365 So. 2d 181, 183 (Fla. 1st DCA 1978) (legislative purpose is to allow a court to follow through with the enforcement of its judgment so there is no need for an independent suit to reach property that legally should be applied to satisfy the judgment).

So all the due process rights inherent in a separate action do not apply here. Notice and an opportunity to defend are, of course, essential under the Fifth and Fourteenth Amendments. But what the Movants suggest here goes much further than that. We need not resolve all their requests beyond making clear that, whatever procedures will be permitted, an extended delay and protracted litigation is not required as if the Movants had been sued in a separate federal action.

So the parties shall confer and agree upon whatever disclosure deadlines they would like. Obviously, if they cannot agree the Court will impose basic disclosure requirements upon Plaintiff; namely that no later than ten days, for instance, prior to the scheduled hearing their list of witnesses and exhibits used at the hearing must be served on the Movants. But the parties are free to agree on others as well, so long as the hearing now set for October 22, 2025, shall proceed.

Finally, we note that the Movants also suggest that they are entitled to a jury trial on these underlying factual issues. There is plenty of authority to the contrary, but we, again, need not resolve that now. Suffice it to say that the Movants will be able to make their case before a final ruling is entered. But from where we sit that

issue will be utterly moot if the Court at an evidentiary hearing determines that Plaintiffs have not satisfied their burden. That is what happened in *Havlish* and it could certainly also happen here. If they do meet that burden, then at the very least that process will have fleshed out what factual issues may actually remain for a jury's determination if it is legally required to do so. But that summary proceeding is all that may be required to adjudicate this case, with all the process that the Movants are ultimately due.

In sum, the continuance is Granted but only until October 22, 2025.

**DONE and ORDERED** in Chambers at Miami, Florida this 27th day of August, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge